UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CAROLYN RAFAELIAN, INDIVIDUALLY and      :
as trustee of THE CAROLYN A. FERLISE QSST  :
1994 TRUST and THE CAROLYN A.            :
RAFAELIAN TRUST 2004, and derivatively on  :
behalf of Cinerama Jewelry, Inc. and Pentagon  :
Properties, Inc.                         :
                                         :
        *Plaintiffs,*                    :
                                         :
        v.                               :        C.A. No.: 1-26-cv-00293
                                         :
REBECCA RAFAELIAN CARUOLO,               :
individually and in her role as trustee of The  :
Rebecca Rafaelian Caruolo QSST 1994 Trust and  :
The Rebecca Rafaelian Caruolo Trust 2009,  :
PRODUCTIVE COLLABORATION, LLC,           :
CINERAMA JEWELRY, INC. (Nominal          :
Defendant), and PENTAGON PROPERTIES, INC.  :
(Nominal Defendant)                      :
                                         :
        *Defendants.*                    :

**DEFENDANT REBECCA RAFAELIAN CARUOLO'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Carolyn Rafaelian ("Carolyn") is not qualified to bring derivative claims on behalf of

Pentagon Properties, Inc. ("Pentagon") or Cinerama Jewelry, Inc. ("Cinerama"). If permitted

to proceed, Carolyn would compel both companies into litigation that serves her own

interests rather than theirs—for example, by forcing Pentagon to raise her mother's already

fair rent, requiring Cinerama to evict her niece's business, and directing Pentagon to evict

Cinerama, which has leased the premises since 1991,[1] all while attacking Rebecca Rafaelian

Caruolo ("Rebecca") using manufactured grievances and knowingly false claims. Pursuant

to Federal Rules of Civil Procedure 12(b)(6) and 23.1, Rebecca, individually and as Trustee

---

[1] First Amended Complaint ("FAC") ¶ 18.

1

of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, seeks an Order dismissing, with prejudice, all Counts of the First Amended Complaint ("FAC"), Dkt. No. 1-1.

## I.    INTRODUCTION

Carolyn's FAC is deficient in multiple respects and should be dismissed.  First, she seeks to bring derivative claims **on behalf of** Cinerama (Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII), while simultaneously bringing a derivative claim **against** Cinerama (Count IV) and pursuing a separate eviction action against Cinerama in the Sixth Division District Court. **Exhibit A**.[2]  These positions are irreconcilable and disqualify Carolyn from representing Cinerama derivatively.

Federal Rule of Civil Procedure 23.1 provides that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation or association."  This adequacy requirement guards against minority shareholders with divergent interests commandeering litigation on behalf of a corporation they cannot fairly represent, which is exactly the situation here.  Carolyn is the trustee of trusts holding only non-voting minority interests in Cinerama; Rebecca is the trustee of trusts holding the majority interest and all voting

---

[2] On a motion to dismiss under Rule 12(b)(6) the Court may consider matters of public record subject to judicial notice and documents that are incorporated into or attached to the complaint. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) (allowing the court to review "any documents attached to the complaint or incorporated by reference therein"); *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (holding that the court may consider a document "integral to or explicitly relied upon in the complaint, even though not attached to the complaint" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (explaining that when "a complaint's factual allegations are expressly linked to–and admittedly dependent upon–a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); *see also Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018).

shares.  Carolyn's structural position as a passive, non-voting stakeholder, coupled with her active litigation against Cinerama, places her interests in conflict with those of the voting shareholders and Cinerama itself.  Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII must therefore be dismissed.

Carolyn likewise cannot represent Pentagon derivatively in Counts I, II, IV, VI, VII, and VII (sic).  For five of those six counts, she also pleads parallel individual claims, creating a direct conflict between recovery for the company (which would inure to Rebecca as well) and recovery for herself (which would not).  In addition, Pentagon is independently represented by its own counsel: when Carolyn previously sought to bring derivative claims on Pentagon's behalf in the Sixth Division District Court, Judge DeCarvalho granted Pentagon's Motion to Intervene over Carolyn's objection.  **Exhibit B**.  The Pentagon derivative claims should also be dismissed.

With the derivative claims dismissed, Carolyn's remaining individual claims against Rebecca—Counts I, II, III, VI, VII, and X —also fail.  For example, Count II asserts an individual claim for waste, but no such individual claim exists under Rhode Island law.  Count VII asserts an individual claim for misappropriation of corporate opportunity, but the remedy for usurpation of corporate opportunities lies solely in derivative suit.  Counts III and X improperly extend conversion to intangible property in contravention of Rhode Island law and assert rights in assets that belong to Cinerama, not to Carolyn.  Count XII identifies a remedy, not a substantive cause of action.  Each of these claims fails as a matter of law and should be dismissed with prejudice.

## II.    PROCEDURAL BACKGROUND

On November 18, 2025, Carolyn commenced this action in the Rhode Island Superior Court (Newport County), C.A. No. NC-2025-0531, asserting individual claims against Rebecca.

Carolyn thereafter moved for leave to amend her Complaint to add derivative claims purportedly on behalf of Cinerama and Pentagon, together with additional individual claims under Rhode Island law and the federal Lanham Act against Productive Collaboration, LLC ("PC").

The Superior Court granted leave to amend, and Carolyn filed her First Amended Verified Complaint on April 22, 2026. Because the FAC asserts federal claims under the Lanham Act, 15 U.S.C. § 1125, PC timely removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and Rebecca consented to that removal. Rebecca now moves to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(6) and 23.1.

III.    **ARGUMENT**

A.    **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The First Circuit applies a two-step inquiry: the court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and then "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678; *see also S.E.C. v. Tambone*, 597 F.3d 436,

4

442 (1st Cir. 2010) (en banc).

Federal Rule of Civil Procedure 23.1 imposes additional pleading requirements on a shareholder seeking to assert a derivative claim, including verification of the complaint and an allegation that the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a).  Rule 23.1 also requires that the complaint "state with particularity" the efforts the plaintiff made to obtain the desired action from the directors and the reasons for not making the effort.  Fed. R. Civ. P. 23.1(b)(3).  A derivative action that does not satisfy Rule 23.1's adequacy requirement "may not be maintained" and is subject to dismissal.  Fed. R. Civ. P. 23.1(a); *see G.A. Enters., Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 26 (1st Cir. 1975).

    B.    **<u>Carolyn Is Not Qualified Under Rule 23.1 to Assert Derivative Claims on Behalf of Cinerama (Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII)</u>.**

Rule 23.1 provides, in relevant part, that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." In short, the language of Rule 23.1 imposes requirements that the representative plaintiff (i) fairly and adequately represent the interests of the similarly situated shareholders; and (ii) bring the derivative action primarily to enforce the right of the corporation.  This adequacy requirement is a critical threshold: derivative actions bind all shareholders and the corporation itself, making it essential that the plaintiff's interests align with those she purports to represent. *G.A. Enters., Inc*, 517 F.2d at 27 (Rule 23.1 "forbids maintenance of such a suit by a plaintiff unable to provide fair and adequate representation.").

To determine whether a would-be derivative plaintiff "fairly and adequately" represents the interests of the shareholders, courts consider several factors, including the putative derivative plaintiff's vindictiveness towards the defendant(s), other litigation pending between the plaintiff and the defendant(s), and support from other shareholders. *See Grampp v. Bordynuik*, C.A. No. 13-11906-MLW, 2015 WL 5609958, at *3 (D. Mass. Sept. 22, 2015); *see also Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) ("The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda"). The fairness and adequacy requirement of Fed. R. Civ. P. 23.1 means that the representative plaintiff must have no antagonistic interests that will prevent her from fairly and adequately representing the interests of the similarly situated shareholders. *G.A. Enters., Inc.*, 517 F.2d at 26-27 (affirming disqualification and concluding that the record demonstrated an obvious conflict of interest and outside interests on the part of the would-be plaintiff that outweighed its stake in the derivative suit).

Here, all factors support disqualifying Carolyn and dismissing the derivative claims. *First*, Carolyn has a direct conflict of interest with Cinerama: her newly-asserted interest in bringing claims derivatively for Cinerama is overshadowed by her ongoing efforts to pursue claims against Cinerama. *See Bigfoot Ventures Ltd. v. Knighton*, 132 F.4th 1138, 1145 (9th Cir. 2025) (lawsuits against the company are "significant outside entanglements" supporting disqualification). The FAC itself acknowledges that Carolyn sued Cinerama for eviction on November 11, 2025, in *Carolyn Rafaelian, Individually and as Trustee of The Carolyn A. Rafaelian Trust 2004, and derivatively on behalf of Pentagon Properties, Inc. v. Productive Collaboration, LLC, d/b/a Air & Anchor; and Cinerama Jewelry, Inc.*[3] That action is stayed, but Carolyn's claim against Cinerama remains pending.

---

[3] FAC ¶ 81.

In *Phillips on behalf of VBenx Corp. v. Smith*, C.A. No. 17-11697-MGM, 2018 WL 11463442 (D. Mass. July 2, 2018), the district court disqualified the would-be derivative plaintiff, noting that "First Circuit has squarely found that the presence of other suits involving the same parties raises a potential for conflict and motive for 'leverage' that disqualifies plaintiffs under Rule 23.1." *Id.* at \*4 (citing *G.A. Enters., Inc.*, 517 F.2d at 26). In *Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 341 (D. Or. 1987) the district court followed the *G.A. Enterprises* framework and noted that "[c]ourts confronted with the issue of outside entanglements, such as ongoing litigation between a plaintiff and the defendant corporation, consider the extent, character and potential conflict of the claims." *Id.* at 345. Carolyn's prior pending individual cause of action against Cinerama disqualifies her here.

Carolyn's position is further compromised by Count IV, where she attempts to sue Cinerama derivatively, and by her request that the Court pierce Cinerama's corporate veil and declare Cinerama the alter ego of PC. *See* FAC Count IV, ¶¶ 3, 7 and Request for Relief VI(c). These veil-piercing requests would strip Cinerama of its corporate independence and liability protections—extraordinary relief that Cinerama would ordinarily resist, not invite. *See Franks v. Coopersurgical, Inc.*, 722 F. Supp. 3d 63, 81 (D.R.I. 2024); *Wilcox Excavation & Dev. v. DiGregorio, Inc.*, C.A. No. 1:23-cv-00543-MSM-PAS, 2025 WL 2918363, at \*3 (D.R.I. Oct. 14, 2025). No fair representative of Cinerama would seek such relief on the company's "behalf."

Carolyn's claims adverse to Cinerama do not benefit the company or its shareholders, and they cannot be reconciled with Rule 23.1's requirement that the plaintiff act to "enforce a right" of the corporation. Fed. R. Civ. P. 23.1(a); *see Chesterton v. Chesterton*, Civ. A. No. 89-2854-S, 1990 WL 150066, at \*2–3 (D. Mass. Oct. 2, 1990) (plaintiff could not fairly represent the corporation "on the same issue that is the focus of his personal claim against the corporation").

Not only do Carolyn's interests conflict with those of Cinerama, they also conflict with the other shareholders she purports to represent. Rebecca's trusts hold the majority shares and all voting power over corporate governance and decision-making under the By-laws; Carolyn's trusts hold only non-voting minority interests. *See* FAC ¶¶ 25-26. The divergence is not merely technical—it is a fundamental conflict that cannot be reconciled in favor of Carolyn. *See Kuzmickey v. Dunmore Corp.*, 420 F. Supp. 226, 230-31 (E.D. Pa. 1976) (dismissing derivative action where minority shareholder had no support from remaining shareholders because it was "readily apparent that plaintiff does not represent anyone but herself for there are no other shareholders who are 'similarly situated'").

Courts dismiss derivative claims under Rule 23.1 when faced with comparable conflicts. In *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 66 F.R.D. 123 (D. Mass. 1974), a minority shareholder brought a derivative action alleging waste, mismanagement, and fraud. *Id.* at 125. Examining the totality of the disputes—including pending litigation between companies controlled by the plaintiff's principal and the defendant—the district court dismissed the derivative claims, reasoning that "where the interests of the named plaintiff and the shareholders on whose behalf he is suing[] are antagonistic, and this antagonism is the kind which could influence the conduct of the case, such a situation should be resolved by dismissal pursuant to Rule 23.1." *Id.* at 126. The First Circuit affirmed, focusing on the "obvious conflict of interest" and concluding that the plaintiff's interests suggested the "highest and best" use of the derivative suit "would be as a weapon." *G.A. Enters., Inc.*, 517 F.2d at 26. The parallel to Carolyn's position is clear, and disqualification is warranted on this ground as well. *Grampp*, 2015 WL 5609958, at *3 (factors to be considered in adequacy determination include "the degree of support received by the plaintiff from other shareholders" and "plaintiff's vindictiveness towards

the defendants"); *see also Owen v. Mod. Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir. 1981) ("where there is a substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a device for the protection of all shareholders, other courts have properly refused to permit the derivative action to proceed"); *Bigfoot*, 132 F.4th at 1146 ("The reason we consider vindictiveness ... is to render ineligible individuals who possess animus that would preclude the possibility of a suitable settlement.") (citation omitted).

In short, Carolyn's direct conflicts threatens the integrity of this litigation and renders her incapable of representing Cinerama derivatively. Accordingly, Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII—to the extent asserted derivatively on behalf of Cinerama—must be dismissed.

C. **Carolyn Is Not Qualified Under Rule 23.1 to Assert Derivative Claims on Behalf of Pentagon (Counts I, II, IV, VI, VII, and VII (sic)).**

Carolyn's disqualifying conflicts apply equally to Pentagon. Although Pentagon's ownership is split 50/50,[4] the same Rule 23.1 analysis governs. *See Renz ex rel. Renz v. Carota*, No. 87-CV-487, 1991 WL 165677, at *3 (N.D.N.Y. Aug. 26, 1991) ("[I]f an ulterior motive of plaintiff manifests itself and renders plaintiff's interests inimical to those of the shareholders she seeks to represent, the court should consider this ulterior motive in the determination of plaintiff's adequacy."). Carolyn's own pleadings reveal her objective: evict Cinerama and its sub-tenant PC and clear the Pentagon commercial property so Pentagon would lease space to her own company, Metal Alchemist, LLC. *See* FAC ¶¶ 38, 56, 80–81. Notably, the last time one of Carolyn's entities sub-leased space at the property, the entity failed to pay over $100,000 in rent and ultimately declared bankruptcy.

---

[4] FAC ¶¶ 8, 10, 13.

Carolyn would also have Pentagon challenge its long-standing lease with her mother, which she contends "is grossly below market rate and contains woefully commercially unreasonable terms." FAC ¶ 72. That lease has been in place since 2022 and provides for payment of $5,000 per month in exchange for lease of a home in Cranston. **Exhibit C**. Carolyn does not allege any failure to pay rent or explain how that is below market rent; rather, she ostensibly seeks an order from this Court directing Pentagon to charge Carolyn and Rebecca's elderly mother more than $5,000 per month or evict her.

Carolyn's own interests are hostile to Pentagon and the shareholders she purports to represent. For each Pentagon derivative claim other than Count IV,[5] Carolyn also asserts a parallel individual claim seeking damages *separate* from those of Pentagon. This dual posture creates a structural conflict between her recovery for herself and her duty to recover for the company. *See Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 692 (S.D.N.Y. 2012) (concurrent direct and derivative claims "present[] a conflict of interest impermissible under Rule 23"); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06-cv-688, 2006 WL 2849783, at *7 (S.D.N.Y. Oct. 4, 2006) ("plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest"). Carolyn has expressly signaled that she will prioritize her own interests over Pentagon's:

> By this lawsuit, Carolyn seeks to protect, preserve and realize the full value of **her shareholder interest** in her family's business and their assets, reputation, image, and goodwill, and **to protect her own assets, reputation, image and commercial likeness** of entities previously or currently closely associated with her in the marketplace for fine custom retail jewelry, from the wrongful acts of the Defendants as hereinafter alleged.

---

[5] For Count IV, Carolyn is attempting to represent both the claimant (Pentagon) and the defendant (Cinerama) derivatively, which is an objective conflict of interest that disqualifies her from bringing the derivative claims. *See supra* § B.

FAC ¶ 4 (emphasis added).  The derivative claims in Counts I, II, IV, VI, VII, and VII (sic) attributed to Pentagon should accordingly be dismissed.

> **D.**　**Count II (Waste) Fails to State a Claim Because Waste Is a Derivative Injury Under Rhode Island Law.**

In Count II, Carolyn alleges that certain actions[6] "constitutes waste of Cinerama and/or Pentagon."  FAC ¶ 90.  Nothing in Count II alleges a separate, direct harm to Carolyn individually.  As Rhode Island courts have recognized, "[i]n cases where the corporation sustains the injury, the fact that the shareholders may have indirectly suffered individual losses in the form of a diminution in the value of their stock does not entitle[] them to bring the action in their own names."  *Dunn v. Shannon*, No. 99-2533, 2005 WL 1125315, at *5 (R.I. Super. May 11, 2005) (quoting *Dowling v. Narragansett Cap. Corp.*, 735 F. Supp. 1105, 1113 (D.R.I. 1990)).  Nevertheless, in the caption for Count II, Carolyn signals that she is attempting to bring a claim for waste individually, even though Rhode Island law provides that waste is "a 'classic' derivative harm . . . because it diminishes the value of the corporation as a whole and entitles the corporation to recover damages."  *Heritage Healthcare Servs., Inc. v. The Beacon Mut. Ins. Co.*, No. PB 02-7016, 2012 WL 2335643, at *4 (R.I. Super. June 11, 2012) (quoting *Penn Mont Secs. v. Frucher*, 502 F. Supp. 2d 443, 463 (E.D. Pa. 2007)) (alteration in original).  Carolyn's caption labeling cannot transform a derivative injury into a direct one.  Carolyn has no viable individual claim for waste, so the Court should dismiss Carolyn's individual claims in Count II under Rule 12(b)(6).

---

[6] Rebecca is only crediting the allegations for the purpose of this Motion.

**E.**      **Counts III and X  Fail to State a Claim with Respect to Intangible Assets and Assets Belonging to Others and Count X (Intentional Interference with Prospective Economic Advantage) Fails to State a Claim.**

Under Rhode Island law, an action for conversion is limited to personalty: "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo v. Mandarelli*, 682 A.2d 918, 928 (R.I. 1996).  There is no cause of action for conversion where the dispute involves an "intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted."  *Id.* at 929.

The FAC alleges that Carolyn personally purchased an unspecified quantity of beads and stones at some point prior to 2016 and stored them somewhere at Cinerama after she left.  FAC ¶ 24.  Setting aside the fact that the entire vague narrative is false, Carolyn pairs this with the allegation that "[c]onversion of Cinerama's assets, likeness and goodwill[] carries along with it some of Carolyn's brand …."  *Id.* ¶ 119.  This theory fails for two reasons.  *First*, Carolyn lacks individual standing to assert claims relating to Cinerama's "assets, likeness, and goodwill," which belong to Cinerama, not to her, and she is not qualified to assert a derivative claim on Cinerama's behalf for the reasons stated above.  *See Katz v. Pershing, LLC*, 672 F.3d 64, 71-72 (1st Cir. 2012) (no Article III standing where the alleged injury runs to a third party).

*Second*, Carolyn's reliance on past association with Alex & Ani is misplaced.  By her own pleading, she resigned her position at Alex & Ani in 2019 and held no equity or rights in any Alex & Ani intellectual property by 2021.  FAC ¶ 35.  Whatever her past involvement, she cannot maintain conversion claims based on "likeness," "goodwill," or other intangible assets.  *Montecalvo*, 682 A.2d at 928 (the tort of conversion "at common law excluded intangible

12

personal property because intangibles, like land, could not be lost or found"). Carolyn likewise has no claim relating to the adoption of a business name she contends bears a "striking resemblance" to Alex & Ani, FAC ¶ 38, or for marketing what she characterizes as a "knock-off," FAC ¶ 3. Counts III and X must be dismissed insofar as they seek to enforce rights other than Carolyn's own or to apply conversion to intangible property.

Count X also fails for an additional reason. To recover for tortious interference with prospective economic advantage, a Rhode Island plaintiff must "prove: "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Bisbano v. Strine Printing Co.*, 737 F.3d 104, 109 (1st Cir. 2013) (quoting *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 207 (R.I. 1997)). Carolyn's claims for intentional interference with prospective economic advantage are subject to the three-year statute of limitations under R.I. Gen. Laws § 9-1-14(b). *See Goddard v. APG Sec.-RI, LLC*, 134 A.3d 173, 176-77 (R.I. 2016); *Com. Oil Ref. Corp. v. Miner*, 199 A.2d 606, 610 (R.I. 1964).

Here, Carolyn claims that Rebecca's "[c]onversion of Cinerama's assets, likeness, and goodwill" somehow prohibited Carolyn from taking advantage of those assets, likeness, and goodwill and "thereby results in additional costs to Carolyn in pursuing her current and future endeavors, including Metal Alchemist, LLC." FAC ¶ 119. That so-called conversion of assets, likeness and goodwill – according to Carolyn – happened in **2019**, with the adoption of PC's tradename ("Air & Anchor") and its sublease of the premises and its contents. FAC ¶¶ 38, 40-41, 55. Carolyn then alleges that her business, Metal Alchemist, LLC, which was organized in **2020**, had a delayed launch because of the claimed tortious interference. FAC ¶ 56-57. But according

13

to the Statement of Use Carolyn filed with the United States Patent and Trademark Office, her company was actually using the trademark "Metal Alchemist" in commerce on jewelry at least as early as May 2021. **Exhibit D**, at pp. 2 (highlighted), 4 (highlighted), 8-11**.** That fixes the time for her claimed harm resulting from tortious interference, and it means her claims are barred by the three-year statute of limitations. *See Preserve at Boulder Hills, LLC v. Kenyon*, 312 A.3d 475, 486 (R.I. 2024).

The discovery rule does not save Carolyn's claim. Under Rhode Island law, the discovery rule tolls accrual only until the plaintiff, in the exercise of reasonable diligence, should have discovered the injury and its cause. *Canavan v. Lovett, Schefrin & Harnett*, 862 A.2d 778, 783-84 (R.I. 2004). The underlying "striking resemblance" of the Air & Anchor name was, by Carolyn's own pleading, evident from the company's 2019 founding. FAC ¶ 38. The discovery rule is therefore exhausted on the face of the FAC, and Count X is time-barred. The Court should dismiss Counts III and X.

**F.      Count VII (Misappropriation of Corporate Opportunity) Fails to State an Individual Claim.**

Count VII's misappropriation of corporate opportunity claim is factually unsupported: Rebecca did not form or organize PC and has never held any equity or management interest in it. Using the phrase "information and belief" does not excuse "pure speculation," *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44-45 (1st Cir. 2012), and a "legal conclusion couched as a factual allegation" is not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 127 (1st Cir. 2025), *cert. denied sub nom. Lavigne v. Great Salt Bay Com. Sch.*, No. 25-759, 2026 WL 858415 (U.S. Mar. 30, 2026). Independent of that factual deficiency, Carolyn's individual claim for misappropriation of corporate opportunity fails as a matter of law because the claim is

exclusively derivative. *Dunn*, 2005 WL 1125315, at \*5 ("The mechanism for remedying a violation of the corporate opportunity doctrine is through a derivative suit"); *see also A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1386 (R.I. 1997); *Point Trap Co. v. Manchester*, 199 A.2d 592, 596 (R.I. 1964); *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1265-66 (1st Cir. 1991). Carolyn's individual claim in Count VII should be dismissed.

### G.       Count XII (Preliminary and Permanent Injunction) Fails to State a Claim.

Count XII fails as a matter of law for two independent reasons. First, injunctive relief is a remedy, not a cause of action, and Rhode Island law is clear that "[a] claim for injunctive relief is not a standalone cause of action." *Cordeiro v. Carrington Mortg. Servs., LLC*, C.A. No. 19-510 WES, 2020 WL 3404742, at \*3 (D.R.I. June 19, 2020); *see also Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 197 (D.R.I. 2016) ("allegations that actually describe the remedies sought by plaintiff do not constitute actionable claims"). For that reason, this Court routinely dismisses freestanding claims for injunctive relief at the pleading stage. *Cordeiro*, 2020 WL 3404742, at \*3; *Doe*, 166 F. Supp. 3d at 197. Second, even if injunctive relief could be pleaded as a standalone count, it cannot survive without a viable underlying claim: where the court does not "rule[] in Plaintiffs' favor on any of the previous Counts," a remedy of injunctive relief is not available. *Avedisian v. Select Portfolio Servicing, Inc.*, C.A. No. 16-654S, 2017 WL 6334123, at \*9 (D.R.I. Aug. 29, 2017). Carolyn's request for injunctive relief is doubly defective—it is pleaded as a freestanding cause of action rather than as a remedy tied to a substantive claim, and each of the substantive counts on which it could conceivably rest fails for the reasons set forth above. Count XII should be dismissed.

## IV.    CONCLUSION

For the forgoing reasons, the Court should dismiss, with prejudice, Counts I, II, III, IV, V, VI, VII, VII [sic], IX, X, XI, XII, and XIII of the FAC.

Respectfully submitted,

REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

*/s/ Christine K. Bush*
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on the 11 day of May, 2026, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ *Christine K. Bush*