NEWPORT COUNTY SUPERIOR COURT

# SC DOCKET SHEET

## CASE NO. NC-2025-0531

| | | |
|---|---|---|
| Carolyn Rafaelian<br>v.<br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al. | §<br>§<br>§<br>§<br>§ | Location: **Newport County Superior Court**<br>Filed on: **11/18/2025** |

---

### CASE INFORMATION

**Statistical Closures**
05/11/2026    Closed-Non-Trial-Unassigned-Remanded to District Court

Case Type: **Civil Action**

Case Status: **05/11/2026    Closed**

Case Flags: **Business Case**

---

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment**<br>Case Number    NC-2025-0531<br>Court    Newport County Superior Court<br>Date Assigned    11/18/2025 |

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Plaintiff** | **Rafaelian, Carolyn** | **TECHENTIN, JEFFREY K**<br>*Retained* |
| **Defendant** | **Cinerama Jewelry, Inc.**<br><br>**Pentagon Properties, Inc.**<br><br>**Productive Collaboration, LLC** | <br><br><br><br>**CAVANAGH, JOSEPH V, III**<br>*Retained*<br>4018318900(W) |
| | **Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009** | **McBurney, Mackenzie C.**<br>*Retained*<br>4014575111(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 05/11/2026 | Closed-Non-Trial-Unassigned-Remanded to District Court |
| 05/11/2026 | Case Removed to US District Court |
| 05/08/2026 | 📄 Return of Service<br>*Return of Service Productive Collaboration May 7, 2026* |
| 05/08/2026 | 📄 Notice of Removal<br>*Notice of Filing of Notice of Removal* |
| 05/08/2026 | 📄 Entry of Appearance<br>*Entry of Appearance - Joseph V. Cavanagh, III* |
| 05/08/2026 | 📄 Entry of Appearance<br>*Entry of Appearance* |
| 05/01/2026 | 📄 Summons |
| 04/22/2026 | 📄 Amended Complaint Filed<br>*Carolyn Rafaelian First Amended Verified Complaint April 22, 2026* |

*Printed on 05/11/2026 at 12:33 PM*

NEWPORT COUNTY SUPERIOR COURT
# SC DOCKET SHEET
## CASE NO. NC-2025-0531

| | |
|---|---|
| 04/01/2026 | 🔲 Order Entered (Judicial Officer: Licht, Associate Justice Richard ) <br> *Order Motion for Leave to File First Amended Complaint* |
| 03/16/2026 | 🔲 **Rule 7 Hearing on Motion to Amend Complaint** (9:30 AM) (Judicial Officer: Licht, <br> Associate Justice Richard ;Location: Kent Courtroom 4D) <br> *Plntf Motion for Leave to File First Amended Verified Complaint, objection filed* <br> **03/02/2026    Reset by Court to 03/16/2026** <br> *Heard and Granted* |
| 03/16/2026 | 🔲 Entry of Appearance <br> *Entry of Appearance* |
| 03/13/2026 | 🔲 Memorandum Filed <br> *Reply Memorandum in Support of Motion to Amend Complaint* |
| 03/09/2026 | 🔲 Notice <br> *Notice of Election to Purchase Shares* |
| 03/09/2026 | 🔲 Memorandum Filed <br> *Memorandum In Support of Defendant's Objection to Motion to Amend* |
| 02/25/2026 | 🔲 Objection to Motion <br> *Defendant's Objection to Motion to Amend* |
| 02/18/2026 | 🔲 Memorandum Filed <br> *Memo in Support of Motion for Leave to Amend Complaint* |
| 02/18/2026 | 🔲 Rule 7 Motion to Amend Complaint <br> *Motion for Leave to Amend Complaint* |
| 02/13/2026 | 🔲 Withdrawal of Appearance <br> *Withdrawal of Appearance* |
| 02/12/2026 | 🔲 Entry of Appearance <br> *Entry of Appearance* |
| 02/12/2026 | 🔲 Entry of Appearance <br> *Entry of Appearance* |
| 02/12/2026 | 🔲 Entry of Appearance <br> *Entry of Appearance* |
| 01/12/2026 | 🔲 Answer Filed <br> *Answer to Complaint* |
| 12/12/2025 | 🔲 Stipulation Filed Extension of Time <br> *Stipulation Extension of Time* |
| 12/08/2025 | 🔲 Business Calendar Form Filed <br> *Business Calendar Case Opening Sheet* |
| 12/04/2025 | 🔲 Entry of Appearance <br> *Entry of Appearance - Mitchell Edwards* |
| 12/04/2025 | 🔲 Entry of Appearance <br> *Entry of Appearance -Christine Bush* |
| 12/04/2025 | 🔲 Entry of Appearance <br> *Entry of Appearance - Mackenzie McBurney* |
| 11/25/2025 | 🔲 Stipulation Filed <br> *Stipulation of Acceptance of Service of Process* |
| 11/19/2025 | 🔲 Summons |

*Printed on 05/11/2026 at 12:33 PM*

**NEWPORT COUNTY SUPERIOR COURT**

# SC DOCKET SHEET

### CASE NO. NC-2025-0531

| 11/18/2025 | Complaint Filed<br>*Complaint* |



## STATE OF RHODE ISLAND
## AND PROVIDENCE PLANTATIONS

### CLERK'S CERTIFICATE AND TRANSMITTAL OF THE RECORD

**Case Information**

Case Caption: **Carolyn Rafaelian** vs. Rebecca Rafaelian Caruolo, Individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and

Federal Court Case No. **1:26-cv-00293**    State Court Case No. **NC-2025-0531**

**Record Information**

Confidential:    Yes ☐    No ☑    Description: _____

Sealed documents:    Yes ☐    No ☑    Description: _____

**Certification**

I, **John Graziano** , Clerk of the Rhode Island Superior Court for the County of **Newport** ☑ do certify that the attached documents are all the documents included in the record in the above referenced case.

Date: May/11/2026

Clerk:
/s/ **John Graziano**

Prepared by:
/s/ **William Van Wormer**

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:51 PM
Envelope: 5656947
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br><br>v.<br><br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI  02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI  02840<br>(401) 841-8330 | **Address of the Defendant**<br>No Known Address |

## TO THE DEFENDANT, Productive Collaboration, LLC:

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)

*Service Accepted*
*Christopher O'Connor*
*Attorney for*
*Productive Collaboration*
*5/7/2026*

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:51 PM
Envelope: 5656947
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>Carolyn Rafaelian<br>v.<br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Civil Action File Number**<br>NC-2025-0531 |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Productive Collaboration, LLC, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____

Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:51 PM
Envelope: 5656947
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: ____ / ____ / ____ | SERVICE FEE $ _____ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____  ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

CAROLYN RAFAELIAN, INDIVIDUALLY and　　:
as trustee of THE CAROLYN A. FERLISE QSST　:
1994 TRUST and THE CAROLYN A.　　　　　:
RAFAELIAN TRUST 2004, and derivatively on　:
behalf of Cinerama Jewelry, Inc. and Pentagon　:
Properties, Inc.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　*Plaintiffs,*　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　　　　　:　　C.A. No.:
　　　　　　　　　　　　　　　　　　　　　　:
REBECCA RAFAELIAN CARUOLO,　　　　　:
individually and in her role as trustee of The　　:
Rebecca Rafaelian Caruolo QSST 1994 Trust and　:
The Rebecca Rafaelian Caruolo Trust 2009,　　:
PRODUCTIVE COLLABORATION, LLC,　　　:
CINERAMA JEWELRY, INC. (Nominal　　　:
Defendant), and PENTAGON PROPERTIES, INC. :
(Nominal Defendant)　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　*Defendants.*　　　　　　　　　　　　:

## NOTICE OF REMOVAL

Defendant, Productive Collaboration, LLC ("PC"), by its attorneys, hereby gives

notice of its removal of this action ("Notice") pursuant to 28 U.S.C. §§ 1331, 1441, and

1446, to the United States District Court for the District of Rhode Island.  In support, PC

states as follows:

1.　　　On November 18, 2025, Plaintiff filed a multi-count civil complaint

described as a "family shareholder dispute" against her sister, Defendant Rebecca

Rafaelian-Caruolo, in Newport County Superior Court, in the State of Rhode Island.

Rafaelian-Caruolo answered on January 12, 2026.

2.　　　Later, Plaintiff sought leave of the Court to amend and expand the

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

Case 1:25-cv-00203-MSM-AEM Document 1 Filed 05/08/25 Page 2 of 6 PageID #: 191

complaint. On March 16, 2026, the Superior Court granted Plaintiff's motion to amend and entered the Order granting the motion on April 1, 2026.

3. On April 22, 2026, Plaintiff filed her Amended Verified Complaint ("Amended Complaint") with the Court. *See* Exhibit A, Amended Verified Complaint.

4. Plaintiff maintains in her Amended Complaint that she is bringing the counts individually and/or derivatively on behalf of Cinerama Jewelry, Inc., ("Cinerama") and Pentagon Properties, Inc ("Pentagon"). *Id*.

5. Also, Plaintiff added PC, a business owned by Plaintiff's niece and niece's husband, as a defendant in the Amended Complaint.[1] *Id.*

6. Furthermore, Plaintiff added and identified Cinerama and Pentagon as "Nominal Defendants." *Id*.

7. The Amended Complaint includes a mixture of state law causes of action against the Defendants Rafaelian-Caruolo and PC, and a federal law cause of action against PC.

8. Plaintiff seeks damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rafaelian-Caruolo; damages for aiding and abetting a breach of fiduciary duty and conversion, and an equitable decree of alter-ego of PC and for the appointment of a receiver of PC; and for preliminary and permanent injunctive relief against Defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon. *Id*.

---

[1] Productive Collaboration, LLC is RI corporation, and registered "Air and Anchor" with the Secretary of State as a fictitious name. Plaintiff uses the fictitious name, instead of PC, throughout the Amended Complaint.

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

9. Count IX of the amended complaint is directed at PC only and invokes federal law. The Count is captioned, in part, as: **Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)),** and alleges:

[. . . ]

113. Air & Anchor has and continues to make false or misleading representations of fact in commercial advertising about its business and its products, claiming directly and through implication, and without limitation, that it has been in business since 1966, is the successor "Factory" located at the Property, is the owner of Cinerama's vast archive of vintage jewelry inventory, machinery, equipment and other assets and is the successor or continuation of Cinerama.

114. The misrepresentations are material to consumers' perception of Air & Anchor's products and likely to influence purchasing decisions.

115. The misrepresentations are likely to cause confusion among the relevant purchasing public.

116. Air & Anchor made the false or misleading statements commercial advertising and/or promotion and in connection with interstate commerce.

117. Cinerama and Carolyn have and continue to be damaged as a result of the misrepresentations, including by either or both direct diversion of sales and a negative impact on goodwill associated with their business or products.

*Id*. at pp. 23-24.

10. As part of her first prayer for relief, Plaintiff seeks an award of "damages, including, without limitation, discouragement of profits, compensatory damages, <u>treble damages under 15 U.S.C. § 1117(a)</u> and punitive damages interest, costs, and attorneys' fees." *Id.* at p. 27. [underline added.]

11. On May 7, 2026, PC accepted service of the summons and amended complaint. *See* Exhibit B, Return of Service.

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

Case 1:25-cv-00293-AEM   Document 14   Filed 05/08/25   Page 4 of 6 PageID #: 193

12.     Pursuant to 28 U.S.C. §1331 the District Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

13.     Pursuant to 28 U.S.C. § 1441(a), generally except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the District Court of the United States to the district and division embracing the place where such action is pending.

14.     The United States District Court for the District of Rhode Island ("District Court") is the proper forum and venue to which this action may be removed under the provisions of 28 U.S.C. §§120 and 1441(a).

15.     Pursuant to 28 U.S.C. § 1367, the District Court has supplement jurisdiction over the state law claims.

16.     Pursuant to 28 U.S.C. §1446(d) PC is providing written notice to the Clerk of the Superior Court and the parties with entries of appearance.  *See* Exhibit C, Notice of Filing of Notice of Removal.

17.     Also, pursuant to 28 U.S.C. §1446(d) and LR cv 81 PC will ensure that the state court electronically transmits the docket sheet and the record to the District Court.

18.     Counsel for PC is admitted to practice before this Court and signs this Notice of Removal in accordance with the requirement of Fed. R. Civ. P. 11.

WHEREFORE, the Defendant, Productive Collaboration, LLC, respectfully requests that the above-referenced action now pending in the Superior Court of Rhode Island, in and for Newport County, be removed from that Court to the United States District Court for the District of Rhode Island.

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

Respectfully submitted,
Defendant Productive Collaboration, LLC
By its attorneys,


*/s/ Christopher J. O'Connor*
*/s/Joseph V. Cavanagh, III*
Christopher J. O'Connor, Esq. (#5078)
Joseph V. Cavanagh, III, Esq. (#6907)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel: (401) 831-8900
Fax: (401) 751-7542
cjo@blishcavlaw.com
jvc3@blishcavalaw.com


Dated: May 8, 2026

## CERTIFICATE OF SERVICE

I, Christopher J. O'Connor, certify that on May 8, 2026, I caused the foregoing Notice of

Removal to be filed with the Clerk of the Court and served upon all counsel of record via the

Court's CM/ECF system.

/s/ *Christopher J. O'Connor*
Christopher J. O'Connor

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

STATE OF RHODE ISLAND                                          SUPERIOR COURT
NEWPORT, S.C.

| | |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. <br><br> *Plaintiffs*, <br><br> v. <br><br> REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant), and PENTAGON PROPERTIES, INC. (Nominal Defendant) <br><br> *Defendants*. | C.A. No.  NC-2025-0531 |

## AMENDED VERIFIED COMPLAINT

Carolyn Rafaelian ("Carolyn"), by her undersigned counsel, hereby brings this Amended

Verified Complaint for Damages, Appointment of a Temporary and Permanent Receiver, and

Injunctive Relief, and Jury Trial Demand, and sues in her individual capacity and, as trustee on

behalf of certain shareholding trusts hereinafter specified, and derivatively on behalf of Nominal

Defendants Cinerama Jewelry, Inc. ("Cinerama" or the "Factory") and Pentagon Properties, Inc.

("Pentagon"), and against Rebecca Rafaelian Caruolo ("Rebecca"), individually and in her role as

trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo

Trust 2009, and Productive Collaboration, LLC d/b/a Air & Anchor ("Productive Collaboration"

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

or ("Air & Anchor") for: damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rebecca Rafaelian Caruolo; damages for aiding and abetting a breach of fiduciary duty and conversion, violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))  and an equitable decree of alter-ego Air & Anchor and for the appointment of a receiver of Air & Anchor; and for preliminary and permanent injunctive relief against all Defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon.

## I.  INTRODUCTION

1.  This is a family shareholder dispute involving the complete defalcation of a preeminent Rhode Island jewelry company, Cinerama, by its majority shareholder and President, Rebecca.  In concert with Air & Anchor, and unknown to Carolyn, Rebecca used her position as President of Cinerama to create a new business venture using all of the assets of Cinerama, as well as those of Pentagon, for the sole purpose of excluding and divesting Carolyn of her interest in Cinerama and Pentagon.

2.  Specifically, this is an action for, among other things, shareholder oppression and self-dealing by Rebecca, the President and shareholder of two (2) separate Rhode Island close corporations indirectly owned by her and Carolyn.  The conduct of Rebecca relative to these companies has had the cumulative effect of completely "freezing out" Carolyn, as well as severely diminishing the value of the companies' shares.

3.  Concealed from Carolyn as a mere subtenant leasing a portion of space from Cinerama to start a jewelry business, the new enterprise, Air & Anchor, is in fact a knock-off of Carolyn's Alex + Ani jewelry brand, created from the complete takeover and de facto liquidation

2

of Cinerama and its assets. Indeed, Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and is the functional *alter ego* of Cinerama. Upon information and belief, Rebecca manages and controls the daily operations of the new enterprise, leaving Cinerama a shell company, existing merely to conceal the misappropriation of Cinerama's assets, subsidize Rebecca's new business venture, and mislead Carolyn as to the value of her shares in Cinerama.

4. By this lawsuit, Carolyn seeks to protect, preserve and realize the full value of her shareholder interest in her family's businesses and their assets, reputation, image, and goodwill, and to protect her own assets, reputation, image and commercial likeness of entities previously or currently closely associated with her in the marketplace for fine custom retail jewelry, from the wrongful acts of the Defendants as hereinafter alleged.

5. As the President of Cinerama and Pentagon, and indirect majority shareholder in Cinerama, Rebecca has a fiduciary obligation to protect, preserve and maximize the value of the respective companies' business opportunities for the benefit of all of its shareholders, not just herself.

6. Notwithstanding this obligation, Rebecca never presented the new Air & Anchor opportunity to Cinerama, Pentagon, or Carolyn. Instead, Rebecca unilaterally, and without Carolyn's knowledge and required consent, allowed Air & Anchor to utilize the assets, name and goodwill of Cinerama, Pentagon, and Carolyn for less than fair value or for no value at all and wrongly converted the property of Cinerama, Pentagon and of Carolyn for the use and benefit of Air & Anchor and Rebecca and to the unfair exclusion of Carolyn. By their conduct, Rebecca and Air & Anchor also deprived Carolyn and continues to deprive her, of existing and prospective economic opportunities.

3

7.      Both individually and derivatively on behalf of Cinerama and Pentagon, Carolyn seeks damages from the Defendants for their acts and omissions as aforesaid and seeks a preliminary and permanent injunction barring the Defendants and all persons with notice thereof from using Cinerama's and Carolyn's assets, image, likeness and goodwill without express permission. Further, Carolyn seeks a declaration that Air & Anchor is the *alter ego* of Cinerama, and the appointment of a receiver of Air & Anchor to effectuate that decree.

## II.     PARTIES

8.      Plaintiff Carolyn is a resident of the State of Florida, an officer and director of Pentagon, an indirect forty three percent (43%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee, namely the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and an indirect fifty percent (50%) shareholder of Pentagon through a trust of which she is a beneficiary and trustee, namely The Carolyn A. Rafaelian Trust-2004.

9.      Plaintiff the Carolyn A. Ferlise QSST Trust-1994 owns a 19.5% interest in Cinerama Jewelry, Inc.

10.     Plaintiff The Carolyn A. Rafaelian Trust-2004 owns a 23.5% interest in Cinerama Jewelry, Inc. and a 50% interest in Pentagon.

11.     Nominal Defendant Cinerama is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at the factory at 115 Pettaconsett Avenue, Cranston, Rhode Island.  Cinerama is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

12.     Nominal Defendant Pentagon is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at 115 Pettaconsett Avenue,

4

Case 1:25-cv-00209-JJM-AEM Document 1-1 Filed 05/08/25 Page 5 of 11 PageID #: 200

Cranston, Rhode Island. Pentagon is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

13. Defendant Rebecca is a resident of the State of Rhode Island, the sister of Carolyn, an officer and director of Cinerama and Pentagon, an indirect fifty seven percent (57%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee including the Rebecca R. Caruolo QSST 1994 Trust and the Rebecca Rafaelian Caruolo Trust-2004, and a direct fifty percent (50%) shareholder of Pentagon.

14. Defendant Productive Collaboration, LLC d/b/a Air & Anchor is a Rhode Island limited liability company formed in 2018 by Rachel Ajaj, the niece of Carolyn and Rebecca, Rachel's husband Omar Ajaj, and upon information and belief, Rebecca, as managers and/or members. It adopted the fictitious name Air & Anchor in June of 2019.

## III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this dispute and the parties under and pursuant to R.I. Gen Laws §§ 8-2-13 and 14.

16. Venue of this action is proper in this Court under and pursuant to R.I. Gen Laws § 8-2-27.

## IV. STATEMENT OF FACTS

### A. The Family Roots of Cinerama, Alex + Ani, and Air & Anchor

17. Cinerama was formed by Mr. Ralph Rafaelian in 1966 for the purpose of engaging in the design, manufacture and sale of fine custom jewelry. From and after its formation until some time prior to his death in 2012, Mr. Rafaelian was the President, Chief Operating Officer and sole shareholder of Cinerama. Cinerama has at all times been referred to by Ralph, Rebecca, Carolyn, the general public and its customers as the "Factory."

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:33 PM
Envelope: 5620900
Reviewer: Katherine M.

18.     In 1991, Mr. Rafaelian formed another Rhode Island corporation, Pentagon, for the purpose of acquiring, owning and managing certain improved real property including the factory located at 115 Pettaconsett Avenue, Cranston, Rhode Island (the "Property"), which has since then and to date, been the principal manufacturing and place of business for Cinerama, which leases all of premises at the Property.

19.     In 2006, Pentagon also acquired the improved residential property located at 91 Tupelo Hill Drive, Cranston, Rhode Island ("Tupelo Hill").  The Tupelo Hill property is leased to a tenant.

20.     From and after the formation of Pentagon until some time prior to his death, Mr. Rafaelian was President, Chief Operating Officer and sole shareholder of Pentagon.  In approximately 2012, Carolyn and Rebecca each acquired an indirect fifty percent (50%) ownership interest in Pentagon through various trusts of which each was a beneficiary and trustee, and each was appointed and has since then continually served as an officer of Pentagon.

21.     Carolyn was born around the time of Cinerama's formation, and Rebecca a few years later.

22.     From the time they were children, Carolyn and Rebecca spent much of their time around the Factory, later working closely with their father, Mr. Rafaelian.  When Carolyn was a child, her mother Lucy Rafaelian would often send her to the Factory to be with her father to keep her occupied.  Carolyn initially started out "carding" jewelry—the process of presenting jewelry for retail sale on a display card—but quickly learned how to wield a blow torch and to design jewelry in her own unique style and manner.

23.     From and after the time of their initial involvement with Cinerama as children, both Carolyn and Rebecca became increasingly involved in the management and operations of

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

Cinerama. Carolyn was responsible for creative design at Cinerama and her sister, Rebecca, was responsible for manufacturing and operations.

24. During the time she worked at Cinerama and thereafter, Carolyn purchased and housed a significant inventory of valuable and unique crystals, beads, and stones at Cinerama, which she organized and maintained in boxes located at the Factory and which bore her name, the quantity of the stones, and her signature.

25. Currently, Rebecca, as the President of Cinerama and its indirect majority and controlling shareholder through her trusts, controls the management and operation of Cinerama.

26. Moreover, as set forth in Sections 2.7 and 2.8 of the Cinerama corporate Bylaws, Rebecca, as the indirect holder of the majority of the stock issued and outstanding and entitled to vote, controls Cinerama's business and affairs.

**B.     Alex + Ani is Formed, Realized and Achieves Astonishing Success**

27. In 1999, Carolyn began designing jewelry for certain specialty retailers, then experimented with soldering metals into bracelets and designing charms and figures on them—arguably the start of the more current trend of using jewelry for self-expression.

28. In 2003, as Carolyn's creative force was beginning to achieve critical mass, she formed Alex + Ani as a domestic corporation.

29. From and after the time of its initial formation in 2003, Carolyn was the principal owner, officer and creative force behind Alex + Ani, and its financial and creative fortunes soared under her guiding hand. She sought and obtained her first patent for what became the renowned Alex + Ani bangle in 2004. By 2014, its sales had reached $350 million and its estimated enterprise value was $1 billion.

7

### C. Carolyn's Family and Cinerama Directly Benefit from her Success

30. Consistent with the approach she learned from her father, Carolyn always endeavored where practicable and prudent, to do what was right and bring her family and Cinerama along with her and to let them share in the fruits of her creative and business success.

31. Carolyn awarded all the manufacturing, assembly and related work possible from Alex + Ani to Cinerama, paying fair market value for the use of Cinerama's valuable resources, including its trade secrets, vendors relationships, equipment, management, goodwill and reputation in the industry. Cinerama and Rebecca profited significantly from Alex + Ani's purchase orders.

32. Ultimately, in 2016, Alex + Ani entered into an Asset Purchase Agreement with Cinerama, pursuant to which Alex + Ani purchased certain assets of Cinerama for over $100 million dollars.

33. In addition to the aforesaid commercial arrangements and business transactions between Alex + Ani and Cinerama, Carolyn caused her niece Rachel, and Rachel's husband, Omar, to be employed at Alex + Ani, where they enjoyed significant salaries and benefits.

34. All of the foregoing benefits that Carolyn bestowed on Cinerama and her family members resulted in substantial financial gains for Cinerama and its shareholders, including Rebecca.

### D. Rebecca, Rachel and Omar Launch Air & Anchor based upon the Cinerama/Alex + Ani Foundation, Assets, Image and Goodwill

35. As a consequence of disagreements with the outside equity investors in Alex + Ani, in 2019 Carolyn resigned her position at Alex + Ani, and by 2021, no longer had any management role or equity in the company.

36. Rachel and her husband Omar also left the employment of Alex + Ani; Rachel left in 2019, and Omar left in 2018.

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 10:03 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:25-cv-00209-JJM-AEM Document 1-1 Filed 05/08/25 Page 9 of 42 PageID #: 204

37.     In 2019, Rebecca, Rachel, and Omar saw the distress Alex + Ani was experiencing and recognized the opportunity to duplicate Carolyn's business plan and begin a wholesale manufacturing and retail jewelry enterprise identical to Cinerama and Alex + Ani.  Rather than contract with Cinerama for its services as Carolyn had done and build retail business of their own, they conspired and agreed to simply take Cinerama for themselves and designed a scheme to disenfranchise Carolyn from her interest in Cinerama.

38.     Creating a name with striking resemblance to Alex + Ani, in June of 2019 Rebecca and Rachel founded Productive Collaboration, LLC d/b/a Air & Anchor.  Their business plan was simple, take over Cinerama entirely via a purported "sublease" and attempt to market its wholesale manufacturing services under the name of a new limited liability company they founded, Productive Collaboration.

39.     Productive Collaboration is a direct competitor of Cinerama.

40.     Productive Collaboration uses Cinerama's phone number, inventory, assets machinery, goodwill, reputation, and vendors, and advertises that it controls the entire Property, as shown below:



9

41.     The business plan included the launch of a retail brand under the name Air & Anchor using Cinerama's highly valuable vintage inventory archives, designs, intellectual property, personnel, trade secrets, goodwill, reputation and vendor relationships.

42.     To disguise their scheme, they created a sublease for use of only a portion of the Property's premises, despite occupying the entire Property and misappropriating all of Cinerama's valuable assets for themselves.

43.     Specifically, on or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equal monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease").  A copy of the Cinerama Lease is attached hereto as Exhibit A.  The Cinerama Lease expired on June 30, 2025.

44.     Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's "operation of a jewelry manufacturing business and allied and ancillary activities."  The Cinerama Lease further stated that the "premises shall be used solely for the purpose set forth above and not for any unlawful purpose…."

45.     The Cinerama Lease prohibited subletting except with the written consent of Pentagon.

46.      Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with Air & Anchor providing or affording it with use and occupancy of a portion of the Property (the "Sublease").  The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms.   A copy of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") is attach hereto as Exhibit B.

10

47.     Pursuant to the Sublease, Air & Anchor was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.  The rental amount was woefully deficient, drastically below market rate and commercially unreasonable.

**E.     Air & Anchor Converts Cinerama's Goodwill and Engages in False Advertising**

48.     Air & Anchor holds itself out to the public as the "Factory" and having been in business "since 1966" in its sales and marketing efforts including in its jewelry retail store location in Garden City.  According to Air & Anchor's website, "[h]ome is where all of our stories begin. The same can be said for our business.  It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."  Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present  (last  visited  Feb.  2, 2026).

49.     Carolyn has recently learned that, from its inception, Air & Anchor has in fact occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances, and without her consent, of Carolyn's inventory of unique crystals, beads and stones that she has always stored at the Factory.  Additionally. Air & Anchor advertises Cinerama's vast vintage jewelry inventory archives as their own.  This is made clear by Air & Anchor's public presentation of its image:

11

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 10:23 PM
Envelope: 5620904
Reviewer: Katherine M.



> **Still Made In The U.S.A.**
>
> Our desire to carry on Ralph's legacy led us to reopen the family factory that had fallen vacant, revitalizing connections with local craftsmen and artisans.
>
> In the factory today, we have thousands of vintage beads and charms that Ralph and his team sourced and handcrafted decades ago. We love mixing these pieces into the new jewelry designs we're creating with the intention of them being worn together.
>
> So, what's vintage for jewelry on our website right now? Breathe New Life Vintage Crystal. Find other vintage crystals with the Vintage Caged-Navette Crystal Birthstones.

Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present?srsltid=AfmBOoo6Yq3b0wFvx5fsKd9FxOySMLVElc92wExtPJn5rsGQtm1z5M3K (last visited Feb. 2, 2026).

50. Air & Anchor has lauded and deploys its connection to Cinerama, Alex + Ani, and the Factory in its public statements and marketing efforts. From its very beginnings, its representatives have publicly stated or been reported to state, that in the wake of Alex + Ani's demise, "they decided to take over…[the Factory]…and put it—and Rhode Islanders—back to work," that Cinerama's jewelry stones from the "60's, 70's and 80's are still materials that we reset

and use today," and that in the basement Factory "bins and piles of clunky gold chains, ropes and beads are ready to be worked into future pieces."

51.     In fact, Rachel, in an interview describing the story of Air & Anchor, stated that Air & Anchor's designs use vintage components—"pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s"—that she re-works into modern designs.  Air & Anchor: The Story of A Family Business (youtube.com), https://www.youtube.com/watch?v=XSXLh1GgR0w (last visited Feb. 2, 2026).

52.     Moreover, in a 2024 interview with the Warwick Beacon, Omar explained that Air & Anchor's Garden City retail store was an "extension" of the "factory" "just up the road on Pettaconsett Avenue":

> Air & Anchor, a local jewelry manufacturer and retailer, held a weekend long grand opening ceremony to celebrate its Garden City popup store last week.
>
> With an in-store jewelry factory, Air & Anchor has a unique quality ability to custom create and fit pieces in store. With the focus on locally sourced products and personal customization that comes from making everything in house, owners Rachel and Omar Ajaj consider the store an extension of their factory just up the road on Pettaconsett Avenue.
>
> "You've got our normal retail products, but half of the store, actually, is called the factory," Omar explained. "You can come in and customize your length of chain. You can bead your own necklaces and bracelets. We do permanent jewelry and can even brand our serving boards that we make right here in Providence. So it's really an experiential store."
>
> The factory, which the co-owners Rachel and Omar Ajaj leased about four years ago, Omar explained, was kind of a place his wife Rachel grew up in as a third generation jewelry designer. The building was empty, they chose to lease it before sitting in the big building and saying, "what're we going to do?" That's when they set to building the factory back up.

13

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/22/2026 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM Document 1-1 Filed 05/08/26 Page 14 of 27 PageID #: 209

Ed Kdonian, *Air and Anchor popup has grand opening in Garden City*, Warwick Beacon (June 21, 2023), https://warwickonline.com/stories/air-and-anchor-popup-has-grand-opening-in-garden-city,214248 (last visited Feb. 2, 2026).

### F. Air & Anchor Colludes with Rebecca to Convert Cinerama's Assets

53. Former employees of Air & Anchor report that substantial parts of its business and operations are controlled, directed, and managed by Rebecca. Rebecca identified herself to such employees as a "manager" of Air & Anchor. She was at the retail store every day, directed such employees to report to her, managed all product requests and quality control, managed relationships and contracts with vendors, and directed that Carolyn should never be admitted to the premises.

54. In addition, in early 2023, an Air & Anchor employee was directed by Rebecca, Rachel, and/or Omar to go through inventory located on the first floor of Cinerama, including Carolyn's inventory, and to re-box hundreds of inventory boxes, half of which bore Carolyn's name, their quantity, and Carolyn's signature, into new boxes which only bore quantity and SKU numbers such that all the prior identifying marks of Carolyn were removed, and the inventory items were variously immediately sold off, advertised for sale on Air & Anchor's website as vintage products, and the remainder brought to Air & Anchor's retail location for use and sale. At no time prior to doing so or since, did Air & Anchor or Rebecca seek or obtain Carolyn's consent to such dispositions. Upon information and belief, this wrongful conduct has continued at least as recently as Fall 2025.

55. Air & Anchor has the same business address as Cinerama, is wrongfully using its assets and inventory without paying fair value therefor, has and continues to commit conversion of Cinerama's assets, holds itself out to the world as an "extension" or successor of Cinerama, and

14

trades upon for its own benefit Cinerama's goodwill, trade name, image and history, such that it is and should be declared the *alter ego* of Cinerama.

### G. The Necessity of this Action.

56. As a result of the Defendants' intentional and wrongful conduct, Cinerama and Pentagon have lost significant potential revenue and the value of Carolyn's respective shares have been severely diluted. In addition, the launch of Carolyn's new business was materially delayed as she was forced, at significant expense, to acquire new space, equipment, vendors and resources to re-build her significant operations to support Metal Alchemist, LLC which she could have merely contracted with Cinerama to perform.

57. Metal Alchemist, LLC, which was organized in or about 2020, engages in the design, manufacture and sale of fine custom jewelry.

58. Carolyn intended to contract with and/or form a joint venture with Cinerama in order to leverage the significant and valuable resources and inventory stored at Cinerama in support of Metal Alchemist, LLC's operations, in exchange for reasonable consideration to Cinerama; however, Rebecca refused any arrangement, stating that it was not possible.

59. Upon information and belief, such an arrangement between Metal Alchemist, LLC, and Cinerama is only "not possible" because of the unlawful defalcation of Cinerama's assets for the benefit of Air & Anchor.

60. Carolyn has made inquiry of Rebecca and her agents about her concerns with Air & Anchor's use of Cinerama and its assets but has only received false and misleading responses.

61. On or about April 2021, Rebecca, through her counsel, advised Rebecca that she would no longer receive requests from Carolyn for periodic updates on the status of Cinerama

15

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 8/22/2025 6:23 PM
Envelope: 5620900
Reviewer: Kathleen M.

Case 1:26-cv-00293-MSM-AEM Document 1-1 Filed 05/08/26 Page 16 of 42 PageID #: 211

operations and business plans, and that Rebecca had no interest in working with Carolyn on any future endeavors concerning Cinerama and/or Pentagon.

62. Shortly after Carolyn's rejection of a woefully deficient buy-out offer from Rebecca, in or about December 2021, and, again in or about March 2022, Rebecca, as President of Pentagon, issued an unlawful and improper capital call to Carolyn in the amount of $250,000.00 for repairs to the Property.

63. The unlawful capital call was made with the intention to coerce Carolyn into selling her shares in Pentagon and Cinerama to Rebecca and remains outstanding.

64. On or about December 19, 2024, Carolyn, Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter to Rebecca and Cinerama's counsel, detailing certain unlawful and/or wrongful conduct on the parts of the Rebecca, Cinerama and Air & Anchor.

65. The letter detailed Carolyn's grievance relative to the use and occupancy of the Property by Cinerama and Air & Anchor, including, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Cinerama

**H. Rebecca Unlawfully Attempts to Extend her Scheme Five Years**

66. Despite being fully aware of the foregoing dispute, on or about May 1, 2025, without the corporate authorization required by Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a First Amendment to Lease Agreement, purporting to amend the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama. The Amendment purported to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

16

67.     The terms of the Amendment are unconscionable and the Amendment is ineffective and/or otherwise void under Rhode Island law.

68.     Separately, the Amendment was executed by Rebecca on behalf of both parties to the agreement, *i.e.*, Pentagon and Cinerama.  On this issue, Rebecca had a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts to, and the express written authorization or consent of, Carolyn under Rhode Island law.

69.     Rebecca's additional conflicts of interest as President of Pentagon further precluded her from entering into the Amendment on behalf of Pentagon without Carolyn's express authorization, including, without limitation:

> a)  while only a 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at lowest cost to Cinerama;

> b)  the subtenant, Air & Anchor, is owned by a family relative with whom, upon information and belief, Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the lowest cost to the subtenant, thereby giving a personal benefit to a family member and business partner; and

> c)  Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Air & Anchor, and is believed to be working for and on behalf of Air & Anchor  while unlawfully using the assets of Cinerama.

70.     The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon Rebecca to the detriment of Pentagon and Carolyn in violation of Rebecca's fiduciary duty of loyalty under Rhode Island law, causing damages to Carolyn and Pentagon and rendering the Amendment void.

71.     The Cinerama Lease, as purportedly amended by the Amendment, would impose rent through 2030 at a rate that is grossly below market rate and contains other commercially unreasonable terms.

72. In addition, Rebecca has entered into a lease on behalf of Pentagon with a tenant for the Tupelo Hill property which is also grossly below market rate and contains woefully commercially unreasonable terms.

73. Upon information and belief, Rebecca has caused Cinerama to suspended all business operations and to cease operating a jewelry manufacturing business, in violation of the Cinerama Lease.

74. Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, Carolyn provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island law, as well as in violation of Pentagon's corporate By-Laws (the "May 13 Notice"). Further, the May 13 Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease. Rebecca has caused Cinerama to disregard the May 13 Notice, to conduct business as though the Cinerama Lease and Sublease were in effect, and caused Pentagon to conduct business on the same false premise.

75. Despite receipt and acknowledgement of the May 13 Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the Property. Cinerama is, upon information and belief, a holdover tenant or tenant at will at this time.

76. On or about May 14, 2025, Carolyn, in her capacity as Executive Vice President of Pentagon, provided notice to Air & Anchor that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Air & Anchor's's tenancy was terminated effective that same date (June 30, 2025) and that Air & Anchot was to vacate the Property on or before that date (the "May 14 Notice").

77. Despite receipt and acknowledgement of the May 14th Notice, Air & Anchor has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the

18

Property. At this time, Air & Anchor is, upon information and belief, a holdover tenant or tenant at will.

78. Cinerama and Air & Anchor, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease and each of them has failed and/or refused to comply with the May 13 Notice and the May 14 Notice, respectively.

79. Cinerama and Air & Anchor, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease.

80. Neither Cinerama nor Air & Anchor, individually or collectively, has any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

81. Accordingly, Carolyn, on behalf of Pentagon, is obliged to protect and preserve Pentagon's rights and has sought the eviction of Cinerama and Air & Anchor from the Property in the District Court.

82. By letter on or about December 19, 2024, to Rebecca, Carolyn made demand of Cinerama pursuant to R.I. Gen. Laws § 7-1.2-711 and Super. Ct. R. Civ. P. 23.1 that Rebecca act on the basis of the above-described alleged misconduct that had transpired as of that date. Cinerama did not comply with this demand.

83. Any further effort to obtain answers or to address the claims here made would be futile given Rebecca's majority control of Cinerama, her personal interests and participation in the wrongful actions referenced herein, and the deadlock in voting power and in the management of Pentagon between Rebecca and Carolyn.

84. Carolyn can fairly and adequately represent the interests of the shareholders of Cinerama and Pentagon in enforcing the rights of the corporations.

19

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:20-cv-00329-MSM-PAS Document 1-1 Filed 05/08/25/12/26 Page 20 Page 37 PageID #: 215

## V. CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

85. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 84 hereof, inclusive.

86. As the beneficial majority and controlling shareholder and officer of Cinerama, and as one of two 50% beneficial shareholders of Pentagon, Rebecca owes a fiduciary duty of utmost good faith and loyalty to the company and Carolyn. Rebecca has breached her duty by engaging in the aforesaid conduct, which includes, among other things, entering into and approving any number of lease and/or sublease agreements on commercially unreasonable and grossly unfair terms to the company, using corporate assets and/or property to bestow personal benefits upon herself and her family members, and, in so doing, failing to maximize the value of the company's shares and by refusing to disclose conflicts of interest to Carolyn, or otherwise obtain Carolyn's informed consent to material business transactions.

87. As a consequence of her acts and omissions, Rebecca has and continues to breach her fiduciary duty to Carolyn, Cinerama, and Pentagon.

88. As a consequence of the aforesaid breach of fiduciary duty by Rebecca, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count II – Waste
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

89. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 88 hereof, inclusive.

90. The use and disposition by Rebecca of the assets and/or property of Cinerama and Pentagon as described more fully above for insufficient or no value constitutes waste of Cinerama and/or Pentagon.

91. As a consequence of Rebecca's waste of corporate assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

<div align="center">

### Count III – Conversion
**(Individually and Derivatively of Cinerama Against Rebecca and Air & Anchor)**
</div>

92. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 91 hereof, inclusive.

93. Carolyn and/or Cinerama own assets and/or property, including without limitation the assets and inventory described above.

94. Defendants have converted the aforesaid assets and inventory to their own use and/or control without appropriate or proper authority or permission or consent from, and to the wrongful exclusion of, the rightful owners of the property.

95. As a consequence of Defendants' wrongful conduct, each of Carolyn and Cinerama has suffered and continue to suffer extensive loss, cost, damage and expense.

<div align="center">

### Count IV – Breach of Contract
**(Derivatively of Pentagon against Cinerama)**
</div>

96. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 96 hereof, inclusive.

97. Pentagon entered into the Cinerama Lease with Cinerama which constitutes a contract.

98. Cinerama has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to operate a jewelry manufacturing business, failure

to pay all rent due under the Cinerama Lease, failure to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection and engaging in unlawful conduct on the premises.

99.     As a result of Cinerama's breach of the lease, Pentagon has and continues to suffer damages.

<div align="center">

**Count V – Breach of Contract**
**(Derivatively of Cinerama against Air & Anchor)**
</div>

100.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 99 hereof, inclusive.

101.    Cinerama entered into the Sublease with Air & Anchor, which constitutes a contract.

102.    Air & Anchor has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection, and engaging in unlawful conduct on the premises.

103.    As a result of Air & Anchor's breach of the lease, Cinerama  has and continues to suffer damages.

<div align="center">

**Count VI - Civil Liability for Crimes & Offenses**
**(Individually and Derivatively of Cinerama and Pentagon Against Rebecca)**
</div>

104.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 103 hereof, inclusive.

105.    As a consequence of Rebecca's actions set forth above, each of Carolyn, Cinerama, and Pentagon have suffered the conversion of their assets and seek recovery for those offenses as allowed under R.I. Gen. Laws § 9-1-2.

<div align="center">

**Count VII - Misappropriation of Corporate Opportunity**
</div>

**(Individually and Derivatively of Cinerama & Pentagon Against Rebecca)**

106. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 106 hereof, inclusive.

107. As a fiduciary to Carolyn, Cinerama and Pentagon, prior to pursuing the formation or organization of Air & Anchor and investing the assets and goodwill of Cinerama into her new business venture, Rebecca should have, but did not, present the same as a corporate opportunity to Cinerama and Pentagon.

108. As a consequence of Rebecca's failure to present this corporate opportunity to Cinerama and Pentagon, and instead pursuing it in her individual capacity through the wrongful use and conversion of Cinerama's and Pentagon's assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count VII – Aiding and Abetting Breach of Fiduciary Duty
**(Individually and Derivatively of Cinerama and Pentagon against Air & Anchor)**

109. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 108 hereof, inclusive.

110. By the foregoing acts, including Rebecca's active involvement in the management and affairs of Air & Anchor and its wrongful possession, use and conversion of Cinerama and/or Carolyn's assets, Air & Anchor has and continues to aid and abet Rebecca's breaches of fiduciary duty.

111. As a consequence of these acts, Air & Anchor is aiding and abetting Rebecca's breach of fiduciary duty, and each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1))
**(False Association/Designation of Origin and False Advertising)**
**(Individually and Derivatively of Cinerama against Air & Anchor)**

23

112. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 111 hereof, inclusive.

113. Air & Anchor has and continues to make false or misleading representations of fact in commercial advertising about its business and its products, claiming directly and through implication, and without limitation, that it has been in business since 1966, is the successor "Factory" located at the Property, is the owner of Cinerama's vast archive of vintage jewelry inventory, machinery, equipment and other assets and is the successor or continuation of Cinerama.

114. The misrepresentations are material to consumers' perception of Air & Anchor's products and likely to influence purchasing decisions.

115. The misrepresentations are likely to cause confusion among the relevant purchasing public.

116. Air & Anchor made the false or misleading statements commercial advertising and/or promotion and in connection with interstate commerce.

117. Cinerama and Carolyn have and continue to be damaged as a result of the misrepresentations, including by either or both direct diversion of sales and a negative impact on goodwill associated with their business or products.

### Count X – Intentional Interference with Prospective Economic Advantage
### (Individually against Rebecca and Air & Anchor)

118. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 117 hereof, inclusive.

119. Conversion of Cinerama's assets, likeness, and goodwill, carries along with it some of Carolyn's brand and it prohibits Carolyn from taking advantage of such and thereby results in additional costs to Carolyn in pursuing her current and future endeavors, including Metal Alchemist, LLC.

24

120.  Defendants had knowledge that Carolyn sought to engage in future endeavors in the fine custom retail jewelry industry and intentionally interfered and intended to frustrate such efforts by their aforesaid acts.

121.  As a consequence of such wrongful acts, Carolyn has suffered and continues to suffer extensive loss, cost, damage and expense.

### Count XI – Appointment of a Temporary and Permanent Receiver
### (Against Air & Anchor)

122.  Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 121 hereof, inclusive.

123.  Pursuant to R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), and (v) and 7-1.2-1316, the facts, actions, and omissions as aforesaid, and in aid of equity and any decree by the Court, the Court should appoint a Temporary and Permanent Receiver to manage the business of Air & Anchor during the pendency of this action, and to recover the misappropriated assets belonging to Cinerama and Carolyn.

### Count XII – Preliminary and Permanent Injunction

124.  Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 123 hereof, inclusive.

125.  Defendants' acts and omissions as aforesaid, including without limitation, their wrongful and continued use, possession and conversion of Cinerama's assets, inventory, goodwill and reputation has caused and continues to cause Carolyn and Cinerama to suffer irreparable harm and injury for which they lack an adequate remedy at law in the form of damages.

126.  As a consequence of the foregoing, the Defendants and their employees and agents should be permanently enjoined and restrained from continuing to wrongly use and enjoy the assets, inventory, goodwill and reputation of Cinerama.

25

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

Case 1:26-cv-00329-MSM-PAS Document 1-1 Filed 05/08/25 Page 26 of 43 PageID #: 221

## Count XIII – Unjust Enrichment
### (Derivatively on behalf of Cinerama against Air & Anchor)

127.    Plaintiffs incorporate by reference, as if fully set forth herein, the averments of paragraphs 1 through 126 inclusive.

128.    Air & Anchor knowingly received and retained substantial benefits that rightly belonged to Cinerama, including the use of Cinerama's factory space at 115 Pettaconsett Avenue, inventory, machinery, equipment, vendor relationships, trade secrets, trade name, goodwill, reputation, and telephone number, as well as Cinerama's image and history in the marketplace. Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and holds itself out as the successor or "extension" of Cinerama Air & Anchor occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances.

129.    Air & Anchor also exploited Cinerama's vintage inventory archives and associated goodwill to market and sell products and to enhance its brand and sales, without paying fair value to Cinerama or obtaining appropriate authorization. Air & Anchor advertises and sells jewelry using Cinerama's "thousands of vintage beads and charms" and vast vintage inventory archives as its own Air & Anchor claimed business continuity "since 1966" and presented itself as the Factory, thereby trading on Cinerama's reputation and goodwill.

130.    The above benefits to Air & Anchor were conferred at Cinerama's expense, including the loss of the use and value of its premises, assets, inventory, and goodwill, and the diversion of Cinerama's corporate resources and opportunities. Air & Anchor is wrongfully using Cinerama's assets and inventory without paying fair value therefor and has committed conversion

of Cinerama's assets Cinerama has suffered extensive loss, cost, damage and expense as a consequence of Defendants' wrongful conduct.

131. Air & Anchor's retention of these benefits is inequitable because they were obtained without Cinerama's informed consent or proper authorization, on terms that were drastically below market and commercially unreasonable, and in a manner that deprived Cinerama of fair compensation. Air & Anchor's Sublease payments to Cinerama were $6,045.00 plus $1,000 per month, a rental amount that was woefully deficient, drastically below market rate and commercially unreasonable Air & Anchor's use of Cinerama's assets, inventory, goodwill, trade name, image and history occurred without appropriate or proper authority or permission or consent.

132. Equity and good conscience require that Air & Anchor disgorge and make restitution to Cinerama of the value of the benefits unjustly retained, including, without limitation, the fair market value of the use of Cinerama's premises, assets, inventory, and goodwill, and the profits derived therefrom, in amounts to be proven at trial. Air & Anchor trades upon for its own benefit Cinerama's goodwill, trade name, image and history.

## VI. PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief:

a. Award Plaintiffs damages including, without limitation, disgorgement of profits, compensatory damages, treble damages under 15 U.S.C. § 1117(a)and punitive damages interest, costs, and attorneys' fees;

b. Grant preliminary and permanent injunctive relief enjoining and restraining Defendants and their employees and agents from continuing to wrongly use and enjoy the assets, inventory, goodwill, and reputation of Cinerama, Pentagon, and Carolyn.

c. Appoint a temporary and permanent receiver to manage the business of Air & Anchor as the *alter ego* of Cinerama during the pendency of this action, and

d. Grant such other and further relief as this Court deems just and proper.

27

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as
trustee of the Carolyn A. Ferlise QSST Trust-
1994 and The Carolyn A. Rafaelian Trust-2004, and
derivatively on behalf of Cinerama Jewelry, Inc.,
and Pentagon Properties, Inc.,
by their attorneys,

*/s/ Jeffrey K. Techentin*
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

*/s/ Kurt T. Kalberer II*
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: April 22, 2026

28

# VERIFICATION

I, Carolyn Rafaelian, individually, and as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, have read the foregoing factual allegations of this Amended Verified Complaint and, based upon my personal knowledge and review of various documents, the allegations are true and correct, except for those allegations which are made upon information and belief, and as to those allegations, they are true and correct to the best of my knowledge, information and belief.

_____
Carolyn Rafaelian, Individually and as Trustee

STATE OF ___RI___

COUNTY OF ___WASHINGTON___

On this 22ⁿᵈ day of ___APRIL___ 2026, before me, the undersigned notary public, personally appeared Carolyn Rafaelian, personally known to me or proved to the notary through satisfactory evidence of identification, which was _____ to be the person who signed the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge, information, and belief.

Notary Public _Lori A. Macentee_

My Commission Expires: _3/14/2030_

Notary Number: _768435_

> LORI A. MACENTEE
> Notary Public, State of Rhode Island
> My Commission Expires March 14, 2030

4912-7998-9902, v. 2

29

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 6:03 PM
Envelope: 5620900
Reviewer: Katherine M.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ Jeffrey K. Techentin

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620904
Reviewer: Katherine M.

# EXHIBIT A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Kathleene M.

# LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made and entered into on the date, between the parties and upon the terms and conditions hereinafter set forth.

a.    Date of Lease: as of July 1, 2020

b.    Lessor: Pentagon Properties, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

c.    Lessee: Cinerama Jewelry, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

d.    Term of Lease: (1) From: July 1, 2020
                        (2) to and including: June 30, 2025

e.    Description of Premises: Land, building, improvements and parking areas at 1 15 Pettaconsett Avenue, Cranston, Rhode Island, as described in Exhibit A attached hereto and made a part hereof and generally outlined on Exhibit B attached hereto and made a part hereof.

f.    Purpose: Operation of a jewelry manufacturing business and allied and ancillary activities.

g.    Rental: The following shall be the Rental to be paid on an annual and monthly basis for the premises:

| Date Rental Commences | Date Rental Terminates | Annual Rental | Monthly Rental |
|---|---|---|---|
| July 1, 2020 | June 30, 2025 | $120,000.00 | $10,000.00 |

## TERMS AND CONDITIONS

## 1. PREMISES

Lessor, in consideration of the rents, covenants and agreements to be paid, kept and performed by Lessee as herein provided, hereby demises and leases unto Lessee the premises described above.

## 2. PURPOSE

The premises shall be used solely for the purpose set forth above and not for any unlawful purpose. Any use of the premises in violation of this provision may be enjoined by Lessor without prejudice to any other remedy therefore.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 8/22/2025
Envelope: 5680900
Reviewer: Katherine M.

## 3. <u>RENTAL</u>

Lessee shall pay the rental set forth above in consecutive monthly installments, in advance, at the office of Lessor, on the first business day of each month during the term of this lease.

## 4. <u>USE OF PREMISES</u>

Lessee shall not cause or permit any waste or injury to the premises and shall keep the premises free from any and all objectionable noises, odors, rubbish and debris inconsistent with the proper operation of Lessee's usual business therein. Lessee shall conform to all rules and regulations now or hereafter established by Lessor for the general safety, car and cleanliness of the premises an the preservation of good order therein. Lessee shall comply with and observe all statutes, ordinances, regulations, orders and/or decrees of the federal, state and city governments, or any departments, bureaus or agencies thereof, or of any Insurance Inspection or Rating Bureau in any way affecting the use and maintenance of the premises, or any machinery or equipment therein, whether now in force or which may in the future be promulgated.

Lessee shall continuously comply with the provisions of the Occupational Safety and Health Act of 1970, as amended, and the regulations thereunder as well as with all other applicable federal, state or local statutes, ordinances, codes, orders, requirements, laws, rules or regulations relating to occupational health or safety matters, and any expense resulting from such compliance, relating to the premises, the use thereof or the conduct of Lessee's business therein, shall be borne by Lessee. Lessee shall forever hold and keep Lessor harmless and indemnified on account of any loss, cost, damage or liability resulting from the violation by Lessee of any such statute, ordinance, regulation, order or decree or based or in any way arising out of the use and occupancy of the premises by Lessee.

Lessee shall not make any alterations in the premises without the written consent of Lessor, and if such consent be granted, any such alteration shall be made in accordance with all applicable federal, state and municipal laws, rules and regulations. All partitions: toilet facilities and other permanent improvements to the premises shall be a part of the realty and title thereto vested in Lessor. Lessee shall not place a load upon any floor exceeding the floor load per square foot area which the floor was designed to carry and which is allowed by law.

At the expiration or other termination of this Lease, Lessee shall remove from the premises all goods and effects, and peaceably and quietly surrender to Lessor possession of the premises and of all erections and additions made to the same. Lessee will keep the sidewalks, drives and parking areas of the premises free of snow, ice and other accumulations.

## 5. UTILITIES

Lessee shall provided and pay for all heat, water for drinking and other purposes, electricity, gas and nay other utilities consumed on the demised premises and sewer, drainage and related charges or assessments connected therewith.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

## 6. MAINTENANCE REPAIRS AND REPLACEMENTS

During the term of this Lease, Lessee shall be responsible for all interior and exterior maintenance and repairs to the premises, fixtures and driveways, and shall make all structural repairs and replacements of integral and component parts offte structure, premises and fixtures, toward the end that Lessor shall not be responsible for any maintenance, repairs or replacements of the premises, structure and/or fixtures.

## 7. TAXES ASSESSMENTS AND CHARGES

During the term of this Lease Lessee shall pay all taxes upon the premises. Such taxes shall include: all taxes and special assessments of every kind and nature assessed and levied against the building (as a completed taxable entity), land and fixtures including, but not limited to, any taxes upon the building, land or fixtures levied or imposed by any substitute for real estate or personal property taxes, installments of and interest on assessments for public betterments or public improvements (such assessments to be paid over the longest period permitted by law), all personal property taxes upon air conditioning equipment or similar building appurtenances and expenses, including but not limited to reasonable legal expenses, of any proceedings for abatement of taxes and assessments with respect to the first or any subsequent calendar year of fraction of a calendar year.

## 8. SERVICE CONTRACTS

Lessee shall not enter into any service, maintenance or other contracts relating to the premises which shall terminate after the expiration of the term hereof, without Lessor's written consent.

## 9. FIRE AND CASUALTY

In case the premises shall be destroyed or damaged by fire or other casualty, this lease may be terminated at the election of Lessor but if not so terminated and the premises shall be rendered unfit for occupation on account of a fire or casualty, the Rental hereinbefore reserved, or a just and proportionate part thereof according to the nature and extent of the injury sustained, shall be abated until the premises shall have been put in proper condition by Lessor. Otherwise, this Lease shall continue in full force and effect under its terms.

## 10. CONDEMNATION

In the event the whole or any part of the premises or any interest therein shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate on the date when the possession of the part or interest so taken shall be required for such use or purpose or on the date of such taking or condemnation (at Lessor's option) and without apportionment of the award, it being agreed that Lessor shall be entitled to the entire amount of the award for the premises; provided, however, f only a part of the premises is so taken, and if Lessee can without necessity of any substantial repairing or alteration, carry on its business in the part of the premises not so taken

-3-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:03 PM
Envelope: 5620900
Reviewer: Katherine M.

or condemned, this Lease shall continue in full force and effect as to the part not so taken or condemned but there shall be a proportionate adjustment of the Rental to be paid hereunder.

## 11. PROPERTY LOSS OR DAMAGE

All merchandise, furniture and property of any kind, nature and description, belonging to Lessee or any person claiming by, through or under it, which may be in, on or about the premises during the continuance of this Lease, or any extension thereof, is to be at the sole risk and hazard of Lessee; and if the whole or any part thereof shall be destroyed or damaged by fire, water, stream, smoke, by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to or to be borne by Lessor in any case whatsoever.

## 12. IDEMNITY ANDINSURANCE

Lessee agrees to save Lessor harmless from, and indemnify Lessor against, any and all injury, loss or damage of whatever nature to persons or property arising out of the use or occupancy of the premises, or out of any act, omission or negligence of Lessee or anyone claiming under Lessee. Lessee further agrees, in addition to the foregoing and nt in limitation thereof, to indemnify, defend and hold harmless Lessor from and against any and all claims, demands, liabilities, costs, expenses, penalties, damages and losses, including, without limitation, attorneys' fees, as incurred, resulting from or related to any Environmental Condition (as hereinafter defined) or any violation of any Environment Law (as hereinafter defined) in connection with the premises including, but not limited to, any claim for personal injury or property damage arising from any such Environmental Condition or violation of any Environmental Law asserted by third parties against Lessor, any liabilities sustained or incurred by Lessor for the investigation, containment, removal, remedy, cleanup, remediation or abatement of any contamination arising from any Environmental Condition or any violation of any Environmental Law.

The term "Environmental Law' shall mean any law, regulation, rule or order of any governmental entity relating to pollution or protection of the environment (including ambient air, surface water, ground water, land surface or subsurface strata), including, without limitation, CERCLA, as amended, RCRA, as amended, and other federal, state or local laws, regulations, rules and ordinances relating to emissions, discharges or releases of pollutants, contaminants, chemicals, industrial, toxic or hazardous substances or solid or hazardous wastes or petroleum products or gas or any substance detrimental to the environment (collectively, "Polluting Substances") or the manufacture, processing, distribution, use, treatment, handling, storage, disposal and transportation of Polluting Substances. The term "Environmental Condition" shall mean the presence, whether discovered or undiscovered, in surface water, ground water, drinking water supply, land surface, subsurface strata, above ground and underground tanks or other containers, or ambient air of any Polluting Substances arising out of or otherwise related to the operations or other activities (included the disposition of such materials or (substances) conducted or undertaken at the premises by Lessee.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

In the event of any discharge, spillage, contamination, uncontrolled loss, seepage, migration or filtration of a hazardous waste, hazardous substance and/or Polluting Substance within the premises as a result of any conduct of or omission by Lessee, or any employee or agent of Lessee or independent contractor engaged by Lessee, Lessee shall investigate, contain, remove, mitigate or remediate the same immediately in accordance with all applicable federal, state or local laws, ordinances, rules or regulations.

Lessee will maintain general comprehensive public liability insurance naming Lessor as an insured party with respect to the premises and their appurtenances issued by insurance companies authorized to do business in the State of Rhode Island satisfactory to Lessor in amounts not less than One Million Dollars ($1 with respect to injuries to any one person and not less than Three Million Dollars ($3,000,000) with respect to injuries suffered in any one accident, and not less than Five Hundred Thousand Dollars ($500,000) with respect to property damage. Lessee shall deliver to Lessor certificates of such insurance certifying that the same is in full force and effect. Lessee shall pay for insurance against fire and other extended coverage perils pertaining to the premises, naming Lessor as the sole insured party, in amounts not less than One Million Dollars ($1 000,000), with such clauses and with such companies as are designated by Lessor. Such policies may be purchased by Lessor who shall thereupon render invoices to Lessee for the amount of the cost of such insurance which shall be promptly paid by Lessee. The policies of casualty insurance shall be held b Lessor.

## 13. SUBORDINATION

This lease is subject and subordinate to all mortgages which may now or hereafter affect the premises, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any mortgagee. In confirmation of such subordination, Lessee shall execute promptly any certificate that Lessor my request. Lessee hereby constitutes and appoints Lessor Lessee's attorney-in-fact to execute any such certificate or certificates for and on behalf of Lessee. If, in connection with obtaining financing pertaining to the premises or any portion thereof, a banking, insurance or other recognized institutional lender shall request reasonable modifications in this Lease as a condition to such financing, Lessee will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Lessee hereunder or materially and adversely affect the leasehold interest hereby created or Lessee's use and enjoyment of the premises.

## 14. QUIET ENJOYMENT

Lessee, paying the rent and performing all the covenants, terms and conditions in this Lease contained to be performed on the part of Lessee, may peacefully hold and enjoy the premises during the term hereof without any lawful let or hindrance by Lessor or any person claiming by, through or under Lessor.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

## 15. NO REPRESENTATIONS BY LESSOR

No representations or promises with respect to the premises, except as herein expressly set forth, have been made by Lessor, and Lessee agrees that it takes the same in their present condition and state of repair. The taking of possession by Lessee shall be conclusive evidence as against Lessee that the real estate and personal property were in satisfactory condition at the time such possession was so taken.

## 16. LESSOR'S RIGHT TO PAY MONEY TO EFFECT PERFORMANCE

If Lessee at any time, or from time to time, shall fail to perform any of the covenants, terms and conditions in this Lease contained to be performed on the part of the Lessee, Lessor may immediately, or at any time thereafter, without notice, perform the same for the account of Lessee, and in any such event, any monies paid by Lessor for such purpose shall be deemed to be additional rent due hereunder and shall be payable forthwith to Lessor upon rendition of an invoice therefor.

## 17. NO WAIVER

The failure of Lessor to seek redress for violation of, or to insist upon the strict performance of any covenant,

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 8/22/2025 6:13 PM
Envelope: 5620900
Reviewer: Katherine M.

term or condition of this Lease or any of the Rules and Regulations established by Lessor under the provisions of this Lease shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by Lessor of rent, with knowledge of the breach of any such covenant, term or condition, Rule or Regulation shall not be deemed a waiver of such breach and no provision of this Lease shall be deemed to have been waived by Lessor unless such waiver be in writing signed by Lessor.

## 18. ASSIGNMENT

Lessee shall not assign, mortgage, pledge or otherwise encumber this Lease or its interest therein or sublet the whole or any part of the premises without obtaining on each occasion the consent in writing of Lessor. In case of any such assignment, the Assignee shall assume in writing to Lessor the performance and observance of all the convenants, terms and conditions in this Lease contained, to be kept and performed on the part of the Lessee, and such writing of assumption shall be delivered to Lessor simultaneously with said assignment. In the event of any such assignment or subletting, notwithstanding any assumption hereof by the Assignee or sublease, Lessee shall remain primarily liable for the performance of all the covenants, terms and conditions hereof.

## 19. PAYMENTS

All sums due Lessor or any other party under the provisions hereof shall be deemed to be rent due hereunder and Lessor shall have all the rights and remedies relative to the nonpayment thereof as Lessor has for the nonpayment of rent.

## 20. DEFAULTS OF LESSEE AND REMEDIES OF LESSOR

In case of failure on the part of the Lessee to pay the rent and all other charges herein provided within the fifteen (15) days subsequent to the time when the same shall become due and payable or in case Lessee shall neglect or fail to perform or observe any of the other covenants, terms or conditions imposed upon Lessee by this Lease and fail to remedy and/or remove said breach within fifteen (15) days of the receipt of the notice thereof from Lessor; or in the event that Lessee makes an Assignment for the Benefit of Creditors; or a petition is filed by or against Lessee to adjudicate it a Bankrupt; or a Debtor, Reorganization, Arrangement or similar petition or proceeding be filed by or against Lessee under any chapter or provision of the Bankruptcy Act; or in the event a Receiver is appointed over the assets of Lessee or Lessee's leasehold interest and/or property shall be attached or levied upon, and such receivership, attachment or levy is not vacated and/or removed within fifteen (15) days thereafter; or if the premises shall be deserted or vacated for a period of fifteen (15) consecutive days or more; then in any of the above cases it shall be lawful for Lessor thereupon or at any time thereafter, at Lessor's

option, and notwithstanding any waiver of any prior breach of any covenant, term or condition, to enter into and upon the premises or any part thereof in the name of the whole, by force or otherwise, and repossess the same, and to expel Lessee and those claiming by, through or under it, and remove its effects without being deemed guilty of any manner of trespass, and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 6/8/2025 10:23 PM
Envelope: 5620900
Reviewer: Katherine M.

upon entry as aforesaid the, term of this Lease shall terminate, provided that Lessor shall not be deemed to have accepted a surrender thereof.

In any such event Lessee shall indemnify and hold harmless Lessor against all loss of rent or other payments due hereunder or which Lessor may suffer by reason of such termination, including damages for anticipatory breach. This Lease shall not continue for the benefit of any Assignee for the Benefit of Creditors, Receiver, Trustee in Bankruptcy, debtor in possession or attaching Creditors.

## 21. ACCESS TO PREMISES

Lessor, Lessor's servants and agents, shall have right to enter upon the premises or any part thereof, without charge, at all reasonable times to inspect the same, to show the demised premises to prospective purchasers or tenants, or to make or facilitate any repairs or alterations to the premises, including without limitation, to install posts or columns to reinforce any floors, and to install, maintain and remove any pipes, wires and other conduits and plumbing, heating or electrical fixtures or equipment. Nothing herein shall be construed to impose any obligation upon Lessor to make repairs, and if such repairs are the obligation of Lessee in accordance with the terms of this Lease, the cost thereof shall be charged to Lessee. If Lessor is obligated by any building or fire law or regulation to construct any additional exits, Lessee will permit the construction thereof without any diminution of rent.

## 22. NO BROKER

Lessee represents that the premises, or any portion of the premises, were not presented to it or to any person representing it by any broker or other person and that no broker or other per was in involved in the leasing of the premises, and warrants that no claim for commission for said leasing shall be presented to Lessor.

## 23. NOTICE

All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, postage prepaid, to the parties at their addresses set forth above, or in the case of Lessee, to the demised premises, or in either case, to such Other person or at such other address as either party may hereafter designated by notice to the other party.

-8-

## 24. PARTIES AND DEFINITIONS

The terms Lessor and Lessee wherever used in this Lease shall include the successors and assigns of the parties, wherever the context requires or permits of such construction, and all of

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 10:23 PM
Envelope: 5620900
Reviewer: Katherine M.

the covenants, terms and conditions herein contained successors and assigns of the parties in the same manner as if they were expressly mentioned. The term Lessor as used in this Lease means only the owner for the time being of the premises, so that in the event of any sale, Lessor shall be and Lessor hereby is entirely freed and relieved of all covenants and obligations of Lessor hereunder, it being understood and agreed that the purchaser will have assumed and agreed to carry out any and all obligations of Lessor hereunder.

## 25. MEMORANDUM OF LEASE

Upon the execution hereof, the parties shall also execute a Memorandum of Lease in form reasonably satisfactory to both parties, which Lessee may record.

## 26. AMENDMENTS ADDITIONS AND DELETIONS TO ABOVE LEASE

Any alterations of deletions herein were made in the Lease before execution, and any additional provisions to which the parties have agreed and which are added herein or in any addendum attached hereto shall be considered a part hereof.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date set forth above.

WITNESS:

LESSOR:

PENTAGON PROPERTIES, INC.

By: _____

Its: _____

WITNESS:

LESSEE:

CINERAMA JEWELRY, INC.

By: _____

By: 

Its: _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

# EXHIBIT B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

## AMENDED AND RESTATED SUBLEASE

1.    **Parties.** (a) This Sublease is by and between **Cinerama Jewelry, Inc.** ("Sublessor"), and **Productive Collaboration, LLC** ("Sublessee"), as a Sublease under the Lease Agreement between Pentagon Properties, Inc. ("Landlord") and Sublessor, as Tenant, as may be amended from time to time (the "Master Lease"). A copy of the current Master Lease is attached hereto, marked Exhibit A, and incorporated herein by reference. This Sublease amends and replaces the Sublease between the parties dated as of the 1st day of February, 2019.

2.    **Provisions Constituting Sublease.**

(a)    Except as expressly set forth herein, this Sublease is subject to all of the terms and conditions of the Master Lease in Exhibit A, and Sublessee shall assume and perform the obligations of Sublessor as Tenant under the Master Lease, to the extent said terms and conditions are applicable to the Premises (as defined below). Sublessee shall not commit or permit to be committed on the Premises any act or omission which shall violate any term or condition of the Master Lease, In the event of the termination of Sublessor's interest as Tenant under the Master Lease for any reason, then this Sublease shall terminate.

(b)    Except as expressly set forth herein, all of the terms and conditions contained in the Master Lease in Exhibit A are incorporated herein, (with each reference therein to Landlord and Tenant to be deemed, except where the context otherwise requires, to refer to Sublessor and Sublessee) and along with all of the following paragraphs set out in this Sublease, shall be the complete terms and conditions of this Sublease.

(c)    Without limiting the generality of the foregoing paragraph, all references to Landlord in Paragraph 12 of the Master Lease, relating to insurance, shall be deemed to refer to Landlord and Sublessor.

(d)    Notwithstanding anything contained in this Sublease to the contrary, except as expressly set forth herein, Sublessee agrees and understands that Sublessor shall have no obligation or responsibility whatsoever to provide or perform any service, repair, alteration or other similar obligation which is the obligation of Landlord to provide or perform pursuant to the terms of the Master Lease. Sublessee further agrees and understands that each such obligation shall be provided or performed by Landlord and not by Sublessor; provided, however, that, where Sublessee shall notify Sublessor that Landlord is not performing any obligation under the Master Lease, Sublessor will promptly request Landlord to perform such obligation. Sublessor shall in no event be liable to Sublessee nor shall Sublessee's obligations under this Sublease be impaired or reduced or the performance thereof excused because of any failure or delay on Landlord's part in the performance or observing any obligations of Landlord under the Master Lease.

3.    **Premises.** Landlord subleases to Sublessee and Sublessee hires from said Sublessor those premises (the "Premises"), including all furniture and appliances described in Exhibit B. In addition, Landlord also hereby subleases to Sublessee and Sublessee hires from said Sublessor those premises of approximately 4,500 square feet located on the lower floor of the building located at 115 Pettaconsett Avenue, Cranston RI 02920 which such space shall be used for storage space (the "Additional Premises"). The parties understand that Sublessor will continue to utilize the remainder of

- 1 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:23 PM
Envelope: 5620900
Reviewer: Katherine M.

the Additional Premises for its own purposes (equipment, storage, etc.) and that the loading dock area may be used in common by Sublessor and Sublessee.

4.    **Term.** The term of this Sublease shall be for a period originally commencing on February 1, 2019 (the "Commencement Date") and ending on June 30, 2025, unless sooner terminated pursuant to any provision hereof or extended as set forth below.

**Rent.**

(a)    Sublessee shall pay to Sublessor as rent for the Premises the annual amount of $72,540, payable in equal monthly installments of $6,045. Subsequent monthly rent shall be paid in advance on March 1, 2019 and the first day of each succeeding month.

(b)    From and after the Commencement Date, Sublessee shall pay as additional rent with respect to the Premises only (and not with respect to the Additional Premises) its pro rata share of all other amounts required to be paid as additional rent under the Master Lease as and when due. For purposes of this Sublease, Sublessee's pro rata share shall be 50%.

(c)    Rent for any period during the term hereof which is for less than one (1) month shall be a pro-rata portion of the monthly installment.

(d)    Rent shall be payable without notice or demand and without deduction, offset, or abatement, in lawful money of the United States of America to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

(e)    If Rent is to be paid on a Saturday, Sunday or holiday, Rent shall be paid on the next succeeding business day.

(f)    In addition, Sublessee shall pay to Sublessor as rent for the Additional Premises the annual amount of $12,000, payable in equal monthly installments of $1,000.

5.    **Defaults.** If Sublessee shall be in default of any provision of this Sublease relating to the payment of rent, or if Sublessee shall be in default of any other provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessee of written notice from Sublessor specifying the default, then Sublessor may enter the Premises, and repossess the same and expel Sublessee and those claiming under and through Sublessee without being deemed guilty in any manner of trespass, and upon entry as aforesaid, this Sublease shall terminate and Sublessor shall have all rights available to it at law or equity. Sublessee will indemnify Sublessor against all reasonable costs of subletting the Premises and all rent which Sublessor may incur by reason of such termination, provided Sublessor shall make every reasonable effort to mitigate such loss by reletting the Premises. If Sublessor shall be in default of any provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessor of a notice specifying the default, then Sublessee may terminate this Sublease without further obligation of Sublessee, all prepaid rents shall be refunded and Sublessee shall have all rights available to it at law or equity. If either Party shall become insolvent or make a general assignment for the benefit of creditors; or if any proceeding under any bankruptcy or insolvency statute is commenced by or against either Party; or if a receiver, trustee, or liquidator is appointed to take charge of all or substantially all of either Party's assets, then this Sublease may, at the option of the other Party, terminate upon thirty (30) days prior written notice and the terminating party shall have all rights available to it at law or equity.

- 2 -

6. **Additional Space.** In the event that at any time during this Sublease additional space is available for sublease within the Premises (in addition to the Additional Premises), the Sublessor shall give Sublessee written notice thereof and Sublessee shall have the first right to lease such additional space upon such reasonable terms and conditions as Sublessor shall determine, provided, however, Sublessee shall exercise its right to sublease such additional space within ten (10) business days of the date Sublessor provides notice to the Sublessee. In the event such additional space is subleased (beyond the Additional Premises) to Sublessee, the Sublessee's pro rata share and percentage of expenses shall be increase appropriately.

7. **Notices.** All notices or demands of any kind required or desired to be given to Sublessor or Sublessee hereunder, including, without limitation, copies of any notices to or from Landlord, shall be provided in accordance with the Master Lease at the address set forth below their signatures at the end of this Sublease.

8. **Return.** Upon termination or expiration of this Sublease, Sublessee shall return and surrender the Premises to Sublessor in the manner required by the Master Lease.

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first set forth above.

**Sublessor:**
Cinerama Jewelry, Inc.

By: _____
Rebecca Rafaelian
Its: President
115 Pettaconsett Avenue
Cranston, RI 02920

**Sublessee:**
Productive Collaboration, LLC

By: _____
Omar S. Ajaj
Its: Member
115 Pettaconsett Avenue
Cranston, RI 02920

Pursuant to Paragraph 18 of the Master Lease, the undersigned Landlord hereby consents to the foregoing Sublease, all as of the date first written above.

Pentagon Properties, Inc.

By: _____
Rebecca Rafaelian
President

- 3 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

STATE OF RHODE ISLAND            SUPERIOR COURT
NEWPORT, S.C.

| | | |
|---|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as: trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. | : : : : : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | C.A. No.: NC-2025-0531 |
| | : | |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant), and PENTAGON PROPERTIES, INC. (Nominal Defendant) | : : : : : : : : | |
| | : | |
| *Defendants.* | : | |

### NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Clerk's Office
       Newport County Superior Court
       Murray Judicial Complex
       45 Washington Street
       Newport, RI  02840

       Jeffrey K. Techentin, Esq.
       Geoffrey W. Millsom, Esq.
       Todd D. Amaral, Esq.
       ADLER POLLOCK & SHEEHAN P.C.
       100 Westminster Street, 16th Floor
       Providence, RI  02903

       Kurt T. Kalberer, Esq.
       KALBERER LLP
       231 Royal Palm Way
       Palm Beach, FL 33480

Christine K. Bush, Esq.
Mitchell R.  Edwards, Esq.
MacKenzie C. McBurney, Esq.
Hinkley Allen
100 Westminster Street
Suite 1400
Providence, RI, 02903

Please take notice that on May 8, 2026, the above-captioned action has been removed to

the United States District Court for the District of Rhode Island pursuant to 28 U.S.C §§ 1331,

1441 and 1446.   A copy of the Notice of Removal, with exhibits, filed with the United States

District Court is attached hereto.

Respectfully submitted,
Defendant Productive Collaboration, LLC
By its attorneys,

*/s/ Christopher J. O'Connor*
*/s/Joseph V. Cavanagh, III*
Christopher J. O'Connor, Esq. (#5078)
Joseph V. Cavanagh, III, Esq. (#6907)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel:     (401) 831-8900
Fax:     (401) 751-7542
cjo@blishcavlaw.com
jvc3@blishcavalaw.com

Dated:   May 8, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2026, I electronically filed and served this document

through the electronic filing system. The document is available for viewing and/or downloading

from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Christopher J. O'Connor*
Christopher J. O'Connor

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

# Exhibit A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:13 PM
Envelope: 5620900
Reviewer: Katherine M.

STATE OF RHODE ISLAND                                           SUPERIOR COURT
NEWPORT, S.C.

CAROLYN RAFAELIAN,
INDIVIDUALLY and as trustee of THE
CAROLYN A. FERLISE QSST 1994
TRUST and THE CAROLYN A.
RAFAELIAN TRUST 2004, and
derivatively on behalf of Cinerama
Jewelry, Inc. and Pentagon Properties, Inc.

     *Plaintiffs*,

v.                                                             C.A. No.  NC-2025-0531

REBECCA RAFAELIAN CARUOLO,
individually and in her role as trustee of
The Rebecca Rafaelian Caruolo QSST
1994 Trust and The Rebecca Rafaelian
Caruolo Trust 2009, PRODUCTIVE
COLLABORATION, LLC, CINERAMA
JEWELRY, INC. (Nominal Defendant),
and PENTAGON PROPERTIES, INC.
(Nominal Defendant)

     *Defendants*.

## AMENDED VERIFIED COMPLAINT

Carolyn Rafaelian ("Carolyn"), by her undersigned counsel, hereby brings this Amended

Verified Complaint for Damages, Appointment of a Temporary and Permanent Receiver, and

Injunctive Relief, and Jury Trial Demand, and sues in her individual capacity and, as trustee on

behalf of certain shareholding trusts hereinafter specified, and derivatively on behalf of Nominal

Defendants Cinerama Jewelry, Inc. ("Cinerama" or the "Factory") and Pentagon Properties, Inc.

("Pentagon"), and against Rebecca Rafaelian Caruolo ("Rebecca"), individually and in her role as

trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo

Trust 2009, and Productive Collaboration, LLC d/b/a Air & Anchor ("Productive Collaboration"

1

or ("Air & Anchor") for: damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rebecca Rafaelian Caruolo; damages for aiding and abetting a breach of fiduciary duty and conversion, violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and an equitable decree of alter-ego Air & Anchor and for the appointment of a receiver of Air & Anchor; and for preliminary and permanent injunctive relief against all Defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon.

## I.    INTRODUCTION

1.    This is a family shareholder dispute involving the complete defalcation of a preeminent Rhode Island jewelry company, Cinerama, by its majority shareholder and President, Rebecca. In concert with Air & Anchor, and unknown to Carolyn, Rebecca used her position as President of Cinerama to create a new business venture using all of the assets of Cinerama, as well as those of Pentagon, for the sole purpose of excluding and divesting Carolyn of her interest in Cinerama and Pentagon.

2.    Specifically, this is an action for, among other things, shareholder oppression and self-dealing by Rebecca, the President and shareholder of two (2) separate Rhode Island close corporations indirectly owned by her and Carolyn. The conduct of Rebecca relative to these companies has had the cumulative effect of completely "freezing out" Carolyn, as well as severely diminishing the value of the companies' shares.

3.    Concealed from Carolyn as a mere subtenant leasing a portion of space from Cinerama to start a jewelry business, the new enterprise, Air & Anchor, is in fact a knock-off of Carolyn's Alex + Ani jewelry brand, created from the complete takeover and de facto liquidation

2

of Cinerama and its assets. Indeed, Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and is the functional *alter ego* of Cinerama. Upon information and belief, Rebecca manages and controls the daily operations of the new enterprise, leaving Cinerama a shell company, existing merely to conceal the misappropriation of Cinerama's assets, subsidize Rebecca's new business venture, and mislead Carolyn as to the value of her shares in Cinerama.

4. By this lawsuit, Carolyn seeks to protect, preserve and realize the full value of her shareholder interest in her family's businesses and their assets, reputation, image, and goodwill, and to protect her own assets, reputation, image and commercial likeness of entities previously or currently closely associated with her in the marketplace for fine custom retail jewelry, from the wrongful acts of the Defendants as hereinafter alleged.

5. As the President of Cinerama and Pentagon, and indirect majority shareholder in Cinerama, Rebecca has a fiduciary obligation to protect, preserve and maximize the value of the respective companies' business opportunities for the benefit of all of its shareholders, not just herself.

6. Notwithstanding this obligation, Rebecca never presented the new Air & Anchor opportunity to Cinerama, Pentagon, or Carolyn. Instead, Rebecca unilaterally, and without Carolyn's knowledge and required consent, allowed Air & Anchor to utilize the assets, name and goodwill of Cinerama, Pentagon, and Carolyn for less than fair value or for no value at all and wrongly converted the property of Cinerama, Pentagon and of Carolyn for the use and benefit of Air & Anchor and Rebecca and to the unfair exclusion of Carolyn. By their conduct, Rebecca and Air & Anchor also deprived Carolyn and continues to deprive her, of existing and prospective economic opportunities.

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 10:13 PM
Envelope: 5620904
Reviewer: Kathleen M.

Case 1:22-cv-00299-JJM-AEM Document 18 Filed 05/08/25 Page 5 of 45 PageID #: 247

7. Both individually and derivatively on behalf of Cinerama and Pentagon, Carolyn seeks damages from the Defendants for their acts and omissions as aforesaid and seeks a preliminary and permanent injunction barring the Defendants and all persons with notice thereof from using Cinerama's and Carolyn's assets, image, likeness and goodwill without express permission. Further, Carolyn seeks a declaration that Air & Anchor is the *alter ego* of Cinerama, and the appointment of a receiver of Air & Anchor to effectuate that decree.

## II.  PARTIES

8. Plaintiff Carolyn is a resident of the State of Florida, an officer and director of Pentagon, an indirect forty three percent (43%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee, namely the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and an indirect fifty percent (50%) shareholder of Pentagon through a trust of which she is a beneficiary and trustee, namely The Carolyn A. Rafaelian Trust-2004.

9. Plaintiff the Carolyn A. Ferlise QSST Trust-1994 owns a 19.5% interest in Cinerama Jewelry, Inc.

10. Plaintiff The Carolyn A. Rafaelian Trust-2004 owns a 23.5% interest in Cinerama Jewelry, Inc. and a 50% interest in Pentagon.

11. Nominal Defendant Cinerama is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at the factory at 115 Pettaconsett Avenue, Cranston, Rhode Island.  Cinerama is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

12. Nominal Defendant Pentagon is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at 115 Pettaconsett Avenue,

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:13 PM
Envelope: 5620900
Reviewer: Katherine M.

Cranston, Rhode Island. Pentagon is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

13. Defendant Rebecca is a resident of the State of Rhode Island, the sister of Carolyn, an officer and director of Cinerama and Pentagon, an indirect fifty seven percent (57%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee including the Rebecca R. Caruolo QSST 1994 Trust and the Rebecca Rafaelian Caruolo Trust-2004, and a direct fifty percent (50%) shareholder of Pentagon.

14. Defendant Productive Collaboration, LLC d/b/a Air & Anchor is a Rhode Island limited liability company formed in 2018 by Rachel Ajaj, the niece of Carolyn and Rebecca, Rachel's husband Omar Ajaj, and upon information and belief, Rebecca, as managers and/or members. It adopted the fictitious name Air & Anchor in June of 2019.

## III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this dispute and the parties under and pursuant to R.I. Gen Laws §§ 8-2-13 and 14.

16. Venue of this action is proper in this Court under and pursuant to R.I. Gen Laws § 8-2-27.

## IV. STATEMENT OF FACTS

### A. The Family Roots of Cinerama, Alex + Ani, and Air & Anchor

17. Cinerama was formed by Mr. Ralph Rafaelian in 1966 for the purpose of engaging in the design, manufacture and sale of fine custom jewelry. From and after its formation until some time prior to his death in 2012, Mr. Rafaelian was the President, Chief Operating Officer and sole shareholder of Cinerama. Cinerama has at all times been referred to by Ralph, Rebecca, Carolyn, the general public and its customers as the "Factory."

5

18.     In 1991, Mr. Rafaelian formed another Rhode Island corporation, Pentagon,  for the purpose of acquiring, owning and managing certain improved real property including the factory located at 115 Pettaconsett Avenue, Cranston, Rhode Island (the "Property"), which has since then and to date, been the principal manufacturing and place of business for Cinerama, which leases all of premises at the Property.

19.     In 2006, Pentagon also acquired the improved residential property located at 91 Tupelo Hill Drive, Cranston, Rhode Island ("Tupelo Hill").  The Tupelo Hill property is leased to a tenant.

20.     From and after the formation of Pentagon until some time prior to his death, Mr. Rafaelian was President, Chief Operating Officer and sole shareholder of Pentagon.  In approximately 2012, Carolyn and Rebecca each acquired an indirect fifty percent (50%) ownership interest in Pentagon through various trusts of which each was a beneficiary and trustee, and each was appointed and has since then continually served as an officer of Pentagon.

21.     Carolyn was born around the time of Cinerama's formation, and Rebecca a few years later.

22.     From the time they were children, Carolyn and Rebecca spent much of their time around the Factory, later working closely with their father, Mr. Rafaelian.  When Carolyn was a child, her mother Lucy Rafaelian would often send her to the Factory to be with her father to keep her occupied.  Carolyn initially started out "carding" jewelry—the process of presenting jewelry for retail sale on a display card—but quickly learned how to wield a blow torch and to design jewelry in her own unique style and manner.

23.     From and after the time of their initial involvement with Cinerama as children, both Carolyn and Rebecca became increasingly involved in the management and operations of

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:13 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:25-cv-00209-JJM-AEM Document 18 Filed 05/08/25 Page 8 of 45 PageID #: 250

Cinerama. Carolyn was responsible for creative design at Cinerama and her sister, Rebecca, was responsible for manufacturing and operations.

24. During the time she worked at Cinerama and thereafter, Carolyn purchased and housed a significant inventory of valuable and unique crystals, beads, and stones at Cinerama, which she organized and maintained in boxes located at the Factory and which bore her name, the quantity of the stones, and her signature.

25. Currently, Rebecca, as the President of Cinerama and its indirect majority and controlling shareholder through her trusts, controls the management and operation of Cinerama.

26. Moreover, as set forth in Sections 2.7 and 2.8 of the Cinerama corporate Bylaws, Rebecca, as the indirect holder of the majority of the stock issued and outstanding and entitled to vote, controls Cinerama's business and affairs.

**B.    Alex + Ani is Formed, Realized and Achieves Astonishing Success**

27. In 1999, Carolyn began designing jewelry for certain specialty retailers, then experimented with soldering metals into bracelets and designing charms and figures on them—arguably the start of the more current trend of using jewelry for self-expression.

28. In 2003, as Carolyn's creative force was beginning to achieve critical mass, she formed Alex + Ani as a domestic corporation.

29. From and after the time of its initial formation in 2003, Carolyn was the principal owner, officer and creative force behind Alex + Ani, and its financial and creative fortunes soared under her guiding hand. She sought and obtained her first patent for what became the renowned Alex + Ani bangle in 2004. By 2014, its sales had reached $350 million and its estimated enterprise value was $1 billion.

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:13 PM
Envelope: 5620900
Reviewer: Katherine M.

### C. Carolyn's Family and Cinerama Directly Benefit from her Success

30.     Consistent with the approach she learned from her father, Carolyn always endeavored where practicable and prudent, to do what was right and bring her family and Cinerama along with her and to let them share in the fruits of her creative and business success.

31.     Carolyn awarded all the manufacturing, assembly and related work possible from Alex + Ani to Cinerama, paying fair market value for the use of Cinerama's valuable resources, including its trade secrets, vendors relationships, equipment, management, goodwill and reputation in the industry.  Cinerama and Rebecca profited significantly from Alex + Ani's purchase orders.

32.     Ultimately, in 2016, Alex + Ani entered into an Asset Purchase Agreement with Cinerama, pursuant to which Alex + Ani purchased certain assets of Cinerama for over $100 million dollars.

33.     In addition to the aforesaid commercial arrangements and business transactions between Alex + Ani and Cinerama, Carolyn caused her niece Rachel, and Rachel's husband, Omar, to be employed at Alex + Ani, where they enjoyed significant salaries and benefits.

34.     All of the foregoing benefits that Carolyn bestowed on Cinerama and her family members resulted in substantial financial gains for Cinerama and its shareholders, including Rebecca.

### D. Rebecca, Rachel and Omar Launch Air & Anchor based upon the Cinerama/Alex + Ani Foundation, Assets, Image and Goodwill

35.     As a consequence of disagreements with the outside equity investors in Alex + Ani, in 2019 Carolyn resigned her position at Alex + Ani, and by 2021, no longer had any management role or equity in the company.

36.     Rachel and her husband Omar also left the employment of Alex + Ani; Rachel left in 2019, and Omar left in 2018.

8

37.     In 2019, Rebecca, Rachel, and Omar saw the distress Alex + Ani was experiencing and recognized the opportunity to duplicate Carolyn's business plan and begin a wholesale manufacturing and retail jewelry enterprise identical to Cinerama and Alex + Ani.  Rather than contract with Cinerama for its services as Carolyn had done and build retail business of their own, they conspired and agreed to simply take Cinerama for themselves and designed a scheme to disenfranchise Carolyn from her interest in Cinerama.

38.     Creating a name with striking resemblance to Alex + Ani, in June of 2019 Rebecca and Rachel founded Productive Collaboration, LLC d/b/a Air & Anchor.  Their business plan was simple, take over Cinerama entirely via a purported "sublease" and attempt to market its wholesale manufacturing services under the name of a new limited liability company they founded, Productive Collaboration.

39.     Productive Collaboration is a direct competitor of Cinerama.

40.     Productive Collaboration uses Cinerama's phone number, inventory, assets machinery, goodwill, reputation, and vendors, and advertises that it controls the entire Property, as shown below:



9

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 8/22/2025 6:03 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:20-cv-00292-MSM-AEM Document 13 Filed 05/08/25 Page 11 of 57 PageID #: 253

41.  The business plan included the launch of a retail brand under the name Air & Anchor using Cinerama's highly valuable vintage inventory archives, designs, intellectual property, personnel, trade secrets, goodwill, reputation and vendor relationships.

42.  To disguise their scheme, they created a sublease for use of only a portion of the Property's premises, despite occupying the entire Property and misappropriating all of Cinerama's valuable assets for themselves.

43.  Specifically, on or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equal monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease"). A copy of the Cinerama Lease is attached hereto as Exhibit A. The Cinerama Lease expired on June 30, 2025.

44.  Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's "operation of a jewelry manufacturing business and allied and ancillary activities." The Cinerama Lease further stated that the "premises shall be used solely for the purpose set forth above and not for any unlawful purpose…."

45.  The Cinerama Lease prohibited subletting except with the written consent of Pentagon.

46.  Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with Air & Anchor providing or affording it with use and occupancy of a portion of the Property (the "Sublease"). The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms. A copy of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") is attach hereto as Exhibit B.

10

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026
Envelope: 5620900
Reviewer: Catherine M.

Case 1:26-cv-00293-MSM-AEM Document 1-3 Filed 05/08/26 Page 12 of 17 PageID
#: 254

47.     Pursuant to the Sublease, Air & Anchor was required to remit and pay to Cinerama the sum of \$6,045.00, plus \$1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.  The rental amount was woefully deficient, drastically below market rate and commercially unreasonable.

**E.     Air & Anchor Converts Cinerama's Goodwill and Engages in False Advertising**

48.     Air & Anchor holds itself out to the public as the "Factory" and having been in business "since 1966" in its sales and marketing efforts including in its jewelry retail store location in Garden City.  According to Air & Anchor's website, "[h]ome is where all of our stories begin. The same can be said for our business.  It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."  Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present  (last  visited  Feb.  2, 2026).

49.     Carolyn has recently learned that, from its inception, Air & Anchor has in fact occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances, and without her consent, of Carolyn's inventory of unique crystals, beads and stones that she has always stored at the Factory.  Additionally. Air & Anchor advertises Cinerama's vast vintage jewelry inventory archives as their own.  This is made clear by Air & Anchor's public presentation of its image:

11

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/22/2026
Envelope: 5620904
Reviewer: Katherine M.



Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present?srsltid=AfmBOoo6Yq3b0wFvx5fsKd9FxOySMLVElc92wExtPJn5rsGQtm1z5M3K (last visited Feb. 2, 2026).

50.     Air & Anchor has lauded and deploys its connection to Cinerama, Alex + Ani, and the Factory in its public statements and marketing efforts.  From its very beginnings, its representatives have publicly stated or been reported to state, that in the wake of Alex + Ani's demise, "they decided to take over…[the Factory]…and put it—and Rhode Islanders—back to work," that Cinerama's jewelry stones from the "60's, 70's and 80's are still materials that we reset

12

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:26-cv-00329-MSM-AEM Document 1-3 Filed 05/08/26 Page 14 of 457 PageID
#: 256

and use today," and that in the basement Factory "bins and piles of clunky gold chains, ropes and beads are ready to be worked into future pieces."

51.     In fact, Rachel, in an interview describing the story of Air & Anchor, stated that Air & Anchor's designs use vintage components—"pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s"—that she re-works into modern designs.  Air & Anchor: The Story of A Family Business (youtube.com), https://www.youtube.com/watch?v=XSXLh1GgR0w (last visited Feb. 2, 2026).

52.     Moreover, in a 2024 interview with the Warwick Beacon, Omar explained that Air & Anchor's Garden City retail store was an "extension" of the "factory" "just up the road on Pettaconsett Avenue":

> Air & Anchor, a local jewelry manufacturer and retailer, held a weekend long grand opening ceremony to celebrate its Garden City popup store last week.
>
> With an in-store jewelry factory, Air & Anchor has a unique quality ability to custom create and fit pieces in store. With the focus on locally sourced products and personal customization that comes from making everything in house, owners Rachel and Omar Ajaj consider the store an extension of their factory just up the road on Pettaconsett Avenue.
>
> "You've got our normal retail products, but half of the store, actually, is called the factory," Omar explained. "You can come in and customize your length of chain. You can bead your own necklaces and bracelets. We do permanent jewelry and can even brand our serving boards that we make right here in Providence. So it's really an experiential store."
>
> The factory, which the co-owners Rachel and Omar Ajaj leased about four years ago, Omar explained, was kind of a place his wife Rachel grew up in as a third generation jewelry designer. The building was empty, they chose to lease it before sitting in the big building and saying, "what're we going to do?" That's when they set to building the factory back up.

Ed Kdonian, *Air and Anchor popup has grand opening in Garden City*, Warwick Beacon (June 21, 2023), https://warwickonline.com/stories/air-and-anchor-popup-has-grand-opening-in-garden-city,214248 (last visited Feb. 2, 2026).

### F. Air & Anchor Colludes with Rebecca to Convert Cinerama's Assets

53. Former employees of Air & Anchor report that substantial parts of its business and operations are controlled, directed, and managed by Rebecca. Rebecca identified herself to such employees as a "manager" of Air & Anchor. She was at the retail store every day, directed such employees to report to her, managed all product requests and quality control, managed relationships and contracts with vendors, and directed that Carolyn should never be admitted to the premises.

54. In addition, in early 2023, an Air & Anchor employee was directed by Rebecca, Rachel, and/or Omar to go through inventory located on the first floor of Cinerama, including Carolyn's inventory, and to re-box hundreds of inventory boxes, half of which bore Carolyn's name, their quantity, and Carolyn's signature, into new boxes which only bore quantity and SKU numbers such that all the prior identifying marks of Carolyn were removed, and the inventory items were variously immediately sold off, advertised for sale on Air & Anchor's website as vintage products, and the remainder brought to Air & Anchor's retail location for use and sale. At no time prior to doing so or since, did Air & Anchor or Rebecca seek or obtain Carolyn's consent to such dispositions. Upon information and belief, this wrongful conduct has continued at least as recently as Fall 2025.

55. Air & Anchor has the same business address as Cinerama, is wrongfully using its assets and inventory without paying fair value therefor, has and continues to commit conversion of Cinerama's assets, holds itself out to the world as an "extension" or successor of Cinerama, and

14

trades upon for its own benefit Cinerama's goodwill, trade name, image and history, such that it is and should be declared the *alter ego* of Cinerama.

## G. The Necessity of this Action.

56. As a result of the Defendants' intentional and wrongful conduct, Cinerama and Pentagon have lost significant potential revenue and the value of Carolyn's respective shares have been severely diluted. In addition, the launch of Carolyn's new business was materially delayed as she was forced, at significant expense, to acquire new space, equipment, vendors and resources to re-build her significant operations to support Metal Alchemist, LLC which she could have merely contracted with Cinerama to perform.

57. Metal Alchemist, LLC, which was organized in or about 2020, engages in the design, manufacture and sale of fine custom jewelry.

58. Carolyn intended to contract with and/or form a joint venture with Cinerama in order to leverage the significant and valuable resources and inventory stored at Cinerama in support of Metal Alchemist, LLC's operations, in exchange for reasonable consideration to Cinerama; however, Rebecca refused any arrangement, stating that it was not possible.

59. Upon information and belief, such an arrangement between Metal Alchemist, LLC, and Cinerama is only "not possible" because of the unlawful defalcation of Cinerama's assets for the benefit of Air & Anchor.

60. Carolyn has made inquiry of Rebecca and her agents about her concerns with Air & Anchor's use of Cinerama and its assets but has only received false and misleading responses.

61. On or about April 2021, Rebecca, through her counsel, advised Rebecca that she would no longer receive requests from Carolyn for periodic updates on the status of Cinerama

15

operations and business plans, and that Rebecca had no interest in working with Carolyn on any future endeavors concerning Cinerama and/or Pentagon.

62.    Shortly after Carolyn's rejection of a woefully deficient buy-out offer from Rebecca, in or about December 2021, and, again in or about March 2022, Rebecca, as President of Pentagon, issued an unlawful and improper capital call to Carolyn in the amount of $250,000.00 for repairs to the Property.

63.    The unlawful capital call was made with the intention to coerce Carolyn into selling her shares in Pentagon and Cinerama to Rebecca and remains outstanding.

64.    On or about December 19, 2024, Carolyn, Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter to Rebecca and Cinerama's counsel, detailing certain unlawful and/or wrongful conduct on the parts of the Rebecca, Cinerama and Air & Anchor.

65.    The letter detailed Carolyn's grievance relative to the use and occupancy of the Property by Cinerama and Air & Anchor, including, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Cinerama

**H.    Rebecca Unlawfully Attempts to Extend her Scheme Five Years**

66.    Despite being fully aware of the foregoing dispute, on or about May 1, 2025, without the corporate authorization required by Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a First Amendment to Lease Agreement, purporting to amend the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama.  The Amendment purported to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

67. The terms of the Amendment are unconscionable and the Amendment is ineffective and/or otherwise void under Rhode Island law.

68. Separately, the Amendment was executed by Rebecca on behalf of both parties to the agreement, *i.e.*, Pentagon and Cinerama. On this issue, Rebecca had a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts to, and the express written authorization or consent of, Carolyn under Rhode Island law.

69. Rebecca's additional conflicts of interest as President of Pentagon further precluded her from entering into the Amendment on behalf of Pentagon without Carolyn's express authorization, including, without limitation:

a) while only a 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at lowest cost to Cinerama;

b) the subtenant, Air & Anchor, is owned by a family relative with whom, upon information and belief, Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the lowest cost to the subtenant, thereby giving a personal benefit to a family member and business partner; and

c) Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Air & Anchor, and is believed to be working for and on behalf of Air & Anchor while unlawfully using the assets of Cinerama.

70. The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon Rebecca to the detriment of Pentagon and Carolyn in violation of Rebecca's fiduciary duty of loyalty under Rhode Island law, causing damages to Carolyn and Pentagon and rendering the Amendment void.

71. The Cinerama Lease, as purportedly amended by the Amendment, would impose rent through 2030 at a rate that is grossly below market rate and contains other commercially unreasonable terms.

17

72. In addition, Rebecca has entered into a lease on behalf of Pentagon with a tenant for the Tupelo Hill property which is also grossly below market rate and contains woefully commercially unreasonable terms.

73. Upon information and belief, Rebecca has caused Cinerama to suspended all business operations and to cease operating a jewelry manufacturing business, in violation of the Cinerama Lease.

74. Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, Carolyn provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island law, as well as in violation of Pentagon's corporate By-Laws (the "May 13 Notice"). Further, the May 13 Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease. Rebecca has caused Cinerama to disregard the May 13 Notice, to conduct business as though the Cinerama Lease and Sublease were in effect, and caused Pentagon to conduct business on the same false premise.

75. Despite receipt and acknowledgement of the May 13 Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the Property. Cinerama is, upon information and belief, a holdover tenant or tenant at will at this time.

76. On or about May 14, 2025, Carolyn, in her capacity as Executive Vice President of Pentagon, provided notice to Air & Anchor that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Air & Anchor's's tenancy was terminated effective that same date (June 30, 2025) and that Air & Anchot was to vacate the Property on or before that date (the "May 14 Notice").

77. Despite receipt and acknowledgement of the May 14th Notice, Air & Anchor has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the

18

Property.  At this time, Air & Anchor is, upon information and belief, a holdover tenant or tenant at will.

78.     Cinerama and Air & Anchor, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease and each of them  has failed and/or refused to comply with the May 13 Notice and the May 14 Notice, respectively.

79.     Cinerama and Air & Anchor, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease.

80.     Neither Cinerama nor Air & Anchor, individually or collectively, has any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

81.     Accordingly, Carolyn, on behalf of Pentagon, is obliged to protect and preserve Pentagon's rights and has sought the eviction of Cinerama and Air & Anchor from the Property in the District Court.

82.     By letter on or about December 19, 2024, to Rebecca, Carolyn made demand of Cinerama pursuant to R.I. Gen. Laws § 7-1.2-711 and Super. Ct. R. Civ. P. 23.1 that Rebecca act on the basis of the above-described alleged misconduct that had transpired as of that date. Cinerama did not comply with this demand.

83.     Any further effort to obtain answers or to address the claims here made would be futile given Rebecca's majority control of Cinerama, her personal interests and participation in the wrongful actions referenced herein, and the deadlock in voting power and in the management of Pentagon between Rebecca and Carolyn.

84.     Carolyn can fairly and adequately represent the interests of the shareholders of Cinerama and Pentagon in enforcing the rights of the corporations.

19

## V.     CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

85.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 84 hereof, inclusive.

86.     As the beneficial majority and controlling shareholder and officer of Cinerama, and as one of two 50% beneficial shareholders of Pentagon, Rebecca owes a fiduciary duty of utmost good faith and loyalty to the company and Carolyn.  Rebecca has breached her duty by engaging in the aforesaid conduct, which includes, among other things, entering into and approving any number of lease and/or sublease agreements on commercially unreasonable and grossly unfair terms to the company, using corporate assets and/or property to bestow personal benefits upon herself and her family members, and, in so doing, failing to maximize the value of the company's shares and by refusing to disclose conflicts of interest to Carolyn, or otherwise obtain Carolyn's informed consent to material business transactions.

87.     As a consequence of her acts and omissions, Rebecca has and continues to breach her fiduciary duty to Carolyn, Cinerama, and Pentagon.

88.     As a consequence of the aforesaid breach of fiduciary duty by Rebecca, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count II – Waste
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

89.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 88 hereof, inclusive.

90.     The use and disposition by Rebecca of the assets and/or property of Cinerama and Pentagon as described more fully above for insufficient or no value constitutes waste of Cinerama and/or Pentagon.

91.     As a consequence of Rebecca's waste of corporate assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count III – Conversion
### (Individually and Derivatively of Cinerama Against Rebecca and Air & Anchor)

92.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 91 hereof, inclusive.

93.     Carolyn and/or Cinerama own assets and/or property, including without limitation the assets and inventory described above.

94.     Defendants have converted the aforesaid assets and inventory to their own use and/or control without appropriate or proper authority or permission or consent from, and to the wrongful exclusion of, the rightful owners of the property.

95.     As a consequence of Defendants' wrongful conduct, each of Carolyn and Cinerama has suffered and continue to suffer extensive loss, cost, damage and expense.

### Count IV – Breach of Contract
### (Derivatively of Pentagon against Cinerama)

96.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 96 hereof, inclusive.

97.     Pentagon entered into the Cinerama Lease with Cinerama which constitutes a contract.

98.     Cinerama has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to operate a jewelry manufacturing business, failure

21

to pay all rent due under the Cinerama Lease, failure to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection and engaging in unlawful conduct on the premises.

99. As a result of Cinerama's breach of the lease, Pentagon has and continues to suffer damages.

## Count V – Breach of Contract
### (Derivatively of Cinerama against Air & Anchor)

100. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 99 hereof, inclusive.

101. Cinerama entered into the Sublease with Air & Anchor, which constitutes a contract.

102. Air & Anchor has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection, and engaging in unlawful conduct on the premises.

103. As a result of Air & Anchor's breach of the lease, Cinerama has and continues to suffer damages.

## Count VI - Civil Liability for Crimes & Offenses
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

104. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 103 hereof, inclusive.

105. As a consequence of Rebecca's actions set forth above, each of Carolyn, Cinerama, and Pentagon have suffered the conversion of their assets and seek recovery for those offenses as allowed under R.I. Gen. Laws § 9-1-2.

## Count VII - Misappropriation of Corporate Opportunity

22

**(Individually and Derivatively of Cinerama & Pentagon Against Rebecca)**

106. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 106 hereof, inclusive.

107. As a fiduciary to Carolyn, Cinerama and Pentagon, prior to pursuing the formation or organization of Air & Anchor and investing the assets and goodwill of Cinerama into her new business venture, Rebecca should have, but did not, present the same as a corporate opportunity to Cinerama and Pentagon.

108. As a consequence of Rebecca's failure to present this corporate opportunity to Cinerama and Pentagon, and instead pursuing it in her individual capacity through the wrongful use and conversion of Cinerama's and Pentagon's assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count VII – Aiding and Abetting Breach of Fiduciary Duty
**(Individually and Derivatively of Cinerama and Pentagon against Air & Anchor)**

109. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 108 hereof, inclusive.

110. By the foregoing acts, including Rebecca's active involvement in the management and affairs of Air & Anchor and its wrongful possession, use and conversion of Cinerama and/or Carolyn's assets, Air & Anchor has and continues to aid and abet Rebecca's breaches of fiduciary duty.

111. As a consequence of these acts, Air & Anchor is aiding and abetting Rebecca's breach of fiduciary duty, and each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1))
**(False Association/Designation of Origin and False Advertising)**
**(Individually and Derivatively of Cinerama against Air & Anchor)**

23

112. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 111 hereof, inclusive.

113. Air & Anchor has and continues to make false or misleading representations of fact in commercial advertising about its business and its products, claiming directly and through implication, and without limitation, that it has been in business since 1966, is the successor "Factory" located at the Property, is the owner of Cinerama's vast archive of vintage jewelry inventory, machinery, equipment and other assets and is the successor or continuation of Cinerama.

114. The misrepresentations are material to consumers' perception of Air & Anchor's products and likely to influence purchasing decisions.

115. The misrepresentations are likely to cause confusion among the relevant purchasing public.

116. Air & Anchor made the false or misleading statements commercial advertising and/or promotion and in connection with interstate commerce.

117. Cinerama and Carolyn have and continue to be damaged as a result of the misrepresentations, including by either or both direct diversion of sales and a negative impact on goodwill associated with their business or products.

### Count X – Intentional Interference with Prospective Economic Advantage
### (Individually against Rebecca and Air & Anchor)

118. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 117 hereof, inclusive.

119. Conversion of Cinerama's assets, likeness, and goodwill, carries along with it some of Carolyn's brand and it prohibits Carolyn from taking advantage of such and thereby results in additional costs to Carolyn in pursuing her current and future endeavors, including Metal Alchemist, LLC.

24

120. Defendants had knowledge that Carolyn sought to engage in future endeavors in the fine custom retail jewelry industry and intentionally interfered and intended to frustrate such efforts by their aforesaid acts.

121. As a consequence of such wrongful acts, Carolyn has suffered and continues to suffer extensive loss, cost, damage and expense.

### Count XI – Appointment of a Temporary and Permanent Receiver
### (Against Air & Anchor)

122. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 121 hereof, inclusive.

123. Pursuant to R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), and (v) and 7-1.2-1316, the facts, actions, and omissions as aforesaid, and in aid of equity and any decree by the Court, the Court should appoint a Temporary and Permanent Receiver to manage the business of Air & Anchor during the pendency of this action, and to recover the misappropriated assets belonging to Cinerama and Carolyn.

### Count XII – Preliminary and Permanent Injunction

124. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 123 hereof, inclusive.

125. Defendants' acts and omissions as aforesaid, including without limitation, their wrongful and continued use, possession and conversion of Cinerama's assets, inventory, goodwill and reputation has caused and continues to cause Carolyn and Cinerama to suffer irreparable harm and injury for which they lack an adequate remedy at law in the form of damages.

126. As a consequence of the foregoing, the Defendants and their employees and agents should be permanently enjoined and restrained from continuing to wrongly use and enjoy the assets, inventory, goodwill and reputation of Cinerama.

25

## Count XIII – Unjust Enrichment
### (Derivatively on behalf of Cinerama against Air & Anchor)

127. Plaintiffs incorporate by reference, as if fully set forth herein, the averments of paragraphs 1 through 126 inclusive.

128. Air & Anchor knowingly received and retained substantial benefits that rightly belonged to Cinerama, including the use of Cinerama's factory space at 115 Pettaconsett Avenue, inventory, machinery, equipment, vendor relationships, trade secrets, trade name, goodwill, reputation, and telephone number, as well as Cinerama's image and history in the marketplace. Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and holds itself out as the successor or "extension" of Cinerama Air & Anchor occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances.

129. Air & Anchor also exploited Cinerama's vintage inventory archives and associated goodwill to market and sell products and to enhance its brand and sales, without paying fair value to Cinerama or obtaining appropriate authorization. Air & Anchor advertises and sells jewelry using Cinerama's "thousands of vintage beads and charms" and vast vintage inventory archives as its own Air & Anchor claimed business continuity "since 1966" and presented itself as the Factory, thereby trading on Cinerama's reputation and goodwill.

130. The above benefits to Air & Anchor were conferred at Cinerama's expense, including the loss of the use and value of its premises, assets, inventory, and goodwill, and the diversion of Cinerama's corporate resources and opportunities. Air & Anchor is wrongfully using Cinerama's assets and inventory without paying fair value therefor and has committed conversion

26

of Cinerama's assets Cinerama has suffered extensive loss, cost, damage and expense as a consequence of Defendants' wrongful conduct.

131.    Air & Anchor's retention of these benefits is inequitable because they were obtained without Cinerama's informed consent or proper authorization, on terms that were drastically below market and commercially unreasonable, and in a manner that deprived Cinerama of fair compensation. Air & Anchor's Sublease payments to Cinerama were $6,045.00 plus $1,000 per month, a rental amount that was woefully deficient, drastically below market rate and commercially unreasonable Air & Anchor's use of Cinerama's assets, inventory, goodwill, trade name, image and history occurred without appropriate or proper authority or permission or consent.

132.    Equity and good conscience require that Air & Anchor disgorge and make restitution to Cinerama of the value of the benefits unjustly retained, including, without limitation, the fair market value of the use of Cinerama's premises, assets, inventory, and goodwill, and the profits derived therefrom, in amounts to be proven at trial. Air & Anchor trades upon for its own benefit Cinerama's goodwill, trade name, image and history.

## VI.    PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief:

a.    Award Plaintiffs damages including, without limitation, disgorgement of profits, compensatory damages, treble damages under 15 U.S.C. § 1117(a)and punitive damages  interest, costs, and attorneys' fees;

b.    Grant preliminary and permanent injunctive relief enjoining and restraining Defendants and their employees and agents from continuing to wrongly use and enjoy the assets, inventory, goodwill, and reputation of Cinerama, Pentagon, and Carolyn.

c.    Appoint a temporary and permanent receiver to manage the business of Air & Anchor as the *alter ego* of Cinerama during the pendency of this action, and

d.    Grant such other and further relief as this Court deems just and proper.

27

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and derivatively on behalf of Cinerama Jewelry, Inc., and Pentagon Properties, Inc.,
by their attorneys,

*/s/ Jeffrey K. Techentin*
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

*/s/ Kurt T. Kalberer II*
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: April 22, 2026

28

## VERIFICATION

I, Carolyn Rafaelian, individually, and as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, have read the foregoing factual allegations of this Amended Verified Complaint and, based upon my personal knowledge and review of various documents, the allegations are true and correct, except for those allegations which are made upon information and belief, and as to those allegations, they are true and correct to the best of my knowledge, information and belief.

_____
Carolyn Rafaelian, Individually and as Trustee

STATE OF ___RI___

COUNTY OF ___WASHINGTON___

On this 22ND day of __APRIL__ 2026, before me, the undersigned notary public, personally appeared Carolyn Rafaelian, personally known to me or proved to the notary through satisfactory evidence of identification, which was _____ to be the person who signed the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge, information, and belief.

Notary Public _Lori A. Macentee_

My Commission Expires: _3/14/2030_

Notary Number: _768435_

> LORI A. MACENTEE
> Notary Public, State of Rhode Island
> My Commission Expires March 14, 2030

4912-7998-9902, v. 2

29

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ Jeffrey K. Techentin

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620904
Reviewer: Katherine M.

# EXHIBIT A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Kathleen M.

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made and entered into on the date, between the parties and upon the terms and conditions hereinafter set forth.

    a.    Date of Lease: as of July 1, 2020

    b.    Lessor: Pentagon Properties, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

    c.    Lessee: Cinerama Jewelry, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

    d.    Term of Lease: (1) From: July 1, 2020
                   (2) to and including: June 30, 2025

    e.    Description of Premises: Land, building, improvements and parking areas at 1 15 Pettaconsett Avenue, Cranston, Rhode Island, as described in Exhibit A attached hereto and made a part hereof and generally outlined on Exhibit B attached hereto and made a part hereof.

    f.    Purpose: Operation of a jewelry manufacturing business and allied and ancillary activities.

    g.    Rental: The following shall be the Rental to be paid on an annual and monthly basis for the premises:

| Date Rental Commences | Date Rental Terminates | Annual Rental | Monthly Rental |
|---|---|---|---|
| July 1, 2020 | June 30, 2025 | $120,000.00 | $10,000.00 |

### TERMS AND CONDITIONS

## 1. PREMISES

Lessor, in consideration of the rents, covenants and agreements to be paid, kept and performed by Lessee as herein provided, hereby demises and leases unto Lessee the premises described above.

## 2. PURPOSE

The premises shall be used solely for the purpose set forth above and not for any unlawful purpose. Any use of the premises in violation of this provision may be enjoined by Lessor without prejudice to any other remedy therefore.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Kathleen M.

## 3. <u>RENTAL</u>

Lessee shall pay the rental set forth above in consecutive monthly installments, in advance, at the office of Lessor, on the first business day of each month during the term of this lease.

## 4. <u>USE OF PREMISES</u>

Lessee shall not cause or permit any waste or injury to the premises and shall keep the premises free from any and all objectionable noises, odors, rubbish and debris inconsistent with the proper operation of Lessee's usual business therein. Lessee shall conform to all rules and regulations now or hereafter established by Lessor for the general safety, car and cleanliness of the premises an the preservation of good order therein. Lessee shall comply with and observe all statutes, ordinances, regulations, orders and/or decrees of the federal, state and city governments, or any departments, bureaus or agencies thereof, or of any Insurance Inspection or Rating Bureau in any way affecting the use and maintenance of the premises, or any machinery or equipment therein, whether now in force or which may in the future be promulgated.

Lessee shall continuously comply with the provisions of the Occupational Safety and Health Act of 1970, as amended, and the regulations thereunder as well as with all other applicable federal, state or local statutes, ordinances, codes, orders, requirements, laws, rules or regulations relating to occupational health or safety matters, and any expense resulting from such compliance, relating to the premises, the use thereof or the conduct of Lessee's business therein, shall be borne by Lessee. Lessee shall forever hold and keep Lessor harmless and indemnified on account of any loss, cost, damage or liability resulting from the violation by Lessee of any such statute, ordinance, regulation, order or decree or based or in any way arising out of the use and occupancy of the premises by Lessee.

Lessee shall not make any alterations in the premises without the written consent of Lessor, and if such consent be granted, any such alteration shall be made in accordance with all applicable federal, state and municipal laws, rules and regulations. All partitions: toilet facilities and other permanent improvements to the premises shall be a part of the realty and title thereto vested in Lessor. Lessee shall not place a load upon any floor exceeding the floor load per square foot area which the floor was designed to carry and which is allowed by law.

At the expiration or other termination of this Lease, Lessee shall remove from the premises all goods and effects, and peaceably and quietly surrender to Lessor possession of the premises and of all erections and additions made to the same. Lessee will keep the sidewalks, drives and parking areas of the premises free of snow, ice and other accumulations.

## 5. UTILITIES

Lessee shall provided and pay for all heat, water for drinking and other purposes, electricity, gas and nay other utilities consumed on the demised premises and sewer, drainage and related charges or assessments connected therewith.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:03 PM
Envelope: 5620900
Reviewer: Katherine M.

## 6. MAINTENANCE REPAIRS AND REPLACEMENTS

During the term of this Lease, Lessee shall be responsible for all interior and exterior maintenance and repairs to the premises, fixtures and driveways, and shall make all structural repairs and replacements of integral and component parts offte structure, premises and fixtures, toward the end that Lessor shall not be responsible for any maintenance, repairs or replacements of the premises, structure and/or fixtures.

## 7. TAXES ASSESSMENTS AND CHARGES

During the term of this Lease Lessee shall pay all taxes upon the premises. Such taxes shall include: all taxes and special assessments of every kind and nature assessed and levied against the building (as a completed taxable entity), land and fixtures including, but not limited to, any taxes upon the building, land or fixtures levied or imposed by any substitute for real estate or personal property taxes, installments of and interest on assessments for public betterments or public improvements (such assessments to be paid over the longest period permitted by law), all personal property taxes upon air conditioning equipment or similar building appurtenances and expenses, including but not limited to reasonable legal expenses, of any proceedings for abatement of taxes and assessments with respect to the first or any subsequent calendar year of fraction of a calendar year.

## 8. SERVICE CONTRACTS

Lessee shall not enter into any service, maintenance or other contracts relating to the premises which shall terminate after the expiration of the term hereof, without Lessor's written consent.

## 9. FIRE AND CASUALTY

In case the premises shall be destroyed or damaged by fire or other casualty, this lease may be terminated at the election of Lessor but if not so terminated and the premises shall be rendered unfit for occupation on account of a fire or casualty, the Rental hereinbefore reserved, or a just and proportionate part thereof according to the nature and extent of the injury sustained, shall be abated until the premises shall have been put in proper condition by Lessor. Otherwise, this Lease shall continue in full force and effect under its terms.

## 10. CONDEMNATION

In the event the whole or any part of the premises or any interest therein shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate on the date when the possession of the part or interest so taken shall be required for such use or purpose or on the date of such taking or condemnation (at Lessor's option) and without apportionment of the award, it being agreed that Lessor shall be entitled to the entire amount of the award for the premises; provided, however, f only a part of the premises is so taken, and if Lessee can without necessity of any substantial repairing or alteration, carry on its business in the part of the premises not so taken

-3-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 8/22/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

or condemned, this Lease shall continue in full force and effect as to the part not so taken or condemned but there shall be a proportionate adjustment of the Rental to be paid hereunder.

## 11. PROPERTY LOSS OR DAMAGE

All merchandise, furniture and property of any kind, nature and description, belonging to Lessee or any person claiming by, through or under it, which may be in, on or about the premises during the continuance of this Lease, or any extension thereof, is to be at the sole risk and hazard of Lessee; and if the whole or any part thereof shall be destroyed or damaged by fire, water, stream, smoke, by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to or to be borne by Lessor in any case whatsoever.

## 12. IDEMNITY ANDINSURANCE

Lessee agrees to save Lessor harmless from, and indemnify Lessor against, any and all injury, loss or damage of whatever nature to persons or property arising out of the use or occupancy of the premises, or out of any act, omission or negligence of Lessee or anyone claiming under Lessee. Lessee further agrees, in addition to the foregoing and nt in limitation thereof, to indemnify, defend and hold harmless Lessor from and against any and all claims, demands, liabilities, costs, expenses, penalties, damages and losses, including, without limitation, attorneys' fees, as incurred, resulting from or related to any Environmental Condition (as hereinafter defined) or any violation of any Environment Law (as hereinafter defined) in connection with the premises including, but not limited to, any claim for personal injury or property damage arising from any such Environmental Condition or violation of any Environmental Law asserted by third parties against Lessor, any liabilities sustained or incurred by Lessor for the investigation, containment, removal, remedy, cleanup, remediation or abatement of any contamination arising from any Environmental Condition or any violation of any Environmental Law.

The term "Environmental Law' shall mean any law, regulation, rule or order of any governmental entity relating to pollution or protection of the environment (including ambient air, surface water, ground water, land surface or subsurface strata), including, without limitation, CERCLA, as amended, RCRA, as amended, and other federal, state or local laws, regulations, rules and ordinances relating to emissions, discharges or releases of pollutants, contaminants, chemicals, industrial, toxic or hazardous substances or solid or hazardous wastes or petroleum products or gas or any substance detrimental to the environment (collectively, "Polluting Substances") or the manufacture, processing, distribution, use, treatment, handling, storage, disposal and transportation of Polluting Substances. The term "Environmental Condition" shall mean the presence, whether discovered or undiscovered, in surface water, ground water, drinking water supply, land surface, subsurface strata, above ground and underground tanks or other containers, or ambient air of any Polluting Substances arising out of or otherwise related to the operations or other activities (included the disposition of such materials or (substances) conducted or undertaken at the premises by Lessee.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025
Envelope: 5620900
Reviewer: Katherine M.

In the event of any discharge, spillage, contamination, uncontrolled loss, seepage, migration or filtration of a hazardous waste, hazardous substance and/or Polluting Substance within the premises as a result of any conduct of or omission by Lessee, or any employee or agent of Lessee or independent contractor engaged by Lessee, Lessee shall investigate, contain, remove, mitigate or remediate the same immediately in accordance with all applicable federal, state or local laws, ordinances, rules or regulations.

Lessee will maintain general comprehensive public liability insurance naming Lessor as an insured party with respect to the premises and their appurtenances issued by insurance companies authorized to do business in the State of Rhode Island satisfactory to Lessor in amounts not less than One Million Dollars ($1  with respect to injuries to any one person and not less than Three Million Dollars ($3,000,000) with respect to injuries suffered in any one accident, and not less than Five Hundred Thousand Dollars ($500,000) with respect to property damage. Lessee shall deliver to Lessor certificates of such insurance certifying that the same is in full force and effect. Lessee shall pay for insurance against fire and other extended coverage perils pertaining to the premises, naming Lessor as the sole insured party, in amounts not less than One Million Dollars ($1 000,000), with such clauses and with such companies as are designated by Lessor. Such policies may be purchased by Lessor who shall thereupon render invoices to Lessee for the amount of the cost of such insurance which shall be promptly paid by Lessee. The policies of casualty insurance shall be held b Lessor.

## 13. SUBORDINATION

This lease is subject and subordinate to all mortgages which may now or hereafter affect the premises, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any mortgagee. In confirmation of such subordination, Lessee shall execute promptly any certificate that Lessor my request. Lessee hereby constitutes and appoints Lessor Lessee's attorney-in-fact to execute any such certificate or certificates for and on behalf of Lessee. If, in connection with obtaining financing pertaining to the premises or any portion thereof, a banking, insurance or other recognized institutional lender shall request reasonable modifications in this Lease as a condition to such financing, Lessee will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Lessee hereunder or materially and adversely affect the leasehold interest hereby created or Lessee's use and enjoyment of the premises.

## 14. QUIET ENJOYMENT

Lessee, paying the rent and performing all the covenants, terms and conditions in this Lease contained to be performed on the part of Lessee, may peacefully hold and enjoy the premises during the term hereof without any lawful let or hindrance by Lessor or any person claiming by, through or under Lessor.

-5-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 10:23 PM
Envelope: 5620900
Reviewer: Katherine M.

## 15. NO REPRESENTATIONS BY LESSOR

No representations or promises with respect to the premises, except as herein expressly set forth, have been made by Lessor, and Lessee agrees that it takes the same in their present condition and state of repair. The taking of possession by Lessee shall be conclusive evidence as against Lessee that the real estate and personal property were in satisfactory condition at the time such possession was so taken.

## 16. LESSOR'S RIGHT TO PAY MONEY TO EFFECT PERFORMANCE

If Lessee at any time, or from time to time, shall fail to perform any of the covenants, terms and conditions in this Lease contained to be performed on the part of the Lessee, Lessor may immediately, or at any time thereafter, without notice, perform the same for the account of Lessee, and in any such event, any monies paid by Lessor for such purpose shall be deemed to be additional rent due hereunder and shall be payable forthwith to Lessor upon rendition of an invoice therefor.

## 17. NO WAIVER

The failure of Lessor to seek redress for violation of, or to insist upon the strict performance of any covenant,

-6-

Case 1:16-cv-00293-MSM-AEM Document 13 Filed 05/08/25 Page 99 of 377 PageID #: 281

term or condition of this Lease or any of the Rules and Regulations established by Lessor under the provisions of this Lease shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by Lessor of rent, with knowledge of the breach of any such covenant, term or condition, Rule or Regulation shall not be deemed a waiver of such breach and no provision of this Lease shall be deemed to have been waived by Lessor unless such waiver be in writing signed by Lessor.

## 18. ASSIGNMENT

Lessee shall not assign, mortgage, pledge or otherwise encumber this Lease or its interest therein or sublet the whole or any part of the premises without obtaining on each occasion the consent in writing of Lessor. In case of any such assignment, the Assignee shall assume in writing to Lessor the performance and observance of all the convenants, terms and conditions in this Lease contained, to be kept and performed on the part of the Lessee, and such writing of assumption shall be delivered to Lessor simultaneously with said assignment. In the event of any such assignment or subletting, notwithstanding any assumption hereof by the Assignee or sublease, Lessee shall remain primarily liable for the performance of all the covenants, terms and conditions hereof.

## 19. PAYMENTS

All sums due Lessor or any other party under the provisions hereof shall be deemed to be rent due hereunder and Lessor shall have all the rights and remedies relative to the nonpayment thereof as Lessor has for the nonpayment of rent.

## 20. DEFAULTS OF LESSEE AND REMEDIES OF LESSOR

In case of failure on the part of the Lessee to pay the rent and afl other charges herein provided within the fifteen (15) days subsequent to the time when the same shall become due and payable or in case Lessee shall neglect or fail to perform or observe any of the other covenants, terms or conditions imposed upon Lessee by this Lease and fail to remedy and/or remove said breach within fifteen (15) days of the receipt of the notice thereof from Lessor; or in the event that Lessee makes an Assignment for the Benefit of Creditors; or a petition is filed by or against Lessee to adjudicate it a Bankrupt; or a Debtor, Reorganization, Arrangement or similar petition or proceeding be filed by or against Lessee under any chapter or provision of the Bankruptcy Act; or in the event a Receiver is appointed over the assets of Lessee or Lessee's leasehold interest and/or property shall be attached or levied upon, and such receivership, attachment or levy is not vacated and/or removed within fifteen (15) days thereafter; or if the premises shall be deserted or vacated for a period of fifteen (15) consecutive days or more; then in any of the above cases it shall be lawful for Lessor thereupon or at any time thereafter, at Lessor's

option, and notwithstanding any waiver of any prior breach of any covenant, term or condition, to enter into and upon the premises or any part thereof in the name of the whole, by force or otherwise, and repossess the same, and to expel Lessee and those claiming by, through or under it, and remove its effects without being deemed guilty of any manner of trespass, and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:13 PM
Envelope: 5620900
Reviewer: Kathleen M.

upon entry as aforesaid the, term of this Lease shall terminate, provided that Lessor shall not be deemed to have accepted a surrender thereof.

In any such event Lessee shall indemnify and hold harmless Lessor against all loss of rent or other payments due hereunder or which Lessor may suffer by reason of such termination, including damages for anticipatory breach. This Lease shall not continue for the benefit of any Assignee for the Benefit of Creditors, Receiver, Trustee in Bankruptcy, debtor in possession or attaching Creditors.

## 21. ACCESS TO PREMISES

Lessor, Lessor's servants and agents, shall have right to enter upon the premises or any part thereof, without charge, at all reasonable times to inspect the same, to show the demised premises to prospective purchasers or tenants, or to make or facilitate any repairs or alterations to the premises, including without limitation, to install posts or columns to reinforce any floors, and to install, maintain and remove any pipes, wires and other conduits and plumbing, heating or electrical fixtures or equipment. Nothing herein shall be construed to impose any obligation upon Lessor to make repairs, and if such repairs are the obligation of Lessee in accordance with the terms of this Lease, the cost thereof shall be charged to Lessee. If Lessor is obligated by any building or fire law or regulation to construct any additional exits, Lessee will permit the construction thereof without any diminution of rent.

## 22. NO BROKER

Lessee represents that the premises, or any portion of the premises, were not presented to it or to any person representing it by any broker or other person and that no broker or other per was in involved in the leasing of the premises, and warrants that no claim for commission for said leasing shall be presented to Lessor.

## 23. NOTICE

All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, postage prepaid, to the parties at their addresses set forth above, or in the case of Lessee, to the demised premises, or in either case, to such Other person or at such other address as either party may hereafter designated by notice to the other party.

-8-

## 24. PARTIES AND DEFINITIONS

The terms Lessor and Lessee wherever used in this Lease shall include the successors and assigns of the parties, wherever the context requires or permits of such construction, and all of

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:35 PM
Envelope: 5620900
Reviewer: Kathleen M.

the covenants, terms and conditions herein contained successors and assigns of the parties in the same manner as if they were expressly mentioned. The term Lessor as used in this Lease means only the owner for the time being of the premises, so that in the event of any sale, Lessor shall be and Lessor hereby is entirely freed and relieved of all covenants and obligations of Lessor hereunder, it being understood and agreed that the purchaser will have assumed and agreed to carry out any and all obligations of Lessor hereunder.

## 25. MEMORANDUM OF LEASE

Upon the execution hereof, the parties shall also execute a Memorandum of Lease in form reasonably satisfactory to both parties, which Lessee may record.

## 26. AMENDMENTS ADDITIONS AND DELETIONS TO ABOVE LEASE

Any alterations of deletions herein were made in the Lease before execution, and any additional provisions to which the parties have agreed and which are added herein or in any addendum attached hereto shall be considered a part hereof.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date set forth

above.

WITNESS:

LESSOR:

PENTAGON        PROPERTIES, INC.

By: _____

Its: _____

WITNESS:

LESSEE:
CINERAMA JEWELRY, INC.

By: _____

By: _____

Its: _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620904
Reviewer: Katherine M.

# EXHIBIT B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 3:43 PM
Envelope: 5620900
Reviewer: Kathleen M.

## AMENDED AND RESTATED SUBLEASE

1.    **Parties.** (a) This Sublease is by and between **Cinerama Jewelry, Inc.** ("Sublessor"), and **Productive Collaboration, LLC** ("Sublessee"), as a Sublease under the Lease Agreement between Pentagon Properties, Inc. ("Landlord") and Sublessor, as Tenant, as may be amended from time to time (the "Master Lease"). A copy of the current Master Lease is attached hereto, marked Exhibit A, and incorporated herein by reference. This Sublease amends and replaces the Sublease between the parties dated as of the 1st day of February, 2019.

2.    **Provisions Constituting Sublease.**

(a)    Except as expressly set forth herein, this Sublease is subject to all of the terms and conditions of the Master Lease in Exhibit A, and Sublessee shall assume and perform the obligations of Sublessor as Tenant under the Master Lease, to the extent said terms and conditions are applicable to the Premises (as defined below). Sublessee shall not commit or permit to be committed on the Premises any act or omission which shall violate any term or condition of the Master Lease, In the event of the termination of Sublessor's interest as Tenant under the Master Lease for any reason, then this Sublease shall terminate.

(b)    Except as expressly set forth herein, all of the terms and conditions contained in the Master Lease in Exhibit A are incorporated herein, (with each reference therein to Landlord and Tenant to be deemed, except where the context otherwise requires, to refer to Sublessor and Sublessee) and along with all of the following paragraphs set out in this Sublease, shall be the complete terms and conditions of this Sublease.

(c)    Without limiting the generality of the foregoing paragraph, all references to Landlord in Paragraph 12 of the Master Lease, relating to insurance, shall be deemed to refer to Landlord and Sublessor.

(d)    Notwithstanding anything contained in this Sublease to the contrary, except as expressly set forth herein, Sublessee agrees and understands that Sublessor shall have no obligation or responsibility whatsoever to provide or perform any service, repair, alteration or other similar obligation which is the obligation of Landlord to provide or perform pursuant to the terms of the Master Lease. Sublessee further agrees and understands that each such obligation shall be provided or performed by Landlord and not by Sublessor; provided, however, that, where Sublessee shall notify Sublessor that Landlord is not performing any obligation under the Master Lease, Sublessor will promptly request Landlord to perform such obligation. Sublessor shall in no event be liable to Sublessee nor shall Sublessee's obligations under this Sublease be impaired or reduced or the performance thereof excused because of any failure or delay on Landlord's part in the performance or observing any obligations of Landlord under the Master Lease.

3.    **Premises.** Landlord subleases to Sublessee and Sublessee hires from said Sublessor those premises (the "Premises"), including all furniture and appliances described in Exhibit B. In addition, Landlord also hereby subleases to Sublessee and Sublessee hires from said Sublessor those premises of approximately 4,500 square feet located on the lower floor of the building located at 115 Pettaconsett Avenue, Cranston RI 02920 which such space shall be used for storage space (the "Additional Premises"). The parties understand that Sublessor will continue to utilize the remainder of

- 1 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:23 PM
Envelope: 5620900
Reviewer: Katherine M.

the Additional Premises for its own purposes (equipment, storage, etc.) and that the loading dock area may be used in common by Sublessor and Sublessee.

4. **Term.** The term of this Sublease shall be for a period originally commencing on February 1, 2019 (the "Commencement Date") and ending on June 30, 2025, unless sooner terminated pursuant to any provision hereof or extended as set forth below.

**Rent.**

(a) Sublessee shall pay to Sublessor as rent for the Premises the annual amount of $72,540, payable in equal monthly installments of $6,045. Subsequent monthly rent shall be paid in advance on March 1, 2019 and the first day of each succeeding month.

(b) From and after the Commencement Date, Sublessee shall pay as additional rent with respect to the Premises only (and not with respect to the Additional Premises) its pro rata share of all other amounts required to be paid as additional rent under the Master Lease as and when due. For purposes of this Sublease, Sublessee's pro rata share shall be 50%.

(c) Rent for any period during the term hereof which is for less than one (1) month shall be a pro-rata portion of the monthly installment.

(d) Rent shall be payable without notice or demand and without deduction, offset, or abatement, in lawful money of the United States of America to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

(e) If Rent is to be paid on a Saturday, Sunday or holiday, Rent shall be paid on the next succeeding business day.

(f) In addition, Sublessee shall pay to Sublessor as rent for the Additional Premises the annual amount of $12,000, payable in equal monthly installments of $1,000.

5. **Defaults.** If Sublessee shall be in default of any provision of this Sublease relating to the payment of rent, or if Sublessee shall be in default of any other provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessee of written notice from Sublessor specifying the default, then Sublessor may enter the Premises, and repossess the same and expel Sublessee and those claiming under and through Sublessee without being deemed guilty in any manner of trespass, and upon entry as aforesaid, this Sublease shall terminate and Sublessor shall have all rights available to it at law or equity. Sublessee will indemnify Sublessor against all reasonable costs of subletting the Premises and all rent which Sublessor may incur by reason of such termination, provided Sublessor shall make every reasonable effort to mitigate such loss by reletting the Premises. If Sublessor shall be in default of any provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessor of a notice specifying the default, then Sublessee may terminate this Sublease without further obligation of Sublessee, all prepaid rents shall be refunded and Sublessee shall have all rights available to it at law or equity. If either Party shall become insolvent or make a general assignment for the benefit of creditors; or if any proceeding under any bankruptcy or insolvency statute is commenced by or against either Party; or if a receiver, trustee, or liquidator is appointed to take charge of all or substantially all of either Party's assets, then this Sublease may, at the option of the other Party, terminate upon thirty (30) days prior written notice and the terminating party shall have all rights available to it at law or equity.

- 2 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2025 6:03 PM
Envelope: 5620900
Reviewer: Katherine M.

Case 1:25-cv-00203-JJM-AEM Document 1-8 Filed 05/08/25 Page 4 of 5 PageID #: 287

6. **Additional Space.** In the event that at any time during this Sublease additional space is available for sublease within the Premises (in addition to the Additional Premises), the Sublessor shall give Sublessee written notice thereof and Sublessee shall have the first right to lease such additional space upon such reasonable terms and conditions as Sublessor shall determine, provided, however, Sublessee shall exercise its right to sublease such additional space within ten (10) business days of the date Sublessor provides notice to the Sublessee. In the event such additional space is subleased (beyond the Additional Premises) to Sublessee, the Sublessee's pro rata share and percentage of expenses shall be increase appropriately.

7. **Notices.** All notices or demands of any kind required or desired to be given to Sublessor or Sublessee hereunder, including, without limitation, copies of any notices to or from Landlord, shall be provided in accordance with the Master Lease at the address set forth below their signatures at the end of this Sublease.

8. **Return.** Upon termination or expiration of this Sublease, Sublessee shall return and surrender the Premises to Sublessor in the manner required by the Master Lease.

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first set forth above.

**Sublessor:**
Cinerama Jewelry, Inc.

By: _____
　　Rebecca Rafaelian
　　Its:  President
115 Pettaconsett Avenue
Cranston, RI 02920

**Sublessee:**
Productive Collaboration, LLC

By: _____
　　Omar S. Ajaj
　　Its:  Member
115 Pettaconsett Avenue
Cranston, RI 02920

Pursuant to Paragraph 18 of the Master Lease, the undersigned Landlord hereby consents to the foregoing Sublease, all as of the date first written above.

Pentagon Properties, Inc.

By: _____
　　Rebecca Rafaelian
　　President

- 3 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

# Exhibit B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br><br>v.<br><br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI 02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI 02840<br>(401) 841-8330 | **Address of the Defendant**<br>No Known Address |

## TO THE DEFENDANT, Productive Collaboration, LLC:

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)

*Service Accepted*
*Christopher O'Connor*
*Attorney for*
*Productive Collaboration*
*5/7/2026*

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| Carolyn Rafaelian | NC-2025-0531 |

v.

Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.

**Defendant**

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Productive Collaboration, LLC, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____

Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: ____/____/____ | SERVICE FEE $_____ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

# Exhibit C

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

STATE OF RHODE ISLAND            SUPERIOR COURT
NEWPORT, S.C.

CAROLYN RAFAELIAN, INDIVIDUALLY and as :
trustee of THE CAROLYN A. FERLISE QSST
1994 TRUST and THE CAROLYN A.         :
RAFAELIAN TRUST 2004, and derivatively on   :
behalf of Cinerama Jewelry, Inc. and Pentagon
Properties, Inc.                          :
                                      :
        *Plaintiffs,*              :
                                        :
        v.                      :    C.A. No.: NC-2025-0531
                                        :
REBECCA RAFAELIAN CARUOLO,         :
individually and in her role as trustee of The
Rebecca Rafaelian Caruolo QSST 1994 Trust and :
The Rebecca Rafaelian Caruolo Trust 2009,    :
PRODUCTIVE COLLABORATION, LLC,     :
CINERAMA JEWELRY, INC. (Nominal      :
Defendant), and PENTAGON PROPERTIES, INC. :
(Nominal Defendant)                    :
                                      :
        *Defendants.*            :

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Clerk's Office
       Newport County Superior Court
       Murray Judicial Complex
       45 Washington Street
       Newport, RI  02840

       Jeffrey K. Techentin, Esq.
       Geoffrey W. Millsom, Esq.
       Todd D. Amaral, Esq.
       ADLER POLLOCK & SHEEHAN P.C.
       100 Westminster Street, 16th Floor
       Providence, RI  02903

       Kurt T. Kalberer, Esq.
       KALBERER LLP
       231 Royal Palm Way
       Palm Beach, FL 33480

1

Christine K. Bush, Esq.
Mitchell R. Edwards, Esq.
MacKenzie C. McBurney, Esq.
HINKLEY ALLEN
100 Westminster Street
Suite 1400
Providence, RI, 02903

Please take notice that on May 8, 2026, the above-captioned action has been removed to

the United States District Court for the District of Rhode Island pursuant to 28 U.S.C §§ 1331,

1441 and 1446. A copy of the Notice of Removal, with exhibits, filed with the United States

District Court is attached hereto.

Respectfully submitted,
Defendant Productive Collaboration, LLC
By its attorneys,


*/s/ Christopher J. O'Connor*
*/s/Joseph V. Cavanagh, III*
Christopher J. O'Connor, Esq. (#5078)
Joseph V. Cavanagh, III, Esq. (#6907)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel:     (401) 831-8900
Fax:     (401) 751-7542
cjo@blishcavlaw.com
jvc3@blishcavalaw.com


Dated:   May 8, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 8, 2026, I electronically filed and served this document

through the electronic filing system.  The document is available for viewing and/or downloading

from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Christopher J. O'Connor*
 Christopher J. O'Connor

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 6/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carolyn Rafaelian, et al.

**DEFENDANTS**

Rebecca Rafaelian Caruolo, et al.

**(b)** County of Residence of First Listed Plaintiff   Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Providence
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment

Attorneys *(If Known)*

See attachment

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [x] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
§43(a)(1) of the Lanham Act (15 U.S.C. §1125 (a)(1))

Brief description of cause:
False association/designation of origin and false advertising.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   May 8, 2026

SIGNATURE OF ATTORNEY OF RECORD   /s/Christopher J. O'Connor

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

## ATTACHMENT

1. **All Plaintiffs:**

   Jeffrey K. Techentin, Esq.
   Geoffrey W. Millsom, Esq.
   Todd D. Amaral, Esq.
   ADLER POLLOCK & SHEEHAN P.C.
   100 Westminster Street, 16th Floor
   Providence, RI  02903

   Kurt T. Kalberer, Esq.
   KALBERER LLP
   231 Royal Palm Way
   Palm Beach, FL 33480

2. **Defendant Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009**

   Christine K. Bush, Esq.
   Mitchell R.  Edwards, Esq.
   MacKenzie C. McBurney, Esq.
   HINKLEY ALLEN
   100 Westminster Street
   Suite 1400
   Providence, RI, 02903

3. **Defendant Productive Collaboration, LLC:**

   Christopher J. O'Connor, Esq.
   Joseph V. Cavanagh, III, Esq.
   BLISH & CAVANAGH, LLP
   Commerce Center
   30 Exchange Terrace
   Providence, RI 02903

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

STATE OF RHODE ISLAND                                         SUPERIOR COURT
NEWPORT, S.C.

CAROLYN RAFAELIAN, INDIVIDUALLY and as:
trustee of THE CAROLYN A. FERLISE QSST
1994 TRUST and THE CAROLYN A.                    :
RAFAELIAN TRUST 2004, and derivatively on        :
behalf of Cinerama Jewelry, Inc. and Pentagon    :
Properties, Inc.                                 :
                                                 :
            *Plaintiffs,*                         :
                                                 :
            v.                                    :      C.A. No.: NC-2025-0531
                                                 :
REBECCA RAFAELIAN CARUOLO,                        :
individually and in her role as trustee of The   :
Rebecca Rafaelian Caruolo QSST 1994 Trust and    :
The Rebecca Rafaelian Caruolo Trust 2009,        :
PRODUCTIVE COLLABORATION, LLC,                    :
CINERAMA JEWELRY, INC. (Nominal                   :
Defendant), and PENTAGON PROPERTIES, INC. :
(Nominal Defendant)                               :
                                                 :
            *Defendants.*                         :

### NOTICE OF FILING OF NOTICE OF REMOVAL

To:     Clerk's Office
        Newport County Superior Court
        Murray Judicial Complex
        45 Washington Street
        Newport, RI  02840

        Jeffrey K. Techentin, Esq.
        Geoffrey W. Millsom, Esq.
        Todd D. Amaral, Esq.
        ADLER POLLOCK & SHEEHAN P.C.
        100 Westminster Street, 16th Floor
        Providence, RI  02903

        Kurt T. Kalberer, Esq.
        KALBERER LLP
        231 Royal Palm Way
        Palm Beach, FL 33480

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

Christine K. Bush, Esq.
Mitchell R.  Edwards, Esq.
MacKenzie C. McBurney, Esq.
Hinkley Allen
100 Westminster Street
Suite 1400
Providence, RI, 02903


Please take notice that on May 8, 2026, the above-captioned action has been removed to

the United States District Court for the District of Rhode Island pursuant to 28 U.S.C §§ 1331,

1441 and 1446.   A copy of the Notice of Removal, with exhibits, filed with the United States

District Court is attached hereto.

Respectfully submitted,
Defendant Productive Collaboration, LLC
By its attorneys,


*/s/ Christopher J. O'Connor*
*/s/Joseph V. Cavanagh, III*
Christopher J. O'Connor, Esq. (#5078)
Joseph V. Cavanagh, III, Esq. (#6907)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel:    (401) 831-8900
Fax:    (401) 751-7542
cjo@blishcavlaw.com
jvc3@blishcavalaw.com



Dated:   May 8, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 4:15 PM
Envelope: 5656909
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 118 of 377 PageID #: 300

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 8, 2026, I electronically filed and served this document

through the electronic filing system.  The document is available for viewing and/or downloading

from the Rhode Island Judiciary's Electronic Filing System.


<div align="right">

/s/ *Christopher J. O'Connor*
Christopher J. O'Connor

</div>

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 3:53 PM
Envelope: 5656821
Reviewer: Katherine M.

STATE OF RHODE ISLAND                                     SUPERIOR COURT
NEWPORT, S.C.

CAROLYN RAFAELIAN, INDIVIDUALLY and as :
trustee of THE CAROLYN A. FERLISE QSST :
1994 TRUST and THE CAROLYN A. :
RAFAELIAN TRUST 2004, and derivatively on :
behalf of Cinerama Jewelry, Inc. and Pentagon :
Properties, Inc. :
                                                          :
            *Plaintiffs,*                                 :
                                                          :
            v.                                            :     C.A. No.: NC-2025-0531
                                                          :
REBECCA RAFAELIAN CARUOLO, :
individually and in her role as trustee of The :
Rebecca Rafaelian Caruolo QSST 1994 Trust and :
The Rebecca Rafaelian Caruolo Trust 2009, :
PRODUCTIVE COLLABORATION, LLC, :
CINERAMA JEWELRY, INC. (Nominal :
Defendant), and PENTAGON PROPERTIES, INC. :
(Nominal Defendant) :
                                                          :
            *Defendants.*                                 :

## ENTRY OF APPEARANCE

I, Joseph V. Cavanagh, III, Esq., hereby enter my appearance on behalf of Defendant

Productive Collaboration, LLC.

                                            */s/ Joseph V. Cavanagh, III*
                                            Joseph V. Cavanagh, III, Esq. (#6907)
                                            Blish & Cavanagh, LLP
                                            Commerce Center
                                            30 Exchange Terrace
                                            Providence, RI 02903
                                            Tel: (401) 831-8900
                                            Fax: (401) 751-7542
                                            jvc3@blishcavlaw.com

Dated: May 8, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 3:53 PM
Envelope: 5656821
Reviewer: Katherine M.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2026, I electronically filed and served this document

through the electronic filing system.  The document is available for viewing and/or downloading

from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Joseph V. Cavanagh, III*
Joseph V. Cavanagh, III

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 3:47 PM
Envelope: 5656790
Reviewer: John G.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, S.C.

|  |  |  |
|---|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as: trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. | : : : : : : |  |
| *Plaintiffs,* | : : |  |
| v. | : : | C.A. No.: NC-2025-0531 |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant), and PENTAGON PROPERTIES, INC. (Nominal Defendant) | : : : : : : : : : |  |
| *Defendants.* | : |  |

## ENTRY OF APPEARANCE

I, Christopher J. O'Connor, Esq., hereby enter my appearance on behalf of Defendant

Productive Collaboration, LLC.

/s/ Christopher J. O'Connor
Christopher J. O'Connor, Esq. (#5078)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel: (401) 831-8900
Fax: (401) 751-7542
cjo@blishcavlaw.com

Dated: May 8, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 5/8/2026 3:47 PM
Envelope: 5656790
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 122 of 377 PageID #: 304

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2026, I electronically filed and served this document

through the electronic filing system. The document is available for viewing and/or downloading

from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Christopher J. O'Connor*
Christopher J. O'Connor



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br><br> v.<br><br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI 02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI 02840<br>(401) 841-8330 | **Address of the Defendant**<br>115 Pettaconsett Avenue<br>Cranston RI 02920 |

**TO THE DEFENDANT, Cinerama Jewelry, Inc.:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff**<br>Carolyn Rafaelian<br> v.<br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Civil Action File Number**<br>NC-2025-0531 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Cinerama Jewelry, Inc., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
  Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

  _____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____          SERVICE FEE $_____
           Month   Day   Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE



SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.


_____
 Signature

State of _____
County of _____

On this _____ day of _____, 20_____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

|  | **Civil Action File Number**<br>NC-2025-0531 |
|---|---|
| **Plaintiff**<br>Carolyn Rafaelian<br><br> v.<br><br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI 02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI 02840<br>(401) 841-8330 | **Address of the Defendant**<br>No Known Address |

**TO THE DEFENDANT, Productive Collaboration, LLC:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |
|---|---|

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** Carolyn Rafaelian v. Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al. **Defendant** | **Civil Action File Number** NC-2025-0531 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Productive Collaboration, LLC, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
  Name of person of suitable age and discretion _____
  Address of dwelling house or usual place of abode _____
  _____
  Age _____
  Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
  _____

☐ With a guardian or conservator of the Defendant.
  Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
  Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
  Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

  _____

☐ I was unable to make service after the following reasonable attempts: _____
_____

SERVICE DATE: _____/_____/_____          SERVICE FEE $_____
              Month    Day    Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE


SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

   On this _____ day of _____, 20_____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                                        Notary Public: _____
                                        My commission expires: _____
                                        Notary identification number: _____


Page 2 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br><br> v.<br><br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI  02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI  02840<br>(401) 841-8330 | **Address of the Defendant**<br>c/o 100 Centerville Road<br>Suite 1<br>Warwick RI  02886 |

**TO THE DEFENDANT, Pentagon Properties, Inc.:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| Plaintiff<br>Carolyn Rafaelian<br> v.<br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Civil Action File Number**<br>NC-2025-0531 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Pentagon Properties, Inc., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

| | |
|---|---|
| SERVICE DATE: _____/_____/_____ <br> Month    Day    Year | SERVICE FEE $_____ |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____
County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br><br> v.<br>Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jeffrey K Techentin<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>100 Westminster Street 16th Floor<br>PROVIDENCE RI  02903-1345 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI  02840<br>(401) 841-8330 | **Address of the Defendant**<br>57 Hines Farm Road<br>Cranston RI  02921 |

**TO THE DEFENDANT, Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/1/2026. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| Carolyn Rafaelian | NC-2025-0531 |

v.

Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 et al.

**Defendant**

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Rebecca Rafaelian Caruolo, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____        SERVICE FEE $_____
Month    Day    Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
Signature

State of _____
County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

STATE OF RHODE ISLAND            SUPERIOR COURT
NEWPORT, S.C.

|  |  |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. <br><br> *Plaintiffs*, <br><br> v. <br><br> REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant), and PENTAGON PROPERTIES, INC. (Nominal Defendant) <br><br> *Defendants*. | C.A. No. NC-2025-0531 |

## AMENDED VERIFIED COMPLAINT

Carolyn Rafaelian ("Carolyn"), by her undersigned counsel, hereby brings this Amended Verified Complaint for Damages, Appointment of a Temporary and Permanent Receiver, and Injunctive Relief, and Jury Trial Demand, and sues in her individual capacity and, as trustee on behalf of certain shareholding trusts hereinafter specified, and derivatively on behalf of Nominal Defendants Cinerama Jewelry, Inc. ("Cinerama" or the "Factory") and Pentagon Properties, Inc. ("Pentagon"), and against Rebecca Rafaelian Caruolo ("Rebecca"), individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, and Productive Collaboration, LLC d/b/a Air & Anchor ("Productive Collaboration"

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 136 of 377 PageID #: 318

or ("Air & Anchor") for: damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rebecca Rafaelian Caruolo; damages for aiding and abetting a breach of fiduciary duty and conversion, violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))  and an equitable decree of alter-ego Air & Anchor and for the appointment of a receiver of Air & Anchor; and for preliminary and permanent injunctive relief against all Defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon.

## I.      INTRODUCTION

1.      This is a family shareholder dispute involving the complete defalcation of a preeminent Rhode Island jewelry company, Cinerama, by its majority shareholder and President, Rebecca.  In concert with Air & Anchor, and unknown to Carolyn, Rebecca used her position as President of Cinerama to create a new business venture using all of the assets of Cinerama, as well as those of Pentagon, for the sole purpose of excluding and divesting Carolyn of her interest in Cinerama and Pentagon.

2.      Specifically, this is an action for, among other things, shareholder oppression and self-dealing by Rebecca, the President and shareholder of two (2) separate Rhode Island close corporations indirectly owned by her and Carolyn.  The conduct of Rebecca relative to these companies has had the cumulative effect of completely "freezing out" Carolyn, as well as severely diminishing the value of the companies' shares.

3.      Concealed from Carolyn as a mere subtenant leasing a portion of space from Cinerama to start a jewelry business, the new enterprise, Air & Anchor, is in fact a knock-off of Carolyn's Alex + Ani jewelry brand, created from the complete takeover and de facto liquidation

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

of Cinerama and its assets. Indeed, Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and is the functional *alter ego* of Cinerama. Upon information and belief, Rebecca manages and controls the daily operations of the new enterprise, leaving Cinerama a shell company, existing merely to conceal the misappropriation of Cinerama's assets, subsidize Rebecca's new business venture, and mislead Carolyn as to the value of her shares in Cinerama.

4.      By this lawsuit, Carolyn seeks to protect, preserve and realize the full value of her shareholder interest in her family's businesses and their assets, reputation, image, and goodwill, and to protect her own assets, reputation, image and commercial likeness of entities previously or currently closely associated with her in the marketplace for fine custom retail jewelry, from the wrongful acts of the Defendants as hereinafter alleged.

5.      As the President of Cinerama and Pentagon, and indirect majority shareholder in Cinerama, Rebecca has a fiduciary obligation to protect, preserve and maximize the value of the respective companies' business opportunities for the benefit of all of its shareholders, not just herself.

6.      Notwithstanding this obligation, Rebecca never presented the new Air & Anchor opportunity to Cinerama, Pentagon, or Carolyn. Instead, Rebecca unilaterally, and without Carolyn's knowledge and required consent, allowed Air & Anchor to utilize the assets, name and goodwill of Cinerama, Pentagon, and Carolyn for less than fair value or for no value at all and wrongly converted the property of Cinerama, Pentagon and of Carolyn for the use and benefit of Air & Anchor and Rebecca and to the unfair exclusion of Carolyn. By their conduct, Rebecca and Air & Anchor also deprived Carolyn and continues to deprive her, of existing and prospective economic opportunities.

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

7.     Both individually and derivatively on behalf of Cinerama and Pentagon, Carolyn seeks damages from the Defendants for their acts and omissions as aforesaid and seeks a preliminary and permanent injunction barring the Defendants and all persons with notice thereof from using Cinerama's and Carolyn's assets, image, likeness and goodwill without express permission. Further, Carolyn seeks a declaration that Air & Anchor is the *alter ego* of Cinerama, and the appointment of a receiver of Air & Anchor to effectuate that decree.

## II.    PARTIES

8.     Plaintiff Carolyn is a resident of the State of Florida, an officer and director of Pentagon, an indirect forty three percent (43%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee, namely the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and an indirect fifty percent (50%) shareholder of Pentagon through a trust of which she is a beneficiary and trustee, namely The Carolyn A. Rafaelian Trust-2004.

9.     Plaintiff the Carolyn A. Ferlise QSST Trust-1994 owns a 19.5% interest in Cinerama Jewelry, Inc.

10.    Plaintiff The Carolyn A. Rafaelian Trust-2004 owns a 23.5% interest in Cinerama Jewelry, Inc. and a 50% interest in Pentagon.

11.    Nominal Defendant Cinerama is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at the factory at 115 Pettaconsett Avenue, Cranston, Rhode Island.  Cinerama is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

12.    Nominal Defendant Pentagon is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at 115 Pettaconsett Avenue,

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Cranston, Rhode Island.  Pentagon is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

13.     Defendant Rebecca is a resident of the State of Rhode Island, the sister of Carolyn, an officer and director of Cinerama and Pentagon, an indirect fifty seven percent (57%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee including the Rebecca R. Caruolo QSST 1994 Trust and the Rebecca Rafaelian Caruolo Trust-2004, and a direct fifty percent (50%) shareholder of Pentagon.

14.     Defendant Productive Collaboration, LLC d/b/a Air & Anchor is a Rhode Island limited liability company formed in 2018 by Rachel Ajaj, the niece of Carolyn and Rebecca, Rachel's husband Omar Ajaj, and upon information and belief, Rebecca, as managers and/or members.  It adopted the fictitious name Air & Anchor in June of 2019.

## III.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this dispute and the parties under and pursuant to R.I. Gen Laws §§ 8-2-13 and 14.

16.     Venue of this action is proper in this Court under and pursuant to R.I. Gen Laws § 8-2-27.

## IV.     STATEMENT OF FACTS

### A.     The Family Roots of Cinerama, Alex + Ani, and Air & Anchor

17.     Cinerama was formed by Mr. Ralph Rafaelian in 1966 for the purpose of engaging in the design, manufacture and sale of fine custom jewelry.  From and after its formation until some time prior to his death in 2012, Mr. Rafaelian was the President, Chief Operating Officer and sole shareholder of Cinerama.  Cinerama has at all times been referred to by Ralph, Rebecca, Carolyn, the general public and its customers as the "Factory."

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

18.     In 1991, Mr. Rafaelian formed another Rhode Island corporation, Pentagon,  for the purpose of acquiring, owning and managing certain improved real property including the factory located at 115 Pettaconsett Avenue, Cranston, Rhode Island (the "Property"), which has since then and to date, been the principal manufacturing and place of business for Cinerama, which leases all of premises at the Property.

19.     In 2006, Pentagon also acquired the improved residential property located at 91 Tupelo Hill Drive, Cranston, Rhode Island ("Tupelo Hill").  The Tupelo Hill property is leased to a tenant.

20.     From and after the formation of Pentagon until some time prior to his death, Mr. Rafaelian was President, Chief Operating Officer and sole shareholder of Pentagon.  In approximately 2012, Carolyn and Rebecca each acquired an indirect fifty percent (50%) ownership interest in Pentagon through various trusts of which each was a beneficiary and trustee, and each was appointed and has since then continually served as an officer of Pentagon.

21.     Carolyn was born around the time of Cinerama's formation, and Rebecca a few years later.

22.     From the time they were children, Carolyn and Rebecca spent much of their time around the Factory, later working closely with their father, Mr. Rafaelian.  When Carolyn was a child, her mother Lucy Rafaelian would often send her to the Factory to be with her father to keep her occupied.  Carolyn initially started out "carding" jewelry—the process of presenting jewelry for retail sale on a display card—but quickly learned how to wield a blow torch and to design jewelry in her own unique style and manner.

23.     From and after the time of their initial involvement with Cinerama as children, both Carolyn and Rebecca became increasingly involved in the management and operations of

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Cinerama.  Carolyn was responsible for creative design at Cinerama and her sister, Rebecca, was responsible for manufacturing and operations.

24.    During the time she worked at Cinerama and thereafter, Carolyn purchased and housed a significant inventory of valuable and unique crystals, beads, and stones at Cinerama, which she organized and maintained in boxes located at the Factory and which bore her name, the quantity of the stones, and her signature.

25.    Currently, Rebecca, as the President of Cinerama and its indirect majority and controlling shareholder through her trusts, controls the management and operation of Cinerama.

26.    Moreover, as set forth in Sections 2.7 and 2.8 of the Cinerama corporate Bylaws, Rebecca, as the indirect holder of the majority of the stock issued and outstanding and entitled to vote, controls Cinerama's business and affairs.

**B.    Alex + Ani is Formed, Realized and Achieves Astonishing Success**

27.    In 1999, Carolyn began designing jewelry for certain specialty retailers, then experimented with soldering metals into bracelets and designing charms and figures on them— arguably the start of the more current trend of using jewelry for self-expression.

28.    In 2003, as Carolyn's creative force was beginning to achieve critical mass, she formed Alex + Ani as a domestic corporation.

29.    From and after the time of its initial formation in 2003, Carolyn was the principal owner, officer and creative force behind Alex + Ani, and its financial and creative fortunes soared under her guiding hand. She sought and obtained her first patent for what became the renowned Alex + Ani bangle in 2004.  By 2014, its sales had reached $350 million and its estimated enterprise value was $1 billion.

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

### C.     Carolyn's Family and Cinerama Directly Benefit from her Success

30.     Consistent with the approach she learned from her father, Carolyn always endeavored where practicable and prudent, to do what was right and bring her family and Cinerama along with her and to let them share in the fruits of her creative and business success.

31.     Carolyn awarded all the manufacturing, assembly and related work possible from Alex + Ani to Cinerama, paying fair market value for the use of Cinerama's valuable resources, including its trade secrets, vendors relationships, equipment, management, goodwill and reputation in the industry.  Cinerama and Rebecca profited significantly from Alex + Ani's purchase orders.

32.     Ultimately, in 2016, Alex + Ani entered into an Asset Purchase Agreement with Cinerama, pursuant to which Alex + Ani purchased certain assets of Cinerama for over $100 million dollars.

33.     In addition to the aforesaid commercial arrangements and business transactions between Alex + Ani and Cinerama, Carolyn caused her niece Rachel, and Rachel's husband, Omar, to be employed at Alex + Ani, where they enjoyed significant salaries and benefits.

34.     All of the foregoing benefits that Carolyn bestowed on Cinerama and her family members resulted in substantial financial gains for Cinerama and its shareholders, including Rebecca.

### D.     Rebecca, Rachel and Omar Launch Air & Anchor based upon the Cinerama/Alex + Ani Foundation, Assets, Image and Goodwill

35.     As a consequence of disagreements with the outside equity investors in Alex + Ani, in 2019 Carolyn resigned her position at Alex + Ani, and by 2021, no longer had any management role or equity in the company.

36.     Rachel and her husband Omar also left the employment of Alex + Ani; Rachel left in 2019, and Omar left in 2018.

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

37.    In 2019, Rebecca, Rachel, and Omar saw the distress Alex + Ani was experiencing and recognized the opportunity to duplicate Carolyn's business plan and begin a wholesale manufacturing and retail jewelry enterprise identical to Cinerama and Alex + Ani. Rather than contract with Cinerama for its services as Carolyn had done and build retail business of their own, they conspired and agreed to simply take Cinerama for themselves and designed a scheme to disenfranchise Carolyn from her interest in Cinerama.

38.    Creating a name with striking resemblance to Alex + Ani, in June of 2019 Rebecca and Rachel founded Productive Collaboration, LLC d/b/a Air & Anchor. Their business plan was simple, take over Cinerama entirely via a purported "sublease" and attempt to market its wholesale manufacturing services under the name of a new limited liability company they founded, Productive Collaboration.

39.    Productive Collaboration is a direct competitor of Cinerama.

40.    Productive Collaboration uses Cinerama's phone number, inventory, assets machinery, goodwill, reputation, and vendors, and advertises that it controls the entire Property, as shown below:



9

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

41.    The business plan included the launch of a retail brand under the name Air & Anchor using Cinerama's highly valuable vintage inventory archives, designs, intellectual property, personnel, trade secrets, goodwill, reputation and vendor relationships.

42.    To disguise their scheme, they created a sublease for use of only a portion of the Property's premises, despite occupying the entire Property and misappropriating all of Cinerama's valuable assets for themselves.

43.    Specifically, on or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equal monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease").  A copy of the Cinerama Lease is attached hereto as Exhibit A.  The Cinerama Lease expired on June 30, 2025.

44.    Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's "operation of a jewelry manufacturing business and allied and ancillary activities."  The Cinerama Lease further stated that the "premises shall be used solely for the purpose set forth above and not for any unlawful purpose…."

45.    The Cinerama Lease prohibited subletting except with the written consent of Pentagon.

46.     Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with Air & Anchor providing or affording it with use and occupancy of a portion of the Property (the "Sublease").  The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms.   A copy of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") is attach hereto as Exhibit B.

10

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

47.     Pursuant to the Sublease, Air & Anchor was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.  The rental amount was woefully deficient, drastically below market rate and commercially unreasonable.

**E.     Air & Anchor Converts Cinerama's Goodwill and Engages in False Advertising**

48.     Air & Anchor holds itself out to the public as the "Factory" and having been in business "since 1966" in its sales and marketing efforts including in its jewelry retail store location in Garden City.  According to Air & Anchor's website, "[h]ome is where all of our stories begin.  The same can be said for our business.  It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."  Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present  (last  visited  Feb.  2, 2026).

49.     Carolyn has recently learned that, from its inception, Air & Anchor has in fact occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances, and without her consent, of Carolyn's inventory of unique crystals, beads and stones that she has always stored at the Factory.  Additionally. Air & Anchor advertises Cinerama's vast vintage jewelry inventory archives as their own.  This is made clear by Air & Anchor's public presentation of its image:

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

**Still Made In The U.S.A.**

Our desire to carry on Ralph's legacy led us to reopen the family factory that had fallen vacant, revitalizing connections with local craftsmen and artisans.

In the factory today, we have thousands of vintage beads and charms that Ralph and his team sourced and handcrafted decades ago. We love mixing these pieces into the new jewelry designs we're creating with the intention of them being worn together.

So, what's vintage for jewelry on our website right now? Breathe New Life Vintage Crystal. Find other vintage crystals with the Vintage Caged-Navette Crystal Birthstones.



Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present?srsltid=AfmBOoo6Yq3b0wFvx5fsKd9FxOySMLVElc92wExtPJn5rsGQtm1z5M3K (last visited Feb. 2, 2026).

50.    Air & Anchor has lauded and deploys its connection to Cinerama, Alex + Ani, and the Factory in its public statements and marketing efforts.    From its very beginnings, its representatives have publicly stated or been reported to state, that in the wake of Alex + Ani's demise, "they decided to take over…[the Factory]…and put it—and Rhode Islanders—back to work," that Cinerama's jewelry stones from the "60's, 70's and 80's are still materials that we reset

12

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

and use today," and that in the basement Factory "bins and piles of clunky gold chains, ropes and beads are ready to be worked into future pieces."

51.     In fact, Rachel, in an interview describing the story of Air & Anchor, stated that Air & Anchor's designs use vintage components—"pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s"—that she re-works into modern designs.  Air & Anchor: The Story of A Family Business (youtube.com), https://www.youtube.com/watch?v=XSXLh1GgR0w (last visited Feb. 2, 2026).

52.     Moreover, in a 2024 interview with the Warwick Beacon, Omar explained that Air & Anchor's Garden City retail store was an "extension" of the "factory" "just up the road on Pettaconsett Avenue":

> Air & Anchor, a local jewelry manufacturer and retailer, held a weekend long grand opening ceremony to celebrate its Garden City popup store last week.
>
> With an in-store jewelry factory, Air & Anchor has a unique quality ability to custom create and fit pieces in store. With the focus on locally sourced products and personal customization that comes from making everything in house, owners Rachel and Omar Ajaj consider the store an extension of their factory just up the road on Pettaconsett Avenue.
>
> "You've got our normal retail products, but half of the store, actually, is called the factory," Omar explained. "You can come in and customize your length of chain. You can bead your own necklaces and bracelets. We do permanent jewelry and can even brand our serving boards that we make right here in Providence. So it's really an experiential store."
>
> The factory, which the co-owners Rachel and Omar Ajaj leased about four years ago, Omar explained, was kind of a place his wife Rachel grew up in as a third generation jewelry designer. The building was empty, they chose to lease it before sitting in the big building and saying, "what're we going to do?" That's when they set to building the factory back up.

13

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Ed Kdonian, *Air and Anchor popup has grand opening in Garden City*, Warwick Beacon (June 21, 2023), https://warwickonline.com/stories/air-and-anchor-popup-has-grand-opening-in-garden-city,214248 (last visited Feb. 2, 2026).

### F.    Air & Anchor Colludes with Rebecca to Convert Cinerama's Assets

53.    Former employees of Air & Anchor report that substantial parts of its business and operations are controlled, directed, and managed by Rebecca.  Rebecca identified herself to such employees as a "manager" of Air & Anchor.  She was at the retail store every day, directed such employees to report to her, managed all product requests and quality control, managed relationships and contracts with vendors, and directed that Carolyn should never be admitted to the premises.

54.    In addition, in early 2023, an Air & Anchor employee was directed by Rebecca, Rachel, and/or Omar to go through inventory located on the first floor of Cinerama, including Carolyn's inventory, and to re-box hundreds of inventory boxes, half of which bore Carolyn's name, their quantity, and Carolyn's signature, into new boxes which only bore quantity and SKU numbers such that all the prior identifying marks of Carolyn were removed, and the inventory items were variously immediately sold off, advertised for sale on Air & Anchor's website as vintage products, and the remainder brought to Air & Anchor's retail location for use and sale.  At no time prior to doing so or since, did Air & Anchor or Rebecca seek or obtain Carolyn's consent to such dispositions.  Upon information and belief, this wrongful conduct has continued at least as recently as Fall 2025.

55.    Air & Anchor has the same business address as Cinerama, is wrongfully using its assets and inventory without paying fair value therefor, has and continues to commit conversion of Cinerama's assets, holds itself out to the world as an "extension" or successor of Cinerama, and

14

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

trades upon for its own benefit Cinerama's goodwill, trade name, image and history, such that it is and should be declared the *alter ego* of Cinerama.

**G.      The Necessity of this Action.**

56.      As a result of the Defendants' intentional and wrongful conduct, Cinerama and Pentagon have lost significant potential revenue and the value of Carolyn's respective shares have been severely diluted.   In addition, the launch of Carolyn's new business was materially delayed as she was forced, at significant expense, to acquire new space, equipment, vendors and resources to re-build her significant operations  to support Metal Alchemist, LLC which she could have merely contracted with Cinerama to perform.

57.      Metal Alchemist, LLC, which was organized in or about 2020, engages in the design, manufacture and sale of fine custom jewelry.

58.      Carolyn intended to contract with and/or form a joint venture with Cinerama in order to leverage the significant and valuable resources and inventory stored at Cinerama in support of Metal Alchemist, LLC's operations, in exchange for reasonable consideration to Cinerama; however, Rebecca refused any arrangement, stating that it was not possible.

59.      Upon information and belief, such an arrangement between Metal Alchemist, LLC, and Cinerama is only "not possible" because of the unlawful defalcation of Cinerama's assets for the benefit of Air & Anchor.

60.      Carolyn has made inquiry of Rebecca and her agents about her concerns with Air & Anchor's use of Cinerama  and its assets but has only received false and misleading responses.

61.      On or about April 2021, Rebecca, through her counsel, advised Rebecca that she would no longer receive requests from Carolyn for periodic updates on the status of Cinerama

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

operations and business plans, and that Rebecca had no interest in working with Carolyn on any future endeavors concerning Cinerama and/or Pentagon.

62.    Shortly after Carolyn's rejection of a woefully deficient buy-out offer from Rebecca, in or about December 2021, and, again in or about March 2022, Rebecca, as President of Pentagon, issued an unlawful and improper capital call to Carolyn in the amount of $250,000.00 for repairs to the Property.

63.    The unlawful capital call was made with the intention to coerce Carolyn into selling her shares in Pentagon and Cinerama to Rebecca and remains outstanding.

64.    On or about December 19, 2024, Carolyn, Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter to Rebecca and Cinerama's counsel, detailing certain unlawful and/or wrongful conduct on the parts of the Rebecca, Cinerama and Air & Anchor.

65.    The letter detailed Carolyn's grievance relative to the use and occupancy of the Property by Cinerama and Air & Anchor, including, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Cinerama

**H.    Rebecca Unlawfully Attempts to Extend her Scheme Five Years**

66.    Despite being fully aware of the foregoing dispute, on or about May 1, 2025, without the corporate authorization required by Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a First Amendment to Lease Agreement, purporting to amend the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama.  The Amendment purported to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

16

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 151 of 377 PageID
#: 333

67.     The terms of the Amendment are unconscionable and the Amendment is ineffective and/or otherwise void under Rhode Island law.

68.     Separately, the Amendment was executed by Rebecca on behalf of both parties to the agreement, *i.e.*, Pentagon and Cinerama.  On this issue, Rebecca had a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts to, and the express written authorization or consent of, Carolyn under Rhode Island law.

69.     Rebecca's additional conflicts of interest as President of Pentagon further precluded her from entering into the Amendment on behalf of Pentagon without Carolyn's express authorization, including, without limitation:

> a)  while only a 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at lowest cost to Cinerama;

> b)  the subtenant, Air & Anchor, is owned by a family relative with whom, upon information and belief, Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the lowest cost to the subtenant, thereby giving a personal benefit to a family member and business partner; and

> c)  Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Air & Anchor, and is believed to be working for and on behalf of Air & Anchor  while unlawfully using the assets of Cinerama.

70.     The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon Rebecca to the detriment of Pentagon and Carolyn in violation of Rebecca's fiduciary duty of loyalty under Rhode Island law, causing damages to Carolyn and Pentagon and rendering the Amendment void.

71.     The Cinerama Lease, as purportedly amended by the Amendment, would impose rent through 2030 at a rate that is grossly below market rate and contains other commercially unreasonable terms.

17

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 152 of 377 PageID #: 334

72.    In addition, Rebecca has entered into a lease on behalf of Pentagon with a tenant for the Tupelo Hill property which is also grossly below market rate and contains woefully commercially unreasonable terms.

73.    Upon information and belief, Rebecca has caused Cinerama to suspended all business operations and to cease operating a jewelry manufacturing business, in violation of the Cinerama Lease.

74.    Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, Carolyn provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island law, as well as in violation of Pentagon's corporate By-Laws (the "May 13 Notice"). Further, the May 13 Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease.  Rebecca has caused Cinerama to disregard the May 13 Notice, to conduct business as though the Cinerama Lease and Sublease were in effect, and caused Pentagon to conduct business on the same false premise.

75.    Despite receipt and acknowledgement of the May 13 Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the Property. Cinerama is, upon information and belief, a holdover tenant or tenant at will at this time.

76.    On or about May 14, 2025, Carolyn, in her capacity as Executive Vice President of Pentagon, provided notice to Air & Anchor that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Air & Anchor's's tenancy was terminated effective that same date (June 30, 2025) and that Air & Anchot was to vacate the Property on or before that date (the "May 14 Notice").

77.    Despite receipt and acknowledgement of the May 14th Notice, Air & Anchor has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the

18

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Property.  At this time, Air & Anchor is, upon information and belief, a holdover tenant or tenant at will.

78.     Cinerama and Air & Anchor, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease and each of them  has failed and/or refused to comply with the May 13 Notice and the May 14 Notice, respectively.

79.     Cinerama and Air & Anchor, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease.

80.     Neither Cinerama nor Air & Anchor, individually or collectively, has any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

81.     Accordingly, Carolyn, on behalf of Pentagon, is obliged to protect and preserve Pentagon's rights and has sought the eviction of Cinerama and Air & Anchor from the Property in the District Court.

82.     By letter on or about December 19, 2024, to Rebecca, Carolyn made demand of Cinerama pursuant to R.I. Gen. Laws § 7-1.2-711 and Super. Ct. R. Civ. P. 23.1 that Rebecca act on the basis of the above-described alleged misconduct that had transpired as of that date. Cinerama did not comply with this demand.

83.     Any further effort to obtain answers or to address the claims here made would be futile given Rebecca's majority control of Cinerama, her personal interests and participation in the wrongful actions referenced herein, and the deadlock in voting power and in the management of Pentagon between Rebecca and Carolyn.

84.     Carolyn can fairly and adequately represent the interests of the shareholders of Cinerama and Pentagon in enforcing the rights of the corporations.

19

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 154 of 377 PageID
#: 336

## V.    CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
**(Individually and Derivatively of Cinerama and Pentagon Against Rebecca)**

85.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 84 hereof, inclusive.

86.    As the beneficial majority and controlling shareholder and officer of Cinerama, and as one of two 50% beneficial shareholders of Pentagon, Rebecca owes a fiduciary duty of utmost good faith and loyalty to the company and Carolyn.  Rebecca has breached her duty by engaging in the aforesaid conduct, which includes, among other things, entering into and approving any number of lease and/or sublease agreements on commercially unreasonable and grossly unfair terms to the company, using corporate assets and/or property to bestow personal benefits upon herself and her family members, and, in so doing, failing to maximize the value of the company's shares and by refusing to disclose conflicts of interest to Carolyn, or otherwise obtain Carolyn's informed consent to material business transactions.

87.    As a consequence of her acts and omissions, Rebecca has and continues to breach her fiduciary duty to Carolyn, Cinerama, and Pentagon.

88.    As a consequence of the aforesaid breach of fiduciary duty by Rebecca, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count II – Waste
**(Individually and Derivatively of Cinerama and Pentagon Against Rebecca)**

89.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 88 hereof, inclusive.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

90.     The use and disposition by Rebecca of the assets and/or property of Cinerama and Pentagon as described more fully above for insufficient or no value constitutes waste of Cinerama and/or Pentagon.

91.     As a consequence of Rebecca's waste of corporate assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

## Count III – Conversion
### (Individually and Derivatively of Cinerama Against Rebecca and Air & Anchor)

92.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 91 hereof, inclusive.

93.     Carolyn and/or Cinerama own assets and/or property, including without limitation the assets and inventory described above.

94.     Defendants have converted the aforesaid assets and inventory to their own use and/or control without appropriate or proper authority or permission or consent from, and to the wrongful exclusion of, the rightful owners of the property.

95.     As a consequence of Defendants' wrongful conduct, each of Carolyn and Cinerama has suffered and continue to suffer extensive loss, cost, damage and expense.

## Count IV – Breach of Contract
### (Derivatively of Pentagon against Cinerama)

96.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 96 hereof, inclusive.

97.     Pentagon entered into the Cinerama Lease with Cinerama which constitutes a contract.

98.     Cinerama has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to operate a jewelry manufacturing business, failure

21

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 156 of 377 PageID
#: 338

to pay all rent due under the Cinerama Lease, failure to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection and engaging in unlawful conduct on the premises.

99.     As a result of Cinerama's breach of the lease, Pentagon has and continues to suffer damages.

### Count V – Breach of Contract
### (Derivatively of Cinerama against Air & Anchor)

100.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 99 hereof, inclusive.

101.     Cinerama entered into the Sublease with Air & Anchor, which constitutes a contract.

102.     Air & Anchor has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection, and engaging in unlawful conduct on the premises.

103.     As a result of Air & Anchor's breach of the lease, Cinerama  has and continues to suffer damages.

### Count VI - Civil Liability for Crimes & Offenses
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

104.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 103 hereof, inclusive.

105.     As a consequence of Rebecca's actions set forth above, each of Carolyn, Cinerama, and Pentagon have suffered the conversion of their assets and seek recovery for those offenses as allowed under R.I. Gen. Laws § 9-1-2.

### Count VII - Misappropriation of Corporate Opportunity

22

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

**(Individually and Derivatively of Cinerama & Pentagon Against Rebecca)**

106.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 106 hereof, inclusive.

107.    As a fiduciary to Carolyn, Cinerama and Pentagon, prior to pursuing the formation or organization of Air & Anchor and investing the assets and goodwill of Cinerama into her new business venture, Rebecca should have, but did not, present the same as a corporate opportunity to Cinerama and Pentagon.

108.    As a consequence of Rebecca's failure to present this corporate opportunity to Cinerama and Pentagon, and instead pursuing it in her individual capacity through the wrongful use and conversion of Cinerama's and Pentagon's assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count VII – Aiding and Abetting Breach of Fiduciary Duty
**(Individually and Derivatively of Cinerama and Pentagon against Air & Anchor)**

109.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 108 hereof, inclusive.

110.    By the foregoing acts, including Rebecca's active involvement in the management and affairs of Air & Anchor and its wrongful possession, use and conversion of Cinerama and/or Carolyn's assets, Air & Anchor has and continues to aid and abet Rebecca's breaches of fiduciary duty.

111.    As a consequence of these acts, Air & Anchor is aiding and abetting Rebecca's breach of fiduciary duty, and each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1))
**(False Association/Designation of Origin and False Advertising)**
**(Individually and Derivatively of Cinerama against Air & Anchor)**

23

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

112. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 111 hereof, inclusive.

113. Air & Anchor has and continues to make false or misleading representations of fact in commercial advertising about its business and its products, claiming directly and through implication, and without limitation, that it has been in business since 1966, is the successor "Factory" located at the Property,  is the owner of Cinerama's vast archive of vintage jewelry inventory, machinery, equipment and other assets and is the successor or continuation of Cinerama.

114. The misrepresentations are material to consumers' perception of Air & Anchor's products and likely to influence purchasing decisions.

115. The misrepresentations are likely to cause confusion among the relevant purchasing public.

116. Air & Anchor made the false or misleading statements commercial advertising and/or promotion and in connection with interstate commerce.

117. Cinerama and Carolyn have and continue to be damaged as a result of the misrepresentations, including by either or both direct diversion of sales and a negative impact on goodwill associated with their business or products.

### Count X – Intentional Interference with Prospective Economic Advantage
### (Individually against Rebecca and Air & Anchor)

118. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 117 hereof, inclusive.

119. Conversion of Cinerama's assets, likeness, and goodwill, carries along with it some of Carolyn's brand and it prohibits Carolyn from taking advantage of such and thereby results in additional costs to Carolyn in pursuing her current and future endeavors, including Metal Alchemist, LLC.

24

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

120.     Defendants had knowledge that Carolyn sought to engage in future endeavors in the fine custom retail jewelry industry and intentionally interfered and intended to frustrate such efforts by their aforesaid acts.

121.     As a consequence of such wrongful acts, Carolyn has suffered and continues to suffer extensive loss, cost, damage and expense.

## Count XI – Appointment of a Temporary and Permanent Receiver
### (Against Air & Anchor)

122.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 121 hereof, inclusive.

123.     Pursuant to R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), and (v) and 7-1.2-1316, the facts, actions, and omissions as aforesaid, and in aid of equity and any decree by the Court, the Court should appoint a Temporary and Permanent Receiver to manage the business of Air & Anchor during the pendency of this action, and to recover the misappropriated assets belonging to Cinerama and Carolyn.

## Count XII – Preliminary and Permanent Injunction

124.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 123 hereof, inclusive.

125.     Defendants' acts and omissions as aforesaid, including without limitation, their wrongful and continued use, possession and conversion of Cinerama's assets, inventory, goodwill and reputation has caused and continues to cause Carolyn and Cinerama to suffer irreparable harm and injury for which they lack an adequate remedy at law in the form of damages.

126.     As a consequence of the foregoing, the Defendants and their employees and agents should be permanently enjoined and restrained from continuing to wrongly use and enjoy the assets, inventory, goodwill and reputation of Cinerama.

25

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

### Count XIII – Unjust Enrichment
### (Derivatively on behalf of Cinerama against Air & Anchor)

127.   Plaintiffs incorporate by reference, as if fully set forth herein, the averments of paragraphs 1 through 126 inclusive.

128.   Air & Anchor knowingly received and retained substantial benefits that rightly belonged to Cinerama, including the use of Cinerama's factory space at 115 Pettaconsett Avenue, inventory, machinery, equipment, vendor relationships, trade secrets, trade name, goodwill, reputation, and telephone number, as well as Cinerama's image and history in the marketplace. Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and holds itself out as the successor or "extension" of Cinerama Air & Anchor occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances.

129.   Air & Anchor also exploited Cinerama's vintage inventory archives and associated goodwill to market and sell products and to enhance its brand and sales, without paying fair value to Cinerama or obtaining appropriate authorization. Air & Anchor advertises and sells jewelry using Cinerama's "thousands of vintage beads and charms" and vast vintage inventory archives as its own Air & Anchor claimed business continuity "since 1966" and presented itself as the Factory, thereby trading on Cinerama's reputation and goodwill.

130.   The above benefits to Air & Anchor were conferred at Cinerama's expense, including the loss of the use and value of its premises, assets, inventory, and goodwill, and the diversion of Cinerama's corporate resources and opportunities. Air & Anchor is wrongfully using Cinerama's assets and inventory without paying fair value therefor and has committed conversion

26

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

of Cinerama's assets Cinerama has suffered extensive loss, cost, damage and expense as a consequence of Defendants' wrongful conduct.

131. Air & Anchor's retention of these benefits is inequitable because they were obtained without Cinerama's informed consent or proper authorization, on terms that were drastically below market and commercially unreasonable, and in a manner that deprived Cinerama of fair compensation. Air & Anchor's Sublease payments to Cinerama were $6,045.00 plus $1,000 per month, a rental amount that was woefully deficient, drastically below market rate and commercially unreasonable Air & Anchor's use of Cinerama's assets, inventory, goodwill, trade name, image and history occurred without appropriate or proper authority or permission or consent.

132. Equity and good conscience require that Air & Anchor disgorge and make restitution to Cinerama of the value of the benefits unjustly retained, including, without limitation, the fair market value of the use of Cinerama's premises, assets, inventory, and goodwill, and the profits derived therefrom, in amounts to be proven at trial. Air & Anchor trades upon for its own benefit Cinerama's goodwill, trade name, image and history.

## VI.    PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief:

a. Award Plaintiffs damages including, without limitation, disgorgement of profits, compensatory damages, treble damages under 15 U.S.C. § 1117(a)and punitive damages  interest, costs, and attorneys' fees;

b. Grant preliminary and permanent injunctive relief enjoining and restraining Defendants and their employees and agents from continuing to wrongly use and enjoy the assets, inventory, goodwill, and reputation of Cinerama, Pentagon, and Carolyn.

c. Appoint a temporary and permanent receiver to manage the business of Air & Anchor as the *alter ego* of Cinerama during the pendency of this action, and

d. Grant such other and further relief as this Court deems just and proper.

27

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as
trustee of the Carolyn A. Ferlise QSST Trust-
1994 and The Carolyn A. Rafaelian Trust-2004, and
derivatively on behalf of Cinerama Jewelry, Inc.,
and Pentagon Properties, Inc.,
by their attorneys,

*/s/ Jeffrey K. Techentin*
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607


*/s/ Kurt T. Kalberer II*
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: April 22, 2026

28

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

## VERIFICATION

I, Carolyn Rafaelian, individually, and as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, have read the foregoing factual allegations of this Amended Verified Complaint and, based upon my personal knowledge and review of various documents, the allegations are true and correct, except for those allegations which are made upon information and belief, and as to those allegations, they are true and correct to the best of my knowledge, information and belief.

_____
Carolyn Rafaelian, Individually and as Trustee

STATE OF ___RI___

COUNTY OF __WASHINGTON__

On this 22nd day of __APRIL__ 2026, before me, the undersigned notary public, personally appeared Carolyn Rafaelian, personally known to me or proved to the notary through satisfactory evidence of identification, which was _____ to be the person who signed the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge, information, and belief.

Notary Public _Lori A. macentee_

My Commission Expires: _3/14/2030_

Notary Number: _768435_

> LORI A. MACENTEE
> Notary Public, State of Rhode Island
> My Commission Expires March 14, 2030

4912-7998-9902, v. 2

29

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ Jeffrey K. Techentin

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

# EXHIBIT A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

# LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made and entered into on the date, between the parties and upon the terms and conditions hereinafter set forth.

a. Date of Lease: as of July 1, 2020

b. Lessor: Pentagon Properties, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

c. Lessee: Cinerama Jewelry, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

d. Term of Lease: (1) From: July 1, 2020
                    (2) to and including: June 30, 2025

e. Description of Premises: Land, building, improvements and parking areas at 1 15 Pettaconsett Avenue, Cranston, Rhode Island, as described in Exhibit A attached hereto and made a part hereof and generally outlined on Exhibit B attached hereto and made a part hereof.

f. Purpose: Operation of a jewelry manufacturing business and allied and ancillary activities.

g. Rental: The following shall be the Rental to be paid on an annual and monthly basis for the premises:

| Date Rental Commences | Date Rental Terminates | Annual Rental | Monthly Rental |
|---|---|---|---|
| July 1, 2020 | June 30, 2025 | $120,000.00 | $10,000.00 |

## TERMS AND CONDITIONS

## 1. PREMISES

Lessor, in consideration of the rents, covenants and agreements to be paid, kept and performed by Lessee as herein provided, hereby demises and leases unto Lessee the premises described above.

## 2. PURPOSE

The premises shall be used solely for the purpose set forth above and not for any unlawful purpose. Any use of the premises in violation of this provision may be enjoined by Lessor without prejudice to any other remedy therefore.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

## 3. <u>RENTAL</u>

Lessee shall pay the rental set forth above in consecutive monthly installments, in advance, at the office of Lessor, on the first business day of each month during the term of this lease.

## 4. <u>USE OF PREMISES</u>

Lessee shall not cause or permit any waste or injury to the premises and shall keep the premises free from any and all objectionable noises, odors, rubbish and debris inconsistent with the proper operation of Lessee's usual business therein. Lessee shall conform to all rules and regulations now or hereafter established by Lessor for the general safety, car and cleanliness of the premises an the preservation of good order therein. Lessee shall comply with and observe all statutes, ordinances, regulations, orders and/or decrees of the federal, state and city governments, or any departments, bureaus or agencies thereof, or of any Insurance Inspection or Rating Bureau in any way affecting the use and maintenance of the premises, or any machinery or equipment therein, whether now in force or which may in the future be promulgated.

Lessee shall continuously comply with the provisions of the Occupational Safety and Health Act of 1970, as amended, and the regulations thereunder as well as with all other applicable federal, state or local statutes, ordinances, codes, orders, requirements, laws, rules or regulations relating to occupational health or safety matters, and any expense resulting from such compliance, relating to the premises, the use thereof or the conduct of Lessee's business therein, shall be borne by Lessee. Lessee shall forever hold and keep Lessor harmless and indemnified on account of any loss, cost, damage or liability resulting from the violation by Lessee of any such statute, ordinance, regulation, order or decree or based or in any way arising out of the use and occupancy of the premises by Lessee.

Lessee shall not make any alterations in the premises without the written consent of Lessor, and if such consent be granted, any such alteration shall be made in accordance with all applicable federal, state and municipal laws, rules and regulations. All partitions: toilet facilities and other permanent improvements to the premises shall be a part of the realty and title thereto vested in Lessor. Lessee shall not place a load upon any floor exceeding the floor load per square foot area which the floor was designed to carry and which is allowed by law.

At the expiration or other termination of this Lease, Lessee shall remove from the premises all goods and effects, and peaceably and quietly surrender to Lessor possession of the premises and of all erections and additions made to the same. Lessee will keep the sidewalks, drives and parking areas of the premises free of snow, ice and other accumulations.

## 5. UTILITIES

Lessee shall provided and pay for all heat, water for drinking and other purposes, electricity, gas and nay other utilities consumed on the demised premises and sewer, drainage and related charges or assessments connected therewith.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 168 of 377 PageID #: 350

## 6. MAINTENANCE REPAIRS AND REPLACEMENTS

During the term of this Lease, Lessee shall be responsible for all interior and exterior maintenance and repairs to the premises, fixtures and driveways, and shall make all structural repairs and replacements of integral and component parts offte structure, premises and fixtures, toward the end that Lessor shall not be responsible for any maintenance, repairs or replacements of the premises, structure and/or fixtures.

## 7. TAXES ASSESSMENTS AND CHARGES

During the term of this Lease Lessee shall pay all taxes upon the premises. Such taxes shall include: all taxes and special assessments of every kind and nature assessed and levied against the building (as a completed taxable entity), land and fixtures including, but not limited to, any taxes upon the building, land or fixtures levied or imposed by any substitute for real estate or personal property taxes, installments of and interest on assessments for public betterments or public improvements (such assessments to be paid over the longest period permitted by law), all personal property taxes upon air conditioning equipment or similar building appurtenances and expenses, including but not limited to reasonable legal expenses, of any proceedings for abatement of taxes and assessments with respect to the first or any subsequent calendar year of fraction of a calendar year.

## 8. SERVICE CONTRACTS

Lessee shall not enter into any service, maintenance or other contracts relating to the premises which shall terminate after the expiration of the term hereof, without Lessor's written consent.

## 9. FIRE AND CASUALTY

In case the premises shall be destroyed or damaged by fire or other casualty, this lease may be terminated at the election of Lessor but if not so terminated and the premises shall be rendered unfit for occupation on account of a fire or casualty, the Rental hereinbefore reserved, or a just and proportionate part thereof according to the nature and extent of the injury sustained, shall be abated until the premises shall have been put in proper condition by Lessor. Otherwise, this Lease shall continue in full force and effect under its terms.

## 10. CONDEMNATION

In the event the whole or any part of the premises or any interest therein shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate on the date when the possession of the part or interest so taken shall be required for such use or purpose or on the date of such taking or condemnation (at Lessor's option) and without apportionment of the award, it being agreed that Lessor shall be entitled to the entire amount of the award for the premises; provided, however, f only a part of the premises is so taken, and if Lessee can without necessity of any substantial repairing or alteration, carry on its business in the part of the premises not so taken

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 169 of 377 PageID #: 351

or condemned, this Lease shall continue in full force and effect as to the part not so taken or condemned but there shall be a proportionate adjustment of the Rental to be paid hereunder.

## 11. PROPERTY LOSS OR DAMAGE

All merchandise, furniture and property of any kind, nature and description, belonging to Lessee or any person claiming by, through or under it, which may be in, on or about the premises during the continuance of this Lease, or any extension thereof, is to be at the sole risk and hazard of Lessee; and if the whole or any part thereof shall be destroyed or damaged by fire, water, stream, smoke, by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to or to be borne by Lessor in any case whatsoever.

## 12. IDEMNITY ANDINSURANCE

Lessee agrees to save Lessor harmless from, and indemnify Lessor against, any and all injury, loss or damage of whatever nature to persons or property arising out of the use or occupancy of the premises, or out of any act, omission or negligence of Lessee or anyone claiming under Lessee. Lessee further agrees, in addition to the foregoing and nt in limitation thereof, to indemnify, defend and hold harmless Lessor from and against any and all claims, demands, liabilities, costs, expenses, penalties, damages and losses, including, without limitation, attorneys' fees, as incurred, resulting from or related to any Environmental Condition (as hereinafter defined) or any violation of any Environment Law (as hereinafter defined) in connection with the premises including, but not limited to, any claim for personal injury or property damage arising from any such Environmental Condition or violation of any Environmental Law asserted by third parties against Lessor, any liabilities sustained or incurred by Lessor for the investigation, containment, removal, remedy, cleanup, remediation or abatement of any contamination arising from any Environmental Condition or any violation of any Environmental Law.

The term "Environmental Law' shall mean any law, regulation, rule or order of any governmental entity relating to pollution or protection of the environment (including ambient air, surface water, ground water, land surface or subsurface strata), including, without limitation, CERCLA, as amended, RCRA, as amended, and other federal, state or local laws, regulations, rules and ordinances relating to emissions, discharges or releases of pollutants, contaminants, chemicals, industrial, toxic or hazardous substances or solid or hazardous wastes or petroleum products or gas or any substance detrimental to the environment (collectively, "Polluting Substances") or the manufacture, processing, distribution, use, treatment, handling, storage, disposal and transportation of Polluting Substances. The term "Environmental Condition" shall mean the presence, whether discovered or undiscovered, in surface water, ground water, drinking water supply, land surface, subsurface strata, above ground and underground tanks or other containers, or ambient air of any Polluting Substances arising out of or otherwise related to the operations or other activities (included the disposition of such materials or (substances) conducted or undertaken at the premises by Lessee.

-4-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

In the event of any discharge, spillage, contamination, uncontrolled loss, seepage, migration or filtration of a hazardous waste, hazardous substance and/or Polluting Substance within the premises as a result of any conduct of or omission by Lessee, or any employee or agent of Lessee or independent contractor engaged by Lessee, Lessee shall investigate, contain, remove, mitigate or remediate the same immediately in accordance with all applicable federal, state or local laws, ordinances, rules or regulations.

Lessee will maintain general comprehensive public liability insurance naming Lessor as an insured party with respect to the premises and their appurtenances issued by insurance companies authorized to do business in the State of Rhode Island satisfactory to Lessor in amounts not less than One Million Dollars ($1  with respect to injuries to any one person and not less than Three Million Dollars ($3,000,000) with respect to injuries suffered in any one accident, and not less than Five Hundred Thousand Dollars ($500,000) with respect to property damage. Lessee shall deliver to Lessor certificates of such insurance certifying that the same is in full force and effect. Lessee shall pay for insurance against fire and other extended coverage perils pertaining to the premises, naming Lessor as the sole insured party, in amounts not less than One Million Dollars ($1 000,000), with such clauses and with such companies as are designated by Lessor. Such policies may be purchased by Lessor who shall thereupon render invoices to Lessee for the amount of the cost of such insurance which shall be promptly paid by Lessee. The policies of casualty insurance shall be held b Lessor.

## 13. <u>SUBORDINATION</u>

This lease is subject and subordinate to all mortgages which may now or hereafter affect the premises, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any mortgagee. In confirmation of such subordination, Lessee shall execute promptly any certificate that Lessor my request. Lessee hereby constitutes and appoints Lessor Lessee's attorney-in-fact to execute any such certificate or certificates for and on behalf of Lessee. If, in connection with obtaining financing pertaining to the premises or any portion thereof, a banking, insurance or other recognized institutional lender shall request reasonable modifications in this Lease as a condition to such financing, Lessee will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Lessee hereunder or materially and adversely affect the leasehold interest hereby created or Lessee's use and enjoyment of the premises.

## 14. <u>QUIET ENJOYMENT</u>

Lessee, paying the rent and performing all the covenants, terms and conditions in this Lease contained to be performed on the part of Lessee, may peacefully hold and enjoy the premises during the term hereof without any lawful let or hindrance by Lessor or any person claiming by, through or under Lessor.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

## 15. NO REPRESENTATIONS BY LESSOR

No representations or promises with respect to the premises, except as herein expressly set forth, have been made by Lessor, and Lessee agrees that it takes the same in their present condition and state of repair. The taking of possession by Lessee shall be conclusive evidence as against Lessee that the real estate and personal property were in satisfactory condition at the time such possession was so taken.

## 16. LESSOR'S RIGHT TO PAY MONEY TO EFFECT PERFORMANCE

If Lessee at any time, or from time to time, shall fail to perform any of the covenants, terms and conditions in this Lease contained to be performed on the part of the Lessee, Lessor may immediately, or at any time thereafter, without notice, perform the same for the account of Lessee, and in any such event, any monies paid by Lessor for such purpose shall be deemed to be additional rent due hereunder and shall be payable forthwith to Lessor upon rendition of an invoice therefor.

## 17. NO WAIVER

The failure of Lessor to seek redress for violation of, or to insist upon the strict performance of any covenant,

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 172 of 377 PageID #: 354

term or condition of this Lease or any of the Rules and Regulations established by Lessor under the provisions of this Lease shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by Lessor of rent, with knowledge of the breach of any such covenant, term or condition, Rule or Regulation shall not be deemed a waiver of such breach and no provision of this Lease shall be deemed to have been waived by Lessor unless such waiver be in writing signed by Lessor.

## 18. ASSIGNMENT

Lessee shall not assign, mortgage, pledge or otherwise encumber this Lease or its interest therein or sublet the whole or any part of the premises without obtaining on each occasion the consent in writing of Lessor. In case of any such assignment, the Assignee shall assume in writing to Lessor the performance and observance of all the convenants, terms and conditions in this Lease contained, to be kept and performed on the part of the Lessee, and such writing of assumption shall be delivered to Lessor simultaneously with said assignment. In the event of any such assignment or subletting, notwithstanding any assumption hereof by the Assignee or sublease, Lessee shall remain primarily liable for the performance of all the covenants, terms and conditions hereof.

## 19. PAYMENTS

All sums due Lessor or any other party under the provisions hereof shall be deemed to be rent due hereunder and Lessor shall have all the rights and remedies relative to the nonpayment thereof as Lessor has for the nonpayment of rent.

## 20. DEFAULTS OF LESSEE AND REMEDIES OF LESSOR

In case of failure on the part of the Lessee to pay the rent and afl other charges herein provided within the fifteen (15) days subsequent to the time when the same shall become due and payable or in case Lessee shall neglect or fail to perform or observe any of the other covenants, terms or conditions imposed upon Lessee by this Lease and fail to remedy and/or remove said breach within fifteen (15) days of the receipt of the notice thereof from Lessor; or in the event that Lessee makes an Assignment for the Benefit of Creditors; or a petition is filed by or against Lessee to adjudicate it a Bankrupt; or a Debtor, Reorganization, Arrangement or similar petition or proceeding be filed by or against Lessee under any chapter or provision of the Bankruptcy Act; or in the event a Receiver is appointed over the assets of Lessee or Lessee's leasehold interest and/or property shall be attached or levied upon, and such receivership, attachment or levy is not vacated and/or removed within fifteen (15) days thereafter; or if the premises shall be deserted or vacated for a period of fifteen (15) consecutive days or more; then in any of the above cases it shall be lawful for Lessor thereupon or at any time thereafter, at Lessor's

option, and notwithstanding any waiver of any prior breach of any covenant, term or condition, to enter into and upon the premises or any part thereof in the name of the whole, by force or otherwise, and repossess the same, and to expel Lessee and those claiming by, through or under it, and remove its effects without being deemed guilty of any manner of trespass, and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

upon entry as aforesaid the, term of this Lease shall terminate, provided that Lessor shall not be deemed to have accepted a surrender thereof.

In any such event Lessee shall indemnify and hold harmless Lessor against all loss of rent or other payments due hereunder or which Lessor may suffer by reason of such termination, including damages for anticipatory breach. This Lease shall not continue for the benefit of any Assignee for the Benefit of Creditors, Receiver, Trustee in Bankruptcy, debtor in possession or attaching Creditors.

## 21. ACCESS TO PREMISES

Lessor, Lessor's servants and agents, shall have right to enter upon the premises or any part thereof, without charge, at all reasonable times to inspect the same, to show the demised premises to prospective purchasers or tenants, or to make or facilitate any repairs or alterations to the premises, including without limitation, to install posts or columns to reinforce any floors, and to install, maintain and remove any pipes, wires and other conduits and plumbing, heating or electrical fixtures or equipment. Nothing herein shall be construed to impose any obligation upon Lessor to make repairs, and if such repairs are the obligation of Lessee in accordance with the terms of this Lease, the cost thereof shall be charged to Lessee. If Lessor is obligated by any building or fire law or regulation to construct any additional exits, Lessee will permit the construction thereof without any diminution of rent.

## 22. NO BROKER

Lessee represents that the premises, or any portion of the premises, were not presented to it or to any person representing it by any broker or other person and that no broker or other per was in involved in the leasing of the premises, and warrants that no claim for commission for said leasing shall be presented to Lessor.

## 23. NOTICE

All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, postage prepaid, to the parties at their addresses set forth above, or in the case of Lessee, to the demised premises, or in either case, to such Other person or at such other address as either party may hereafter designated by notice to the other party.

-8-

## 24. PARTIES AND DEFINITIONS

The terms Lessor and Lessee wherever used in this Lease shall include the successors and assigns of the parties, wherever the context requires or permits of such construction, and all of

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 174 of 377 PageID #: 356

the covenants, terms and conditions herein contained successors and assigns of the parties in the same manner as if they were expressly mentioned. The term Lessor as used in this Lease means only the owner for the time being of the premises, so that in the event of any sale, Lessor shall be and Lessor hereby is entirely freed and relieved of all covenants and obligations of Lessor hereunder, it being understood and agreed that the purchaser will have assumed and agreed to carry out any and all obligations of Lessor hereunder.

## 25. MEMORANDUM OF LEASE

Upon the execution hereof, the parties shall also execute a Memorandum of Lease in form reasonably satisfactory to both parties, which Lessee may record.

## 26. AMENDMENTS ADDITIONS AND DELETIONS TO ABOVE LEASE

Any alterations of deletions herein were made in the Lease before execution, and any additional provisions to which the parties have agreed and which are added herein or in any addendum attached hereto shall be considered a part hereof.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date set forth above.

WITNESS:

LESSOR:

PENTAGON PROPERTIES, INC.

By: _____

Its: _____

WITNESS:

LESSEE:
CINERAMA JEWELRY, INC.

By: _____

By:

Its: _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

# EXHIBIT B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 176 of 377 PageID #: 358

## AMENDED AND RESTATED SUBLEASE

1.      **Parties.** (a) This Sublease is by and between **Cinerama Jewelry, Inc.** ("Sublessor"), and **Productive Collaboration, LLC** ("Sublessee"), as a Sublease under the Lease Agreement between Pentagon Properties, Inc. ("Landlord") and Sublessor, as Tenant, as may be amended from time to time (the "Master Lease"). A copy of the current Master Lease is attached hereto, marked Exhibit A, and incorporated herein by reference. This Sublease amends and replaces the Sublease between the parties dated as of the 1st day of February, 2019.

2.      **Provisions Constituting Sublease.**

(a)      Except as expressly set forth herein, this Sublease is subject to all of the terms and conditions of the Master Lease in Exhibit A, and Sublessee shall assume and perform the obligations of Sublessor as Tenant under the Master Lease, to the extent said terms and conditions are applicable to the Premises (as defined below). Sublessee shall not commit or permit to be committed on the Premises any act or omission which shall violate any term or condition of the Master Lease. In the event of the termination of Sublessor's interest as Tenant under the Master Lease for any reason, then this Sublease shall terminate.

(b)      Except as expressly set forth herein, all of the terms and conditions contained in the Master Lease in Exhibit A are incorporated herein, (with each reference therein to Landlord and Tenant to be deemed, except where the context otherwise requires, to refer to Sublessor and Sublessee) and along with all of the following paragraphs set out in this Sublease, shall be the complete terms and conditions of this Sublease.

(c)      Without limiting the generality of the foregoing paragraph, all references to Landlord in Paragraph 12 of the Master Lease, relating to insurance, shall be deemed to refer to Landlord and Sublessor.

(d)      Notwithstanding anything contained in this Sublease to the contrary, except as expressly set forth herein, Sublessee agrees and understands that Sublessor shall have no obligation or responsibility whatsoever to provide or perform any service, repair, alteration or other similar obligation which is the obligation of Landlord to provide or perform pursuant to the terms of the Master Lease. Sublessee further agrees and understands that each such obligation shall be provided or performed by Landlord and not by Sublessor; provided, however, that, where Sublessee shall notify Sublessor that Landlord is not performing any obligation under the Master Lease, Sublessor will promptly request Landlord to perform such obligation. Sublessor shall in no event be liable to Sublessee nor shall Sublessee's obligations under this Sublease be impaired or reduced or the performance thereof excused because of any failure or delay on Landlord's part in the performance or observing any obligations of Landlord under the Master Lease.

3.      **Premises.** Landlord subleases to Sublessee and Sublessee hires from said Sublessor those premises (the "Premises"), including all furniture and appliances described in Exhibit B. In addition, Landlord also hereby subleases to Sublessee and Sublessee hires from said Sublessor those premises of approximately 4,500 square feet located on the lower floor of the building located at 115 Pettaconsett Avenue, Cranston RI 02920 which such space shall be used for storage space (the "Additional Premises"). The parties understand that Sublessor will continue to utilize the remainder of

- 1 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 177 of 377 PageID #: 359

the Additional Premises for its own purposes (equipment, storage, etc.) and that the loading dock area may be used in common by Sublessor and Sublessee.

4.    **Term.** The term of this Sublease shall be for a period originally commencing on February 1, 2019 (the "Commencement Date") and ending on June 30, 2025, unless sooner terminated pursuant to any provision hereof or extended as set forth below.

**Rent.**

(a)    Sublessee shall pay to Sublessor as rent for the Premises the annual amount of $72,540, payable in equal monthly installments of $6,045. Subsequent monthly rent shall be paid in advance on March 1, 2019 and the first day of each succeeding month.

(b)    From and after the Commencement Date, Sublessee shall pay as additional rent with respect to the Premises only (and not with respect to the Additional Premises) its pro rata share of all other amounts required to be paid as additional rent under the Master Lease as and when due. For purposes of this Sublease, Sublessee's pro rata share shall be 50%.

(c)    Rent for any period during the term hereof which is for less than one (1) month shall be a pro-rata portion of the monthly installment.

(d)    Rent shall be payable without notice or demand and without deduction, offset, or abatement, in lawful money of the United States of America to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

(e)    If Rent is to be paid on a Saturday, Sunday or holiday, Rent shall be paid on the next succeeding business day.

(f)    In addition, Sublessee shall pay to Sublessor as rent for the Additional Premises the annual amount of $12,000, payable in equal monthly installments of $1,000.

5.    **Defaults.** If Sublessee shall be in default of any provision of this Sublease relating to the payment of rent, or if Sublessee shall be in default of any other provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessee of written notice from Sublessor specifying the default, then Sublessor may enter the Premises, and repossess the same and expel Sublessee and those claiming under and through Sublessee without being deemed guilty in any manner of trespass, and upon entry as aforesaid, this Sublease shall terminate and Sublessor shall have all rights available to it at law or equity. Sublessee will indemnify Sublessor against all reasonable costs of subletting the Premises and all rent which Sublessor may incur by reason of such termination, provided Sublessor shall make every reasonable effort to mitigate such loss by reletting the Premises. If Sublessor shall be in default of any provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessor of a notice specifying the default, then Sublessee may terminate this Sublease without further obligation of Sublessee, all prepaid rents shall be refunded and Sublessee shall have all rights available to it at law or equity. If either Party shall become insolvent or make a general assignment for the benefit of creditors; or if any proceeding under any bankruptcy or insolvency statute is commenced by or against either Party; or if a receiver, trustee, or liquidator is appointed to take charge of all or substantially all of either Party's assets, then this Sublease may, at the option of the other Party, terminate upon thirty (30) days prior written notice and the terminating party shall have all rights available to it at law or equity.

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 4/22/2026 6:23 PM
Envelope: 5629564
Reviewer: John G.

6.      **Additional Space.** In the event that at any time during this Sublease additional space is available for sublease within the Premises (in addition to the Additional Premises), the Sublessor shall give Sublessee written notice thereof and Sublessee shall have the first right to lease such additional space upon such reasonable terms and conditions as Sublessor shall determine, provided, however, Sublessee shall exercise its right to sublease such additional space within ten (10) business days of the date Sublessor provides notice to the Sublessee. In the event such additional space is subleased (beyond the Additional Premises) to Sublessee, the Sublessee's pro rata share and percentage of expenses shall be increase appropriately.

7.      **Notices.** All notices or demands of any kind required or desired to be given to Sublessor or Sublessee hereunder, including, without limitation, copies of any notices to or from Landlord, shall be provided in accordance with the Master Lease at the address set forth below their signatures at the end of this Sublease.

8.      **Return.** Upon termination or expiration of this Sublease, Sublessee shall return and surrender the Premises to Sublessor in the manner required by the Master Lease.

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first set forth above.

**Sublessor:**
Cinerama Jewelry, Inc.

By: _____
        Rebecca Rafaelian
        Its:  President
115 Pettaconsett Avenue
Cranston, RI 02920


**Sublessee:**
Productive Collaboration, LLC

By: _____
        Omar S. Ajaj
        Its:  Member
115 Pettaconsett Avenue
Cranston, RI 02920


Pursuant to Paragraph 18 of the Master Lease, the undersigned Landlord hereby consents to the foregoing Sublease, all as of the date first written above.

Pentagon Properties, Inc.

By: _____
        Rebecca Rafaelian
        President

- 3 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/18/2026 12:05 PM
Envelope: 5571354
Reviewer: John G.

STATE OF RHODE ISLAND                                   SUPERIOR COURT
NEWPORT, S.C.

|  |  |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004 | |
| *Plaintiffs*, | |
| v. | |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 | C.A. No.  NC-2025-0531 |
| *Defendants*. | |

## ORDER

On March 16, 2026, this matter came before the Court, the Honorable Richard Licht presiding, for a hearing on Plaintiffs' Motion for Leave to File First Amended Verified Complaint. Having considered the parties' legal memoranda and the arguments of counsel, it is hereby **ORDERED, ADJUDGED, AND DECREED:**

1. Plaintiffs' Motion for Leave to File First Amended Verified Complaint is **GRANTED**.

Entered:

Richard Licht

Licht, J.
Associate Justice

Per Order:  /s/ Brittany Moreau
            Deputy Clerk
            April 1, 2026

Date: _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/18/2026 12:05 PM
Envelope: 5571354
Reviewer: John G.

Presented by,

Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, by their attorneys,

*/s/ Jeffrey K. Techentin*
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607


*/s/ Kurt T. Kalberer II*
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: March 18, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/18/2026 12:05 PM
Envelope: 5571354
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that, on March 18, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ Jeffrey K. Techentin

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/16/2026 9:09 AM
Envelope: 5566861
Reviewer: Katherine M.

**STATE OF RHODE ISLAND**
**NEWPORT, S.C.**

**SUPERIOR COURT**

|  |  |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004 *Plaintiffs*, v. REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 *Defendants*. | C.A. No.  NC-2025-0531 |

## ENTRY OF APPEARANCE

PLEASE TAKE NOTICE that Kurt T. Kalberer II, Esq. of Kalberer LLP hereby enters his appearance on behalf of the Plaintiff, Carolyn Rafaelian, with respect to the above-captioned matter.

*[Signature Block and Certificate of Service on following page.]*

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/16/2026 9:09 AM
Envelope: 5566861
Reviewer: Katherine M.

Respectfully submitted,


/s/ Kurt T. Kalberer_____
Kurt T. Kalberer II (No. 8007)
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042

Dated: March 16, 2026


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on March 16, 2026, I filed and served a copy of the within document through the electronic filing system on all counsel of record.  The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.


*/s/ Kurt T. Kalberer II*

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, S.C.

|  |  |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004<br><br>    *Plaintiffs*,<br><br>v.<br><br>REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009<br><br>    *Defendants*. | C.A. No.  NC-2025-0531 |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR LEAVE TO FILE FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Carolyn Rafaelian ("Carolyn") submits this Reply Memorandum in further support of her Motion for Leave to File First Amended Verified Complaint pursuant to Super. R. Civ. P. 15(a).  Defendant Rebecca Rafaelian Caruolo ("Rebecca") has failed to demonstrate the "extreme prejudice" required to deny amendment under Rhode Island's liberal standard, nor has she shown that the proposed amended claims are futile.  *Hendrick v. Hendrick*, 755 A.2d 784, 794 (R.I. 2000); *Wachsberger v. Pepper*, 583 A.2d 77, 78 (R.I. 1990); *Degasparre v. Fay Servicing*, LLC, 288 A.3d 146, 150 (R.I. 2023).  The proposed amendments clarify derivative standing under Rule 23.1, add meritorious claims supported by detailed factual allegations, and arise from the same core misconduct already pled in the original Complaint.  No trial date has been set, no

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 185 of 377 PageID
#: 367

scheduling order has issued, and discovery has not commenced—only three months after filing.
The Motion should therefore be granted in its entirety.

## ARGUMENT

### A.    The Court Should Grant the Motion Because Rebecca Has Shown Neither Extreme Prejudice Nor Futility

Rule 15(a) commands that leave to amend "shall be freely given when justice so requires." Super. R. Civ. P. 15(a).  Rhode Island courts consistently hold that the burden rests squarely on the opponent to prove "extreme prejudice," undue delay, bad faith, or futility.  *Hendrick*, 755 A.2d at 794; *Harodite Indus., Inc. v. Warren Elec. Co.*, 24 A.3d 514, 531 (R.I. 2011); *Lomastro v. Iacovelli*, 56 A.3d 92, 95 (R.I. 2012).  Rebecca identifies none.

Moreover, Rebecca's futility arguments fail at the threshold because they ignore the governing standard for assessing futility on a motion to amend.  A proposed amendment is futile only if it could not survive a Rule 12(b)(6) motion to dismiss; the Court must accept all well-pleaded facts in the proposed Amended Complaint as true and draw all reasonable inferences in Carolyn's favor.  *1100 N. Main LLC v. Shoreby Hill Props., Inc.*, 348 A.3d 799, 805 (R.I. 2026); *Carroll v. Winoker*, 2025 WL 2247175, at *3 (R.I. Super. July 31, 2025).  Rebecca repeatedly disputes those facts, labels them "conclusory," or assumes the opposite—precisely what the Rule 12(b)(6) standard forbids.  This fundamental error renders her futility analysis invalid and confirms that the amendments should be allowed.

The amendments merely clarify derivative claims belonging to Cinerama Jewelry, Inc. ("Cinerama") and Pentagon Properties, Inc. ("Pentagon"), satisfy Rule 23.1's demand and adequacy requirements, and plead additional direct claims with ample factual support.  Courts expressly favor amendment to cure derivative pleading deficiencies rather than dismissal. *Hendrick*, 755 A.2d at 794; *see also Zou v. Han*, 797 F. Supp. 3d 199, 204 (E.D.N.Y. 2025)

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

(amendment to clarify derivative claims merely returns parties to their current posture). Because Rebecca cannot meet her burden, the Motion must be granted.

**B.      Carolyn Has Properly Pled Derivative Claims**

**1.      Carolyn Is Qualified to Bring Derivative Claims on Behalf of Cinerama (Proposed Counts I, II, III, V, VI, VII, IX, XI, XII, and XIII) Because No Disqualifying Conflict Exists**

Rebecca asserts that Carolyn's pending District Court eviction action against Cinerama creates an "untenable conflict" disqualifying her under Rule 23.1. This mischaracterizes both actions. The District Court proceeding enforces Pentagon's rights as landlord under the master lease; it does not advance interests adverse to Cinerama. Both suits are complementary—they seek to redress Rebecca's mismanagement and protect corporate assets from misappropriation. No Rhode Island court has ever found a derivative claimant to be disqualified on basis similar to the one here, and Rebecca has not identified any such precedent. Courts outside of Rhode Island have, reasonably, examined the issue through the governing principles concerning the ability of the claimant to fairly represent corporate interests. Disabling conflicts must not be merely potential, but "actual." *Angel Invs., LLC v. Garrity*, 216 P.3d 944, 953 (Utah 2009). Where "both suits are contingent 'upon the proof of the same nucleus of facts,' then it is presumed that the plaintiff will advance both actions with the same vigor." *Id.* (quoting *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976)). Here, just as in the *Bertozzi* case, "the asserted 'antagonism' between the primary and derivative actions pressed herein is no more than a 'surface duality'." *Bertozzi*, 420 F. Supp. at 1180. Simply, there is nothing about the pending District Court action that would undermine Carolyn's ability to advance the interests of the corporations adequately in as to the proposed claims.

The federal cases Rebecca cites are distinguishable and non-binding. *See G. A. Enters., Inc. v. Leisure Living Cmtys, Inc.,* 517 F.2d 24 (1st Cir. 1975); *Chesterton v. Chesterton*, 1990 WL

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 187 of 377 PageID
#: 369

150066 (D. Mass. Oct. 2, 1990). Unlike those plaintiffs, Carolyn is not using the derivative suit as a "weapon" for leverage and, in fact, her eviction claim aligns with protecting Cinerama. Rhode Island has never adopted such a restrictive interpretation and instead applies Rule 15(a)'s liberal amendment standard equally to derivative claims. *See Hendrick*, 755 A.2d 784.

> **2.    The Proposed Derivative Claims (Counts I, II, III, V, VI, VII, IX, XI, XII, and XIII) Are Brought Solely in the Best Interests of Cinerama and Pentagon; Carolyn Is the Only Shareholder Other Than Rebecca Who Can and Must Pursue Them Derivatively, and Denial of Amendment Would Confer Absolute Immunity on Rebecca for Her Alleged Misconduct**

Rebecca cannot—and does not—dispute that every derivative claim asserted in the proposed First Amended Verified Complaint seeks to redress injuries suffered directly by the corporations themselves and that success on each claim would inure to their benefit. The claims allege Rebecca's unauthorized lease amendments, waste of corporate assets, conversion of Cinerama's property and goodwill, misappropriation of corporate opportunities, and related breaches of fiduciary duty that have stripped value from Cinerama and Pentagon. Any recovery—whether through damages, rescission, receivership, or injunctive relief—would restore those assets to the corporations, not to Carolyn personally. *See Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co.*, 109 A.3d 373, 379–80 (R.I. 2015) (applying *Tooley* test: if the corporation suffered the harm and would receive the benefit of recovery, the claim is derivative); *Fogarty v. Palumbo*, 163 A.3d 526, 535–36 (R.I. 2017) (same).

In this closely held, family-owned corporate structure, Carolyn is the only shareholder—other than Rebecca and her controlled trusts—who holds any economic interest in Cinerama and Pentagon. Rebecca, as President and controlling shareholder of both entities, is the very person accused of the wrongdoing. She has refused to remedy the misconduct despite formal demand and will never cause the corporations to sue herself. Thus, Carolyn is forced, out of necessity, to step into the corporations' shoes and bring these claims derivatively. *See Takian v. Rafaelian*, 53 A.3d

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 188 of 377 PageID #: 370

964, 973 (R.I. 2012) (contemporaneous-ownership rule exists to prevent purchased grievances, not to bar legitimate minority enforcement in closely held entities); *Hendrick*, 755 A.2d at 790–91 (derivative suits are the only mechanism available when the majority controls and will not act); *Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1387 (R.I. 1997) (in closely held corporations, fiduciary duties run directly to minority shareholders precisely because majority voting power creates the potential for oppression).

To deny leave to amend on conflict or adequacy grounds would therefore leave Cinerama and Pentagon with no advocate whatsoever. The alleged misconduct would go entirely unremedied, and Rebecca would enjoy *de facto* absolute immunity from liability to Pentagon or Cinerama for breaches of fiduciary duty, waste, conversion, and usurpation of corporate opportunities. Rhode Island law emphatically rejects such an outcome. Derivative actions were created precisely to prevent majority shareholders from insulating themselves through control of the corporate machinery. As the United States Supreme Court explained, "the purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interest of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Meyer v. Fleming*, 327 U.S. 161, 167 (1946) (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 548 (1949)).

Rebecca's contrary position would effectively nullify Rule 23.1 in every closely held Rhode Island corporation where the majority shareholder is also the alleged wrongdoer—a result that contradicts the rule's core remedial purpose and the heightened fiduciary duties owed in family businesses. *See Teixeira & Co. v. Teixeira*, No. P.C. 84-0152, 1994 WL 930950, at *5 (R.I. Super. July 21, 1994), *aff'd sub nom. A. Teixeira & Co. v. Teixeira*, 674 A.2d 407 (R.I. 1996) (majority voting power creates "tremendous power to benefit themselves at the expense of minority

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 189 of 377 PageID #: 371

shareholders"); *Hendrick*, 755 A.2d at 790 (minority shareholders in closely held entities are especially vulnerable and require court protection). Because the proposed amendments merely clarify and perfect derivative standing that already exists under Rule 23.1, and because no trial date has been set and discovery has not begun, Rebecca cannot demonstrate the "extreme prejudice" required to deny amendment. The Motion must therefore be granted so that the corporations' claims may be heard on the merits.

C.      **Carolyn Satisfies Rule 23.1's Adequate-Representation Requirement; Non-Voting Minority Status Supports, Rather Than Bars, Derivative Standing**

Rebecca argues Carolyn's status as trustee of non-voting minority trusts creates inherent misalignment with the voting-majority trusts. This argument would nullify the remedial purpose of derivative actions, which exist precisely to protect minority shareholders who lack governance voice. *Marsh v. Billington Farms, LLC*, No. 04-3123, 2006 WL 2555911, at *10 (R.I. Super. Aug. 31, 2006) ("derivative suits are designed to protect 'shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves.'") (quoting *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966)). Rhode Island imposes no voting-rights disqualification under Rule 23.1; to impose one would contradict the rule's core function. *Tourtelott v. Chestnuts Salon, Inc.*, No. 00-5496, 2001 WL 91393 (R.I. Super. Jan. 17, 2001); *Marsh*, 2006 WL 2555911, at *10; *Takian*, 53 A.3d 964; *Hendrick*, 755 A.2d 784.

D.      **Disqualifying Conflicts Do Not Preclude Carolyn's Derivative Representation of Pentagon**

Rebecca claims Carolyn cannot represent Pentagon because the claims would challenge a lease involving Carolyn's mother. This misstates the claims. Carolyn challenges only Rebecca's allegedly unauthorized lease amendments—not properly authorized leases. *See Heritage Healthcare Servs., Inc.*, 109 A.3d 373. The mother's residential lease is irrelevant if validly

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

executed. Judge DeCarvalho's intervention ruling was purely procedural and does not adjudicate Carolyn's standing. *Takian*, 53 A.3d 964. As 50% shareholder and officer, Carolyn possesses satisfies both statutory qualifications for standing: the contemporaneous ownership rule, requiring that she "was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time," and the requirement that she "fairly and adequately represent the interests of the corporation in enforcing the right of the corporation." R.I. Gen. Laws § 7-1.2-711. Carolyn therefore has standing to protect Pentagon from unauthorized acts that harm the corporation.

**E.    Waste Claims (Count II) Are Not Futile Because Rhode Island Recognizes Individual Actions for Distinct, Personal Injury**

Rebecca contends waste is exclusively derivative. While typically so, Rhode Island courts recognize exceptions permitting individual actions when a shareholder pleads distinct, personalized harm flowing from rights inherent in stock ownership. *Cf. Dunn v. Shannon*, No. 99-2533, 2005 WL 1125315, at *6 (R.I. Super. May 11, 2005) (finding action to be derivative evause plaintiff "has not demonstrated that he has suffered a wrong involving his contractual rights as shareholder that exists independently of the corporation's right."). Carolyn alleges unique injuries tied to her founder status, personal reputation, and founder expectations—separate from generalized corporate diminution in value, justifying her individual claim. *Watson v. Fox*, 44 A.3d 130 (R.I. 2012); *Huntley v. State*, 109 A.3d 869 (R.I. 2015); *Flather v. Norberg*, 119 R.I. 276 (R.I. 1977); *Takian*, 53 A.3d 964. At the pleading stage, the Court must accept these allegations as true and permit amendment. *1100 N. Main LLC, Inc.*, 348 A.3d at 805.

**F.    Conversion Claims (Counts III and X) Are Properly Pled Because Carolyn Alleges Personal Tangible Property and Manifested Intangibles**

Carolyn's conversion claims are properly pled because she alleges conversion of her personal property stored at Cinerama's facilities, not just corporate assets. Rhode Island law

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 191 of 377 PageID #: 373

recognizes conversion claims for tangible personal property, which Carolyn has specifically identified in her complaint. Additionally, while traditional conversion may be limited to tangible property, Rhode Island courts have evolved to recognize claims for conversion of certain intangible property rights when they are connected to tangible property or documents.

Carolyn specifically pleads conversion of her personal tangible property—vintage jewels, crystals, beads, and stones stored in labeled boxes at the facility—plus intangible rights manifested in tangible form. *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87 (R.I. 2006). Rhode Island law expressly recognizes conversion of tangible chattels and extends to intangibles when embodied in physical instruments. *Carlsten v. The Widecom Grp., Inc.*, No. C.A. PC 97-1425, 2003 WL 21688263 (R.I. Super. July 1, 2003); *Roger Williams Gen. Hosp. v. Fall River Tr. Co.*, 423 A.2d 1384 (R.I. 1981); *DeChristofaro v. Machala*, 685 A.2d 258 (R.I. 1996).

### G. Misappropriation of Corporate Opportunity Claims (Count VII) May Proceed Individually Due to Special Injury and Direct Fiduciary Duties in Closely Held Family Corporations

While corporate-opportunity claims are often derivative, Rhode Island recognizes individual actions where special injury or direct fiduciary duties exist—especially in family/close corporations. Carolyn's proposed amended complaint alleges that she had unique personal interests and expectations in the business opportunities that were allegedly misappropriated, creating a special injury separate from the general corporate harm. Furthermore, the Rhode Island Supreme Court has recognized that fiduciary duties may be owed directly to shareholders in closely-held corporations, particularly in family businesses where shareholders have reasonable expectations regarding their participation in corporate opportunities. Given the family business context and Carolyn's special position as a founder, her individual claims for misappropriation should be allowed to proceed alongside derivative claims pending further factual development. *See A. Teixeira & Co., Inc.*, 699 A.2d 1383; *Takian*, 53 A.3d 964 (directors and officers owe a duty

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 192 of 377 PageID
#: 374

of loyalty to the corporation and its shareholders); *Newbury v. Considine*, No. C.A. 82-261, 1986 WL 714256, at *3 (R.I. Super. Feb. 12, 1986) (denying motion to dismiss claim where movant asserted the claim could only be brought derivatively based on allegation that "the conduct of the defendants, as controllers of the sole corporate asset, is a breach of fiduciary duty which they owed directly and personally to [plaintiff]."). This claim is not futile unless Rebecca can establish that "it is clear beyond a reasonable doubt that [Carolyn] would not be entitled to relief under any set of facts that could be proven." *E.g. Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Dept.*, 899 A.2d 1258 (2006); *St. James Condominium Ass'n v. Lokey*, 676 A.2d 1343 (1996) *Orzechowski v. State*, 485 A.2d 545 (1984). Because the Court must accept as true all well-pleaded factual allegations contained in the complaint, Rebecca has not, and cannot meet this threshold.

## H. Carolyn Has Standing Under the Lanham Act (Count IX) and to Seek Receivership Derivatively (Count XI)

Carolyn has proper Lanham Act standing because she alleges that PC's statements create consumer confusion by falsely implying the origin of its goods, including vintage inventory which belongs to Carolyn personally, as well as the goodwill and reputation of a multi-generational "family factory" which not only includes, but is in fact centered around and focused upon the accomplishments of one (1) specific family member - Carolyn. The Supreme Court in *Lexmark* established that competitors who allege commercial injury from false or misleading advertising have standing under the Lanham Act. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (to have standing, plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision). Carolyn's amended complaint alleges that PC is using Carolyn's personal jewelry inventory and making statements

9

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

about the Rafaelian family legacy (centered around Carolyn) to trade on her personal goodwill and reputation, causing direct competitive harm to her current business interests. While the statements may contain some factual elements, they allegedly create misleading impressions about the origin of PC products and its connection to Carolyn's legacy. At the pleading stage, these allegations are sufficient to state a claim, and questions about whether consumers are actually misled should be resolved after discovery, not on a motion to amend.

Carolyn's request for receivership should be allowed to proceed because she seeks the appointment derivatively on behalf of Cinerama and Pentagon, not individually. If Carolyn establishes that PC is the alter ego of Cinerama or that PC was formed through misappropriation of Cinerama's or Pentagon's assets and opportunities, then the corporations would have standing to seek receivership as creditors with claims against PC. Rhode Island courts have recognized that derivative plaintiffs can pursue remedies that the corporation itself would be entitled to seek. *Peck v. Jonathan Michael Builders, Inc.*, No. C.A. KM 06-0236, 2006 WL 3059981 (R.I. Super. Oct. 27, 2006), *aff'd,* 940 A.2d 640 (R.I. 2008). Rebecca's cited authority on this point, *Epic Enterprises LLC v. 10 Brown & Howard Wharf Condo. Ass'n*, 253 A.3d 383 (R.I. 2021), is inapposite because it concerned only an individual petition, not a derivative one.

## CONCLUSION

Rebecca has not—and cannot—demonstrate extreme prejudice or futility. The proposed amendments clarify derivative standing, assert viable claims, and warrant merits resolution after discovery. The Motion should be granted in full.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/13/2026 2:37 PM
Envelope: 5565290
Reviewer: John G.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, by their attorneys,

/s/ Jeffrey K. Techentin
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607


/s/ Kurt T. Kalberer II
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: February 18, 2026


## CERTIFICATE OF SERVICE

I hereby certify that, on March 13, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ Jeffrey K. Techentin

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:59 AM
Envelope: 5556822
Reviewer: John G.

STATE OF RHODE ISLAND                                      SUPERIOR COURT
NEWPORT, SC

|  |  |
|---|---|
| CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST  2004<br><br>Plaintiff,<br><br>v.<br><br>REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009,<br><br>Defendant. | C.A. NO. NC-2025-0531 |

## <u>NOTICE OF ELECTION TO PURCHASE SHARES</u>

Pursuant to R.I. Gen. Laws § 7-1.2-1315, Rebecca Rafaelian Caruolo, Individually and as

Trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo

Trust 2009, hereby files her election to purchase the shares of Carolyn Rafaelian, Individually

and/or as Trustee of The Carolyn A. Ferlise QSST Trust and The Carolyn A. Rafaelian Trust

2004, in Pentagon Properties, Inc. and Cinerama Jewelry, Inc. for their fair value as of

November 18, 2025, or a date to be determined by the Court.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:59 AM
Envelope: 5556822
Reviewer: John G.

Respectfully Submitted,

REBECCA RAFAELIAN CARUOLO, as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

*/s/ Christine K. Bush*
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

Date:  March 9, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:59 AM
Envelope: 5556822
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2026 I filed and served this document through the Electronic Filing System on the following parties:

Todd D. Amaral (tamaral@apslaw.com)
Geoffrey W. Millsom (gmillsom@apslaw.com)
Jeffrey K. Techentin (jtechentin@apslaw.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

*/s/ Mackenzie C. McBurney*

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# EXHIBIT D

Case Number: NCA20250534685
Filed in Newport County Superior Court
Submitted: 3/9/2025 9:09 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

STATE OF RHODE ISLAND                    DISTRICT COURT
PROVIDENCE, SC.                          SIXTH DIVISION

---

PENTAGON PROPERTIES, INC.,          :
                                    :
            Plaintiff               :
                                    :
    vs.                             :        C.A. No.: 6CA-2025-
                                    :
PRODUCTIVE COLLABORATION,           :
LLC, d/b/a AIR & ANCHOR; and        :
CINERAMA JEWELRY, INC.,             :
                                    :
            Defendants              :

---

## COMPLAINT FOR EVICTION FOR REASONS OTHER THAN NON-PAYMENT OF RENT

### Parties

1. Plaintiff, Pentagon Properties, Inc. ("Pentagon") is a duly organized and existing corporation pursuant to the laws of the State of Rhode Island, having a principal place of business located at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920.

2. Upon information and belief, Defendant, Productive Collaboration, LLC, doing business as Air & Anchor ("Productive Collaboration"), is a duly organized and existing limited liability company pursuant to the laws of the State of Rhode Island, having a principal place of business located at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920.

3. Upon information and belief, Defendant, Cinerama Jewelry, Inc. ("Cinerama") is a duly organized corporation pursuant to the laws of the State of Rhode Island, having a

Case Number: NC-2025-0385
Filed in Newport County Superior Court
Submitted: 9/2/2025 9:59 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 200 of 377 PageID #: 382

principal place of business located at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920.

## Jurisdiction

4. This Court has jurisdiction with regard to the above-identified proceeding pursuant to R.I. Gen. Laws §34-18.1-1, *et seq.*

## Pertinent Facts & Allegations

5. At all times relevant hereto, Pentagon is the record or title owner of the commercial premises located or situated at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920 (the "Property").

6. On or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equally monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease"). The Cinerama Lease expired on June 30, 2025.

7. Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's operation of a jewelry manufacturing business.

8. Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with Productive Collaboration providing or affording it with use and occupancy of a portion of the Property (the "Sublease"). The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms.

Case Number: NC-2025-0485
Filed in Newport County Superior Court
Submitted: 3/22/2026 3:50 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

9. Pursuant to the Sublease, Productive Collaboration was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.

10. A dispute subsequently arose between the shareholders of Pentagon and Cinerama, respectively, regarding the use and occupancy of the Property by Cinerama and Productive Collaboration, including, without limitation, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Lease, the unlawful transfer and use of Cinerama's corporate property and/or assets to Productive Collaboration, and numerous breaches of fiduciary duty by Pentagon's and Cinerama's President, Rebecca Rafaelian ("Rebecca").

11. On or about December 19, 2024, Carolyn Rafaelian ("Carolyn"), Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter and draft complaint to Rebecca, Carlolyn's co-shareholder (50% of the shares of Pentagon), detailing certain unlawful and/or wrongful conduct on the parts of Rebecca, Cinerama and Productive Collaboration, and each of them, relative to the Property.

12. Despite being fully aware of the above-described dispute, on or about May 1, 2025, without the requisite corporate authorization expressly required in Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a so-called First Amendment to Lease Agreement, *to wit*, the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama, purporting to extend the term of Cinerama's use

Case Number: NC-2025-0685
Filed in Newport County Superior Court
Submitted: 3/2/2026 9:59 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 202 of 377 PageID #: 384

and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

13. The Amendment was executed by Rebecca without authorization in violation of Pentagon's By-Laws, and, as such, is without effect or otherwise void under Rhode Island law.

14. In addition, the Amendment was executed by Rebecca on behalf of both parties thereto, Pentagon and Cinerama, which presents a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts, as well as the express written authorization or consent from Carolyn under Rhode Island law.

15. Rebecca's additional conflicts of interest as President of Pentagon further precluded her from entering into the Amendment on behalf of Pentagon unilaterally without Carolyn's express authorization, which include, without limitation:

a) while only the 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at the least amount of cost;

b) the subtenant, Productive Collaboration, is owned by a family relative to whom Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the least amount of cost to bestow a personal benefit on a family member and business partner; and

c) Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Productive Collaboration, and is believed to be working for and on behalf of Productive Collaboration while unlawfully using the assets of Cinerama.

Case Number: NC-2025-0485

Filed in Newport County Superior Court

Submitted: 3/26/2026 9:05 AM

Envelope: 5566738

Reviewer: Madeleine Bessette

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 203 of 377 PageID #: 385

16. The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon Rebecca to the detriment of Pentagon and Carolyn in violation of Rebecca's fiduciary duty of loyalty under Rhode Island law and is therefore void.

17. The Cinerama Lease, as amended by the Amendment, contains a rental amount through 2030, which is grossly below market rate and is replete with commercially unreasonable terms. In addition, Cinerama has, in fact, suspended all business operations and is no longer even operating a jewelry manufacturing business, in direct violation of the Cinerama Lease.

18. Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, Carolyn provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island, as well as in violation of Pentagon's corporate By-Laws (the "May 13th Notice"). *A true and accurate copy of the May 13th Notice is appended hereto as Exhibit 1.* Further, the May 13th Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease. Notwithstanding, Cinerama has disregarded the same.

19. Despite receipt and acknowledgement of the May 13th Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the same. Cinerama is a holdover tenant or tenant at will at this time.

20. On or about May 14, 2025, Carolyn, in her capacity as Executive Vice President of Pentagon, provided notice to Productive Collaboration that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Productive Collaboration's tenancy was terminated effective that same date (June 30,

Case Number: NCA2025053685
Filed in New District Superior Court
Submitted: 3/02/2026 1:59 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

2025) and that Productive Collaboration was to vacate the Property on or before that date (the "May 14th Notice"). *A true and accurate copy of the May 14th Notice is appended hereto as Exhibit 2.*

21. Despite receipt and acknowledgement of the May 14th Notice, Productive Collaboration has failed and/or refused to terminate its use and occupancy of the Property, and to vacate the same. At this time, Productive Collaboration is merely a holdover tenant or tenant at will relative to the Property.

22. Cinerama and Productive Collaboration, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease, as the case may be, and, further, each has failed and/or refused to comply with the May 13th Notice and the May 14th Notice, respectively.

23. Cinerama and Productive Collaboration, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease, respectively, as well as the May 13th Notice and May 14th Notice. *See Exhibits 1 & 2, respectively, appended hereto.*

24. Neither Cinerama nor Productive Collaboration, or either of them, have any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

25. Accordingly, Carolyn, on behalf of Pentagon, is required to protect and preserve Pentagon's rights and seek the eviction of Cinerama and Productive Collaboration from the Property forthwith.

Case Number: NC-2025-0536885
Filed in Newport County Superior Court
Submitted: 10/23/2025 9:59 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

WHEREFORE, Pentagon respectfully prays that this Court enter judgment in favor of Pentagon, and against Cinerama and Productive Collaboration, and each of them, jointly and severally, for possession of the Property, that this Court entered judgment in favor of Pentagon, and against Cinerama and Productive Collaboration, and each of them, jointly and severally, for any and all past due rent or other fair use and occupancy amounts on account of their respective use and occupancy of the Property up through, and including, the date upon which Cinerama and Productive Collaboration, and each of them, vacate the Property, that this Court award to Pentagon any and all costs and expenses, including without limitation attorneys' fees, incurred by Pentagon in the preparation and prosecution of the within Complaint, and that this Court award to Pentagon such other further relief as this Court may deem fair just and reasonable.

Respectfully submitted,

Pentagon Properties, Inc.

By its Attorney,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI 02886
Tel.: (401) 533-9330
Email: cmulhearn@mulhearnlawri.com

Dated: October 23, 2025

Case Number: NCA20255054685
Filed in Newport County Superior Court
Submitted: 3/9/2025 9:56 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

# EXHIBIT 1

Case Number: NC-2025-0485
Filed in Newport County Superior Court
Submitted: 3/9/2026 9:09 AM
Envelope: 5566738
Reviewer: Madeleine Bessette

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 207 of 377 PageID #: 389

KALBERER⊕

Kurt T. Kalberer II
Phone: + 1 401 578 1042
Email: kkalberer@kalbererlaw.com

Kalberer LLP
231 Royal Palm Way
Palm Beach, FL 33480

May 13, 2025

**VIA ELECTRONIC MAIL**
Christine Bush, Esq.
Hinckley, Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, RI 02903-2319

Re:    **Notice of Breach; Demand for Board of Director/Shareholders Meeting**
       **Pentagon Properties, Inc.**

Dear Ms. Bush:

We are in receipt of your correspondence dated May 8, 2025 1) enclosing a purported amendment to the lease agreement between Pentagon Properties, Inc. ("Pentagon") and Cinerama Jewelry, Inc. ("Cinerama") dated May 1, 2025 (the "Amendment") 2) declining our request for your client to identify the current officers and members of the Board of Directors and 3) refusing our request to schedule a meeting of the Board of Directors and shareholders.

This correspondence serves as formal notice that the Amendment was executed in violation of the company's Bylaws, is unauthorized and void under Rhode Island law. This letter serves as further notice our client objects to the Amendment and the terms contained therein, which are patently detrimental to Pentagon and its shareholders. As you and your client have previously been advised, repeatedly, Ms. Rafaelian disputes the current lease terms with Cinerama and its subtenant Productive Collaborations, LLC d/b/a Air & Anchor ("Air & Anchor"). We hereby make a repeated and final demand for a meeting of Pentagon's Board of Directors and shareholders without delay and instruct your client to cease and desist from taking any action regarding the business and affairs of Pentagon without the consent of our client as required under the Bylaws and Rhode Island law.

Pursuant to Pentagon's Bylaws, the execution of the Amendment required authorization by the company's Board of Directors or the written consent of our client, who holds a 50% interest in Pentagon. Specifically, pursuant to Article III of the Bylaws, **"[t]he property, business and affairs of the corporation shall be managed by a Board of Directors, comprised of five (5) members or of such number as may from time to time be fixed by the shareholders"**. In addition, Articles 2.2 and 3.7 of the Bylaws mandate the occurrence of annual meetings on the first Monday of January to address the business affairs of Pentagon. Despite the clear and unambiguous provisions of the Bylaws, Pentagon has not yet held its annual meeting, no vote has been taken to authorize the Amendment and no board resolution was passed.

In addition, Articles 2.10 and 3.9 of the Bylaws specifically require that any actions taken without a board or shareholders meeting have prior *written consent* of Carolyn Rafaelian, the

Case Number: NCA2025053685
Filed in Newport County Superior Court
Submitted: 5/22/2025 9:50 AM
Envelope: 5566738
Reviewer: Madeleine Bessette

holder of 50% of the shares in Pentagon. Not only did Ms. Rafaelian not provide consent to the Amendment as required under the Bylaws, she has delivered numerous notices to your client objecting to the Cinerama lease terms, including the rental amount, scope, use of the premises and misappropriation of Cinerama assets, as well as the performance of the sublease with Air & Anchor. Accordingly, the Amendment was unauthorized under the Bylaws and is void.

The execution of the Amendment is also a breach of your client's fiduciary duty to Ms. Rafaelian. The Amendment, if indeed executed[1] on May 1st, was done while your client was aware of (1) active disputes between the shareholders regarding the terms of the subject lease (2) clear objections by our client regarding the subtenant's unauthorized use and occupancy of the premises (3) legal concerns raised regarding fiduciary breaches and asset misappropriation and 4) participation in fraud and/or gross negligence regarding the fair market rental value of the subject premises for the benefit of Air & Anchor and to the detriment of Cinerama and Pentagon. Renewing the lease under these conditions constitutes, *inter alia*, a knowing violation of her fiduciary duties. Consequently, our client is entitled to seek rescission of the Amendment, in addition to injunctive relief and the recovery of damages.

Your client is identified in your previous mediation statement as the President, Secretary and Treasurer of Pentagon and is required to schedule a Board of Directors and shareholders meeting pursuant to the terms of the Bylaws. Final demand is hereby made for a Board of Directors and shareholders meeting for the purpose of discussing the subject lease and use of the premises.

This email also serves as notice to Cinerama the purported Amendment is disputed, unauthorized and its lease will terminate effective June 30th. Therefore, Cinerama is prohibited from entering into a sublease with Air & Anchor beyond such term. In addition, our client is now required to mitigate her damages and notify Air & Anchor the Amendment was unauthorized, is subject to a shareholder dispute and that any recent or future extension of its sublease pursuant to or in reliance on the Amendment is void and that it must vacate the premises by June 30th, or our client will be commencing an eviction action on behalf of the company.

This correspondence shall not be construed as a waiver of any rights or claims Ms. Rafaelian may have at law or in equity, all of which are expressly reserved.

Very truly yours,

Kurt T. Kalberer II

---

[1] Your client is hereby instructed to preserve all Pentagon, Cinerama and personal computers, printers and cellular phones, including all electric data thereon and emails, which may concern or relate to the drafting or execution of the purported Amendment.

2

Case Number: NCA20255053685
Filed in Newport County District/Superior Court
Submitted: 3/9/2025 2:59:05 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

# EXHIBIT  2

Case Number: NC-2025-0085
Filed in Newport County Superior Court
Submitted: 5/9/2025 3:19:05 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

KALBERER•

Kalberer LLP
231 Royal Palm Way
Palm Beach, FL 33480

**Kurt T. Kalberer II**
Phone: + 1 401 578 1042
Email: kkalberer@kalbererlaw.com

May 14, 2025

**VIA FEDERAL EXPRESS**
Rachel Ajaj
Omar Ajaj
Productive Collaboration, LLC
115 Pettaconsett Ave.
Cranston, RI 02920

Re: **Notice of Expiration of Master Lease & Sublease; Pentagon Properties, Inc.**

Dear Mr. & Mrs. Ajaj:

This firm represents Carolyn Rafaelian in connection with her ownership interest in Pentagon Properties, Inc. ("Pentagon") and Cinerama Jewelry, Inc. ("Cinerama"). Ms. Rafaelian is the Vice President and 50% shareholder of Pentagon. As you are aware, Pentagon is the owner of the premises located at 115 Pettaconsett Avenue, Cranston, Rhode Island, presently occupied by your company, Productive Collaboration, LLC d/b/a Air & Anchor ("Air & Anchor") by way of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") with Cinerama and subject to the current master lease agreement between Pentagon and Cinerama (the "Master Lease").

As you are aware, the term of the Master Lease presently expires on June 30, 2025. On or about May 8, 2025, our client was advised that Pentagon's President, Rebecca Caruolo, has attempted to unilaterally amend the Master Lease to extend the term for an additional five (5) year period (the "Amendment"), presumably to extend the Sublease with Air & Anchor on the same or similar terms. Please be advised the Amendment was unauthorized, made in violation of Pentagon's Bylaws and is void. Accordingly, the Sublease presently expires on June 30, 2025 pursuant to Section 2(a) of the Sublease. You are hereby notified of Air & Anchor's obligation to vacate the premises on or before June 30, 2025. Should Air & Anchor occupy any of the premises after this time, we have been authorized to immediately commence legal proceedings to protect and enforce our client's rights.

In addition, as you are likely aware, the terms and rental amount provided for in the Amendment and current Sublease are woefully below market rate, not commercially reasonable, severely detrimental to both Pentagon and Cinerama and significantly beneficial to your company. Moreover, we understand Ms. Caruolo is presently working for Air & Anchor and has wrongfully misappropriated and transferred to Air & Anchor substantially all of the assets of Cinerama to Air & Anchor in violation of her fiduciary duties to Cinerama and Ms. Rafaelian.

Demand is hereby made for you to cease and desist use of Cinerama assets, including its goodwill, equipment, inventory and machinery, which is all outside the scope of the Sublease. Such unlawful conduct on the premises is grounds for termination of the Sublease. In addition, your complicity in working with Ms. Caruolo to misappropriate the assets of Cinerama, obtain unfair and

Case Number: NCA20250534685
Filed in Newport County Superior Court
Submitted: 3/9/2026 6:58 AM
Envelope: 5366738
Reviewer: Madeleine Bessette

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 211 of 377 PageID #: 393

grossly unreasonable rental terms and effectively disenfranchise our client of her beneficial ownership interests in Pentagon and Cinerama is actionable in a court of law and entitles her to the recovery of damages and other relief.

This correspondence shall not be construed as a waiver of any rights or claims Ms. Rafaelian may have at law or in equity, all of which are expressly reserved.

Very truly yours,

Kurt T. Kalberer II

cc:  Erin Hockensmith, Esq.
William Dolan, Esq.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# EXHIBIT C

Case Number: NC-2025-0206
Filed in Newport/Bristol Superior Court
Submitted: 3/9/2026 11:36 AM
Envelope: 5580788
Reviewer: Kelly B

STATE OF RHODE ISLAND                          DISTRICT COURT
PROVIDENCE, SC.                                SIXTH DIVISION

CAROLYN RAFAELIAN, Individually and as
TRUSTEE OF THE CAROLYN A. RAFAELIAN
TRUST 20024, and derivatively on behalf of
PENTAGON PROPERTIES, INC.

         v.                                    C.A. No. 6CA-2025-16206

PRODUCTIVE COLLABORATION, LLC., d/b/a
AIR & ANCHOR; AND CINERAMA JEWELRY, INC.

## ORDER

This matter, having come before this court on January 14, 2026, before the Honorable Justice
DeCarvalho, and, after receiving hearing thereon, it is hereby:

## ORDER ADJUDGED AND DECREED

1) The Motion to Intervene by Pentagon Properties, Inc. is granted.

Entered as an Order on this ___ day of ___1/15/2026___, 2026.


ENTER:                                         PER ORDER:

/s/ Kas R. DeCarvalho                          /s/ Waleada Shepard
_____                        _____


Order Presented By:

/s/ Melody A. Alger
Melody A. Alger, Esquire #4585
ALGER LAW LLC
1300 Division Road, Suite 206
West Warwick, RI  02893
(401) 277-1090
(401) 277-1094 – Fax
malger@algerlaw.com

Case Number: NCA20255056206
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:36AM
Envelope: 5680488
Reviewer: Kelly Bitacco

**CERTIFICATION**

I, the undersigned, hereby certify that on January 14, 2026, this document was filed electronically and is available for viewing and downloading from the electronic filing system and a copy was served by electronic mail to the following counsel of record:

Christopher Mulhearn, Esq.
Rachelle Green, Esq.
Christopher O'Connor, Esq.


/s/ Deana Peters

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# EXHIBIT A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5566778
Reviewer: Kevin Whitworth

In 6th Division District Court
Filed: 11/21/2025 1:50 PM
Scope: 5412168
ewer: Kevin Whitworth

STATE OF RHODE ISLAND                         DISTRICT COURT
PROVIDENCE, SC.                               SIXTH DIVISION


CAROLYN RAFAELIAN,                     :
INDIVIDUALLY AND AS TRUSTEE OF :
THE CAROLYN A. RAFAELIAN TRUST :
2004, AND DERIVATIVELY ON             :
BEHALF OF PENTAGON PROPERTIES, :
INC.,                                 :
                                      :
                  Plaintiff           :
                                      :
        vs.                           :            C.A. No.: 6CA-2025-
                                      :
PRODUCTIVE COLLABORATION,             :
LLC, d/b/a AIR & ANCHOR; and          :
CINERAMA JEWELRY, INC.,               :
                                      :
                  Defendants          :


## COMPLAINT FOR EVICTION FOR REASONS OTHER THAN NON-PAYMENT OF RENT

### Parties

1. Plaintiff, Carolyn Rafaelian ("Plaintiff") is a resident of the State of Florida, and maintains a residence in Jamestown, Rhode Island. The Plaintiff is named herein in her individual capacity, as well as in her capacity as Trustee of The Carolyn A. Rafaelian Trust 2004 (the "2004 Carolyn Trust"). The Plaintiff is a beneficiary of the 2004 Carolyn Trust, respectively The 2004 Carolyn Trust is a shareholder in Pentagon Properties, Inc. ("Pentagon") owning a fifty percent (50.00%) interest in Pentagon. The Plaintiff is also an officer of Pentagon. The Plaintiff brings the within action both in her individual capacity and derivatively on behalf of Pentagon

2. Upon information and belief, Defendant, Productive Collaboration, LLC, doing

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556478
Reviewer: John C
ewer: Kevin Whitworth

business as Air & Anchor ("Productive Collaboration"), is a duly organized and existing limited liability company pursuant to the laws of the State of Rhode Island, having a principal place of business located at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920.

3. Upon information and belief, Defendant, Cinerama Jewelry, Inc. ("Cinerama") is a duly organized corporation pursuant to the laws of the State of Rhode Island, having a principal place of business located at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920.

### Jurisdiction

4. This Court has jurisdiction with regard to the above-identified proceeding pursuant to R.I. Gen. Laws §34-18.1-1, *et seq.*

### Pertinent Facts & Allegations

5. At all times relevant hereto, Pentagon is the record or title owner of the commercial premises located or situated at 115 Pettaconsett Avenue, Cranston, Rhode Island, 02920 (the "Property").

6. On or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equally monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease"). The Cinerama Lease expired on June 30, 2025.

7. Pursuant to the terms of the Cinerama Lease, the only permitted use of the Property was for Cinerama's operation of a jewelry manufacturing business.

8. Cinerama thereafter purportedly entered into and executed a so-called Amended and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556728
Reviewer: John S.

Restated Sublease with Productive Collaboration providing or affording it with use and occupancy of a portion of the Property (the "Sublease"). The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms.

9. Pursuant to the Sublease, Productive Collaboration was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.

10. A dispute subsequently arose between the shareholders of Pentagon and Cinerama, respectively, regarding the use and occupancy of the Property by Cinerama and Productive Collaboration, including, without limitation, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Lease, the unlawful transfer and use of Cinerama's corporate property and/or assets to Productive Collaboration, and numerous breaches of fiduciary duty by Pentagon's and Cinerama's President, Rebecca Rafaelian Caruolo ("Rebecca").

11. On or about December 19, 2024, the Plaintiff, Pentagon's Executive Vice President, sent a demand letter and draft complaint to Rebecca, Carlolyn's co-shareholder (50% of the shares of Pentagon), detailing certain unlawful and/or wrongful conduct on the parts of Rebecca, Cinerama and Productive Collaboration, and each of them, relative to the Property.

12. Despite being fully aware of the above-described dispute, on or about May 1, 2025, without the requisite corporate authorization expressly required in Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a so-called First Amendment to Lease Agreement, to wit, the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama, purporting

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 5:53 AM
Envelope: 5550778
Reviewer: John G.
ewer: Kevin Whitworth

to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through

June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

13. The Amendment was executed by Rebecca without authorization in violation of

Pentagon's By-Laws, and, as such, is without effect or otherwise void under Rhode Island law.

14. In addition, the Amendment was executed by Rebecca on behalf of both parties

thereto, Pentagon and Cinerama, which presents a material conflict of interest which required full

and fair disclosure of any and all of the materials terms and related facts, as well as the express

written authorization or consent from the Plaintiff under Rhode Island law.

15. Rebecca's additional conflicts of interest as President of Pentagon further precluded

her from entering into the Amendment on behalf of Pentagon unilaterally without the Plaintiff's

express authorization, which include, without limitation:

> a)   while only the 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at the least amount of cost;

> b)   the subtenant, Productive Collaboration, is owned by a family relative to whom Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the least amount of cost to bestow a personal benefit on a family member and business partner; and

> c)   Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Productive Collaboration, and is believed to be working for and on behalf of Productive Collaboration while unlawfully using the assets of Cinerama.

16. The terms of the Amendment are unfair to Pentagon and result in the bestowing of

personal benefits upon Rebecca to the detriment of Pentagon and the Plaintiff in violation of

Rebecca's fiduciary duty of loyalty under Rhode Island law and is therefore void.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2025 11:53 AM
Envelope: 5558778
Reviewer: John Doe

17. The Cinerama Lease, as amended by the Amendment, contains a rental amount through 2030, which is grossly below market rate and is replete with commercially unreasonable terms  In addition, Cinerama has, in fact, suspended all business operations and is no longer even operating a jewelry manufacturing business, in direct violation of the Cinerama Lease.

18. Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, the Plaintiff provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island, as well as in violation of Pentagon's corporate By-Laws (the "May 13th Notice").  A *true and accurate copy of the May 13th Notice is appended hereto as Exhibit 1*.  Further, the May 13th Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease.  Notwithstanding, Cinerama has disregarded the same.

19. Despite receipt and acknowledgement of the May 13th Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the same. Cinerama is a holdover tenant or tenant at will at this time.

20. On or about May 14, 2025, the Plaintiff, in her capacity as Executive Vice President of Pentagon, provided notice to Productive Collaboration that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Productive Collaboration's tenancy was terminated effective that same date (June 30, 2025) and that Productive Collaboration was to vacate the Property on or before that date (the "May 14th Notice"). *A true and accurate copy of the May 14th Notice is appended hereto as Exhibit 2*.

21. Despite receipt and acknowledgement of the May 14th Notice, Productive

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Collaboration has failed and/or refused to terminate its use and occupancy of the Property, and to vacate the same. At this time, Productive Collaboration is merely a holdover tenant or tenant at will relative to the Property.

22. Cinerama and Productive Collaboration, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease, as the case may be, and, further, each has failed and/or refused to comply with the May 13th Notice and the May 14th Notice, respectively.

23. Cinerama and Productive Collaboration, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease, respectively, as well as the May 13th Notice and May 14th Notice. *See Exhibits 1 & 2, respectively, appended hereto.*

24. Neither Cinerama nor Productive Collaboration, or either of them, have any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

25. Accordingly, the Plaintiff, on behalf of Pentagon, is required to protect and preserve Pentagon's rights and seek the eviction of Cinerama and Productive Collaboration from the Property forthwith.

WHEREFORE, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against Cinerama and Productive Collaboration, and each of them, jointly and severally, for possession of the Property, that this Court entered judgment in favor of the Plaintiff, and against Cinerama and Productive Collaboration, and each of them, jointly and severally, for any and all past due rent or other fair use and occupancy amounts on account of their respective use and occupancy of the Property up through, and including, the date upon which Cinerama and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Productive Collaboration, and each of them, vacate the Property, that this Court award to the

Plaintiff any and all costs and expenses, including without limitation attorneys' fees, incurred by

the Plaintiff in the preparation and prosecution of the within Complaint, and that this Court

award to the Plaintiff such other further relief as this Court may deem fair just and reasonable.

Respectfully submitted,

Carolyn Rafaelian, individually and as Trustee of
The Carolyn A. Rafaelian Trust 2004, and
derivatively on behalf of Pentagon Properties, Inc.

By her Attorney,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI 02886
Tel.: (401) 533-9330
Email: cmulhearn@mulhearnlaw.com

Dated: November 21, 2025

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2025 11:53 AM
Envelope: 5562778
Reviewer: John Ge
ewer: Kevin Whitworth

# EXHIBIT 1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Rhode Island District Court
Filed: 11/21/2025 1:50 PM
Envelope: 5412168
Reviewer: Kevin Whitworth

KALBERER◦

Kurt T. Kalberer II
Phone: + 1 401 578 1042
Email: kkalberer@kalb-law.com

Kalberer LLP
251 Royal Palm Way
Palm Beach, FL 33480

May 13, 2025

**VIA ELECTRONIC MAIL**
Christine Bush, Esq.
Hinckley, Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, RI 02903-2319

Re:    Notice of Breach: Demand for Board of Director/Shareholders Meeting
Pentagon Properties, Inc.

Dear Ms. Bush:

We are in receipt of your correspondence dated May 8, 2025 1) enclosing a purported amendment to the lease agreement between Pentagon Properties, Inc. ("Pentagon") and Cinerama Jewelry, Inc. ("Cinerama") dated May 1, 2025 (the "Amendment") 2) declining our request for your client to identify the current officers and members of the Board of Directors and 3) refusing our request to schedule a meeting of the Board of Directors and shareholders.

This correspondence serves as formal notice that the Amendment was executed in violation of the company's Bylaws, is unauthorized and void under Rhode Island law. This letter serves as further notice our client objects to the Amendment and the terms contained therein, which are patently detrimental to Pentagon and its shareholders. As you and your client have previously been advised, repeatedly, Ms. Rafaelian disputes the current lease terms with Cinerama and its subtenant Productive Collaborations, LLC d/b/a Air & Anchor ("Air & Anchor"). We hereby make a repeated and final demand for a meeting of Pentagon's Board of Directors and shareholders without delay and instruct your client to cease and desist from taking any action regarding the business and affairs of Pentagon without the consent of our client as required under the Bylaws and Rhode Island law.

Pursuant to Pentagon's Bylaws, the execution of the Amendment required authorization by the company's Board of Directors or the written consent of our client, who holds a 50% interest in Pentagon. Specifically, pursuant to Article III of the Bylaws, "[t]he property, business and affairs of the corporation shall be managed by a Board of Directors, comprised of five (5) members or of such number as may from time to time be fixed by the shareholders". In addition, Articles 2.2 and 3.7 of the Bylaws mandate the occurrence of annual meetings on the first Monday of January to address the business affairs of Pentagon. Despite the clear and unambiguous provisions of the Bylaws, Pentagon has not yet held its annual meeting, no vote has been taken to authorize the Amendment and no board resolution was passed.

In addition, Articles 2.10 and 3.9 of the Bylaws specifically require that any actions taken without a board or shareholders meeting have prior *written consent* of Carolyn Rafaelian, the

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Filed: 11/21/2025 1:50 PM
Envelope: 5412168
Reviewer: Kevin Whitworth

holder of 50% of the shares in Pentagon. Not only did Ms. Rafaelian not provide consent to the Amendment as required under the Bylaws, she has delivered numerous notices to your client objecting to the Cinerama lease terms, including the rental amount, scope, use of the premises and misappropriation of Cinerama assets, as well as the performance of the sublease with Air & Anchor. Accordingly, the Amendment was unauthorized under the Bylaws and is void.

The execution of the Amendment is also a breach of your client's fiduciary duty to Ms. Rafaelian. The Amendment, if indeed executed[1] on May 1st, was done while your client was aware of (1) active disputes between the shareholders regarding the terms of the subject lease (2) clear objections by our client regarding the subtenant's unauthorized use and occupancy of the premises (3) legal concerns raised regarding fiduciary breaches and asset misappropriation and 4) participation in fraud and/or gross negligence regarding the fair market rental value of the subject premises for the benefit of Air & Anchor and to the detriment of Cinerama and Pentagon. Renewing the lease under these conditions constitutes, *inter alia*, a knowing violation of her fiduciary duties. Consequently, our client is entitled to seek rescission of the Amendment, in addition to injunctive relief and the recovery of damages.

Your client is identified in your previous mediation statement as the President, Secretary and Treasurer of Pentagon and is required to schedule a Board of Directors and shareholders meeting pursuant to the terms of the Bylaws. Final demand is hereby made for a Board of Directors and shareholders meeting for the purpose of discussing the subject lease and use of the premises.

This email also serves as notice to Cinerama the purported Amendment is disputed, unauthorized and its lease will terminate effective June 30th. Therefore, Cinerama is prohibited from entering into a sublease with Air & Anchor beyond such term. In addition, our client is now required to mitigate her damages and notify Air & Anchor the Amendment was unauthorized, is subject to a shareholder dispute and that any recent or future extension of its sublease pursuant to or in reliance on the Amendment is void and that it must vacate the premises by June 30th, or our client will be commencing an eviction action on behalf of the company.

This correspondence shall not be construed as a waiver of any rights or claims Ms. Rafaelian may have at law or in equity, all of which are expressly reserved.

Very truly yours,

Kurt T. Kalberer II

---

[1] Your client is hereby instructed to preserve all Pentagon, Cinerama and personal computers, printers and cellular phones, including all electric data thereon and emails, which may concern or relate to the drafting or execution of the purported Amendment.

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556728
Reviewer: John G.

# EXHIBIT 2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# KALBERER•

Kurt T. Kalberer II
Phone: + 1 401 578 1042
Email: kkalberer@kalbererllp.com

Kalberer LLP
231 Royal Palm Way
Palm Beach, FL 33480

May 14, 2025

**VIA FEDERAL EXPRESS**
Rachel Ajaj
Omar Ajaj
Productive Collaboration, LLC
115 Pettaconsett Ave.
Cranston, RI 02920

Re:   Notice of Expiration of Master Lease & Sublease; Pentagon Properties, Inc.

Dear Mr. & Mrs. Ajaj:

This firm represents Carolyn Rafaelian in connection with her ownership interest in Pentagon Properties, Inc. ("Pentagon") and Cinerama Jewelry, Inc. ("Cinerama"). Ms. Rafaelian is the Vice President and 50% shareholder of Pentagon. As you are aware, Pentagon is the owner of the premises located at 115 Pettaconsett Avenue, Cranston, Rhode Island, presently occupied by your company, Productive Collaboration, LLC d/b/a Air & Anchor ("Air & Anchor") by way of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") with Cinerama and subject to the current master lease agreement between Pentagon and Cinerama (the "Master Lease").

As you are aware, the term of the Master Lease presently expires on June 30, 2025. On or about May 8, 2025, our client was advised that Pentagon's President, Rebecca Caruolo, has attempted to unilaterally amend the Master Lease to extend the term for an additional five (5) year period (the "Amendment"), presumably to extend the Sublease with Air & Anchor on the same or similar terms. Please be advised the Amendment was unauthorized, made in violation of Pentagon's Bylaws and is void. Accordingly, the Sublease presently expires on June 30, 2025 pursuant to Section 2(a) of the Sublease. You are hereby notified of Air & Anchor's obligation to vacate the premises on or before June 30, 2025. Should Air & Anchor occupy any of the premises after this time, we have been authorized to immediately commence legal proceedings to protect and enforce our client's rights.

In addition, as you are likely aware, the terms and rental amount provided for in the Amendment and current Sublease are woefully below market rate, not commercially reasonable, severely detrimental to both Pentagon and Cinerama and significantly beneficial to your company. Moreover, we understand Ms. Caruolo is presently working for Air & Anchor and has wrongfully misappropriated and transferred to Air & Anchor substantially all of the assets of Cinerama to Air & Anchor in violation of her fiduciary duties to Cinerama and Ms. Rafaelian.

Demand is hereby made for you to cease and desist use of Cinerama assets, including its goodwill, equipment, inventory and machinery, which is all outside the scope of the Sublease. Such unlawful conduct on the premises is grounds for termination of the Sublease. In addition, your complicity in working with Ms. Caruolo to misappropriate the assets of Cinerama, obtain unfair and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John Go

ewer: Kevin Whitworth

grossly unreasonable rental terms and effectively disenfranchise our client of her beneficial ownership interests in Pentagon and Cincrama is actionable in a court of law and entitles her to the recovery of damages and other relief.

This correspondence shall not be construed as a waiver of any rights or claims Ms. Rafaelian may have at law or in equity, all of which are expressly reserved.

Very truly yours,

Kurt T. Kalberer II

cc:    Erin Hockensmith, Esq.
       William Dolan, Esq.

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# EXHIBIT E

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

<div style="border: 1px solid">
This Opinion is not a
Precedent of the TTAB
</div>

Mailed: August 25, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Carolyn Rafaelian*

*v.*

*Alex and Ani, LLC*

————

Cancellation No. 92080606

————

Mark E. Tetreault for Carolyn Rafaelian.

Jess M. Collen of Rothwell Figg Ernst & Manbeck PC, for Alex and Ani, LLC.

————

Before Zervas, Elgin and Bradley,
    Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Alex and Ani, LLC ("Respondent"), owns three Principal Register registrations for the following standard character marks and for the following International Class 14 goods:

> • Registration No. 4844434 for RAFAELIAN GOLD (GOLD disclaimed) for "a coating made in significant part of gold sold as an integral component of jewelry."

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 231 of 377 PageID #: 413

Cancellation No. 92080606

- • Registration No. 4844435 for RAFAELIAN SILVER (SILVER disclaimed) for "a coating in significant part of silver sold as an integral component of jewelry."

- • Registration No. 5368093 for RAFAELIAN ROSE GOLD (ROSE GOLD disclaimed) for "jewelry made in significant part of rose gold."[1]

Carolyn Rafaelian ("Petitioner") alleges:

- • "[She] is an American-Armenian entrepreneur and businesswoman. Her father, Ralph Rafaelian founded Cinerama Jewelry, Inc. in the mid-1960's and grew the company into one of the premier jewelry manufacturers in the United States. Ms. Rafaelian followed in her father's footsteps, and in 2004, Rafaelian founded Alex and Ani, LLC, an internationally acclaimed jewelry and accessories line named after her two eldest daughters. The brand started with a few rings and bracelets and expanded into a full line of jewelry anchored by its patented expandable wire bangle. Between 2004 and 2018, Alex and Ani grew to sales of more than $500 million annually, and the company and its founder were by then well known in the jewelry industry and generally by the public."

- • "After a 2019 financial dispute Rafaelian divested her controlling interest in Alex and Ani and shortly thereafter in May 2020, Rafaelian left Alex and Ani behind for new ventures."

- • "Because of the widespread commercial success of Alex and Ani, extensive media coverage and Carolyn's extensive charitable work, Carolyn Rafaelian, and the name

---

[1] The underlying applications for Registration No. 4844434 and 4844435 were filed on January 30, 2015 under Trademark Act Section 1(a), 15 U.S.C. § 1051(a). Both marks registered on November 3, 2015, with a claim of first use and first use in commerce in February 2014.

The underlying application for Registration No. 5368093 was filed on January 5, 2017 also under Section 1(a). The mark registered on January 2, 2018, with a claim of first use and first use in commerce in February 2014.

We refer to the goods which are the subject of the three registrations collectively as "Respondent's Goods."

- 2 -

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 232 of 377 PageID
#: 414

Cancellation No. 92080606

Rafaelian, in general, are well known in the jewelry industry and with the public at large."

• "Petitioner now maintains active websites promoting new jewelry and fashion ventures including www.rafaelian.com."[2]

Petitioner claims:

• All three of Respondent's registrations should be cancelled because they comprise a name identifying a living individual (Carolyn Rafaelian) and were registered without her written consent as required under Trademark Act Section 2(c), 15 U.S.C. § 1052(c).

• Respondent's Registration No. 5368093 should be cancelled under Trademark Act Section 2(e)(4), 15 U.S.C. § 1052(e)(4), because the mark RAFAELIAN ROSE GOLD is primarily merely a surname (RAFAELIAN) of a well-known person associated with the company, and the mark had not achieved any acquired distinctiveness as of the filing date.[3]

Respondent, in its Answer, denied the salient allegations of the amended Petition to Cancel, admitted certain non-salient allegations and asserted various "affirmative defenses."[4] Respondent did not file a brief and hence waived or forfeited any affirmative defenses. *See JNF LLC v. Harwood Int'l Inc.*, 2022 TTAB LEXIS 328, at\*4 n.8 (TTAB 2022) (finding asserted defenses not pursued either waived or forfeited);

---

[2] Amended Petition to Cancel, 7 TTABVUE 3-4. In her brief, Petitioner argues that her Section 2(e)(4) claim is directed to all three registered marks. (Petitioner's brief, 34 TTABVUE 6.) A Section 2(e)(4) claim may only be raised against a mark that has been registered for less than five years. *See* Trademark Act Section 14, 15 U.S.C. § 1064.

Record citations are to TTABVUE, the Board's publicly available docket history system. The number preceding "TTABVUE" corresponds to the docket entry number, and the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry, if applicable.

[3] 7 TTABVUE 5-6.

[4] 8 TTABVUE.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 233 of 377 PageID #: 415

Cancellation No. 92080606

TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 801.01 (2025) ("If a party fails to reference a pleaded claim or affirmative defense in its brief, the Board will deem the claim or affirmative defense to have been waived or forfeited.").

In a cancellation proceeding, the challenged registrations have a presumption of validity. Trademark Act Section 7(b), 15 U.S.C § 1057(b). Petitioner must overcome this presumption by a preponderance of the evidence. *Cold War Museum, Inc. v. Cold War Air Museum, Inc.,* 586 F.3d 1352, 1358 (Fed. Cir. 2009).

For the reasons discussed below, we deny the Petition to Cancel.

## I.    Trial Record

In addition to the pleadings, the trial record automatically includes the file history of the three involved registrations pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b).

Petitioner submitted one Notice of Reliance (12 TTABVUE) with the following seven Internet articles:

> • "Bangle Billionaire: How Alex And Ani Founder Carolyn Rafaelian Built An American Jewelry Empire," FORBES MAGAZINE, June 12, 2017 (12 TTABVUE 7-16).
>
> • "Ghosts Be Gone," NEW YORK TIMES, Sept. 18, 2013 (12 TTABVUE 18-19).
>
> • "Inside the Many, Many Homes of This Jewelry Billionaire," WALL STREET JOURNAL, July 12, 2018 (12 TTABVUE 21-23).
>
> • "Carolyn Rafaelian, Founder of Alex and Ani, on How to Wear Stackable Jewelry," WALL STREET JOURNAL, Aug. 6, 2014 (12 TTABVUE 25-28).

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 234 of 377 PageID #: 416

Cancellation No. 92080606

> • "Rafaelian named Ernst & Young Entrepreneur of Year," PROVIDENCE BUSINESS JOURNAL, June 25, 2012 (12 TTABVUE 31-32).
>
> • "Room at the Top," RHODE ISLAND MONTHLY MAGAZINE, Sep. 2013 (12 TTABVUE 34-42).
>
> • "Women in Business Q&A: Carolyn Rafaelian, Founder, CEO and CCO, Alex and Ani," HUFFINGTON POST BLOG, Apr. 21, 2016 (TTABVUE 44-48).

Respondent submitted the following:

> • The declaration of James R. Hastings, one of Respondent's attorneys, with a "Restructuring Support Agreement" by and between Petitioner, Respondent and others. (29 TTABVUE (confidential version); 30 TTABVUE (non-confidential version)).
>
> • A Notice of Reliance with (i) Petitioner's responses to Respondent's first documents requests;[5] and (ii) two pages from the Wayback Machine Internet Archive for the alexandani.com website. (32 TTABVUE).

## II.   Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action must be established by the plaintiff in every inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373-74 (Fed. Cir. 2020). To establish entitlement to bring a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute, and (ii) a reasonable belief in damage proximately caused

---

[5] "Responses to document requests are admissible solely for purposes of showing that a party has stated that there are no responsive documents." *DowntownDC Bus. Improvement Dist. v. Clarke*, 2024 TTAB LEXIS 412, at *7 n.10 (TTAB 2024).

- 5 -

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 235 of 377 PageID
#: 417

Cancellation No. 92080606

by registration of the mark. *See Corcamore*, 978 F.3d at 1303 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-33 (2014)).

Because Petitioner has not addressed entitlement in her brief, and because we deny both of Petitioner's claims on other grounds, we do not address the entitlement issue.

### III. No Consent to Register Name Identifying a Particular Living Individual – Registration Nos. 4844434, 4844435, and 5368093

Section 2(c) of the Trademark Act prohibits registration of a mark that "consists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent ...." "Whether consent to registration is required depends on whether the public would recognize and understand the mark as identifying a particular living individual." *In re ADCO Indus. – Techs., L.P.*, 2020 TTAB LEXIS 7, at *21 (TTAB 2020). "A consent is required only if the individual bearing the name in the mark will be associated with the mark as used on the goods or services, either because: (1) the person is so well known that the public would reasonably assume a connection between the person and the goods or services; or (2) the individual is publicly connected with the business in which the mark is used." *Id.* at *21-22 (citations omitted).

"A 'name' does not have to be the full name of an individual." *Id.* at *22. "Section 2(c) applies not only to full names, but also first names, surnames, shortened names, pseudonyms, stage names, titles, or nicknames, if there is evidence that the particular name identifies a specific living individual who is publicly connected with

- 6 -

Cancellation No. 92080606

the business in which the mark is used, or who is so well known that such a connection would be assumed." *Id.* (citations omitted).

Because Petitioner does not contend that she is so well known that the public would reasonably assume the connection with her, and there is no apparent reason based on the pleadings and evidentiary record to consider Petitioner as such,[6] we consider whether Petitioner is in the second category, *i.e.*, whether she is publicly connected with the business in which the mark is being used, that is, the jewelry industry. *M/S R.M. Dhariwal (Huf) 100% EOU v. Zarda King Ltd.*, 2019 TTAB LEXIS 95, at \*21 (TTAB 2019).

The seven Internet articles Petitioner submitted do not establish that Petitioner is publicly connected with the jewelry business. "Internet evidence is only admissible for what it shows on its face, and because it does not fall within an exception to the hearsay rule, will not be considered to prove the truth of any matter stated therein." *WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 2018 TTAB LEXIS 72, at \*23 (TTAB 2018) (citations omitted). A competent witness has not testified to the truth of the matters contained within the seven articles. *See* TBMP § 704.08(a) and authorities cited therein. Because we do not consider the articles for the truth of any assertion made therein, these seven articles do not help Petitioner establish that

---

[6] Representative cases involving this first category are *ADCO*, 2020 TTAB LEXIS 7, at \*24 ("By any measure … Donald Trump is a well-known political figure and a celebrity."); *In re Hoefflin*, 2010 TTAB LEXIS 438 (TTAB 2010) (because Barack Obama was the President of the United States, the purchasing public would reasonably assume that marks consisting of the names BARACK and OBAMA identify him); and *In re Masucci*, 1973 TTAB LEXIS 166, at \*1-2 (TTAB 1973) (EISENHOWER for greeting cards was refused on the ground that it consisted of the name of the late President Eisenhower during the life of his widow, and application for registration was filed without her consent). )

- 7 -

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 237 of 377 PageID
#: 419

Cancellation No. 92080606

"the consuming public connects [Petitioner] with the manufacturing or marketing of the goods at issue." *ADCO*, 2020 TTAB LEXIS 7, at *23.

If we were to consider the dates and contents of the articles for the truth of the matter asserted, they still do not help Petitioner. "Because a § 2(c) claim is based on public association with the name of a particular living individual, the question of present-day recognition by the public must be considered at the time registration is sought, since an individual's notoriety with the public could fade over time." *Dhariwal*, 2019 TTAB LEXIS 95, at *24 (citations omitted). Some of the articles are not within the appropriate time period for consideration (the year 2015 for Registration Nos. 4844434 and 4844435, and the year 2018 for Registration No. 5368093). In addition, there is no evidence regarding the extent of exposure to the public of The Huffington Post Blog, the Providence Business Journal and the Rhode Island Monthly Magazine articles, or the public's familiarity with them. Overall, the remaining articles are too few in number to be persuasive.

In sum, the evidentiary record fails to establish by a preponderance of the evidence that Carolyn Rafaelian is so well known that the public would reasonably assume the connection with her, or that she was publicly connected with the relevant marketplace at the relevant times. Petitioner's Section 2(c) claim regarding the continued registration of Registration Nos. 4844434, 4844435, and 5368093 therefore is denied.[7]

---

[7] In view of our finding, we need not address Petitioner's argument regarding a consent she allegedly provided in an application for a mark not involved in this proceeding. *See* Petitioner's brief, 34 TTABVUE 4.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 238 of 377 PageID #: 420

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Cancellation No. 92080606

## IV.     Primarily Merely a Surname – Registration No. 5368093

Section 2(e)(4) of the Trademark Act precludes registration of a mark on the Principal Register which is "primarily merely a surname" without a showing of acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f). A term is primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance to the purchasing public is that of a surname. *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 1377 (Fed. Cir. 2017); *In re Beds & Bars Ltd.*, 2017 TTAB LEXIS 141, at *6-7 (TTAB 2017). In this case, the purchasing public for Petitioner's Goods consists of the general purchasing public. Ascertaining the perception of this purchasing public is a question of fact that must be resolved on a case-by-case basis, considering the record as a whole. *In re Weale Care, LLC*, 2023 TTAB LEXIS 407, at *4 (TTAB 2023).

To determine whether the purchasing public would perceive RAFAELIAN in the challenged mark as primarily merely a surname, we can look to multiple sources of evidence. These include (i) whether an applicant adopted a principal's name and used it in a way that revealed its surname significance, (ii) whether the term had a non-surname "ordinary language" meaning, and (iii) the extent to which the term was used by others as a surname.[8] *In re Etablissements Darty et Fils*, 759 F.2d 15, 18 (Fed. Cir. 1985).

---

[8] The Board's oft-cited "*Benthin* factors," *see In re Benthin Mgmt. GmbH*, 1995 TTAB LEXIS 10, at *21-26 (TTAB 1995), are examples of other inquiries that may lead to evidence regarding the purchasing public's perception of a term's primary significance.

- 9 -

Cancellation No. 92080606

Petitioner presented only a short argument regarding this claim and did not cite any evidence in support.[9]

In this case, Respondent admitted "Petitioner was employed by Registrant as CEO at the time that Registrant filed its applications for registration that are the subject of this cancellation proceeding."[10] There thus has been an association between the parties, and based on Respondent's evidence, it is reasonable to find that Respondent adopted Petitioner's name in the registered RAFAELIAN ROSE GOLD mark. But the record contains only one Wayback Machine screenshot showing Respondent's use of Petitioner's name in a way that reveals the alleged surname significance.[11] There is no information as to the extent of exposure of this webpage. Also, there is no evidence regarding whether the term had a non-surname "ordinary language" meaning, and the extent to which the term was used by others as a surname. With regard to the last factor regarding the extent to which the term was used by others as a surname, the evidence does not reveal any other uses of the surname Rafaelian in the United States. On this limited record, we find that Petitioner has not established that RAFAELIAN ROSE GOLD is primarily merely a surname under Section 2(e)(4) by a preponderance of the evidence.

**Decision:** The Petition to Cancel Registration Nos. 4844434, 4844435 and 5368093 is denied.

---

[9] 34 TTABVUE 6-7.

[10] Answer to Amended Petition to Cancel, 8 TTABVUE 4.

[11] 32 TTABVUE 16 and 17.

*- 10 -*

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# EXHIBIT B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

# LEASE AGREEMENT

By this Agreement made and entered into on January 1, 2022, Lucia Rafaelian herein collectively referred to as "Lessee", and Pentagon Properties Inc., herein referred to as "Lessor". Lessor leases to lessee the premises situated at 91 Tupelo Hill Drive, in the City of Cranston, County of Providence, State of Rhode Island, together with all appurtenances, for a term of Five (5) years to commence on January 1, 2022 and to end on December 31, 2027.

## SECTION ONE
## RENT

Lessee agrees to pay, without demand, to lessor as rent for the demised premises the sum of Five Thousand Dollars ($5,000.00) per month in advance on the first day of each calendar month beginning January 1, 2022 through December 31, 2027.

## SECTION TWO
## SECURITY DEPOSIT

None

## SECTION THREE
## QUIET ENJOYMENT

Lessor covenants that on paying the rent and performing the covenant herein contained, lessee shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term.

## SECTION FOUR
## USE OF PREMISES

The demised premises shall be used and occupied by lessee exclusively as a private single-family residence, and neither the premises nor any part hereof shall be used at any time during the term of this lease by lessee for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other tab as a private single-family residence. Lessee shall comply with all the sanitary laws, ordinances, rules and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalks connected hereto, during the term of this lease.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 242 of 377 PageID #: 424

## SECTION FIVE
## CONDICTION OF PREMISES

Lessee stipulates that they have examined the demised premises, including the grounds and all buildings and improvements, and that they are, at the time of this lease, in good order, repair, and is safe, clean and tenantable.

## SECTION SIX
## ASSIGNMENT AND SUBLETTING

Without the prior written consent of lessor, which consent shall not be unreasonable withheld lessee shall not assign this lease, or sublet or grant any concession or license to use the premises or any part thereof.  Consent by lessor to on assignment, subletting, concession, or license shall not be deemed to be a consent to any subsequent assignment, subletting, concession, or license.  An assignment or subletting by operation of law shall be void and shall, at lessor's option, terminate this lease

## SECTION SEVEN
## ALTERATION AND IMPROVEMENT

Lessee may make alterations to the buildings on the demised premises and construct any building or make other improvements on the demised premises upon notice to lessor.  All alteration, changes, and improvements built, constructed, or placed on the demised premises by lessee, with the exception of fixtures removable without damage to the premises and movable personal property, shall, unless otherwise provided by written agreement between lessor and lessee, by the property of lessor and remain on the demised premises at the expiration or sooner termination of this lease.

## SECTION EIGHT
## DAMAGE TO PREMISES

If the demised premises, or any part thereof, shall be partially damaged by fire or other casualty not due to lessee's negligence or willful act or that of his employee, family, agent, or visitor, the premises shall be promptly repaired by lessor and there shall be an abatement of rent corresponding with the time during with, and the extent to which, the leased premises may have been untenantable; but, if the leased premises should be damaged other than by lessee's negligence or willful act or that of his employee, family, agent, or visitor tot the extent that lessor shall decide not to rebuild or repair, the term of this lease shall end and the rent shall be prorated up to the time of the damage.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

## SECTION NINE
## DANGEROUS MATERIALS

Lessee shall not keep or have on the leased premises any article or thing of a dangerous inflammable, or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

## SECTION TEN
## UTILITIES / MAINTENANCE

Lessor shall be responsible for arranging for and paying for all utility services required on the premises, including water, gas, oil, electric and sewer. Lessor shall be responsible for lawn maintenance.

## SECTION ELEVEN
## MAINTENANCE AND REPAIR

Lessor will, at its sol expense, keep and maintain the leased premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof. In particular, lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bells in order, keep the walks free from dirt and debris; and, at the sole expense, shall make all required repairs to the plumbing, range, heating apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor.

## SECTION TWELVE
## RIGHT OF INSPECTION

Lessor and his agents shall have the right at all reasonable times during the term of this lease and any renewal thereof to enter the demised premises for the purpose of inspecting the premises and all building and improvements thereon.

## SECTION THIRTEEN
## SUBORDINATION OF LEASE

This lease and lessee's leasehold interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or thereafter placed on the demised premises by lessor, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

## SECTION FOURTEEN
## HOLDOVER BY LESSEE

Should lessee remain in possession of the demised premises with the consent of lessor after the natural expiration of this lease, a new tenancy from month to month shall be created between lessor and lessee which shall be subject to al terms and conditions hereof but shall be terminable on thirty (30) days' written notice served by either lessor or lessee on the other party.

## SECTION FIFTEEN
## SURRENDER OF PREMISES

At the expiration of the lease term, lessee shall quit and surrender the premises hereby dismissed in a good state and condition as they were at the commencement of this lease, reasonable use and wear thereof and damages by the elements accepted.

## SESCTION SIXTEEN
## DEFAULT

If any default is made in the payment of rent, or any part hereof, at the times hereinbefore specified, or if any default is made in the performance of or compliance with any other term or condition hereof, the lease, at the option of lessor, shall terminate and be forfeited, and lessor many re-enter the premises and remove all persons there from. Lessee shall be given written notice of any default or breach, and termination and forfeiture of the lease shall not result if, within thirty (30) days of receipt of such notice, lessee has corrected the default or breach or has taken action reasonable likely to affect such correction within a reasonable time.

## SECTION SEVENTEEN
## ABANDONMENT

If at any time during the term of this lease lessee abandons the demised premises or any part thereof, lessor may, at his option, enter the demised premises by any means without being liable for any prosecution hereof, and without becoming liable to lessee for damages or for any payment of any kind whatever, and may, at his discretion, as agent for lessee, relet the demised premises, or any part thereof, for the whole and any part of the then unexpired term, and may receive and collect all rent payable ty virtue of such reletting, and, at lessor's option, hold lessee liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this lease had continued in force, and the net rent for such period realized by lessor by means of such reletting.  If lessor's right of re-entry is exercised following abandonment of the premises by lessee, then lessor may consider any personal property belong to lessee and left on the premises to also have been abandoned, in which case lessor may dispose of all such personal property in any manner lessor shall deem proper and is hereby relieved of all liability for doing so.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

## SECTION EIGHTEEN
## RENEAL / TEMINATION

The lease shall be deemed to be automatically renewed for three (3) successive five-year terms unless the lessee shall notify the lessor of lessee's desire not to renew his lease for any of the three (3) successive renewal periods. Lessee shall have the absolute right to terminate this lease during its initial period or any renewal period upon written notice given at lease ninety (90) days in advance to lessor.

## SECTION NINTEEN
## BINDING EFFECT

The covenant and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be constructed as conditions of this lease.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Any alterations of deletions herein were made in the Lease before execution, and any additional provisions to which the parties have agreed and which are added herein or in any addendum attached hereto shall be considered a part hereof.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date set forth above.

WITNESS:

LESSEE:

LUCIA RAFAELIAN

By:_____

Its:_____

WITNESS:

LESSOR:

PENTAGON PROPERTIES, INC.

By:_____
Rebecca S. Rafaelian

Its:_____
President

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 247 of 377 PageID
#: 429

STATE OF RHODE ISLAND                                          SUPERIOR COURT
NEWPORT, SC

|  |  |
|---|---|
| CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST 2004 | |
| Plaintiff, | C.A. NO. NC-2025-0531 |
| v. | |
| REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OBJECTION TO MOTION TO AMEND

Plaintiff Carolyn Rafaelian's ("Carolyn") proposed Amended Complaint is fundamentally defective. She seeks to bring ten derivative claims on behalf of Cinerama Jewelry, Inc. ("Cinerama") while simultaneously maintaining active litigation against Cinerama in the Sixth Division District Court (**Exhibit A**) and proposing derivative claims **in this case against** Cinerama on behalf of Pentagon Properties, Inc. ("Pentagon") (proposed Count IV). This is untenable. Were the Court to grant the Motion to Amend, Carolyn would occupy both sides of this litigation — empowered to force Cinerama to assert claims and then stipulate to judgment against it, including by surrendering to her wholly unfounded allegation that Cinerama is the "alter ego" of Productive Collaboration, LLC ("PC"). *See* proposed Amended Complaint at ¶ 7 and Prayer for Relief IV(c). This direct conflict of interest resulting alone precludes Carolyn from representing Cinerama derivatively.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 248 of 377 PageID
#: 430

Carolyn's status as a trustee of non-voting, minority shareholders further disqualifies her from bringing derivative claims for Cinerama. Rule 23.1 requires that a derivative plaintiff "fairly and adequately represent the interest of the shareholders or members similarly situated." Super. R. Civ. P. 23.1. Carolyn cannot satisfy this standard. There is a fundamental divergence between Carolyn, as trustee of trusts holding only non-voting minority interests in Cinerama, and Defendant Rebecca Rafaelian Caruolo ("Rebecca"), as trustee of trusts holding the majority interest and all voting shares in Cinerama. This structural difference, unique to Carolyn, is dispositive. As a holder of non-voting shares, Carolyn has no voice in corporate governance and no ability to influence Cinerama's direction—her interests as a passive, minority stakeholder are inherently misaligned with those of the voting shareholder(s). The adequacy requirement exists precisely to prevent minority shareholders with divergent interests from commandeering litigation on behalf of a corporation they cannot represent, but that is exactly what Carolyn seeks to do here. Because Carolyn has a direct conflict with Cinerama and cannot adequately represent its shareholders, she lacks standing to bring derivative claims on Cinerama's behalf. The Court should deny the Motion to Amend proposed Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII as futile.

Disqualifying conflicts also preclude Carolyn from representing Pentagon derivatively in proposed Counts I, II, IV, VI, VII, and VII (sic). With Carolyn at the helm, Pentagon would challenge not only its longstanding, and performing, commercial lease with Cinerama, but also a lease between Pentagon and Carolyn's own mother — claiming the residential lease (**Exhibit B**) is "grossly below market rate and contains woefully commercially unreasonable terms." *See* proposed Amended Complaint at ¶ 72. It is not credible that Carolyn would pursue Pentagon's objective best interests when her proposed claims appear designed to ensnare her own mother.

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

This allegation, together with the balance of the proposed derivative Pentagon claims, confirms that Carolyn's personal grievances — not Pentagon's corporate welfare — would drive this litigation. Notably, when Carolyn attempted to bring derivative claims on Pentagon's behalf in Sixth Division District Court, Judge DeCarvalho granted Pentagon's Motion to Intervene through its own independent counsel — over Carolyn's objection. **Exhibit C**. The Court should deny Carolyn's Motion to Amend to bring derivative claims for Pentagon.

Beyond her standing deficiencies for derivative claims under Rule 23.1, Carolyn's proposed Amended Complaint is replete with futile individual claims. First, Count II asserts an individual claim for waste even though Rhode Island law is clear that waste claims are derivative and belong exclusively to the corporation. Second, Count VII asserts an individual claim for "misappropriation of corporate opportunity," even though the remedy for usurpation of corporate opportunities lies solely in derivative suit. Third, Count X seeks individual damages for "conversion of Cinerama's assets, likeness, and goodwill"— assets that belong to Cinerama (or others), not Carolyn — and improperly (with Count III) attempts to extend conversion to intangible property in contravention of Rhode Island law. Fourth, Count IX asserts federal Lanham Act claims predicated on statements that are neither false nor misleading, and that Carolyn lacks standing to challenge because she has no protectable interest and cannot demonstrate any cognizable injury from PC's truthful statements about its location and the Rafaelian family's jewelry business legacy. Each of these claims fails as a matter of law and should be denied as futile.

Finally, Carolyn's proposed Amended Complaint seeks appointment of "a temporary and permanent receiver" for PC. *See* proposed Amended Complaint (Count XI). Because Carolyn is neither a shareholder nor creditor of PC, either individually or derivatively, she has no standing

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

to seek this extraordinary remedy. *Epic Enterprises LLC v. 10 Brown & Howard Wharf Condo. Ass'n*, 253 A.3d 383, 388 (R.I. 2021) ("Our caselaw surrounding both statutory and equitable proceedings to appoint receivers is clear that standing to pursue a receivership is available only for shareholders of a corporation and its creditors"). For these reasons and those set forth more fully below, the Court should deny Carolyn's Motion to Amend in its entirety.

## ARGUMENT

### A. The Court Should Deny the Motion.

"Rule 15(a) of the Superior Court Rules of Civil Procedure 'liberally permits amendment absent a showing of extreme prejudice.'" *Degasparre v. Fay Servicing, LLC*, 288 A.3d 146, 150 (R.I. 2023) (quoting *Granoff Realty II, Ltd. P'ship v. Rossi*, 823 A.2d 296, 298 (R.I. 2003)). Despite that liberal standard, "[a] motion to amend may be denied at the discretion of the hearing justice for myriad reasons, including 'undue delay, bad faith, undue prejudice to the opposing party, or, most relevant to this case, futility of the amendment.'" *Id.* at 156 (quoting *Gannon v. City of Pawtucket*, 200 A.3d 1074, 1080 (R.I. 2019)).

Carolyn argues that "the amendments clarifying the derivative nature of certain claims is [sic] proper under the liberal standard of Rule 15(a), which applies equally to derivative claims as it does to any other type of claim." Motion at 5. This characterization obscures what Carolyn actually seeks. Her proposed Amended Complaint would not merely "clarify" existing claims. Rather, it would install Carolyn as the self-appointed champion of Cinerama and Pentagon, empowering her to drive litigation against Cinerama, against Rebecca, and against PC (owned by other family members), regardless of whether such claims benefit or harm either company, while simultaneously pursuing individual claims, many of which are futile. The Court should deny Carolyn's Motion to Amend. *1100 North Main LLC v. Shoreby Hill Prop., Inc.*, 348 A.3d 799,

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

805 (R.I. 2026) (affirming denial of futile motion to amend); *Gannon*, 200 A.3d at 1080; *Carroll*

*v. Winoker*, 2025 WL 2247175, at *3 (R.I. Super. July 31, 2025) (a claim is futile when it cannot

survive a motion to dismiss).

**B.      Because Carolyn is Not Qualified to Bring Derivative Claims on Behalf of Cinerama (proposed Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII), the Court Should Deny the Motion to Amend on Those Proposed Claims Based on Futility for Lack of Standing.**

Rhode Island law, as reflected in R.I. Gen. Laws § 7-1.2-711 and Super. R. Civ. 23.1,

requires that a derivative plaintiff: (1) be a shareholder at the time of the alleged wrongful act;

and (2) also fairly and adequately represent the interest of the shareholders or members:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law.  The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members and the reasons for the plaintiff's failure to obtain the action or for not making the effort.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders or members similarly situated in enforcing the right of the corporation or association.

Super. R. Civ. P. 23.1.  Carolyn lacks standing to bring the derivative claims because she cannot

satisfy Rule 23.1's requirement that she "fairly and adequately represent the interest of the

shareholders or members similarly situated in enforcing the right of the corporation or

association."  Super. R. Civ. P. 23.1.  The fundamental divergence of interest between Carolyn, as

trustee of trusts holding only non-voting minority interests in Cinerama, and Rebecca, as trustee

of trusts holding the majority interest and all voting shares, renders Carolyn without standing to

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 252 of 377 PageID
#: 434

represent Cinerama's shareholder class. *See Cruz v. Mortg. Elec. Registration Sys., Inc.*, 108

A.3d 992, 996 (R.I. 2015) ("Standing is a threshold inquiry into whether the party seeking relief

is entitled to bring suit.") (quoting *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1110 (R.I.

2014)).

### 1.    Carolyn Has a Direct Conflict with Cinerama

On October 23, 2025, Carolyn's original counsel in this case filed an eviction action in

the Sixth Division District Court styled as *Pentagon Properties, Inc. v. Productive Collaboration,*

*LLC, d/b/a Air & Anchor; and Cinerama Jewelry, Inc.* (the "First District Court Case"). **Exhibit**

**D.** There, Carolyn's attorney purported to bring claims as "counsel" for Pentagon against

Cinerama and PC, even though Pentagon never retained or authorized Carolyn's attorney to file

the First District Court Case. *Id.* After learning of this unauthorized complaint, Pentagon's

actual counsel dismissed the First District Court Case.

Undeterred, on November 11, 2025, Carolyn filed a second eviction action styled as

*Carolyn Rafaelian, Individually and as Trustee of The Carolyn A. Rafaelian Trust 2004, and*

*derivatively on behalf of Pentagon Properties, Inc. v. Productive Collaboration, LLC, d/b/a Air*

*& Anchor; and Cinerama Jewelry, Inc.* (the "Second District Court Case"). **Exh. A**. There,

Carolyn again attempted to assert eviction claims "individually" and derivatively on behalf of

Pentagon. Pentagon moved to intervene under Rule 24(a)(3), and Judge DeCarvalho granted that

Motion over Carolyn's objection. **Exh. C**. The Second District Court Case remains stayed, but

Carolyn's claim against Cinerama remains pending—as she expressly acknowledges in the

proposed Amended Complaint: "[Carolyn] has sought the eviction of Cinerama and Air &

Anchor from the Property in the District Court." *See* proposed Amended Complaint at ¶ 81. The

proposed Amended Complaint also includes Count IV, where Carolyn expressly seeks a liability

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 253 of 377 PageID
#: 435

determination against Cinerama, the very company she simultaneously asks to represent.

Although Rhode Island courts do not appear to have confronted a situation where a putative plaintiff sues a company and then attempts to represent that same company derivatively, federal courts addressing adequacy of representation under Fed. R. Civ. P. 23.1 provide instructive guidance. *See Takian v. Rafaelian*, 53 A.3d 964, 971-72 (R.I. 2012) (looking to federal case law for guidance interpreting Rule 23.1). In *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc*., 66 F.R.D. 123 (D. Mass. 1974), a minority shareholder[1] brought a derivative action against the corporation's principal officers and directors alleging waste, mismanagement, and fraud. The defendants moved to dismiss, arguing that the plaintiff's principal had interests adverse to the other shareholders and the corporation. *Id.* at 126. Examining the totality of the disputes—including pending litigation involving companies controlled by the plaintiff's principal and the defendant company—the district court dismissed the derivative claims, reasoning that "where the interests of the named plaintiff and the shareholders on whose behalf he is suing, are antagonistic, and this antagonism is the kind which could influence the conduct of the case, such a situation should be resolved by dismissal pursuant to Rule 23.1." *Id.* On appeal, the First Circuit affirmed, focusing on the "obvious conflict of interest" and concluding that the plaintiff's interests suggested the "'highest and best' use of the derivative suit would be as a weapon." *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc*., 517 F.2d 24, 26 (1st Cir. 1975). The parallel to Carolyn's position is unmistakable.

Subsequent federal decisions confirmed this principle and reaffirmed the *G.A. Enterprises* holding. The District of Massachusetts has acknowledged that the "First Circuit has squarely found that the presence of other suits involving the same parties raises a potential for

---

[1] The plaintiff corporation owned less than one percent of the outstanding stock.

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 254 of 377 PageID
#: 436

conflict and motive for 'leverage' that disqualifies plaintiffs under Rule 23.1." *Phillips on behalf of VBenx Corp. v. Smith*, Civil Action No. 17-11697-MGM, 2018 WL 11463442, at \*4 (D. Mass. July 2, 2018) (citing *G.A. Enterprises*, 517 F.2d at 26); *see also Blum v. Morgan Guar. Tr. Co. of New York*, 539 F.2d 1388, 1390 (5th Cir. 1976) ("*G.A. Enterprises* is particularly apropos as involving a situation where the representative could conceivably use the derivative action as 'leverage' in other litigation between himself and the corporation.").

The case of *Chesterton v. Chesterton*, CIV. A. No. 89–2854–S, 1990 WL 150066, at \*2 (D. Mass. Oct. 2, 1990), is also on point. There, the defendants argued that the plaintiff could not fairly and adequately represent shareholders under Fed. R. Civ. P. 23.1 because he had claims for wrongful discharge against the corporation. *Id.* The district court agreed, reasoning that the "plaintiff's suit for wrongful discharge against the corporations creates an interest that is diametrically opposed to the interests of all other shareholders." *Id.* The court granted dismissal, noting that the plaintiff was "attempting to represent the corporation on the same issue that is the focus of his personal claim against the corporation." *Id.* at \*3. Carolyn's situation is materially identical. *See id.* (noting that "[t]his real, not hypothetical, conflict could easily lead to decisions that compromise the derivative claim for the benefit of the personal claim").

Here, as in *G.A. Enterprises* and its progeny, there is unmistakable antagonism between Carolyn and Cinerama — evidenced by the claims Carolyn initiated against Cinerama in Sixth Division District Court and by proposed Count IV, where she seeks to impose liability on Cinerama in this very case. That antagonism is further confirmed by Carolyn's request that this Court pierce Cinerama's corporate veil and declare Cinerama to be the *alter ego* of PC. *See* proposed Amended Complaint at ¶ 7 and Request for Relief VI(c). Carolyn's direct conflict of interest with Cinerama threatens the integrity of this litigation and renders her incapable of

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 255 of 377 PageID
#: 437

representing Cinerama derivatively. For this reason alone, the Court should deny Carolyn's

Motion to Amend Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII to add derivative

claims for Cinerama.

**2.** **Carolyn Cannot Bring the Derivative Claims Because She Otherwise Does Not Adequately Represent the Cinerama Shareholders.**

Rule 23.1 provides that a derivative action "**may not be maintained** if it appears that the

plaintiff does not fairly and adequately represent the interests of shareholders or members

similarly situated in enforcing the right of the corporation or association." Super. R. Civ. P. 23.1

(emphasis added). This adequacy requirement is a critical threshold: derivative actions bind all

shareholders and the corporation itself, making it essential that the plaintiff's interests align with

those she purports to represent. *See G.A. Enterprises*, 517 F.2d at 26.

Courts assess adequate representation under Rule 23.1 by examining two factors. *First*,

whether the derivative plaintiff has the capacity to "adequately represent," considering factors

including vindictiveness, freedom from adverse interests, and support from other shareholders.

*See Grampp v. Bordynuik*, Civ. A. No. 13–11906–MLW, 2015 WL 5609958, at *3 (D. Mass. Sep.

22, 2015). *Second*, whether the shareholders to be represented are "similarly situated." *Id.*

Carolyn fails on both counts.

On the first factor (adequacy of representation), Carolyn's current antagonism toward

Rebecca pervades the Complaint and proposed Amended Complaint. *Grampp*, 2015 WL

5609958, at *3 (factors to be considered in adequacy determination include "the degree of

support received by the plaintiff from other shareholders" and "plaintiff's vindictiveness towards

the defendants"). Carolyn plainly does not have Rebecca's support as the trustee of the other

Cinerama shareholders to bring these derivative claims, and she has a direct conflict of interest

with Cinerama. *See supra* § B(1); *Grampp*, 2015 WL 5609958, at *3 (whether "plaintiff has a

9

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

conflict of interest that render[s her] an inadequate class representative . . . is the most important element to be considered in deciding whether the plaintiff is an adequate representative" (internal quotation marks and citation omitted)).

On the second factor, Carolyn's interests conflict with the shareholders she purports to represent. Rebecca's trusts hold the majority shares and all voting power over corporate governance and decision-making under the By-laws[2]; Carolyn's trusts hold only non-voting minority interests. The divergence is not merely technical—it is a fundamental conflict that cannot be reconciled in favor of Carolyn. *See Kuzmickey v. Dunmore Corp.,* 420 F. Supp. 226, 230-31 (D.D.C. 1976) (dismissing derivative action where minority shareholder had no support from remaining shareholders because it was "readily apparent that plaintiff does not represent anyone but herself for there are no other shareholders who are 'similarly situated'"). Without aligned interests with either the company or its shareholder class, Carolyn cannot maintain a shareholder derivative suit on behalf of Cinerama. The Court should deny the Motion to Amend Counts I, II, III, V, VI, VII, VII (sic), IX, XI, XII, and XIII to add derivative claims as futile.

**C.    Because Carolyn is Not Qualified to Bring Derivative Claims on Behalf of Pentagon (proposed Counts I, II, IV, VI, VII, VII (sic)), the Court Should Deny the Motion to Amend Because Those Proposed Claims Are Futile for Lack of Standing.**

Carolyn's disqualifying conflicts are equally apparent with respect to Pentagon. Although Pentagon's ownership is split 50/50,[3] the same Rule 23.1 analysis applies. *Renz by Renz v. Carota*, No. 87–CV–487, 1991 WL 165677, at *3 (N.D.N.Y. Aug. 26, 1991) (concluding that plaintiff does not fairly and adequately represent the shareholders and noting that "if an ulterior motive of plaintiff manifests itself and renders plaintiff's interests inimical to those of the

---

[2] Complaint at ¶ 27 ("pursuant to the By-laws of Cinerama, the Defendant is entitled to vote and control Cinerama's business and affairs").
[3] Complaint at ¶ 24.

10

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

shareholders she seeks to represent, the court should consider this ulterior motive"). Here,

Carolyn's self-interested end goal in controlling Pentagon appears clear: evict Cinerama its sub-

tenant PC and empty the Pentagon commercial property so Carolyn can install her company

(Metal Alchemist, LLC) there. *See* Complaint at ¶ 46 (referencing request to lease space for

Metal Alchemist); proposed Amended Complaint at ¶ 81 (acknowledging that Carolyn seeks to

evict Cinerama and PC from the Pentagon property). Carolyn would force Pentagon down that

path even though the last time one of her entities was a lessee of that property, the entity failed to

pay over $100,000 in rent and ultimately declared bankruptcy.

Carolyn's ulterior motive renders her interests inimical to Pentagon and to the interests of

the shareholders she would purport to represent. Her proposed Amended Complaint reveals a

clear conflict: for each proposed derivative Pentagon claim other than Count IV,[4] Carolyn also

asserts individual claims seeking injury and damages *separate* from Pentagon's. This dual

positioning raises serious questions about whose interests Carolyn would prioritize. Carolyn has

already answered that question in her original Complaint:

> By virtue of the within action, Plaintiff endeavors to protect,
> preserve and realize the full value of **her interests as a**
> **shareholder** in her family's business and the assets and/or
> property, reputation, image and goodwill thereof, as well as
> to protect **her own** assets, reputation, image, including
> commercial likeness, and good will of entities previously or
> currently closely associated with the Plaintiff in the
> marketplace for fine custom retail jewelry from the wrongful
> acts of the Defendant.

Complaint at ¶ 11 (emphasis added). Carolyn's admission that she "endeavors to protect . . . her

own assets, reputation, image" confirms that her self-interest—not Pentagon's corporate

---

[4] For Count IV, Carolyn is attempting to represent both the claimant (Pentagon) and the defendant (Cinerama) derivatively, which is an objective conflict of interest that disqualifies her from bringing the derivative claims. *See supra* § B.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 258 of 377 PageID
#: 440

welfare—would drive this litigation if the Motion to Amend were allowed.  The Court should deny Carolyn's Motion to Amend to add derivative claims for Pentagon.

**D.      Because Carolyn Has No Individual Claim for Waste (Proposed Count II), the Motion to Amend Should be Denied as Futile on that Count.**

The original Complaint included a claim for waste (Count II), despite settled Rhode Island law that waste is "a 'classic' derivative harm . . . because it diminishes the value of the corporation as a whole and entitles the corporation to recover damages." *Heritage Healthcare Services, Inc. v. The Beacon Mut. Ins. Co.*, No. PB 02-7016, 2012 WL 2335643, at \*4 (R.I. Super. Jun. 11, 2012) (Silverstein, J.) (quoting *Penn Mont Secs. v. Frucher*, 502 F. Supp. 2d 443, 463 (E.D. Penn. 2007) (alteration in original)).  Rather than correct this error, Carolyn's proposed Amended Complaint again attempts to bring waste claims individually.  She cannot do so. *Id.*; *see Dunn v. Shannon*, No. 99–2533, 2005 WL 1125315, at \*5 (R.I. Super. May 11, 2005) (Silverstein, J.) ("[I]n cases where the corporation sustains the injury, the fact that the shareholders may have indirectly suffered individual losses in the form of a diminution in the value of their stock does not entitle them to bring the action in their own names.").  The Court should deny Count II as futile insofar as it includes an individual claim for waste.

**E.      Carolyn's Conversion-Based Claims Relating to Intangible Assets Are Futile.**

In her original Complaint, Carolyn claimed she and/or Cinerama owned certain tangible assets that Rebecca allegedly converted.[5]  Complaint at ¶¶ 81-84.  Her focus appeared to be personal "vintage" inventory she claims to have stored at Cinerama.  *See* Complaint at ¶ 45.

Counts III and X of Carolyn's proposed Amended Complaint reach further, claiming that the "Conversion of Cinerama's assets, likeness and goodwill carries along with it some of Carolyn's brand…" and injured her personally.  *See* proposed Amended Complaint at ¶ 119.

---

[5] As is clear from the previously filed Answer, Rebecca denies all allegations.

12

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

This theory fails for multiple reasons. *First*, Carolyn has no individual standing to assert claims relating to Cinerama's "assets, likeness, and goodwill"— those belong to Cinerama, not Carolyn. *Second*, having no equity in Alex & Ani[6] and no rights to its intellectual property, Carolyn has no standing to assert claims relating to Alex & Ani, despite littering the proposed Amended Complaint with irrelevant references to that company. The United States Trademark Trial and Appeals Board ("TTAB") recently reinforced that uncontroversial point, *i.e.,* that Alex & Ani enforces its own intellectual property rights and is not aligned with Carolyn, when the TTAB denied Carolyn's petition to cancel three Alex & Ani trademarks ("Rafaelian Gold," "Rafaelian Silver," and "Rafaelian Rose Gold") that Carolyn apparently wishes she could wrest from Alex & Ani but cannot. **Exhibit E.**

Even if Carolyn were restricting her conversion claims to her own property, those claims are limited to *tangible* property under Rhode Island law. "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo v. Mandarelli*, 682 A.2d 918, 928 (R.I. 1996). The tort of conversion "at common law excluded intangible personal property because intangibles, like land, could not be lost or found." *Id.* As such, our Supreme Court has held that "a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted." The Court should deny Carolyn's Motion to Amend Counts III and X insofar as she seeks to enforce rights other than her own or seeks to apply conversion claims to intangible property.

---

[6] Complaint at ¶ 35 ("As a consequence of disagreements with the outside equity investors in Alex & Ani, in or about 2019, the Plaintiff resigned her position at the company, and by 2021, no longer maintained any management role or equity in Alex & Ani.").

13

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

**F.**  **Carolyn's Individual Claim for Misappropriation of Corporate Opportunity is Futile.**

As an initial matter, proposed Count VII[i]'s claims for "misappropriation of corporate opportunity" rest on a false premise: Rebecca did not "form" or "organize" PC and has never had any equity or management interest in it.  Setting aside this factual deficiency, Carolyn's individual claim for misappropriation of corporate opportunity is legally futile because that claim is solely derivative.  *Dunn*, 2005 WL 1125315, at \*5 ("The mechanism for remedying a violation of the corporate opportunity doctrine is through a derivative suit" because "diversion of assets and usurpation of corporate opportunities result in an injury to the corporation."); *see also A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1386 (R.I. 1997) (the corporate opportunity doctrine "prohibits a corporate fiduciary from diverting a business opportunity away from the corporation and taking it for himself or herself.").  The Court should deny Carolyn's Motion to Amend Count VII(i) to include individual claims for misappropriation of corporate opportunity.

**G.**  **The Court Should Deny the Motion to Amend to Add Proposed Count VIII (federal Lanham Act claims) Because it is Futile.**

In general, the federal Lanham Act "provides federal statutory protection for trademarks."[7]  *United States Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 552 (2020).  The Lanham Act provides causes of action for infringement of a registered trademark under 15 U.S.C. § 1114(1), which Carolyn does not allege, as well as false association under 15 U.S.C. § 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B).  *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).  Carolyn appears to assert *individual* claims for false association and false advertising—claims she has no standing to bring and which are futile on the merits.

---

[7] "A trademark consists of a word, phrase, image, or other device that identifies goods or services as originating from a particular source." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 12 (1st Cir. 2026).

14

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 261 of 377 PageID
#: 443

The proposed Amended Complaint alleges that PC took the following wrongful action:

- PC's website stated that "[h]ome is where all of our stories begin. The same can be said for our business. It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."[8]

- PC's website stated that "our desire to carry on Ralph's legacy led us to reopen the family factory that had fallen vacant…"[9]

- Rachel Ajaj (Carolyn's niece) participated in an interview about her grandfather discussing "pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s."[10]

- Omar Ajaj explained during an interview that PC has "an in-store jewelry factory" that is an extension of "their factory just up the road."[11]

None of these statements is actionable under any Lanham Act provision. More fundamentally, Carolyn has no individually enforceable rights, *i.e.,* standing, to prevent PC from (i) making statements about the history of the Pentagon property; (ii) discussing Ralph Rafaelian and his family legacy; or (iii) using the word "factory" to describe a factory. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (to have standing, plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision).

Even if Carolyn had standing, her Lanham Act claims are futile on the merits. To state a claim under Section 1125(a)(1)(A), Carolyn must plausibly allege facts showing a likelihood of consumer confusion "as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st

---

[8] *See* proposed Amended Complaint at ¶ 48.
[9] *See* proposed Amended Complaint at ¶ 49.
[10] *See* proposed Amended Complaint at ¶ 51.
[11] *See* proposed Amended Complaint at ¶ 52.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 262 of 377 PageID #: 444

Cir. 2024). "Claims under this subsection typically involve attempts to appropriate the goodwill associated with a competitor," such as misappropriating a trademark or falsely implying an endorsement. *Id.* (citing *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004)). Carolyn's proposed Count IX does not plausibly allege that any consumer would believe <u>Carolyn</u> *individually* is affiliated with PC based on the challenged statements. Her claim for false association under Section 1125(a)(1)(A) is therefore futile. *Id.* (agreeing that plaintiff failed to state a claim for liability under this subsection).

Carolyn's claim for false advertising under Section 1125(a)(1)(B) fares no better. That subsection prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. *Id.* at 65 (quoting 15 U.S.C. § 1125(a)(1)(B)). Critically, "[t]he Lanham Act prohibits only 'false or misleading description[s] [or representations] of fact,'" and the "plaintiff bears the burden of proving that the statement at issue is false and/or misleading." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022). None of the statements Carolyn identifies is false or misleading: Rachel Ajaj's grandfather, Ralph Rafaelian, did found Cinerama in 1966; three generations later, Rachel is developing new products; PC does operate out of the Pentagon-owned property; and PC does have registered trademarks incorporating the "factory" concept. Because these statements are true, Carolyn—who seeks individual damages—was required to allege how consumers actually reacted to the statements. *See Am. Bd. of Internal Med.*, 114 F.4th at 65-66 (affirming dismissal for failure to include such allegations). She alleged only that the statements "are likely to cause confusion among the relevant purchasing public." *See* proposed Amended Complaint at ¶ 115. That is insufficient. *See Am. Bd. of Internal Med.*, 114 F.4th at 65-66; *Brown v. Transunion Holdings, Inc.*, C.A. NO. 24-11292-NMG, 2025 WL 491714, at **7-8 (D. Mass. Jan. 14, 2025)

16

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 263 of 377 PageID #: 445

(dismissing Lanham Act claim). The Court should deny Carolyn's Motion to Amend to add Count IX.

**H.      Because Proposed Count XI (Appointment of a Receiver) is Futile for Lack of Standing, the Court Should Deny the Motion to Amend to Add Count XI.**

Carolyn concludes her proposed Amended Complaint by seeking appointment of a temporary and permanent receiver for PC. *See* Amended Complaint at ¶¶ 122-123. The appointment of a receiver is an exceptional remedy, left to the discretion of the trial justice. *Epic Enterprises*, 253 A.3d at 387.

In proposed Count XI, Carolyn invokes R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), (v) and 7-1.2-1316. *See* proposed Amended Complaint (Count XI). But § 7-1.2-1314 vests this Court with the power to liquidate the assets and business of a corporation "in an action by one of three types of petitioners—**either a shareholder, a creditor, or the attorney general**." *Epic Enterprises*, 253 A.3d at 387 (emphasis added) (vacating appointment of temporary receiver for lack of standing where petitioners were neither shareholders nor creditors of target company). Carolyn is not a shareholder of PC. She therefore lacks standing to seek appointment of a receiver under R.I. Gen. Laws § 7-1.2-1314(a)(1). *Id.* at 388 ("Our caselaw surrounding both statutory and equitable proceedings to appoint receivers is clear that standing to pursue a receivership is available only for shareholders of a corporation and its creditors.").

Although the proposed Amended Complaint does not cite R.I. Gen. Laws § 7-1.2-1314(a)(2), the "creditor" provision, that avenue is equally unavailing. The Rhode Island Supreme Court has defined "creditor" narrowly in the receivership context as "one to whom a debt is owed; one who gives credit for money or goods." *Epic Enterprises*, 253 A.3d at 388. Carolyn does not allege any creditor relationship with PC. Proposed Count XI is therefore futile

17

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

for lack of standing, regardless of whether Carolyn attempts to pursue it individually or derivatively. *See id.*

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Amend in its entirety.

Respectfully Submitted,

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

*/s/ Christine K. Bush*
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

Date:  March 9, 2026

18

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 3/9/2026 11:53 AM
Envelope: 5556778
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 265 of 377 PageID
#: 447

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2026 I filed and served this document through the Electronic Filing System on the following parties:

Todd D. Amaral (tamaral@apslaw.com)
Geoffrey W. Millsom (gmillsom@apslaw.com)
Jeffrey K. Techentin (jtechentin@apslaw.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

/s/ Mackenzie C. McBurney

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/25/2026 3:01 PM
Envelope: 5539941
Reviewer: Matthew H.

STATE OF RHODE ISLAND                          SUPERIOR COURT
NEWPORT, SC

---

CAROLYN RAFAELIAN, individually
and as Trustee of THE CAROLYN A.
FERLISE QSST TRUST & THE CAROLYN
A. RAFAELIAN TRUST  2004

           Plaintiff,                          C.A. NO. NC-2025-0531

v.

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009,

           Defendant.

---

## DEFENDANT'S OBJECTION TO MOTION TO AMEND

Defendant, Rebecca Rafaelian Caruolo ("Defendant"), objects to Plaintiff Carolyn

Rafaelian's ("Carolyn") Motion to Amend ("Motion"), which Carolyn initially filed in error on

the Newport County Motion Calendar and set for hearing on March 2, 2026.  Through counsel,

Defendant alerted Plaintiff's counsel to the erroneous filing and hearing date and requested that

Carolyn refile the Motion on the Out-County Business Calendar, where this matter has been

assigned since December 2025.

Assuming Plaintiff refiles on the proper calendar, Defendant will file a detailed

Memorandum of Law in advance of the hearing on the Motion.  There, Defendant will make

clear that this Court should deny the Motion for at least two reasons.  *First*, proposed Counts I,

II, III, IV, V, VI, VII, VII (sic), IX, XI, XII, and XIII attempt to add derivative claims on behalf

of Cinerama Jewelry, Inc. and/or Pentagon Properties, but Carolyn is not qualified to represent

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/25/2026 3:01 PM
Envelope: 5539941
Reviewer: Matthew H.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 267 of 377 PageID
#: 449

the shareholders of either company under Super. R. Civ. P. 23.1, so the Court should deny the Motion as futile for lack of standing.

*Second*, not only does Plaintiff lack standing under Rule 23.1, but the proposed Amended Complaint also includes futile claims for "conversion" of intangible assets, an individual claim for waste Carolyn has no standing to bring (Count II), an individual claim for "misappropriation of corporate opportunity" Carolyn has no standing to bring (Count VII(i)), an individual claim for "conversion of Cinerama's assets, likeness, and goodwill" she has no standing to bring (Count X), and a futile federal Lanham Act claim (Count IX) Carolyn attempts to bring both individually and derivatively.  Carolyn also asks the Court to appoint a temporary and permanent receiver for Productive Collaboration, LLC without any standing (individually or derivatively) to seek that relief, either.  The Court should deny the Motion based on futility for those claims, too.

Respectfully Submitted,

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

*/s/ Christine K. Bush*
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

 Dated:  February 25, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/25/2026 3:01 PM
Envelope: 5539941
Reviewer: Matthew H.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2026 I filed and served this document through the Electronic Filing System on the following parties:

Todd D. Amaral (tamaral@apslaw.com)
Geoffrey W. Millsom (gmillsom@apslaw.com)
Jeffrey K. Techentin (jtechentin@apslaw.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

/s/ Mackenzie C. McBurney

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

**Hearing Date: March 2, 2026 9:30am Webex**

STATE OF RHODE ISLAND                                         SUPERIOR COURT
NEWPORT, S.C.

|  |  |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004 <br><br> *Plaintiffs*, <br><br> v. <br><br> REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 <br><br> *Defendants*. | <br><br><br><br><br><br><br><br><br> C.A. No.  NC-2025-0531 |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR LEAVE TO FILE FIRST AMENDED VERIFIED COMPLAINT

Pursuant to Rule 15(a) of the Rhode Island Superior Court Rules of Civil Procedure, Plaintiff Carolyn Rafaelian ("Carolyn"), individually and as trustee of the Carolyn A. Ferlise QSST 1994 Trust and The Carolyn A. Rafaelian Trust 2004, hereby moves for leave to file the proposed First Amended Verified Complaint, attached hereto as **Exhibit 1**, and respectfully submits this Memorandum of Law in support of her Motion to Amend the Complaint (the "Motion"). Carolyn's proposed First Amended Verified Complaint seeks to clarify derivative claims that belong to Cinerama Jewelry, Inc. ("Cinerama") and Pentagon Properties, Inc. ("Pentagon") and to include additional claims on behalf of Plaintiff, in her individual capacity and, as trustee on behalf of certain shareholding trusts, and derivatively on behalf of Nominal Defendants Cinerama and Pentagon.

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

## FACTUAL BACKGROUND

Carolyn moves only three months after the filing of the initial Complaint in this matter, and before any action has been taken by the Court or either party in the case regarding scheduling or discovery, to file her First Amended Verified Complaint. Carolyn's initial Complaint was filed on November 18, 2025, asserting claims for breach of fiduciary duty, waste, conversion, civil liability for crimes and offenses, misappropriation of corporate opportunity, and intentional interference with prospective economic advantage against Rebecca Rafaelian Caruolo ("Rebecca"), individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, arising from Rebecca's role as the President and indirect controlling shareholder of Cinerama and President and 50% shareholder of Pentagon. Since the filing of the initial Complaint, the Court has not issued a scheduling order, nor have the parties commenced discovery.

The initial Complaint alleges, *inter alia*, that Carolyn's sister Rebecca, as Cinerama's President and majority shareholder, used her position to "freeze out" Carolyn and to create a competing venture, Productive Collaboration, LLC d/b/a Air & Anchor ("air & Anchor") without presenting it to Cinerama as a corporate opportunity. The Complaint alleges that Rebecca's conduct has severely diminished the value of Cinerama and Pentagon by allowing Air & Anchor to operate from 115 Pettaconsett Avenue, Cranston, the Pentagon-owned property that is Cinerama's headquarters and factory, and to use Cinerama's entire factory space, equipment, inventory, phone number, trade secrets, management, tradename, vendor relationships, goodwill, and reputation, to usurp the value of Cinerama as Cinerama's alter ego. Carolyn's initial Complaint further asserts that Rebecca also manages Air & Anchor's daily operations and has overseen the conversion of

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Carolyn's personal inventory of vintage jewels, crystals, beads, and stones that are stored in labelled boxes at the Pettaconsett facility.

Carolyn now moves, only three months after the filing of the initial Complaint, to file her First Amended Verified Complaint to clarify the derivative nature of her claims on behalf of Cinerama and Pentagon, and to bring additional claims in her individual capacity, in her role as trustee, and derivatively on behalf of Cinerama and Pentagon against Rebecca and Air & Anchor.

Carolyn's proposed First Amended Verified Complaint (a) pleads derivative standing in satisfaction of Rule 23.1 of the Superior Court Rules of Civil Procedure; (b) clarifies the previously asserted derivative claims for breach of fiduciary duty, waste, conversion, civil liability for crimes and offenses, misappropriation of corporate opportunity, and intentional interference with prospective economic advantage against Rebecca; (c) pleads additional direct and derivative claims against Air & Anchor for conversion, aiding and abetting breach of fiduciary duty, violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)), and unjust enrichment; (d) pleads an additional claim, derivatively of Cinerama, for breach of contract against Air & Anchor; (e) pleads an additional claim, derivatively of Pentagon, for breach of contract against Cinerama; (f) seeks appointment of a temporary and permanent receiver of Air & Anchor; and (g) seeks injunctive relief against the defendants for the injuries they continue to cause to Carolyn, Cinerama, and Pentagon.

In compliance with the letter and spirit of Rule 15(a), counsel for Carolyn sought written consent from Rebecca to file the First Amended Verified Complaint on February 11, 2026. Counsel for Rebecca replied on February 13, 2026 and declined to provide her consent to file the First Amended Verified Complaint.

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 272 of 377 PageID #: 454

## LEGAL STANDARD

Rule 15(a) of the Superior Court Rules of Civil Procedure provides that after service of a responsive pleading, a party may amend a pleading only by leave of court or by written consent of the adverse party. Super. R. Civ. P. 15(a). The Rule establishes that leave to amend "shall be freely given when justice so requires." *Id.* The Rhode Island Supreme Court has "consistently held that trial justices should liberally allow amendments to the pleadings." *Medeiros v. Cornwall*, 911 A.2d 251, 253 (R.I. 2006) (listing cases). Rhode Island courts "have consistently held that Rule 15(a) liberally permits amendment absent a showing of extreme prejudice." *Wachsberger v. Pepper*, 583 A.2d 77, 78 (R.I. 1990); *see also Harodite Indus., Inc. v. Warren Elec. Co.*, 24 A.3d 514, 531 (R.I. 2011). "[T]he burden rests on the party opposing the motion to amend to demonstrate the existence of . . . extreme prejudice." *Hendrick v. Hendrick*, 755 A.2d 784, 794 (R.I. 2000); *see also Wachsberger*, 583 A.2d at 78-79 ("The burden rests on the party opposing the motion to show it would incur substantial prejudice if the motion to amend were granted.").

## ARGUMENT

Based on the foregoing facts and authorities, the Court should exercise its broad discretion to grant Carolyn's Motion to Amend to facilitate the resolution of this dispute on the merits. *See Harodite Indus., Inc. v. Warren Elec. Corp.,* 24 A.3d 514, 531 n.25 (R.I. 2011) *(citing Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim[s] on the merits.")). Rhode Island courts liberally permit amendment unless the party opposing amendment demonstrates extreme prejudice, such as a display of undue delay, bad faith, or futility. *Lomastro v. Iacovelli*, 56 A.3d 92, 95 (R.I. 2012). Rebecca cannot demonstrate that she will suffer any prejudice – let alone the extreme prejudice the standard requires – if Carolyn's

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 273 of 377 PageID
#: 455

Motion is granted. Rebecca cannot satisfy her burden to demonstrate that she faces extreme prejudice by the proposed amendments because the First Amended Verified Complaint would not lead to any delay in the proceedings, there is a complete absence of bad faith, and the proposed amendments bring claims that are supported by ample factual basis.

Rebecca can show no prejudice from delay if the Motion is granted because no trial date has been set, no scheduling order issued by the Court, and the parties have not even commenced discovery. Indeed, there will be no delay to any proceeding in this matter because the Motion to file the First Amended Verified Complaint comes only three months after the filing of the initial Complaint.

Rebecca cannot show that Carolyn moves to amend in bad faith or that the amendments are futile. The factual assertions in the First Amended Verified Complaint provide ample basis for the additional claims, all of which arise from and expand upon the underlying misconduct articulated in the initial complaint and stemming from Rebecca's abuse of her controlling interest in Cinerama and Pentagon. The additional claims brought in the First Amended Verified Complaint, including the claims seeking receivership of Air & Anchor and injunctive relief seek to protect the shareholders' interests in the respective entities and to preserve what assets remain of those entities.

Furthermore, the amendments clarifying the derivative nature of certain claims is proper under the liberal standard of Rule 15(a), which applies equally to derivative claims as it does to any other type of claim. *Hendrick*, 755 A.2d at 794. When it comes to the derivative pleading standard under Rule 23.1, courts prefer amendment rather than dismissal even if the initial complaint insufficiently pled derivative standing. *Id.*; *see also Zou v. Han*, 797 F. Supp. 3d 199, 204 (E.D.N.Y. 2025) (explaining that in opposing amendment to clarify derivative claims a

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

defendant would only force a plaintiff to file a separate derivative action, which could then be consolidated with the original suit, and therefore delay the case because it would "merely bring the parties [back] to the point where they now are.").

The claims in the First Amended Verified Complaint clarify the derivative nature of claims that belong to Cinerama and Pentagon, stemming from the diversion of their assets, misuse of their corporate property, and contractual breaches that harm their interests. In addition, the First Amended Verified Complaint satisfies the pleading requirements of Rule 23.1 by alleging Carolyn's indirect ownership of Cinerama and Pentagon, Carolyn's fitness to represent the interests of all shareholders, and details the pre-suit demand made on Rebecca to remedy the alleged misconduct, and Rebecca's failure to comply with the demand. Further, the First Amended Verified Complaint alleges the futility of further efforts to make demands upon Rebecca, Cinerama, and Pentagon. Thus, because Rebecca cannot demonstrate that the proposed amended complaint will cause her any prejudice – let alone extreme prejudice – this Court should grant Carolyn's Motion to file the proposed First Amended Verified Complaint.

WHEREFORE, Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, prays this Court grant her Motion for leave to file the proposed First Amended Verified Complaint.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, by their attorneys,

/s/ Jeffrey K. Techentin
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607


/s/ Kurt T. Kalberer
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: February 18, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 276 of 377 PageID #: 458

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ *Todd D. Amaral*

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

# EXHIBIT 1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 278 of 377 PageID #: 460

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, S.C.

CAROLYN RAFAELIAN,
INDIVIDUALLY and as trustee of THE
CAROLYN A. FERLISE QSST 1994
TRUST and THE CAROLYN A.
RAFAELIAN TRUST 2004, and
derivatively on behalf of Cinerama
Jewelry, Inc. and Pentagon Properties, Inc.

    *Plaintiffs*,

v.                                                       C.A. No.  NC-2025-0531

REBECCA RAFAELIAN CARUOLO,
individually and in her role as trustee of
The Rebecca Rafaelian Caruolo QSST
1994 Trust and The Rebecca Rafaelian
Caruolo Trust 2009, PRODUCTIVE
COLLABORATION, LLC, CINERAMA
JEWELRY, INC. (Nominal Defendant),
and PENTAGON PROPERTIES, INC.
(Nominal Defendant)

    *Defendants*.

## AMENDED VERIFIED COMPLAINT

Carolyn Rafaelian ("Carolyn"), by her undersigned counsel, hereby brings this Amended

Verified Complaint for Damages, Appointment of a Temporary and Permanent Receiver, and

Injunctive Relief, and Jury Trial Demand, and sues in her individual capacity and, as trustee on

behalf of certain shareholding trusts hereinafter specified, and derivatively on behalf of Nominal

Defendants Cinerama Jewelry, Inc. ("Cinerama" or the "Factory") and Pentagon Properties, Inc.

("Pentagon"), and against Rebecca Rafaelian Caruolo ("Rebecca"), individually and in her role as

trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo

Trust 2009, and Productive Collaboration, LLC d/b/a Air & Anchor ("Productive Collaboration"

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

or ("Air & Anchor") for: damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rebecca Rafaelian Caruolo; damages for aiding and abetting a breach of fiduciary duty and conversion, violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))  and an equitable decree of alter-ego Air & Anchor and for the appointment of a receiver of Air & Anchor; and for preliminary and permanent injunctive relief against all Defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon.

## I.    INTRODUCTION

1.    This is a family shareholder dispute involving the complete defalcation of a preeminent Rhode Island jewelry company, Cinerama, by its majority shareholder and President, Rebecca.  In concert with Air & Anchor, and unknown to Carolyn, Rebecca used her position as President of Cinerama to create a new business venture using all of the assets of Cinerama, as well as those of Pentagon, for the sole purpose of excluding and divesting Carolyn of her interest in Cinerama and Pentagon.

2.    Specifically, this is an action for, among other things, shareholder oppression and self-dealing by Rebecca, the President and shareholder of two (2) separate Rhode Island close corporations indirectly owned by her and Carolyn.  The conduct of Rebecca relative to these companies has had the cumulative effect of completely "freezing out" Carolyn, as well as severely diminishing the value of the companies' shares.

3.    Concealed from Carolyn as a mere subtenant leasing a portion of space from Cinerama to start a jewelry business, the new enterprise, Air & Anchor, is in fact a knock-off of Carolyn's Alex + Ani jewelry brand, created from the complete takeover and de facto liquidation

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM     Document 14     Filed 05/11/26     Page 280 of 377 PageID #: 462

of Cinerama and its assets. Indeed, Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and is the functional *alter ego* of Cinerama. Upon information and belief, Rebecca manages and controls the daily operations of the new enterprise, leaving Cinerama a shell company, existing merely to conceal the misappropriation of Cinerama's assets, subsidize Rebecca's new business venture, and mislead Carolyn as to the value of her shares in Cinerama.

4.     By this lawsuit, Carolyn seeks to protect, preserve and realize the full value of her shareholder interest in her family's businesses and their assets, reputation, image, and goodwill, and to protect her own assets, reputation, image and commercial likeness of entities previously or currently closely associated with her in the marketplace for fine custom retail jewelry, from the wrongful acts of the Defendants as hereinafter alleged.

5.     As the President of Cinerama and Pentagon, and indirect majority shareholder in Cinerama, Rebecca has a fiduciary obligation to protect, preserve and maximize the value of the respective companies' business opportunities for the benefit of all of its shareholders, not just herself.

6.     Notwithstanding this obligation, Rebecca never presented the new Air & Anchor opportunity to Cinerama, Pentagon, or Carolyn. Instead, Rebecca unilaterally, and without Carolyn's knowledge and required consent, allowed Air & Anchor to utilize the assets, name and goodwill of Cinerama, Pentagon, and Carolyn for less than fair value or for no value at all and wrongly converted the property of Cinerama, Pentagon and of Carolyn for the use and benefit of Air & Anchor and Rebecca and to the unfair exclusion of Carolyn. By their conduct, Rebecca and Air & Anchor also deprived Carolyn and continues to deprive her, of existing and prospective economic opportunities.

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 281 of 377 PageID #: 463

7. Both individually and derivatively on behalf of Cinerama and Pentagon, Carolyn seeks damages from the Defendants for their acts and omissions as aforesaid and seeks a preliminary and permanent injunction barring the Defendants and all persons with notice thereof from using Cinerama's and Carolyn's assets, image, likeness and goodwill without express permission. Further, Carolyn seeks a declaration that Air & Anchor is the *alter ego* of Cinerama, and the appointment of a receiver of Air & Anchor to effectuate that decree.

## II.    PARTIES

8. Plaintiff Carolyn is a resident of the State of Florida, an officer and director of Pentagon, an indirect forty three percent (43%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee, namely the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and an indirect fifty percent (50%) shareholder of Pentagon through a trust of which she is a beneficiary and trustee, namely The Carolyn A. Rafaelian Trust-2004.

9. Plaintiff the Carolyn A. Ferlise QSST Trust-1994 owns a 19.5% interest in Cinerama Jewelry, Inc.

10. Plaintiff The Carolyn A. Rafaelian Trust-2004 owns a 23.5% interest in Cinerama Jewelry, Inc. and a 50% interest in Pentagon.

11. Nominal Defendant Cinerama is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at the factory at 115 Pettaconsett Avenue, Cranston, Rhode Island. Cinerama is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

12. Nominal Defendant Pentagon is a corporation organized and existing under the laws of the State of Rhode Island and has its principal place of business at 115 Pettaconsett Avenue,

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 282 of 377 PageID #: 464

Cranston, Rhode Island. Pentagon is a close corporation within the meaning of R.I. Gen. Laws § 7-1.2-1701.

13. Defendant Rebecca is a resident of the State of Rhode Island, the sister of Carolyn, an officer and director of Cinerama and Pentagon, an indirect fifty seven percent (57%) shareholder of Cinerama through various trusts of which she is a beneficiary and trustee including the Rebecca R. Caruolo QSST 1994 Trust and the Rebecca Rafaelian Caruolo Trust-2004, and a direct fifty percent (50%) shareholder of Pentagon.

14. Defendant Productive Collaboration, LLC d/b/a Air & Anchor is a Rhode Island limited liability company formed in 2018 by Rachel Ajaj, the niece of Carolyn and Rebecca, Rachel's husband Omar Ajaj, and upon information and belief, Rebecca, as managers and/or members. It adopted the fictitious name Air & Anchor in June of 2019.

## III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this dispute and the parties under and pursuant to R.I. Gen Laws §§ 8-2-13 and 14.

16. Venue of this action is proper in this Court under and pursuant to R.I. Gen Laws § 8-2-27.

## IV. STATEMENT OF FACTS

### A. The Family Roots of Cinerama, Alex + Ani, and Air & Anchor

17. Cinerama was formed by Mr. Ralph Rafaelian in 1966 for the purpose of engaging in the design, manufacture and sale of fine custom jewelry. From and after its formation until some time prior to his death in 2012, Mr. Rafaelian was the President, Chief Operating Officer and sole shareholder of Cinerama. Cinerama has at all times been referred to by Ralph, Rebecca, Carolyn, the general public and its customers as the "Factory."

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

18.    In 1991, Mr. Rafaelian formed another Rhode Island corporation, Pentagon, for the purpose of acquiring, owning and managing certain improved real property including the factory located at 115 Pettaconsett Avenue, Cranston, Rhode Island (the "Property"), which has since then and to date, been the principal manufacturing and place of business for Cinerama, which leases all of premises at the Property.

19.    In 2006, Pentagon also acquired the improved residential property located at 91 Tupelo Hill Drive, Cranston, Rhode Island ("Tupelo Hill"). The Tupelo Hill property is leased to a tenant.

20.    From and after the formation of Pentagon until some time prior to his death, Mr. Rafaelian was President, Chief Operating Officer and sole shareholder of Pentagon. In approximately 2012, Carolyn and Rebecca each acquired an indirect fifty percent (50%) ownership interest in Pentagon through various trusts of which each was a beneficiary and trustee, and each was appointed and has since then continually served as an officer of Pentagon.

21.    Carolyn was born around the time of Cinerama's formation, and Rebecca a few years later.

22.    From the time they were children, Carolyn and Rebecca spent much of their time around the Factory, later working closely with their father, Mr. Rafaelian. When Carolyn was a child, her mother Lucy Rafaelian would often send her to the Factory to be with her father to keep her occupied. Carolyn initially started out "carding" jewelry—the process of presenting jewelry for retail sale on a display card—but quickly learned how to wield a blow torch and to design jewelry in her own unique style and manner.

23.    From and after the time of their initial involvement with Cinerama as children, both Carolyn and Rebecca became increasingly involved in the management and operations of

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 284 of 377 PageID #: 466

Cinerama. Carolyn was responsible for creative design at Cinerama and her sister, Rebecca, was responsible for manufacturing and operations.

24. During the time she worked at Cinerama and thereafter, Carolyn purchased and housed a significant inventory of valuable and unique crystals, beads, and stones at Cinerama, which she organized and maintained in boxes located at the Factory and which bore her name, the quantity of the stones, and her signature.

25. Currently, Rebecca, as the President of Cinerama and its indirect majority and controlling shareholder through her trusts, controls the management and operation of Cinerama.

26. Moreover, as set forth in Sections 2.7 and 2.8 of the Cinerama corporate Bylaws, Rebecca, as the indirect holder of the majority of the stock issued and outstanding and entitled to vote, controls Cinerama's business and affairs.

**B.    Alex + Ani is Formed, Realized and Achieves Astonishing Success**

27. In 1999, Carolyn began designing jewelry for certain specialty retailers, then experimented with soldering metals into bracelets and designing charms and figures on them—arguably the start of the more current trend of using jewelry for self-expression.

28. In 2003, as Carolyn's creative force was beginning to achieve critical mass, she formed Alex + Ani as a domestic corporation.

29. From and after the time of its initial formation in 2003, Carolyn was the principal owner, officer and creative force behind Alex + Ani, and its financial and creative fortunes soared under her guiding hand. She sought and obtained her first patent for what became the renowned Alex + Ani bangle in 2004. By 2014, its sales had reached $350 million and its estimated enterprise value was $1 billion.

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

## C.    Carolyn's Family and Cinerama Directly Benefit from her Success

30.    Consistent with the approach she learned from her father, Carolyn always endeavored where practicable and prudent, to do what was right and bring her family and Cinerama along with her and to let them share in the fruits of her creative and business success.

31.    Carolyn awarded all the manufacturing, assembly and related work possible from Alex + Ani to Cinerama, paying fair market value for the use of Cinerama's valuable resources, including its trade secrets, vendors relationships, equipment, management, goodwill and reputation in the industry.  Cinerama and Rebecca profited significantly from Alex + Ani's purchase orders.

32.    Ultimately, in 2016, Alex + Ani entered into an Asset Purchase Agreement with Cinerama, pursuant to which Alex + Ani purchased certain assets of Cinerama for over $100 million dollars.

33.    In addition to the aforesaid commercial arrangements and business transactions between Alex + Ani and Cinerama, Carolyn caused her niece Rachel, and Rachel's husband, Omar, to be employed at Alex + Ani, where they enjoyed significant salaries and benefits.

34.    All of the foregoing benefits that Carolyn bestowed on Cinerama and her family members resulted in substantial financial gains for Cinerama and its shareholders, including Rebecca.

## D.    Rebecca, Rachel and Omar Launch Air & Anchor based upon the Cinerama/Alex + Ani Foundation, Assets, Image and Goodwill

35.    As a consequence of disagreements with the outside equity investors in Alex + Ani, in 2019 Carolyn resigned her position at Alex + Ani, and by 2021, no longer had any management role or equity in the company.

36.    Rachel and her husband Omar also left the employment of Alex + Ani; Rachel left in 2019, and Omar left in 2018.

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

37.     In 2019, Rebecca, Rachel, and Omar saw the distress Alex + Ani was experiencing and recognized the opportunity to duplicate Carolyn's business plan and begin a wholesale manufacturing and retail jewelry enterprise identical to Cinerama and Alex + Ani.  Rather than contract with Cinerama for its services as Carolyn had done and build retail business of their own, they conspired and agreed to simply take Cinerama for themselves and designed a scheme to disenfranchise Carolyn from her interest in Cinerama.

38.     Creating a name with striking resemblance to Alex + Ani, in June of 2019 Rebecca and Rachel founded Productive Collaboration, LLC d/b/a Air & Anchor.  Their business plan was simple, take over Cinerama entirely via a purported "sublease" and attempt to market its wholesale manufacturing services under the name of a new limited liability company they founded, Productive Collaboration.

39.     Productive Collaboration is a direct competitor of Cinerama.

40.     Productive Collaboration uses Cinerama's phone number, inventory, assets machinery, goodwill, reputation, and vendors, and advertises that it controls the entire Property, as shown below:



9

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 287 of 377 PageID #: 469

41.    The business plan included the launch of a retail brand under the name Air & Anchor using Cinerama's highly valuable vintage inventory archives, designs, intellectual property, personnel, trade secrets, goodwill, reputation and vendor relationships.

42.    To disguise their scheme, they created a sublease for use of only a portion of the Property's premises, despite occupying the entire Property and misappropriating all of Cinerama's valuable assets for themselves.

43.    Specifically, on or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equal monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease"). A copy of the Cinerama Lease is attached hereto as Exhibit A. The Cinerama Lease expired on June 30, 2025.

44.    Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's "operation of a jewelry manufacturing business and allied and ancillary activities." The Cinerama Lease further stated that the "premises shall be used solely for the purpose set forth above and not for any unlawful purpose…."

45.    The Cinerama Lease prohibited subletting except with the written consent of Pentagon.

46.    Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with Air & Anchor providing or affording it with use and occupancy of a portion of the Property (the "Sublease"). The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms. A copy of the Amended and Restated Sublease dated February 1, 2019 (the "Sublease") is attach hereto as Exhibit B.

10

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

47.     Pursuant to the Sublease, Air & Anchor was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.  The rental amount was woefully deficient, drastically below market rate and commercially unreasonable.

### E.     Air & Anchor Converts Cinerama's Goodwill and Engages in False Advertising

48.     Air & Anchor holds itself out to the public as the "Factory" and having been in business "since 1966" in its sales and marketing efforts including in its jewelry retail store location in Garden City.  According to Air & Anchor's website, "[h]ome is where all of our stories begin. The same can be said for our business.  It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."  Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present  (last  visited  Feb.  2, 2026).

49.     Carolyn has recently learned that, from its inception, Air & Anchor has in fact occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances, and without her consent, of Carolyn's inventory of unique crystals, beads and stones that she has always stored at the Factory.  Additionally. Air & Anchor advertises Cinerama's vast vintage jewelry inventory archives as their own.  This is made clear by Air & Anchor's public presentation of its image:

11

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.



**Still Made In The U.S.A.**

Our desire to carry on Ralph's legacy led us to reopen the family factory that had fallen vacant, revitalizing connections with local craftsmen and artisans.

In the factory today, we have thousands of vintage beads and charms that Ralph and his team sourced and handcrafted decades ago. We love mixing these pieces into the new jewelry designs we're creating with the intention of them being worn together.

So, what's vintage for jewelry on our website right now? Breathe New Life Vintage Crystal. Find other vintage crystals with the Vintage Caged-Navette Crystal Birthstones.

Air & Anchor, https://airandanchor.com/blogs/anchored-moments/from-past-to-present?srsltid=AfmBOoo6Yq3b0wFvx5fsKd9FxOySMLVElc92wExtPJn5rsGQtm1z5M3K (last visited Feb. 2, 2026).

50.    Air & Anchor has lauded and deploys its connection to Cinerama, Alex + Ani, and the Factory in its public statements and marketing efforts.   From its very beginnings, its representatives have publicly stated or been reported to state, that in the wake of Alex + Ani's demise, "they decided to take over…[the Factory]…and put it—and Rhode Islanders—back to work," that Cinerama's jewelry stones from the "60's, 70's and 80's are still materials that we reset

12

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 290 of 377 PageID #: 472

and use today," and that in the basement Factory "bins and piles of clunky gold chains, ropes and beads are ready to be worked into future pieces."

51.     In fact, Rachel, in an interview describing the story of Air & Anchor, stated that Air & Anchor's designs use vintage components—"pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s"—that she re-works into modern designs. Air & Anchor: The Story of A Family Business (youtube.com), https://www.youtube.com/watch?v=XSXLh1GgR0w (last visited Feb. 2, 2026).

52.     Moreover, in a 2024 interview with the Warwick Beacon, Omar explained that Air & Anchor's Garden City retail store was an "extension" of the "factory" "just up the road on Pettaconsett Avenue":

> Air & Anchor, a local jewelry manufacturer and retailer, held a weekend long grand opening ceremony to celebrate its Garden City popup store last week.
>
> With an in-store jewelry factory, Air & Anchor has a unique quality ability to custom create and fit pieces in store. With the focus on locally sourced products and personal customization that comes from making everything in house, owners Rachel and Omar Ajaj consider the store an extension of their factory just up the road on Pettaconsett Avenue.
>
> "You've got our normal retail products, but half of the store, actually, is called the factory," Omar explained. "You can come in and customize your length of chain. You can bead your own necklaces and bracelets. We do permanent jewelry and can even brand our serving boards that we make right here in Providence. So it's really an experiential store."
>
> The factory, which the co-owners Rachel and Omar Ajaj leased about four years ago, Omar explained, was kind of a place his wife Rachel grew up in as a third generation jewelry designer. The building was empty, they chose to lease it before sitting in the big building and saying, "what're we going to do?" That's when they set to building the factory back up.

13

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Ed Kdonian, *Air and Anchor popup has grand opening in Garden City*, Warwick Beacon (June 21, 2023), https://warwickonline.com/stories/air-and-anchor-popup-has-grand-opening-in-garden-city,214248 (last visited Feb. 2, 2026).

### F.    Air & Anchor Colludes with Rebecca to Convert Cinerama's Assets

53.    Former employees of Air & Anchor report that substantial parts of its business and operations are controlled, directed, and managed by Rebecca.  Rebecca identified herself to such employees as a "manager" of Air & Anchor.  She was at the retail store every day, directed such employees to report to her, managed all product requests and quality control, managed relationships and contracts with vendors, and directed that Carolyn should never be admitted to the premises.

54.    In addition, in early 2023, an Air & Anchor employee was directed by Rebecca, Rachel, and/or Omar to go through inventory located on the first floor of Cinerama, including Carolyn's inventory, and to re-box hundreds of inventory boxes, half of which bore Carolyn's name, their quantity, and Carolyn's signature, into new boxes which only bore quantity and SKU numbers such that all the prior identifying marks of Carolyn were removed, and the inventory items were variously immediately sold off, advertised for sale on Air & Anchor's website as vintage products, and the remainder brought to Air & Anchor's retail location for use and sale.  At no time prior to doing so or since, did Air & Anchor or Rebecca seek or obtain Carolyn's consent to such dispositions.  Upon information and belief, this wrongful conduct has continued at least as recently as Fall 2025.

55.    Air & Anchor has the same business address as Cinerama, is wrongfully using its assets and inventory without paying fair value therefor, has and continues to commit conversion of Cinerama's assets, holds itself out to the world as an "extension" or successor of Cinerama, and

14

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 292 of 377 PageID #: 474

trades upon for its own benefit Cinerama's goodwill, trade name, image and history, such that it is and should be declared the *alter ego* of Cinerama.

### G. The Necessity of this Action.

56. As a result of the Defendants' intentional and wrongful conduct, Cinerama and Pentagon have lost significant potential revenue and the value of Carolyn's respective shares have been severely diluted. In addition, the launch of Carolyn's new business was materially delayed as she was forced, at significant expense, to acquire new space, equipment, vendors and resources to re-build her significant operations to support Metal Alchemist, LLC which she could have merely contracted with Cinerama to perform.

57. Metal Alchemist, LLC, which was organized in or about 2020, engages in the design, manufacture and sale of fine custom jewelry.

58. Carolyn intended to contract with and/or form a joint venture with Cinerama in order to leverage the significant and valuable resources and inventory stored at Cinerama in support of Metal Alchemist, LLC's operations, in exchange for reasonable consideration to Cinerama; however, Rebecca refused any arrangement, stating that it was not possible.

59. Upon information and belief, such an arrangement between Metal Alchemist, LLC, and Cinerama is only "not possible" because of the unlawful defalcation of Cinerama's assets for the benefit of Air & Anchor.

60. Carolyn has made inquiry of Rebecca and her agents about her concerns with Air & Anchor's use of Cinerama and its assets but has only received false and misleading responses.

61. On or about April 2021, Rebecca, through her counsel, advised Rebecca that she would no longer receive requests from Carolyn for periodic updates on the status of Cinerama

15

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 293 of 377 PageID #: 475

operations and business plans, and that Rebecca had no interest in working with Carolyn on any future endeavors concerning Cinerama and/or Pentagon.

62.     Shortly after Carolyn's rejection of a woefully deficient buy-out offer from Rebecca, in or about December 2021, and, again in or about March 2022, Rebecca, as President of Pentagon, issued an unlawful and improper capital call to Carolyn in the amount of $250,000.00 for repairs to the Property.

63.     The unlawful capital call was made with the intention to coerce Carolyn into selling her shares in Pentagon and Cinerama to Rebecca and remains outstanding.

64.     On or about December 19, 2024, Carolyn, Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter to Rebecca and Cinerama's counsel, detailing certain unlawful and/or wrongful conduct on the parts of the Rebecca, Cinerama and Air & Anchor.

65.     The letter detailed Carolyn's grievance relative to the use and occupancy of the Property by Cinerama and Air & Anchor, including, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Cinerama

**H.     Rebecca Unlawfully Attempts to Extend her Scheme Five Years**

66.     Despite being fully aware of the foregoing dispute, on or about May 1, 2025, without the corporate authorization required by Pentagon's By-Laws and under Rhode Island law, Rebecca unilaterally executed a First Amendment to Lease Agreement, purporting to amend the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama.  The Amendment purported to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

16

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 294 of 377 PageID #: 476

67. The terms of the Amendment are unconscionable and the Amendment is ineffective and/or otherwise void under Rhode Island law.

68. Separately, the Amendment was executed by Rebecca on behalf of both parties to the agreement, *i.e.*, Pentagon and Cinerama. On this issue, Rebecca had a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts to, and the express written authorization or consent of, Carolyn under Rhode Island law.

69. Rebecca's additional conflicts of interest as President of Pentagon further precluded her from entering into the Amendment on behalf of Pentagon without Carolyn's express authorization, including, without limitation:

a) while only a 50% shareholder of Pentagon with limited control, Rebecca is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at lowest cost to Cinerama;

b) the subtenant, Air & Anchor, is owned by a family relative with whom, upon information and belief, Rebecca maintains deep personal and business relationships, making it also in Rebecca's personal interest to take control of the Property at the lowest cost to the subtenant, thereby giving a personal benefit to a family member and business partner; and

c) Rebecca has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, Air & Anchor, and is believed to be working for and on behalf of Air & Anchor while unlawfully using the assets of Cinerama.

70. The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon Rebecca to the detriment of Pentagon and Carolyn in violation of Rebecca's fiduciary duty of loyalty under Rhode Island law, causing damages to Carolyn and Pentagon and rendering the Amendment void.

71. The Cinerama Lease, as purportedly amended by the Amendment, would impose rent through 2030 at a rate that is grossly below market rate and contains other commercially unreasonable terms.

17

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

72.     In addition, Rebecca has entered into a lease on behalf of Pentagon with a tenant for the Tupelo Hill property which is also grossly below market rate and contains woefully commercially unreasonable terms.

73.     Upon information and belief, Rebecca has caused Cinerama to suspended all business operations and to cease operating a jewelry manufacturing business, in violation of the Cinerama Lease.

74.     Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, Carolyn provided written notice to Rebecca and Cinerama that the Amendment was void under Rhode Island law, as well as in violation of Pentagon's corporate By-Laws (the "May 13 Notice"). Further, the May 13 Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease.  Rebecca has caused Cinerama to disregard the May 13 Notice, to conduct business as though the Cinerama Lease and Sublease were in effect, and caused Pentagon to conduct business on the same false premise.

75.     Despite receipt and acknowledgement of the May 13 Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the Property. Cinerama is, upon information and belief, a holdover tenant or tenant at will at this time.

76.     On or about May 14, 2025, Carolyn, in her capacity as Executive Vice President of Pentagon, provided notice to Air & Anchor that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, Air & Anchor's's tenancy was terminated effective that same date (June 30, 2025) and that Air & Anchot was to vacate the Property on or before that date (the "May 14 Notice").

77.     Despite receipt and acknowledgement of the May 14th Notice, Air & Anchor has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the

18

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 296 of 377 PageID #: 478

Property. At this time, Air & Anchor is, upon information and belief, a holdover tenant or tenant at will.

78.     Cinerama and Air & Anchor, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease and each of them has failed and/or refused to comply with the May 13 Notice and the May 14 Notice, respectively.

79.     Cinerama and Air & Anchor, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease.

80.     Neither Cinerama nor Air & Anchor, individually or collectively, has any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

81.     Accordingly, Carolyn, on behalf of Pentagon, is obliged to protect and preserve Pentagon's rights and has sought the eviction of Cinerama and Air & Anchor from the Property in the District Court.

82.     By letter on or about December 19, 2024, to Rebecca, Carolyn made demand of Cinerama pursuant to R.I. Gen. Laws § 7-1.2-711 and Super. Ct. R. Civ. P. 23.1 that Rebecca act on the basis of the above-described alleged misconduct that had transpired as of that date. Cinerama did not comply with this demand.

83.     Any further effort to obtain answers or to address the claims here made would be futile given Rebecca's majority control of Cinerama, her personal interests and participation in the wrongful actions referenced herein, and the deadlock in voting power and in the management of Pentagon between Rebecca and Carolyn.

84.     Carolyn can fairly and adequately represent the interests of the shareholders of Cinerama and Pentagon in enforcing the rights of the corporations.

19

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

## V.    CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

85.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 84 hereof, inclusive.

86.    As the beneficial majority and controlling shareholder and officer of Cinerama, and as one of two 50% beneficial shareholders of Pentagon, Rebecca owes a fiduciary duty of utmost good faith and loyalty to the company and Carolyn.  Rebecca has breached her duty by engaging in the aforesaid conduct, which includes, among other things, entering into and approving any number of lease and/or sublease agreements on commercially unreasonable and grossly unfair terms to the company, using corporate assets and/or property to bestow personal benefits upon herself and her family members, and, in so doing, failing to maximize the value of the company's shares and by refusing to disclose conflicts of interest to Carolyn, or otherwise obtain Carolyn's informed consent to material business transactions.

87.    As a consequence of her acts and omissions, Rebecca has and continues to breach her fiduciary duty to Carolyn, Cinerama, and Pentagon.

88.    As a consequence of the aforesaid breach of fiduciary duty by Rebecca, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count II – Waste
### (Individually and Derivatively of Cinerama and Pentagon Against Rebecca)

89.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 88 hereof, inclusive.

20

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

90.     The use and disposition by Rebecca of the assets and/or property of Cinerama and Pentagon as described more fully above for insufficient or no value constitutes waste of Cinerama and/or Pentagon.

91.     As a consequence of Rebecca's waste of corporate assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

### Count III – Conversion
### (Individually and Derivatively of Cinerama Against Rebecca and Air & Anchor)

92.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 91 hereof, inclusive.

93.     Carolyn and/or Cinerama own assets and/or property, including without limitation the assets and inventory described above.

94.     Defendants have converted the aforesaid assets and inventory to their own use and/or control without appropriate or proper authority or permission or consent from, and to the wrongful exclusion of, the rightful owners of the property.

95.     As a consequence of Defendants' wrongful conduct, each of Carolyn and Cinerama has suffered and continue to suffer extensive loss, cost, damage and expense.

### Count IV – Breach of Contract
### (Derivatively of Pentagon against Cinerama)

96.     Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 96 hereof, inclusive.

97.     Pentagon entered into the Cinerama Lease with Cinerama which constitutes a contract.

98.     Cinerama has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to operate a jewelry manufacturing business, failure

21

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

to pay all rent due under the Cinerama Lease, failure to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection and engaging in unlawful conduct on the premises.

99.    As a result of Cinerama's breach of the lease, Pentagon has and continues to suffer damages.

### Count V – Breach of Contract
**(Derivatively of Cinerama against Air & Anchor)**

100.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 99 hereof, inclusive.

101.    Cinerama entered into the Sublease with Air & Anchor, which constitutes a contract.

102.    Air & Anchor has breached the contract by, among other things, failing to vacate the Property upon expiration of the term, failing to properly maintain the Property, refusing to give Pentagon and its officers and directors access to the Property for inspection, and engaging in unlawful conduct on the premises.

103.    As a result of Air & Anchor's breach of the lease, Cinerama  has and continues to suffer damages.

### Count VI - Civil Liability for Crimes & Offenses
**(Individually and Derivatively of Cinerama and Pentagon Against Rebecca)**

104.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 103 hereof, inclusive.

105.    As a consequence of Rebecca's actions set forth above, each of Carolyn, Cinerama, and Pentagon have suffered the conversion of their assets and seek recovery for those offenses as allowed under R.I. Gen. Laws § 9-1-2.

### Count VII - Misappropriation of Corporate Opportunity

22

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 300 of 377 PageID #: 482

**(Individually and Derivatively of Cinerama & Pentagon Against Rebecca)**

106. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 106 hereof, inclusive.

107. As a fiduciary to Carolyn, Cinerama and Pentagon, prior to pursuing the formation or organization of Air & Anchor and investing the assets and goodwill of Cinerama into her new business venture, Rebecca should have, but did not, present the same as a corporate opportunity to Cinerama and Pentagon.

108. As a consequence of Rebecca's failure to present this corporate opportunity to Cinerama and Pentagon, and instead pursuing it in her individual capacity through the wrongful use and conversion of Cinerama's and Pentagon's assets, each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

**Count VII – Aiding and Abetting Breach of Fiduciary Duty**
**(Individually and Derivatively of Cinerama and Pentagon against Air & Anchor)**

109. Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 108 hereof, inclusive.

110. By the foregoing acts, including Rebecca's active involvement in the management and affairs of Air & Anchor and its wrongful possession, use and conversion of Cinerama and/or Carolyn's assets, Air & Anchor has and continues to aid and abet Rebecca's breaches of fiduciary duty.

111. As a consequence of these acts, Air & Anchor is aiding and abetting Rebecca's breach of fiduciary duty, and each of Carolyn, Cinerama, and Pentagon have suffered and continue to suffer extensive loss, cost, damage and expense.

**Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1))**
**(False Association/Designation of Origin and False Advertising)**
**(Individually and Derivatively of Cinerama against Air & Anchor)**

23

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

112.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 111 hereof, inclusive.

113.    Air & Anchor has and continues to make false or misleading representations of fact in commercial advertising about its business and its products, claiming directly and through implication, and without limitation, that it has been in business since 1966, is the successor "Factory" located at the Property,  is the owner of Cinerama's vast archive of vintage jewelry inventory, machinery, equipment and other assets and is the successor or continuation of Cinerama.

114.    The misrepresentations are material to consumers' perception of Air & Anchor's products and likely to influence purchasing decisions.

115.    The misrepresentations are likely to cause confusion among the relevant purchasing public.

116.    Air & Anchor made the false or misleading statements commercial advertising and/or promotion and in connection with interstate commerce.

117.    Cinerama and Carolyn have and continue to be damaged as a result of the misrepresentations, including by either or both direct diversion of sales and a negative impact on goodwill associated with their business or products.

### Count X – Intentional Interference with Prospective Economic Advantage
### (Individually against Rebecca and Air & Anchor)

118.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 117 hereof, inclusive.

119.    Conversion of Cinerama's assets, likeness, and goodwill, carries along with it some of Carolyn's brand and it prohibits Carolyn from taking advantage of such and thereby results in additional costs to Carolyn in pursuing her current and future endeavors, including Metal Alchemist, LLC.

24

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 302 of 377 PageID
#: 484

120.    Defendants had knowledge that Carolyn sought to engage in future endeavors in the fine custom retail jewelry industry and intentionally interfered and intended to frustrate such efforts by their aforesaid acts.

121.    As a consequence of such wrongful acts, Carolyn has suffered and continues to suffer extensive loss, cost, damage and expense.

### Count XI – Appointment of a Temporary and Permanent Receiver
### (Against Air & Anchor)

122.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 121 hereof, inclusive.

123.    Pursuant to R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), and (v) and 7-1.2-1316, the facts, actions, and omissions as aforesaid, and in aid of equity and any decree by the Court, the Court should appoint a Temporary and Permanent Receiver to manage the business of Air & Anchor during the pendency of this action, and to recover the misappropriated assets belonging to Cinerama and Carolyn.

### Count XII – Preliminary and Permanent Injunction

124.    Plaintiffs incorporate by reference as if fully set forth herein, the averments of paragraphs 1 through 123 hereof, inclusive.

125.    Defendants' acts and omissions as aforesaid, including without limitation, their wrongful and continued use, possession and conversion of Cinerama's assets, inventory, goodwill and reputation has caused and continues to cause Carolyn and Cinerama to suffer irreparable harm and injury for which they lack an adequate remedy at law in the form of damages.

126.    As a consequence of the foregoing, the Defendants and their employees and agents should be permanently enjoined and restrained from continuing to wrongly use and enjoy the assets, inventory, goodwill and reputation of Cinerama.

25

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

## Count XIII – Unjust Enrichment
### (Derivatively on behalf of Cinerama against Air & Anchor)

127.    Plaintiffs incorporate by reference, as if fully set forth herein, the averments of paragraphs 1 through 126 inclusive.

128.    Air & Anchor knowingly received and retained substantial benefits that rightly belonged to Cinerama, including the use of Cinerama's factory space at 115 Pettaconsett Avenue, inventory, machinery, equipment, vendor relationships, trade secrets, trade name, goodwill, reputation, and telephone number, as well as Cinerama's image and history in the marketplace. Air & Anchor uses all of Cinerama's factory space, equipment, inventory, phone number, management, trade secrets, tradename, vendor relationships, goodwill and reputation and holds itself out as the successor or "extension" of Cinerama Air & Anchor occupied and used all of Cinerama's leased premises and enjoyed the use and benefit of Cinerama's assets, brand, goodwill, tradename, furniture, equipment and appliances.

129.    Air & Anchor also exploited Cinerama's vintage inventory archives and associated goodwill to market and sell products and to enhance its brand and sales, without paying fair value to Cinerama or obtaining appropriate authorization. Air & Anchor advertises and sells jewelry using Cinerama's "thousands of vintage beads and charms" and vast vintage inventory archives as its own Air & Anchor claimed business continuity "since 1966" and presented itself as the Factory, thereby trading on Cinerama's reputation and goodwill.

130.    The above benefits to Air & Anchor were conferred at Cinerama's expense, including the loss of the use and value of its premises, assets, inventory, and goodwill, and the diversion of Cinerama's corporate resources and opportunities. Air & Anchor is wrongfully using Cinerama's assets and inventory without paying fair value therefor and has committed conversion

26

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

of Cinerama's assets Cinerama has suffered extensive loss, cost, damage and expense as a consequence of Defendants' wrongful conduct.

131.    Air & Anchor's retention of these benefits is inequitable because they were obtained without Cinerama's informed consent or proper authorization, on terms that were drastically below market and commercially unreasonable, and in a manner that deprived Cinerama of fair compensation. Air & Anchor's Sublease payments to Cinerama were $6,045.00 plus $1,000 per month, a rental amount that was woefully deficient, drastically below market rate and commercially unreasonable Air & Anchor's use of Cinerama's assets, inventory, goodwill, trade name, image and history occurred without appropriate or proper authority or permission or consent.

132.    Equity and good conscience require that Air & Anchor disgorge and make restitution to Cinerama of the value of the benefits unjustly retained, including, without limitation, the fair market value of the use of Cinerama's premises, assets, inventory, and goodwill, and the profits derived therefrom, in amounts to be proven at trial. Air & Anchor trades upon for its own benefit Cinerama's goodwill, trade name, image and history.

## VI.    PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief:

a.    Award Plaintiffs damages including, without limitation, disgorgement of profits, compensatory damages, treble damages under 15 U.S.C. § 1117(a)and punitive damages  interest, costs, and attorneys' fees;

b.    Grant preliminary and permanent injunctive relief enjoining and restraining Defendants and their employees and agents from continuing to wrongly use and enjoy the assets, inventory, goodwill, and reputation of Cinerama, Pentagon, and Carolyn.

c.    Appoint a temporary and permanent receiver to manage the business of Air & Anchor as the *alter ego* of Cinerama during the pendency of this action, and

d.    Grant such other and further relief as this Court deems just and proper.

27

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM     Document 14     Filed 05/11/26     Page 305 of 377 PageID #: 487

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, and derivatively on behalf of Cinerama Jewelry, Inc., and Pentagon Properties, Inc.,
by their attorneys,

_____

Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

_____

Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: February 18, 2026

28

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

# VERIFICATION

I, Carolyn Rafaelian, individually, and as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, have read the foregoing factual allegations of this Amended Verified Complaint and, based upon my personal knowledge and review of various documents, the allegations are true and correct, except for those allegations which are made upon information and belief, and as to those allegations, they are true and correct to the best of my knowledge, information and belief.

_____
Carolyn Rafaelian, Individually and as Trustee

STATE OF _____

COUNTY OF _____

On this _____ day of _____ 2026, before me, the undersigned notary public, personally appeared Carolyn Rafaelian, personally known to me or proved to the notary through satisfactory evidence of identification, which was _____ to be the person who signed the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge, information, and belief.

Notary Public _____

My Commission Expires: _____

Notary Number: _____

4912-7998-9902, v. 2

29

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

# EXHIBIT A

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

# LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made and entered into on the date, between the parties and upon the terms and conditions hereinafter set forth.

    a.    Date of Lease: as of July 1, 2020

    b.    Lessor: Pentagon Properties, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

    c.    Lessee: Cinerama Jewelry, Inc., a Rhode Island corporation, the office of which is located at 1 15 Pettaconsett Avenue, Cranston, Rhode Island 02920.

    d.    Term of Lease: (1) From: July 1, 2020
                           (2) to and including: June 30, 2025

    e.    Description of Premises: Land, building, improvements and parking areas at 1 15 Pettaconsett Avenue, Cranston, Rhode Island, as described in Exhibit A attached hereto and made a part hereof and generally outlined on Exhibit B attached hereto and made a part hereof.

    f.    Purpose: Operation of a jewelry manufacturing business and allied and ancillary activities.

    g.    Rental: The following shall be the Rental to be paid on an annual and monthly basis for the premises:

| Date Rental Commences | Date Rental Terminates | Annual Rental | Monthly Rental |
|---|---|---|---|
| July 1, 2020 | June 30, 2025 | $120,000.00 | $10,000.00 |

## TERMS AND CONDITIONS

## 1. PREMISES

Lessor, in consideration of the rents, covenants and agreements to be paid, kept and performed by Lessee as herein provided, hereby demises and leases unto Lessee the premises described above.

## 2. PURPOSE

The premises shall be used solely for the purpose set forth above and not for any unlawful purpose. Any use of the premises in violation of this provision may be enjoined by Lessor without prejudice to any other remedy therefore.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 309 of 377 PageID #: 491

## 3. RENTAL

Lessee shall pay the rental set forth above in consecutive monthly installments, in advance, at the office of Lessor, on the first business day of each month during the term of this lease.

## 4. USE OF PREMISES

Lessee shall not cause or permit any waste or injury to the premises and shall keep the premises free from any and all objectionable noises, odors, rubbish and debris inconsistent with the proper operation of Lessee's usual business therein. Lessee shall conform to all rules and regulations now or hereafter established by Lessor for the general safety, car and cleanliness of the premises an the preservation of good order therein. Lessee shall comply with and observe all statutes, ordinances, regulations, orders and/or decrees of the federal, state and city governments, or any departments, bureaus or agencies thereof, or of any Insurance Inspection or Rating Bureau in any way affecting the use and maintenance of the premises, or any machinery or equipment therein, whether now in force or which may in the future be promulgated.

Lessee shall continuously comply with the provisions of the Occupational Safety and Health Act of 1970, as amended, and the regulations thereunder as well as with all other applicable federal, state or local statutes, ordinances, codes, orders, requirements, laws, rules or regulations relating to occupational health or safety matters, and any expense resulting from such compliance, relating to the premises, the use thereof or the conduct of Lessee's business therein, shall be borne by Lessee. Lessee shall forever hold and keep Lessor harmless and indemnified on account of any loss, cost, damage or liability resulting from the violation by Lessee of any such statute, ordinance, regulation, order or decree or based or in any way arising out of the use and occupancy of the premises by Lessee.

Lessee shall not make any alterations in the premises without the written consent of Lessor, and if such consent be granted, any such alteration shall be made in accordance with all applicable federal, state and municipal laws, rules and regulations. All partitions: toilet facilities and other permanent improvements to the premises shall be a part of the realty and title thereto vested in Lessor. Lessee shall not place a load upon any floor exceeding the floor load per square foot area which the floor was designed to carry and which is allowed by law.

At the expiration or other termination of this Lease, Lessee shall remove from the premises all goods and effects, and peaceably and quietly surrender to Lessor possession of the premises and of all erections and additions made to the same. Lessee will keep the sidewalks, drives and parking areas of the premises free of snow, ice and other accumulations.

## 5. UTILITIES

Lessee shall provided and pay for all heat, water for drinking and other purposes, electricity, gas and nay other utilities consumed on the demised premises and sewer, drainage and related charges or assessments connected therewith.

## 6. MAINTENANCE REPAIRS AND REPLACEMENTS

During the term of this Lease, Lessee shall be responsible for all interior and exterior maintenance and repairs to the premises, fixtures and driveways, and shall make all structural repairs and replacements of integral and component parts offte structure, premises and fixtures, toward the end that Lessor shall not be responsible for any maintenance, repairs or replacements of the premises, structure and/or fixtures.

## 7. TAXES ASSESSMENTS AND CHARGES

During the term of this Lease Lessee shall pay all taxes upon the premises. Such taxes shall include: all taxes and special assessments of every kind and nature assessed and levied against the building (as a completed taxable entity), land and fixtures including, but not limited to, any taxes upon the building, land or fixtures levied or imposed by any substitute for real estate or personal property taxes, installments of and interest on assessments for public betterments or public improvements (such assessments to be paid over the longest period permitted by law), all personal property taxes upon air conditioning equipment or similar building appurtenances and expenses, including but not limited to reasonable legal expenses, of any proceedings for abatement of taxes and assessments with respect to the first or any subsequent calendar year of fraction of a calendar year.

## 8. SERVICE CONTRACTS

Lessee shall not enter into any service, maintenance or other contracts relating to the premises which shall terminate after the expiration of the term hereof, without Lessor's written consent.

## 9. FIRE AND CASUALTY

In case the premises shall be destroyed or damaged by fire or other casualty, this lease may be terminated at the election of Lessor but if not so terminated and the premises shall be rendered unfit for occupation on account of a fire or casualty, the Rental hereinbefore reserved, or a just and proportionate part thereof according to the nature and extent of the injury sustained, shall be abated until the premises shall have been put in proper condition by Lessor. Otherwise, this Lease shall continue in full force and effect under its terms.

## 10. CONDEMNATION

In the event the whole or any part of the premises or any interest therein shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate on the date when the possession of the part or interest so taken shall be required for such use or purpose or on the date of such taking or condemnation (at Lessor's option) and without apportionment of the award, it being agreed that Lessor shall be entitled to the entire amount of the award for the premises; provided, however, f only a part of the premises is so taken, and if Lessee can without necessity of any substantial repairing or alteration, carry on its business in the part of the premises not so taken

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

or condemned, this Lease shall continue in full force and effect as to the part not so taken or condemned but there shall be a proportionate adjustment of the Rental to be paid hereunder.

## 11. PROPERTY LOSS OR DAMAGE

All merchandise, furniture and property of any kind, nature and description, belonging to Lessee or any person claiming by, through or under it, which may be in, on or about the premises during the continuance of this Lease, or any extension thereof, is to be at the sole risk and hazard of Lessee; and if the whole or any part thereof shall be destroyed or damaged by fire, water, stream, smoke, by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to or to be borne by Lessor in any case whatsoever.

## 12. IDEMNITY ANDINSURANCE

Lessee agrees to save Lessor harmless from, and indemnify Lessor against, any and all injury, loss or damage of whatever nature to persons or property arising out of the use or occupancy of the premises, or out of any act, omission or negligence of Lessee or anyone claiming under Lessee. Lessee further agrees, in addition to the foregoing and nt in limitation thereof, to indemnify, defend and hold harmless Lessor from and against any and all claims, demands, liabilities, costs, expenses, penalties, damages and losses, including, without limitation, attorneys' fees, as incurred, resulting from or related to any Environmental Condition (as hereinafter defined) or any violation of any Environment Law (as hereinafter defined) in connection with the premises including, but not limited to, any claim for personal injury or property damage arising from any such Environmental Condition or violation of any Environmental Law asserted by third parties against Lessor, any liabilities sustained or incurred by Lessor for the investigation, containment, removal, remedy, cleanup, remediation or abatement of any contamination arising from any Environmental Condition or any violation of any Environmental Law.

The term "Environmental Law' shall mean any law, regulation, rule or order of any governmental entity relating to pollution or protection of the environment (including ambient air, surface water, ground water, land surface or subsurface strata), including, without limitation, CERCLA, as amended, RCRA, as amended, and other federal, state or local laws, regulations, rules and ordinances relating to emissions, discharges or releases of pollutants, contaminants, chemicals, industrial, toxic or hazardous substances or solid or hazardous wastes or petroleum products or gas or any substance detrimental to the environment (collectively, "Polluting Substances") or the manufacture, processing, distribution, use, treatment, handling, storage, disposal and transportation of Polluting Substances. The term "Environmental Condition" shall mean the presence, whether discovered or undiscovered, in surface water, ground water, drinking water supply, land surface, subsurface strata, above ground and underground tanks or other containers, or ambient air of any Polluting Substances arising out of or otherwise related to the operations or other activities (included the disposition of such materials or (substances) conducted or undertaken at the premises by Lessee.

-4-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 312 of 377 PageID #: 494

In the event of any discharge, spillage, contamination, uncontrolled loss, seepage, migration or filtration of a hazardous waste, hazardous substance and/or Polluting Substance within the premises as a result of any conduct of or omission by Lessee, or any employee or agent of Lessee or independent contractor engaged by Lessee, Lessee shall investigate, contain, remove, mitigate or remediate the same immediately in accordance with all applicable federal, state or local laws, ordinances, rules or regulations.

Lessee will maintain general comprehensive public liability insurance naming Lessor as an insured party with respect to the premises and their appurtenances issued by insurance companies authorized to do business in the State of Rhode Island satisfactory to Lessor in amounts not less than One Million Dollars ($1   with respect to injuries to any one person and not less than Three Million Dollars ($3,000,000) with respect to injuries suffered in any one accident, and not less than Five Hundred Thousand Dollars ($500,000) with respect to property damage. Lessee shall deliver to Lessor certificates of such insurance certifying that the same is in full force and effect. Lessee shall pay for insurance against fire and other extended coverage perils pertaining to the premises, naming Lessor as the sole insured party, in amounts not less than One Million Dollars ($1 000,000), with such clauses and with such companies as are designated by Lessor. Such policies may be purchased by Lessor who shall thereupon render invoices to Lessee for the amount of the cost of such insurance which shall be promptly paid by Lessee. The policies of casualty insurance shall be held b Lessor.

## 13. <u>SUBORDINATION</u>

This lease is subject and subordinate to all mortgages which may now or hereafter affect the premises, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any mortgagee. In confirmation of such subordination, Lessee shall execute promptly any certificate that Lessor my request. Lessee hereby constitutes and appoints Lessor Lessee's attorney-in-fact to execute any such certificate or certificates for and on behalf of Lessee. If, in connection with obtaining financing pertaining to the premises or any portion thereof, a banking, insurance or other recognized institutional lender shall request reasonable modifications in this Lease as a condition to such financing, Lessee will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Lessee hereunder or materially and adversely affect the leasehold interest hereby created or Lessee's use and enjoyment of the premises.

## 14. <u>QUIET ENJOYMENT</u>

Lessee, paying the rent and performing all the covenants, terms and conditions in this Lease contained to be performed on the part of Lessee, may peacefully hold and enjoy the premises during the term hereof without any lawful let or hindrance by Lessor or any person claiming by, through or under Lessor.

-5-

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

## 15. <u>NO REPRESENTATIONS BY LESSOR</u>

No representations or promises with respect to the premises, except as herein expressly set forth, have been made by Lessor, and Lessee agrees that it takes the same in their present condition and state of repair. The taking of possession by Lessee shall be conclusive evidence as against Lessee that the real estate and personal property were in satisfactory condition at the time such possession was so taken.

## 16. <u>LESSOR'S RIGHT TO PAY MONEY TO EFFECT PERFORMANCE</u>

If Lessee at any time, or from time to time, shall fail to perform any of the covenants, terms and conditions in this Lease contained to be performed on the part of the Lessee, Lessor may immediately, or at any time thereafter, without notice, perform the same for the account of Lessee, and in any such event, any monies paid by Lessor for such purpose shall be deemed to be additional rent due hereunder and shall be payable forthwith to Lessor upon rendition of an invoice therefor.

## 17. <u>NO WAIVER</u>

The failure of Lessor to seek redress for violation of, or to insist upon the strict performance of any covenant,

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

term or condition of this Lease or any of the Rules and Regulations established by Lessor under the provisions of this Lease shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by Lessor of rent, with knowledge of the breach of any such covenant, term or condition, Rule or Regulation shall not be deemed a waiver of such breach and no provision of this Lease shall be deemed to have been waived by Lessor unless such waiver be in writing signed by Lessor.

## 18. ASSIGNMENT

Lessee shall not assign, mortgage, pledge or otherwise encumber this Lease or its interest therein or sublet the whole or any part of the premises without obtaining on each occasion the consent in writing of Lessor. In case of any such assignment, the Assignee shall assume in writing to Lessor the performance and observance of all the convenants, terms and conditions in this Lease contained, to be kept and performed on the part of the Lessee, and such writing of assumption shall be delivered to Lessor simultaneously with said assignment. In the event of any such assignment or subletting, notwithstanding any assumption hereof by the Assignee or sublease, Lessee shall remain primarily liable for the performance of all the covenants, terms and conditions hereof.

## 19. PAYMENTS

All sums due Lessor or any other party under the provisions hereof shall be deemed to be rent due hereunder and Lessor shall have all the rights and remedies relative to the nonpayment thereof as Lessor has for the nonpayment of rent.

## 20. DEFAULTS OF LESSEE AND REMEDIES OF LESSOR

In case of failure on the part of the Lessee to pay the rent and afl other charges herein provided within the fifteen (15) days subsequent to the time when the same shall become due and payable or in case Lessee shall neglect or fail to perform or observe any of the other covenants, terms or conditions imposed upon Lessee by this Lease and fail to remedy and/or remove said breach within fifteen (15) days of the receipt of the notice thereof from Lessor; or in the event that Lessee makes an Assignment for the Benefit of Creditors; or a petition is filed by or against Lessee to adjudicate it a Bankrupt; or a Debtor, Reorganization, Arrangement or similar petition or proceeding be filed by or against Lessee under any chapter or provision of the Bankruptcy Act; or in the event a Receiver is appointed over the assets of Lessee or Lessee's leasehold interest and/or property shall be attached or levied upon, and such receivership, attachment or levy is not vacated and/or removed within fifteen (15) days thereafter; or if the premises shall be deserted or vacated for a period of fifteen (15) consecutive days or more; then in any of the above cases it shall be lawful for Lessor thereupon or at any time thereafter, at Lessor's

option, and notwithstanding any waiver of any prior breach of any covenant, term or condition, to enter into and upon the premises or any part thereof in the name of the whole, by force or otherwise, and repossess the same, and to expel Lessee and those claiming by, through or under it, and remove its effects without being deemed guilty of any manner of trespass, and

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 315 of 377 PageID #: 497

upon entry as aforesaid the, term of this Lease shall terminate, provided that Lessor shall not be deemed to have accepted a surrender thereof.

In any such event Lessee shall indemnify and hold harmless Lessor against all loss of rent or other payments due hereunder or which Lessor may suffer by reason of such termination, including damages for anticipatory breach. This Lease shall not continue for the benefit of any Assignee for the Benefit of Creditors, Receiver, Trustee in Bankruptcy, debtor in possession or attaching Creditors.

## 21. ACCESS TO PREMISES

Lessor, Lessor's servants and agents, shall have right to enter upon the premises or any part thereof, without charge, at all reasonable times to inspect the same, to show the demised premises to prospective purchasers or tenants, or to make or facilitate any repairs or alterations to the premises, including without limitation, to install posts or columns to reinforce any floors, and to install, maintain and remove any pipes, wires and other conduits and plumbing, heating or electrical fixtures or equipment. Nothing herein shall be construed to impose any obligation upon Lessor to make repairs, and if such repairs are the obligation of Lessee in accordance with the terms of this Lease, the cost thereof shall be charged to Lessee. If Lessor is obligated by any building or fire law or regulation to construct any additional exits, Lessee will permit the construction thereof without any diminution of rent.

## 22. NO BROKER

Lessee represents that the premises, or any portion of the premises, were not presented to it or to any person representing it by any broker or other person and that no broker or other per was in involved in the leasing of the premises, and warrants that no claim for commission for said leasing shall be presented to Lessor.

## 23. NOTICE

All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, postage prepaid, to the parties at their addresses set forth above, or in the case of Lessee, to the demised premises, or in either case, to such Other person or at such other address as either party may hereafter designated by notice to the other party.

-8-

## 24. PARTIES AND DEFINITIONS

The terms Lessor and Lessee wherever used in this Lease shall include the successors and assigns of the parties, wherever the context requires or permits of such construction, and all of

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

the covenants, terms and conditions herein contained successors and assigns of the parties in the same manner as if they were expressly mentioned. The term Lessor as used in this Lease means only the owner for the time being of the premises, so that in the event of any sale, Lessor shall be and Lessor hereby is entirely freed and relieved of all covenants and obligations of Lessor hereunder, it being understood and agreed that the purchaser will have assumed and agreed to carry out any and all obligations of Lessor hereunder.

## 25. MEMORANDUM OF LEASE

Upon the execution hereof, the parties shall also execute a Memorandum of Lease in form reasonably satisfactory to both parties, which Lessee may record.

## 26. AMENDMENTS ADDITIONS AND DELETIONS TO ABOVE LEASE

Any alterations of deletions herein were made in the Lease before execution, and any additional provisions to which the parties have agreed and which are added herein or in any addendum attached hereto shall be considered a part hereof.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date set forth

above.

WITNESS:

LESSOR:

PENTAGON        PROPERTIES, INC.

By: _____

Its: _____

WITNESS:

LESSEE:
CINERAMA JEWELRY, INC.

By: _____

By:

Its: _____

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

# EXHIBIT B

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 318 of 377 PageID #: 500

## AMENDED AND RESTATED SUBLEASE

1.        **Parties.** (a) This Sublease is by and between **Cinerama Jewelry, Inc.** ("Sublessor"), and **Productive Collaboration, LLC** ("Sublessee"), as a Sublease under the Lease Agreement between Pentagon Properties, Inc. ("Landlord") and Sublessor, as Tenant, as may be amended from time to time (the "Master Lease"). A copy of the current Master Lease is attached hereto, marked Exhibit A, and incorporated herein by reference. This Sublease amends and replaces the Sublease between the parties dated as of the 1st day of February, 2019.

2.        **Provisions Constituting Sublease.**

(a)        Except as expressly set forth herein, this Sublease is subject to all of the terms and conditions of the Master Lease in Exhibit A, and Sublessee shall assume and perform the obligations of Sublessor as Tenant under the Master Lease, to the extent said terms and conditions are applicable to the Premises (as defined below). Sublessee shall not commit or permit to be committed on the Premises any act or omission which shall violate any term or condition of the Master Lease, In the event of the termination of Sublessor's interest as Tenant under the Master Lease for any reason, then this Sublease shall terminate.

(b)        Except as expressly set forth herein, all of the terms and conditions contained in the Master Lease in Exhibit A are incorporated herein, (with each reference therein to Landlord and Tenant to be deemed, except where the context otherwise requires, to refer to Sublessor and Sublessee) and along with all of the following paragraphs set out in this Sublease, shall be the complete terms and conditions of this Sublease.

(c)        Without limiting the generality of the foregoing paragraph, all references to Landlord in Paragraph 12 of the Master Lease, relating to insurance, shall be deemed to refer to Landlord and Sublessor.

(d)        Notwithstanding anything contained in this Sublease to the contrary, except as expressly set forth herein, Sublessee agrees and understands that Sublessor shall have no obligation or responsibility whatsoever to provide or perform any service, repair, alteration or other similar obligation which is the obligation of Landlord to provide or perform pursuant to the terms of the Master Lease. Sublessee further agrees and understands that each such obligation shall be provided or performed by Landlord and not by Sublessor; provided, however, that, where Sublessee shall notify Sublessor that Landlord is not performing any obligation under the Master Lease, Sublessor will promptly request Landlord to perform such obligation. Sublessor shall in no event be liable to Sublessee nor shall Sublessee's obligations under this Sublease be impaired or reduced or the performance thereof excused because of any failure or delay on Landlord's part in the performance or observing any obligations of Landlord under the Master Lease.

3.        **Premises.** Landlord subleases to Sublessee and Sublessee hires from said Sublessor those premises (the "Premises"), including all furniture and appliances described in Exhibit B. In addition, Landlord also hereby subleases to Sublessee and Sublessee hires from said Sublessor those premises of approximately 4,500 square feet located on the lower floor of the building located at 115 Pettaconsett Avenue, Cranston RI 02920 which such space shall be used for storage space (the "Additional Premises"). The parties understand that Sublessor will continue to utilize the remainder of

- 1 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

the Additional Premises for its own purposes (equipment, storage, etc.) and that the loading dock area may be used in common by Sublessor and Sublessee.

4.    **Term.** The term of this Sublease shall be for a period originally commencing on February 1, 2019 (the "Commencement Date") and ending on June 30, 2025, unless sooner terminated pursuant to any provision hereof or extended as set forth below.

**Rent.**

(a)    Sublessee shall pay to Sublessor as rent for the Premises the annual amount of $72,540, payable in equal monthly installments of $6,045. Subsequent monthly rent shall be paid in advance on March 1, 2019 and the first day of each succeeding month.

(b)    From and after the Commencement Date, Sublessee shall pay as additional rent with respect to the Premises only (and not with respect to the Additional Premises) its pro rata share of all other amounts required to be paid as additional rent under the Master Lease as and when due. For purposes of this Sublease, Sublessee's pro rata share shall be 50%.

(c)    Rent for any period during the term hereof which is for less than one (1) month shall be a pro-rata portion of the monthly installment.

(d)    Rent shall be payable without notice or demand and without deduction, offset, or abatement, in lawful money of the United States of America to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

(e)    If Rent is to be paid on a Saturday, Sunday or holiday, Rent shall be paid on the next succeeding business day.

(f)    In addition, Sublessee shall pay to Sublessor as rent for the Additional Premises the annual amount of $12,000, payable in equal monthly installments of $1,000.

5.    **Defaults.** If Sublessee shall be in default of any provision of this Sublease relating to the payment of rent, or if Sublessee shall be in default of any other provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessee of written notice from Sublessor specifying the default, then Sublessor may enter the Premises, and repossess the same and expel Sublessee and those claiming under and through Sublessee without being deemed guilty in any manner of trespass, and upon entry as aforesaid, this Sublease shall terminate and Sublessor shall have all rights available to it at law or equity. Sublessee will indemnify Sublessor against all reasonable costs of subletting the Premises and all rent which Sublessor may incur by reason of such termination, provided Sublessor shall make every reasonable effort to mitigate such loss by reletting the Premises. If Sublessor shall be in default of any provision of this Sublease and such default shall continue for thirty (30) days from receipt by Sublessor of a notice specifying the default, then Sublessee may terminate this Sublease without further obligation of Sublessee, all prepaid rents shall be refunded and Sublessee shall have all rights available to it at law or equity. If either Party shall become insolvent or make a general assignment for the benefit of creditors; or if any proceeding under any bankruptcy or insolvency statute is commenced by or against either Party; or if a receiver, trustee, or liquidator is appointed to take charge of all or substantially all of either Party's assets, then this Sublease may, at the option of the other Party, terminate upon thirty (30) days prior written notice and the terminating party shall have all rights available to it at law or equity.

- 2 -

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

6.    **Additional Space.** In the event that at any time during this Sublease additional space is available for sublease within the Premises (in addition to the Additional Premises), the Sublessor shall give Sublessee written notice thereof and Sublessee shall have the first right to lease such additional space upon such reasonable terms and conditions as Sublessor shall determine, provided, however, Sublessee shall exercise its right to sublease such additional space within ten (10) business days of the date Sublessor provides notice to the Sublessee. In the event such additional space is subleased (beyond the Additional Premises) to Sublessee, the Sublessee's pro rata share and percentage of expenses shall be increase appropriately.

7.    **Notices.** All notices or demands of any kind required or desired to be given to Sublessor or Sublessee hereunder, including, without limitation, copies of any notices to or from Landlord, shall be provided in accordance with the Master Lease at the address set forth below their signatures at the end of this Sublease.

8.    **Return.** Upon termination or expiration of this Sublease, Sublessee shall return and surrender the Premises to Sublessor in the manner required by the Master Lease.

IN WITNESS WHEREOF, the parties have executed this Sublease as of the date first set forth above.

**Sublessor:**
Cinerama Jewelry, Inc.

By: _____
    Rebecca Rafaelian
    Its: President
115 Pettaconsett Avenue
Cranston, RI 02920

**Sublessee:**
Productive Collaboration, LLC

By: _____
    Omar S. Ajaj
    Its: Member
115 Pettaconsett Avenue
Cranston, RI 02920

Pursuant to Paragraph 18 of the Master Lease, the undersigned Landlord hereby consents to the foregoing Sublease, all as of the date first written above.

Pentagon Properties, Inc.

By: _____
    Rebecca Rafaelian
    President

- 3 -

59897731 v2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

**Hearing Date: March 2, 2026 9:30am Webex**

STATE OF RHODE ISLAND                                     SUPERIOR COURT
NEWPORT, S.C.

| | |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004 | |
| *Plaintiffs*, | |
| v. | |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009 | C.A. No.  NC-2025-0531 |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR LEAVE
TO FILE FIRST AMENDED VERIFIED COMPLAINT**

Pursuant to Rule 15(a) of the Rhode Island Superior Court Rules of Civil Procedure,

Plaintiff Carolyn Rafaelian ("Carolyn"), individually and as trustee of the Carolyn A. Ferlise QSST

1994 Trust and The Carolyn A. Rafaelian Trust 2004, hereby moves for leave to file the proposed

First Amended Verified Complaint. The grounds for this Motion are set forth in the accompanying

Memorandum of Law, and a copy of the First Amended Verified Complaint is attached thereto as

**Exhibit 1**.

1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Plaintiffs,
Carolyn Rafaelian, individually and in her role as trustee of the Carolyn A. Ferlise QSST Trust-1994 and The Carolyn A. Rafaelian Trust-2004, by their attorneys,

/s/ Jeffrey K. Techentin
Jeffrey K. Techentin [No. 6651]
jtechentin@apslaw.com
Geoffrey W. Millsom [No. 6483]
gmillsom@apslaw.com
Todd D. Amaral [No. 10906]
tamaral@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607


/s/ Kurt T. Kalberer
Kurt T. Kalberer II [No. 8007]
kkalberer@kalbererlaw.com
KALBERER LLP
231 Royal Palm Way
Palm Beach, FL 33480
Tel: (401) 578-1042
Dated: February 18, 2026

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/18/2026 4:20 PM
Envelope: 5533863
Reviewer: Katherine M.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 323 of 377 PageID #: 505

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2026, I electronically filed and served this document through the electronic filing system on all parties receiving electronic filing notices in C.A. No. NC-2025-0531.

/s/ *Todd D. Amaral*

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/13/2026 4:58 PM
Envelope: 5526956
Reviewer: Katherine M.

STATE OF RHODE ISLAND                          SUPERIOR COURT
NEWPORT, SC.

CAROLYN RAFAELIAN, individually and :
as Trustee of THE CAROLYN A. FERLISE :
QSST 1994 TRUST & THE CAROLYN A. :
RAFAELIAN TRUST 2004,                          :
                                               :
                Plaintiff                      :
                                               :
        vs.                                    :          C.A. No.: NC 25-0531
                                               :
REBECCA RAFAELIAN CARUOLO,                     :
individually and as Trustee of THE             :
REBECCA RAFAELIAN CARUOLO                       :
QSST 1994 TRUST & THE REBECCA                   :
RAFAELIAN CARUOLO TRUST 2009,                  :
                                               :
                Defendant                      :

## WITHDRAWAL OF APPEARANCE

I, Christopher M. Mulhearn, Esq., of the Law Office of Christopher M. Mulhearn, Inc.,

hereby withdraw my appearance on behalf of Plaintiff, Carolyn Rafaelian's, individually and as

Trustee of the Carolyn A. Ferlise QSST 1994 Trust & The Carolyn A. Rafaelian Trust 2004 (the

"Plaintiff") in connection with the above-identified proceeding.

Respectfully submitted,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI  02886
Tel.: (401) 533-9330
Email: cmulhearn@mulhearnlawri.com

Dated: February 13, 2026

## Certification

I hereby certify that on this 13th day of February, 2026, I filed and served this document through the electronic filing system upon the following parties:

Jeffrey K. Techentin, Esq.
Geoffrey W. Millsom, Esq.
Todd D. Amaral, Esq.
Adler Pollock & Sheehan P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
jtechentin@apslaw.com
gmillsom@apslaw.com
tamaral@apslaw.com

Mackenzie C. McBurney, Esq.
Christine K. Bush, Esq.
Mitchell R. Edwards, Esq.
Hinckley Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI 02903
mmcburney@hinckleyallem.com
cbush@hinckleyallen.com
medwards@hinckleyallen.com

/s/ Christopher M. Mulhearn

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:27 PM
Envelope: 5524509
Reviewer: John G.

STATE OF RHODE ISLAND                                              SUPERIOR COURT
NEWPORT, S.C.

| | |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. | |
| *Plaintiffs*, | |
| v. | C.A. No.  NC-2025-0531 |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant) and PENTAGON PROPERTIES, INC. (Nominal Defendant) | |
| *Defendants*. | |

## ENTRY OF APPEARANCE

Todd D. Amaral of the law firm of Adler Pollock & Sheehan P.C. hereby enters his appearance on behalf of Plaintiff, Carolyn Rafaelian, Individually and as Trustee.

CAROLYN RAFAELIAN, INDIVIDUALLY AND AS TRUSTEE

By her attorney,

*/s/ Todd D. Amaral*

Todd D. Amaral (#10906)
tamaral@apslaw.com
Adler Pollock & Sheehan P.C.
100 Westminster Street, 16th Floor
Providence, RI  02903
Tel:  (401) 274-7200
Fax:  (401)-351-4607

Dated:  February 12, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:27 PM
Envelope: 5524509
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 12, 2026, I electronically filed and served this document via the Rhode Island Judiciary's Electronic Filing System with notice to all parties in the system.  The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Joan H. DePari*

4920-8369-3967, v. 1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:24 PM
Envelope: 5524493
Reviewer: John G.

STATE OF RHODE ISLAND                                          SUPERIOR COURT
NEWPORT, S.C.

| | |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc.<br><br>    *Plaintiffs*,<br><br>v.<br><br>REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant) and PENTAGON PROPERTIES, INC. (Nominal Defendant)<br><br>    *Defendants*. | C.A. No.  NC-2025-0531 |

## ENTRY OF APPEARANCE

Geoffrey W. Millsom of the law firm of Adler Pollock & Sheehan P.C. hereby enters his appearance on behalf of Plaintiff, Carolyn Rafaelian, Individually and as Trustee.

> CAROLYN RAFAELIAN, INDIVIDUALLY AND AS TRUSTEE
>
> By her attorney,
>
> */s/ Geoffrey W. Millsom*
> Geoffrey W. Millsom (#6483)
> gmillsom@apslaw.com
> Adler Pollock & Sheehan P.C.
> 100 Westminster Street, 16th Floor
> Providence, RI  02903
> Tel:  (401) 274-7200
> Fax:  (401)-351-4607

Dated:  February 12, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:24 PM
Envelope: 5524493
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 12, 2026, I electronically filed and served this document via the Rhode Island Judiciary's Electronic Filing System with notice to all parties in the system. The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.


/s/ Joan H. DePari


4902-1296-8847, v. 1

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:05 PM
Envelope: 5524334
Reviewer: John G.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, S.C.

| | |
|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. | |
| *Plaintiffs*, | |
| v. | C.A. No.  NC-2025-0531 |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant) and PENTAGON PROPERTIES, INC. (Nominal Defendant) | |
| *Defendants*. | |

## ENTRY OF APPEARANCE

Jeffrey K. Techentin of the law firm of Adler Pollock & Sheehan P.C. hereby enters his appearance on behalf of Plaintiff, Carolyn Rafaelian, Individually and as Trustee.

CAROLYN RAFAELIAN, INDIVIDUALLY
AND AS TRUSTEE

By her attorney,

*/s/ Jeffrey K. Techentin*
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
100 Westminster Street, 16th Floor
Providence, RI  02903
Tel:  (401) 274-7200
Fax:  (401)-351-4607

Dated:  February 12, 2026

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 2/12/2026 1:05 PM
Envelope: 5524334
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 12, 2026, I electronically filed and served this document via the Rhode Island Judiciary's Electronic Filing System with notice to all parties in the system.  The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.


/s/ Joan H. DePari


4928-9076-9807, v. 1

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

STATE OF RHODE ISLAND                    SUPERIOR COURT
NEWPORT, SC

---

CAROLYN RAFAELIAN, individually
and as Trustee of THE CAROLYN A.
FERLISE QSST TRUST & THE CAROLYN
A. RAFAELIAN TRUST  2004

        Plaintiff,

v.

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009,

        Defendant.

C.A. NO. NC-2025-0531

**JURY TRIAL DEMANDED**

## ANSWER

Defendant Rebecca Rafaelian Caruolo ("Defendant"), by and through counsel, responds to the Complaint of Plaintiff Carolyn Rafaelian ("Plaintiff") as set forth below.  Defendant denies all allegations not specifically admitted below.

## PARTIES

1.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1.

2.      Admitted.

## JURISDICTION

3.      Paragraph 3 contains conclusions of law to which no response is required.

## INTRODUCTION

4.      Denied.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

5.      Denied.

6.      Denied.

7.      Denied

8.      Denied.

9.      Defendant admits only that non-party Productive Collaboration, LLC

("Productive") occupies space consistent with its written sublease but otherwise denies the

allegations contained in Paragraph 9.

10.     Denied.

11.     Denied.

12.     Defendant denies there was such "new opportunity" to present and otherwise

denies the allegations contained in Paragraph 12.

13.     Denied.

14.     Denied.

### ALLEGATIONS COMMON TO ALL COUNTS[1]

15.     Defendant admits only that Plaintiff and Defendant are siblings, but Defendant

otherwise denies the allegations contained in Paragraph 15.

16.     Admitted.

17.     Admitted.

18.     Defendant denies that Productive is a "holdover tenant" of non-party Cinerama

Jewelry, Inc. ("Cinerama") and otherwise lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 18.

---

[1] Defendant incorporates Plaintiff's headings for convenience only.

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

19. Defendant admits only that Plaintiff is an officer of Cinerama and Pentagon Properties, Inc. ("Pentagon") and that certain trusts, of which Plaintiff claims to be a Trustee, are shareholders of Cinerama and Pentagon, but Defendant otherwise denies the allegations contained in Paragraph 19.

20. Defendant admits only she is a duly elected officer of non-parties Cinerama and Pentagon Properties, Inc. ("Pentagon") and that certain trusts, of which she is the Trustee, are shareholders of Cinerama and Pentagon, but Defendant otherwise denies the allegations contained in Paragraph 20

21. Defendant admits only that Cinerama was incorporated in or around 1996 for the stated purpose of "jewelry manufacturing" and that Ralph Rafaelian held the title of President for a period of time, but Defendant otherwise denies the allegations contained in Paragraph 21.

22. Defendant admits only that Pentagon was incorporated in or around 1991 for the stated purpose "to engage in the ownership and management of real estate and for any other lawful purpose or purposes for which a corporation may be formed under Rhode Island laws," and that Pentagon acquired and currently owns real property located at 115 Pettaconsett Avenue and 91 Tupelo Hill Drive in Cranston, but Defendant otherwise denies the allegations contained in Paragraph 22.

23. Denied.

24. Defendant admits only that certain trusts acquired fifty percent (50%) interests in Pentagon, respectively, but Defendant otherwise denies the allegations contained in Paragraph 24.

25. Denied.

26. Defendant admits only that Defendant is an elected Director of Cinerama, the

3

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

elected President of Cinerama, and is trustee of the Rebecca Rafaelian-Caruolo QSST-1994, which owns all Class A shares of Cinerama and 78 Class B shares of Cinerama, and of the Rebecca Rafaelian-Caruolo Trust-2009, which owns 140 Class B shares of Cinerama, but Defendant otherwise denies the allegations contained in Paragraph 26.

27.    This Paragraph contains conclusion of law to which no response is required, and the Cinerama Bylaws speak for themselves.

28.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

29.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30.    Denied.

31.    Denied.

32.    Denied.

33.    The terms of the referenced Asset Purchase Agreement speak for themselves, so no response to required to the allegations contained in Paragraph 33.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40.

4

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM     Document 14     Filed 05/11/26     Page 336 of 377 PageID
#: 518

41.     Denied.

42.     Denied.

43.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Defendant admits only that a capital call was made to address repair needs for the Property, and that Plaintiff did not respond to the capital call, but Defendant otherwise denies the allegations contained in Paragraph 50.

51.     Defendant admits only that the terms of the Lease Agreement dated as of July 1, 2020 speak for themselves but otherwise denies the allegations contained in Paragraph 51.

52.     Defendant admits only that the terms of the Lease Agreement dated as of July 1, 2020 speak for themselves but otherwise denies the allegations contained in Paragraph 52.

53.     Defendant admits only that the terms of the Amended and Restated Sublease speak for themselves but otherwise denies the allegations contained in Paragraph 53.

54.     Defendant admits only that the terms of the Amended and Restated Sublease speak for themselves but otherwise denies the allegations contained in Paragraph 54.

55.     Denied.

56.     Defendant admits only that the contents of the December 19, 2024

5

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

correspondences from Plaintiff, and from Plaintiff's counsel, and Defendant's response thereto,

speak for themselves but otherwise denies the allegations contained in Paragraph 56.

57. Denied.

58. Denied

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Defendant admits only that the contents of the May 13, 2025 correspondence

speak for themselves but otherwise denies the allegations contained in Paragraph 63.

64. Denied.

65. Defendant admits only that the contents of the May 14, 2025 correspondence

speak for themselves but otherwise denies the allegations contained in Paragraph 65.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Defendant admits only that the contents of the December 19, 2025

correspondence speak for themselves but otherwise denies the allegations contained in Paragraph

71.

72. Denied.

6

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM     Document 14     Filed 05/11/26     Page 338 of 377 PageID
#: 520

## COUNT I – BREACH OF FIDUCIARY DUTY

73.     Defendant repeats and restates each response to Paragraphs 1 through 72 as if set forth fully herein.

74.     Paragraph 74 states conclusions of law to which no response is required, and Defendant otherwise denies the allegations contained in Paragraph 74.

75.     Denied.

76.     Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 76 of the Complaint.

## COUNT II - WASTE

77.     Defendant repeats and restates each response to Paragraphs 1 through 76 as if set forth fully herein.

78.     Denied.

79.     Denied.

80.     Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 80 of the Complaint.

## COUNT III - CONVERSION

81.     Defendant repeats and restates each response to Paragraphs 1 through 80 as if set forth fully herein.

82.     Defendant denies that Plaintiff owns assets or property described in the Complaint.  Answering further, Paragraph 82 states conclusions of law with respect to non-party Cinerama's alleged ownership to which no response is required, and Defendant otherwise denies

7

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

the allegations contained in Paragraph 82.

83.    Denied.

84.    Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 84 of

the Complaint.

## COUNT IV – CIVIL LIABILITY FOR CRIMES & OFFENSES

85.    Defendant repeats and restates each response to Paragraphs 1 through 84 as if set

forth fully herein.

86.    Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 86 of

the Complaint.

## COUNT V – MISAPPROPRIATION OF CORPORATE OPPORTUNITY

87.    Defendant repeats and restates each response to Paragraphs 1 through 86 as if set

forth fully herein.

88.    Denied.

89.    Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 89 of

the Complaint.

## COUNT VI – INTENTIONAL INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

90.    Defendant repeats and restates each response to Paragraphs 1 through 89 as if set

forth fully herein.

91.    Denied.

92.    Denied.

8

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

93.     Denied.

94.     Denied.

95.     Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested following Paragraph 95 of the Complaint.

## AFFIRMATIVE DEFENSES AND OTHER DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff lacks standing to assert claims that should have been brought derivatively to address alleged injuries to non-parties Pentagon and Cinerama and any derivative theory fails for noncompliance with derivative procedures.

### THIRD DEFENSE

Plaintiff failed to satisfy derivative pleading prerequisites and requirements.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the business judgment rule.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitations.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of ratification, consent, estoppel, waiver, laches and/ or acquiescence.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any compensable injury or damages.

## EIGHTH DEFENSE

Plaintiff's claims should be denied, in whole or in part, because Plaintiff's damages, if any, were caused by Plaintiff's actions or inactions.

## NINTH DEFENSE

Plaintiff failed to mitigate the claimed damages.

**WHEREFORE**, Defendant requests that this Court enter judgment in favor of Defendant on all counts, award Defendant costs and fees, including reasonable attorneys' fees, and award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Defendant claims a trial by jury on all counts so triable.

10

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 1/12/2026 9:33 AM
Envelope: 5474932
Reviewer: John G.

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

*/s/ Christine K. Bush*
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2026 I filed and served this document through the Electronic Filing System on the following parties:

Christopher M. Mulhearn (cmulhearn@mulhearnlawri.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

*/s/ Mackenzie C. McBurney*

11

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/12/2025 3:33 PM
Envelope: 5440481
Reviewer: John G.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, SC

| | |
|---|---|
| CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST 2004<br><br>Plaintiff,<br><br>v.<br><br>REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009,<br><br>Defendants. | C.A. NO. NC-2025-0531 |

## EXTENSION STIPULATION

By agreement of the parties, the time within which Defendant may answer or otherwise respond to the Plaintiff's Complaint is hereby extended for thirty (30) days. As a result of this extension, the parties agree that the deadline for Defendant to answer or otherwise respond to Plaintiff's Complaint is on or before January 14, 2026, and without waiver of and reserving all responsive rights.

Dated: December 12, 2025

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/12/2025 3:33 PM
Envelope: 5440481
Reviewer: John G.

CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST  2004

By her Attorneys,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI 02886
Tel: 401-533-9330
cmulhearn@mulhearnlawri.com

REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009

By her Attorneys,

/s/ Mackenzi C. McBuney
Christine K. Bush (#5587)
Mitchell R. Edwards (#6942)
Mackenzie McBurney (#10098)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1500
Providence, RI  02903
Phone: (401) 274-2000
Fax: (401) 277-9600
cbush@hinckleyallen.com
medwards@hinckleyallen.com
mmcburney@hinckleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2025 I filed and served this document through the Electronic Filing System on the following parties:

Christopher M. Mulhearn (cmulhearn@mulhearnlawri.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

/s/ Mackenzie C. McBurney

70214745

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/8/2025 3:12 PM
Envelope: 5431900
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 345 of 377 PageID #: 527



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### BUSINESS CALENDAR CASE OPENING SHEET

| Case Number: |
|---|
| NC 25-0531 |

| PLAINTIFF(S): | DEFENDANT(S): |
|---|---|
| Carolyn Rafaelian, et al. | Rebecca Rafaelian Caruolo, et al. |

| Plaintiff's Counsel (if more than one, supply information for each): | Defendant's Counsel (if more than one, supply information for each): |
|---|---|
| Name: Christopher M. Mulhearn, Esq. | Name: Christine K. Bush, Esq. |
| Address: 100 Centerville Rd., Ste. 1, Warwick, RI | Address: 100 Westminster St., Ste. 1400, Providennce, RI |
| Telephone Number: (401) 533-9330 | Telephone Number: (401) 274-2000 |
| Name: | Name: |
| Address: | Address: |
| Telephone Number: | Telephone Number: |

**NATURE OF PROCEEDING** – Check the applicable case type under main categories listed below (<u>check only one</u>).

- ☑ Breach of contract or fiduciary duties, fraud, misrepresentation, business tort, or statutory violations.
- ☐ Transactions governed by the provisions of the Uniform Commercial Code.
- ☐ Complicated transactions involving commercial real property.
- ☐ Shareholder derivative actions.
- ☐ Commercial class actions.
- ☐ Commercial bank transactions.
- ☑ Matters affecting the internal affairs or governance of business organizations or entities.
- ☐ Business insolvencies and receiverships.
- ☐ Other (generally describe nature) _____

Have there been efforts at mediation?     ☐ Yes     ☑ No
Have there been efforts at arbitration?     ☐ Yes     ☑ No
Other dispute resolution mechanisms?     ☐ Yes     ☑ No

Is this a case that may require a trial for resolution?   ☑ Yes     If yes: ☐ Jury or ☑ Non-jury          ☐ No

If this is an existing case, what is the present status?
☐ Motion to Dismiss     ☐ Summary Judgment     ☐ Discovery     ☐ Awaiting assignment for trial

The undersigned requests assignment to the Business Calendar.

/s/  Christopher M. Mulhearn

Attorney for ☑ Plaintiff  ☐ Defendant

Date: _December 8, 2025_                Rhode Island Bar Number  5188

The above case may be placed on the Business Calendar /s/ _____
Richard Licht Associate Justice
**Associate Justice**

Superior-28 (revised March 2023)

STATE OF RHODE ISLAND                                    SUPERIOR COURT
NEWPORT, SC

---

CAROLYN RAFAELIAN, individually
and as Trustee of THE CAROLYN A.
FERLISE QSST TRUST & THE CAROLYN
A. RAFAELIAN TRUST  2004

           Plaintiff,                              C.A. NO. NC-2025-0531

v.

REBECCA RAFAELIAN CARUOLO,
individually and as Trustee of THE
REBECCA RAFAELIAN CARUOLO QSST
1994 TRUST & THE REBECCA
RAFAELIAN CARUOLO TRUST 2009,

           Defendants.

---

## ENTRY OF APPEARANCE

Mitchell R. Edwards of the law firm Hinckley, Allen & Snyder LLP hereby enters his

appearance on behalf of Defendant Rebecca Rafaelian Caruolo, individually and as Trustee of The

Rebecca Rafaelian Caruolo QSST 1994 Trust & The Rebecca Rafaelian Caruolo Trust 2009, in

the above-captioned matter.



           Respectfully Submitted,

           */s/ Mitchell R. Edwards*
           Mitchell R. Edwards (#6942)
           Hinckley, Allen & Snyder LLP
           100 Westminster Street, Suite 1400
           Providence, RI  02903
           T:  (401) 274-2000
           F:  (401) 277-9600
           medwards@hinckleyallen.com

DATE:  December 4, 2025

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/4/2025 11:43 AM
Envelope: 5426843
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2025 I filed and served this document through the Electronic Filing System on the following parties:

Christopher M. Mulhearn (cmulhearn@mulhearnlawri.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*


/s/Mitchell R. Edwards_____

70191529

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/4/2025 11:41 AM
Envelope: 5426835
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM   Document 14   Filed 05/11/26   Page 348 of 377 PageID #: 530

STATE OF RHODE ISLAND       SUPERIOR COURT
NEWPORT, SC

---

CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST  2004

    Plaintiff,

v.

REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009,

    Defendants.

C.A. NO. NC-2025-0531

---

## ENTRY OF APPEARANCE

Christine K. Bush of the law firm Hinckley, Allen & Snyder LLP hereby enters her appearance on behalf of Defendant Rebecca Rafaelian Caruolo, individually and as Trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust & The Rebecca Rafaelian Caruolo Trust 2009, in the above-captioned matter.

Respectfully Submitted,

*/s/ Christine K. Bush*
Christine K. Bush (# 5587)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI  02903
T:  (401) 274-2000
F:  (401) 277-9600
cbush@hinckleyallen.com

DATE:  December 4, 2025

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/4/2025 11:41 AM
Envelope: 5426835
Reviewer: John G.

Case 1:26-cv-00293-MSM-AEM     Document 14     Filed 05/11/26     Page 349 of 377 PageID #: 531

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2025 I filed and served this document through the Electronic Filing System on the following parties:

Christopher M. Mulhearn (cmulhearn@mulhearnlawri.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

/s/ Christine K. Bush

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/4/2025 11:38 AM
Envelope: 5426822
Reviewer: John G.

STATE OF RHODE ISLAND                      SUPERIOR COURT
NEWPORT, SC

|  |  |
|---|---|
| CAROLYN RAFAELIAN, individually and as Trustee of THE CAROLYN A. FERLISE QSST TRUST & THE CAROLYN A. RAFAELIAN TRUST  2004<br><br>            Plaintiff,<br><br>v.<br><br>REBECCA RAFAELIAN CARUOLO, individually and as Trustee of THE REBECCA RAFAELIAN CARUOLO QSST 1994 TRUST & THE REBECCA RAFAELIAN CARUOLO TRUST 2009,<br><br>            Defendants. | C.A. NO. NC-2025-0531 |

## ENTRY OF APPEARANCE

Mackenzie C. McBurney of the law firm Hinckley, Allen & Snyder LLP hereby enters her appearance on behalf of Defendant Rebecca Rafaelian Caruolo, individually and as Trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust & The Rebecca Rafaelian Caruolo Trust 2009, in the above-captioned matter.

            Respectfully Submitted,

            */s/ Mackenzie C. McBurney*
            Mackenzie C. McBurney, Esq. (#10098)
            Hinckley, Allen & Snyder LLP
            100 Westminster Street, Suite 1400
            Providence, RI  02903
            T:  (401) 274-2000
            F:  (401) 277-9600
            mmcburney@hinckleyallen.com

DATE:  December 4, 2025

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 12/4/2025 11:38 AM
Envelope: 5426822
Reviewer: John G.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2025 I filed and served this document through the Electronic Filing System on the following parties:

Christopher M. Mulhearn (cmulhearn@mulhearnlawri.com)

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

*/s/ Mackenzie C. McBurney*

2

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/25/2025 4:41 PM
Envelope: 5417034
Reviewer: Matthew H.

STATE OF RHODE ISLAND                          SUPERIOR COURT
NEWPORT, SC.

CAROLYN RAFAELIAN, individually and :
as Trustee of THE CAROLYN A. FERLISE :
QSST 1994 TRUST & THE CAROLYN A. :
RAFAELIAN TRUST 2004,                 :
                                      :
                    Plaintiff         :
                                      :
        vs.                           :        C.A. No.: NC 25-0531
                                      :
REBECCA RAFAELIAN CARUOLO,            :
individually and as Trustee of THE    :
REBECCA RAFAELIAN CARUOLO             :
QSST 1994 TRUST & THE REBECCA         :
RAFAELIAN CARUOLO TRUST 2009,         :
                                      :
                    Defendant         :

## STIPULATION OF ACCEPTANCE OF SERVICE OF PROCESS

BY AGREEMENT OF THE PARTIES HERETO, Christine K. Bush, Esq., as counsel to

Defendant, Rebecca Rafaelian Caruolo, individually and as Trustee of The Rebecca Rafaelian

Caruolo QSST 1994 Trust & The Bebecca Rafaelian Caruolo Trust 2009 (the "Defendant"),

hereby accepts service of process, on behalf of said Defendant with regard to Plaintiff, Carolyn

Rafaelian's, individually and as Trustee of the Carolyn A. Ferlise QSST 1994 Trust & The Carolyn

A. Rafaelian Trust 2004 (the "Plaintiff") Complaint, and accompanying Summons, in the above-

entitled action, and, further, said acceptance of service of process shall constitute good, valid and

effective service of process upon said party, pursuant to Rule 4 of the Superior Court Rules of

Civil Procedure.  Said service of process shall be effective as of the 25th day of November, 2025.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/25/2025 4:41 PM
Envelope: 5417034
Reviewer: Matthew H.

AGREED, CONSENTED & STIPULATED TO:

| | |
|---|---|
| Carolyn Rafaelian, individually and as Trustee of The Carolyn A. Ferlise QSST 1994 Trust & The Carolyn A. Rafaelian Trust 2004 | Rebecca Rafaelian Caruolo, individually and as Trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust & The Rebecca Rafaelian Caruolo Trust 2009 |

By her Attorney,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI  02886
Tel.: (401) 533-9330
Email: cmulhearn@mulhearnlawri.com

By her Attorney,

/s/ Christine K. Bush
Christine K. Bush (#5587)
Hinckley Allen
100 Westminster Street, Suite 1400
Providence, RI  02903-2319
Tel.: (401) 457-5140
Email: cbush@hinckleyallen.com

Dated: November 25, 2025



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2025-0531 |
| **Plaintiff**<br>Carolyn Rafaelian<br> v.<br>Rebecca Rafaelian Caruolo<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Christopher M. Mulhearn<br><br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>CHRISTOPHER M MULHEARN INC<br>100 CENTERVILLE ROAD - SUITE 1<br>WARWICK RI  02886 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI  02840<br>(401) 841-8330 | **Address of the Defendant**<br>57 Hines Farm Road<br>Cranston RI  02921 |

**TO THE DEFENDANT, Rebecca Rafaelian Caruolo:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 11/19/2025. | /s/ John Graziano<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** <br> Carolyn Rafaelian <br> v. <br> Rebecca Rafaelian Caruolo <br> **Defendant** | **Civil Action File Number** <br> NC-2025-0531 |
|---|---|

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Rebecca Rafaelian Caruolo, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person of suitable age and discretion _____
   Address of dwelling house or usual place of abode _____

   _____
   Age _____
   Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

   _____

☐ With a guardian or conservator of the Defendant.
   Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
   Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
    Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
    Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
    Name of authorized agent _____
    If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____         SERVICE FEE $_____
                    Month    Day    Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE


SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.


_____
 Signature

State of _____
County of _____

    On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                                        Notary Public: _____
                                        My commission expires: _____
                                        Notary identification number: _____


Page 2 of 2


SC-CMS-1 (revised November 2022)

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

STATE OF RHODE ISLAND                    SUPERIOR COURT
NEWPORT, SC.

---

CAROLYN RAFAELIAN, individually and :
as Trustee of THE CAROLYN A. FERLISE :
QSST 1994 TRUST & THE CAROLYN A. :
RAFAELIAN TRUST 2004,                :
                                     :
              Plaintiff              :
                                     :
     vs.                             :          C.A. No.: NC 25-
                                     :
REBECCA RAFAELIAN CARUOLO,           :
individually and as Trustee of THE   :
REBECCA RAFAELIAN CARUOLO            :
QSST 1994 TRUST & THE REBECCA        :
RAFAELIAN CARUOLO TRUST 2009,        :
                                     :
              Defendant              :

---

## COMPLAINT

### Parties

1.   Plaintiff, Carolyn Rafaelian ("Plaintiff") is a resident of the State of Florida, and maintains a residence in Jamestown, Rhode Island. The Plaintiff is named herein in her individual capacity, as well as in her capacity as Trustee of The Carolyn A. Ferlise QSST 1994 Trust (the "1994 Carolyn Trust") and The Carolyn A. Rafaelian Trust 2004 (the "2004 Carolyn Trust"). The Plaintiff is a beneficiary of the 1994 Carolyn Trust and 1994 Carolyn Trust, respectively. The 1994 Carolyn Trust is a shareholder in non-party, Cinerama Jewelry, Inc. ("Cinerama") owning a nineteen and one-half percent (19.50%) interest in Cinerama. Further, the 2004 Carolyn Trust is a shareholder in Cinerama owning at twenty-three and one-half percent

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 358 of 377 PageID #: 540

(23.50%) interest in Cinerama, as well as a shareholder in non-party, Pentagon Properties, Inc. ("Pentagon") owning a fifty percent (50.00%) interest in Pentagon.

2. Upon information and belief, Defendant, Rebecca Rafaelian Caruolo (the "Defendant") is a domiciled resident an inhabitant of the State of Rhode Island. The Defendant is named herein in her individual capacity, as well as in her capacity as Trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust (the "1994 Rebecca Trust") and The Rebecca Rafaelian Caruolo Trust 2009 (the "2009 Rebecca Trust"). Upon information and belief, the Defendant is a beneficiary of the 1994 Rebecca Trust and 2009 Rebecca Trust, respectively. The 1994 Rebecca Trust and 2009 Rebecca Trust collectively are shareholders of Cinerama owning a fifty-seven percent (57.00%) interest in Cinerama. In addition, the Defendant is a shareholder of Pentagon owning a fifty percent (50%) interest in Pentagon.

## Jurisdiction

3. This Court has jurisdiction over this matter pursuant to R.I. Gen. Laws §§8-2-13 and 8-2-14, respectively.

## Introduction

4. The instant action involves a dispute regarding the defalcation of a preeminent Rhode Island jewelry company, Cinerama, by its majority shareholder and President - the Defendant. This is an action for, among other things, oppression and self-dealing by the Defendant, an officer and shareholder of two (2) separate Rhode Island close corporations. The conduct of the Defendant relative to said companies have had the cumulative effect of completely "freezing out" the Plaintiff, as well as severely diminishing the value of the Plaintiff's shares in said corporations.

5. As an officer and shareholder in these above-described entities the Defendant has an

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

unabashed fiduciary obligation to protect, preserve and maximize the value of the respective companies' business opportunities for the benefit of all of its shareholders, not just herself. Notwithstanding, however, the Defendant has improperly used her position of trust and fidelity to instead "lock out" the Plaintiff, and, further, establish a new business venture with third-parties by utilizing effectively any and all of the assets and/or property of the two (2) subject corporations.

6. By virtue of the instant action, the Plaintiff now seeks to recover and restore the full value of her shares in these entities, together with the companies' assets and/or property, plus an award of monetary damages both individually and derivatively on behalf of these Rhode Island corporations.

7. In concert with non-party, Productive Collaboration, LLC, doing business as Air & Anchor ("PC"), and unknown to the Plaintiff, the Defendant has used her position as President of Cinerama to create a new business venture using the assets and/or property of Cinerama for the sole purpose of excluding and divesting the Plaintiff of her interest in Cinerama.

8. Concealed from the Plaintiff as a mere subtenant leasing a portion of Cinerama's commercial space at 115 Pettaconsett Avenue, Cranston, Rhode Island (the "Property"), which is owned by Pentagon, Cinerama has enabled and/or facilitated the "start-up" of PC's new jewelry business, to wit, PC, which is little more than a thinly veiled "knock off" of the Plaintiff's Alex & Ani jewelry brand. PC was established or created as a result of the Defendant's complete takeover and de facto liquidation of Cinerama and its assets and/or property.

9. In fact, upon information and belief, PC uses all of Cinerama's factory space,

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

equipment, inventory, telephone number and other good will, trade secrets, management, tradename, vendor relationships and/or business reputation such that its functions as an *alter ego* of Cinerama.

10. Upon information and belief, the Defendant manages and/or controls the daily operations of this new enterprise, leaving Cinerama a shell of a company, existing merely to conceal the misappropriation of Cinerama's assets and/or property, subsidizing the Defendant's new business venture, *to wit*, PC, and misleading the Plaintiff as to the value of her shares in Cinerama.

11. By virtue of the within action, the Plaintiff endeavors to protect, preserve and realize the full value of her interests as a shareholder in her family's business and the assets and/or property, reputation, image and goodwill thereof, as well as to protect her own assets, reputation, image, including commercial likeness, and good will of entities previously or currently closely associated with the Plaintiff in the marketplace for fine custom retail jewelry from the wrongful acts of the Defendant.

12. Notwithstanding her role as controlling shareholder and President of Cinerama, the Defendant never presented PC as a new opportunity to Cinerama or the Plaintiff.

13. Instead, the Defendant unilaterally, and without the Plaintiff's consent, permitted PC to utilize assets, name and goodwill of Cinerama and the Plaintiff for less than fair value or for no value at all, and, in so doing, wrongfully converted the assets and/or property of Cinerama and of the Plaintiff for the use and benefit of PC and the Defendant to the unfair exclusion of the Plaintiff.

14. By the Defendant's conduct, the Defendant has deprived the Plaintiff, and continues

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

to deprive the Plaintiff, of existing and prospective economic opportunities.

## Allegations Common to All Counts

15. At all times relevant hereto, the Plaintiff and the Defendant are siblings, as well as the lone shareholders of two (2) Rhode Island close corporations, namely Cinerama and Pentagon.

16. At all times relevant hereto, Cinerama is a duly incorporated and existing corporation pursuant to the laws of the State of Rhode Island, having a principal place of business located at the Property.

17. At all times relevant hereto, Pentagon is a duly incorporated and existing corporation pursuant to the laws of the State of Rhode Island, having a principal place of business located at the Property.

18. At all times relevant hereto, PC is a duly organized and existing limited liability company pursuant to the laws of the State of Rhode Island, having a principal place of business at the Property, and is a holdover tenant of Cinerama. PC is engaged in the design, manufacture and sale of custom jewelry.

19. At all times relevant hereto, the Plaintiff is a shareholder and officer of Cinerama and Pentagon, respectively.

20. At all times relevant hereto, the Defendant is a shareholder and officer of Cinerama and Pentagon, respectively.

21. Cinerama was formed by the Plaintiff's and the Defendant's father in or about 1966, for the purpose of engaging in the design, manufacture and sale of custom jewelry. From and after its formation until some time prior to his death in 2012, the Plaintiff's and the Defendant's father was the President, Chief Executive Officer and sole shareholder of Cinerama.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

22. In or about 1991, the Plaintiff's and the Defendant's father formed Pentagon for the purpose of acquiring, owning and/or managing certain improved commercial property, namely, the Property, which since then, and to date, been the principal manufacturing and place of business for Cinerama. Further, in or about 2006, Pentagon also acquired improved residential property at 91 Tupelo Hill Drive, Cranston, Rhode Island.

23. Starting in or about the late 1990's the plaintiff and the Defendant became active in the management and operations of Cinerama. The Plaintiff was responsible for creative design at Cinerama while the Defendant was responsible for manufacturing and operations.

24. In or about 2012, the Plaintiff and the Defendant each acquired one-half (1/2) or fifty percent (50.00%) ownership interest in Pentagon through various trusts, and each was appointed and has since served as an officer of Pentagon.

25. During the time that the Plaintiff worked at Cinerama, and thereafter, the plaintiff purchased and housed significant inventory of unique and valuable crystals, beads and stones at the Property, which were organized and stored in various containers and/or boxes at the Property and which bore the Plaintiff's name, quantity of the stones, etc., and her signature.

26. At present, the Defendant, as majority and controlling shareholder of Cinerama, controls the management and operations of Cinerama.

27. Even more, pursuant to the By-Laws of Cinerama, the Defendant is entitled to vote and control Cinerama's business and affairs.

28. In or about 1999, the Plaintiff began designing jewelry for certain specialty retailers, then experimenting with soldering metals into bracelets and designing charms and figures on them - arguably the start of the more current trend of using jewelry for self-expression.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

Case 1:26-cv-00293-MSM-AEM    Document 14    Filed 05/11/26    Page 363 of 377 PageID
#: 545

29. On or about 2003, as the Plaintiff's creative force was beginning to achieve critical mass, the Plaintiff formed Alex & Ani as a domestic corporation.

30. From and after the time of its formation in or about 2003, the Plaintiff was the principal owner, officer and creative force behind Alex & Ani, and its financial and creative fortunes soared under her guiding hand.

31. Consistent with the approach learned from the Plaintiff's and the Defendant's father, the Plaintiff always endeavored where practical and prudent to include share with her family and Cinerama in the fruits of Alex & Ani's creative and business successes, at all times in line with her fiduciary duty to Alex & Ani and Cinerama.

32. The Plaintiff awarded all manufacturing, assembly and related work possible from Alex & Ani to Cinerama, paying fair value for the use of Cinerama's valuable resources, including its trade secrets, vendor relationships, equipment, management, goodwill and reputation within the jewelry industry.  In turn, Cinerama and the Defendant profited handsomely from Alex & Ani purchase orders.

33. Ultimately, in or about 2016, Alex & Ani entered into an Asset Purchase Agreement with Cinerama, pursuant to which Alex & Ani acquired certain assets of Cinerama for in excess of $100 Million.

34. All of the foregoing benefits that the Plaintiff bestowed upon Cinerama and her family resulted in substantial financial gains for Cinerama and its shareholders, including the Defendant.

35. As a consequence of disagreements with the outside equity investors in Alex & Ani, in or about 2019, the Plaintiff resigned her position at the company, and by 2021, no longer maintained any management role or equity in Alex & Ani.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

36. In or about 2019, upon information and belief, the Defendant became aware of the distress that Alex & Ani was experiencing and identified or recognized an opportunity to duplicate the Plaintiff's business plan and begin a wholesale manufacturing and retail jewelry enterprise identical to Cinerama and Alex & Ani. Rather than "build" a factory like Cinerama and retail business of her own, or contract with Cinerama for use of its valuable assets like Alex & Ani did, the Defendant conspired to simply take Cinerama for herself and designed a scheme to disenfranchise the Plaintiff from her interest in Cinerama.

37. Creating a name with a striking resemblance to Alex & Ani, in or about June, 2019, the Defendant organized PC with the trade name Air & Anchor. The Defendant's business plan was simple - take over Cinerama entirely via a purported "sublease" and attempt to market its wholesale manufacturing services under the name of the new business enterprise.

38. At the same time, the Defendant intended to launch a retail brand under Air & Anchor using Cinerama's inventory, designs, intellectual property, trade secrets, goodwill, reputation and vendor relationships.

39. To disguise her scheme, the Defendant created a sublease for use of only a portion of the Property, despite occupying the entire Property and misappropriating all of Cinerama's assets and/or property for PC.

40. Air & Anchor holds itself out to the public as using and occupying the Property and having been in business "since 1966" in its sales and marketing efforts including its retail jewelry store location in Cranston, Rhode Island (Garden City Center).

41. The Plaintiff is now aware that from its inception, PC has, in fact, used and occupied

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

all of Cinerama's leased premises at the Property, and, further, enjoy the use and benefit of Cinerama's assets, goodwill, trade name, furniture, equipment, machinery, and without the Plaintiff's consent, the Plaintiff's inventory of unique crystals, beads and stones that the Plaintiff has continually stored at the Property.

42. Moreover, although there exists a sublease between Cinerama and PC for approximately 13,000 square feet of the Property, upon information and belief, PC is enjoying full use and benefit of the entire Property and not paying fair rent for the same.  In addition, PC has the use of Cinerama's assets, equipment, furniture, machinery, and does not, upon information and belief, pay fair value to Cinerama for the use and/or appropriation of such assets and/or property.

43. PC has lauded and deploys its connection to Cinerama, Alex & Ani and the Property in its public statements and marketing efforts.

44.    Upon information and belief, substantial portions of PC's business and operations are controlled, directed and managed by the Defendant.  Additionally, upon information and belief, the Defendant identifies herself to employees of PC as a "manager" of the company.  Finally, upon information and belief, the Defendant is at PC's retail store frequently, if not daily, instructs PC employees to report to her, manages all product requests and quality control, manages relationships and contracts with vendors, and directed that the Plaintiff should never be permitted at or granted access to the Property.

45. Beginning in or about early 2023, and continuing thereafter, upon information and belief, the Defendant directed PC employees to go through inventory located on the first floor of Cinerama, including the Plaintiff's inventory, and "re-box" hundreds of inventory containers or

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

boxes, more than half of which bore the Plaintiff's name, the quantity of the inventory and the Plaintiff's signature, in "new" boxes which only bore quantity and SKU numbers such that any markings linking the inventory to the Plaintiff would be removed. From time to time, including as recently as Fall 2025, PC has advertised for sale the "vintage" inventory and "sold off" the same to the general public, with the remainder of said inventory being delivered to PC retail location for use and sale. At no time did the Plaintiff consent or authorize the disposition of the inventory at issue.

46. The Defendant's intentional and wrongful conduct has injured or harmed the Plaintiff relative to the star of her new business venture - Metal Alchemist, LLC - which was organized in or about 2020, and engages in the design, manufacture and sale of fine custom jewelry. The Plaintiff intended to contract or joint venture with Cinerama and utilize the significant and valuable resources and inventory stored thereat in Metal Alchemist, LLC's operations; however, when the Plaintiff inquired of the Defendant her ability to lease a portion of Cinerama's commercial space the Defendant rebuffed her stating that it was not possible.

47. As a result of the Defendant's intentional and wrongful conduct, the Plaintiff's launch of her new business was delayed and she was forced, at significant expense, to acquire new space, equipment, vendors and resources to re-build her significant inventory to support Metal Alchemist, LLC's operations.

48. The Plaintiff has made inquiry of the Defendant regarding her concerns relative to PC's use of Cinerama and its assets and/or property; however, has only received false and misleading responses.

49. Further, in or about April 2021, the Defendant, by and through counsel, advised the

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

Plaintiff that the Defendant will no longer receive requests from the Plaintiff for periodic updates on the status of Cinerama operations and business plans, and that the Defendant has no interest in working with the Plaintiff on any future endeavors concerning Cinerama and/or Pentagon.

50. In or about December 2021, and, again in or about March 2022, the Defendant, as President of Pentagon, improperly demanded that the Plaintiff make a capital contribution to the company in the amount of $250,000.00 for repairs to the Property.

51. On or about July 1, 2020, Pentagon purported to enter into and execute a Lease Agreement with Cinerama providing for Cinerama's use and occupancy of the Property for a prescribed five (5) year term for an annual base rent of $120,000.00 per annum, paid in equally monthly installments of $10,000.00 per month, in addition to Cinerama being responsible for property taxes and the cost of maintenance of the Property (the "Cinerama Lease"). The Cinerama Lease expired on June 30, 2025.

52. Pursuant to the terms of the Cinerama Lease, the only permitted use of the premises was for Cinerama's operation of a jewelry manufacturing business.

53. Cinerama thereafter purportedly entered into and executed a so-called Amended and Restated Sublease with PC providing or affording it with use and occupancy of a portion of the Property (the "Sublease"). The Sublease term was from February 1, 2019, to June 30, 2025, at which time the same expired of its own terms.

54. Pursuant to the Sublease, PC was required to remit and pay to Cinerama the sum of $6,045.00, plus $1,000 per month in exchange for the use and occupancy purportedly provided for under the Sublease.

55. A dispute subsequently arose between the Plaintiff and the Defendant, respectively,

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

regarding the use and occupancy of the Property by Cinerama and PC, including, without limitation, Cinerama's complete termination of its jewelry manufacturing operations at the Property in violation of the Lease, the unlawful transfer and use of Cinerama's corporate property and/or assets to PC, and numerous breaches of fiduciary duty by Pentagon's and Cinerama's President, the Defendant.

56. On or about December 19, 2024, the Plaintiff, Pentagon's Executive Vice President and holder of fifty percent (50%) or one-half of its shares, sent a demand letter to the Defendant detailing certain unlawful and/or wrongful conduct on the parts of the Defendant, Cinerama and PC, and each of them, relative to the Property.

57. Despite being fully aware of the above-described dispute, on or about May 1, 2025, without the requisite corporate authorization expressly required in Pentagon's By-Laws and under Rhode Island law, the Defendant unilaterally executed a so-called First Amendment to Lease Agreement, *to wit*, the Cinerama Lease (the "Amendment"), on behalf of Pentagon and Cinerama, purporting to extend the term of Cinerama's use and occupancy of the Property from July 1, 2025, through June 30, 2030, pursuant to the same terms and conditions of the initial Cinerama Lease.

58. The Amendment was executed by the Defendant without authorization in violation of Pentagon's By-Laws, and, as such, is without effect or otherwise void under Rhode Island law.

59. In addition, the Amendment was executed by the Defendant on behalf of both parties thereto, Pentagon and Cinerama, which presents a material conflict of interest which required full and fair disclosure of any and all of the materials terms and related facts, as well as the express written authorization or consent from the Plaintiff under Rhode Island law.

60. The Defendant's additional conflicts of interest as President of Pentagon further

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

precluded her from entering into the Amendment on behalf of Pentagon unilaterally without the Plaintiff's express authorization, which include, without limitation:

a) while only the 50% shareholder of Pentagon with limited control, the Defendant is the majority shareholder with full control of Cinerama, making it in her personal interest to give full control of the Property by way of a lease to Cinerama on terms more favorable to Cinerama than Pentagon, and at the least amount of cost;

b) the subtenant, PC is owned by a family relative to whom Rebecca maintains deep personal and business relationships, making it also in the Defendant's personal interest to take control of the Property at the least amount of cost to bestow a personal benefit on a family member and business partner; and

c) the Defendant has failed and refused to disclose, and in fact has mispresented, the details of her business relationships with the subtenant, PC, and is believed to be working for and on behalf of PC while unlawfully using the assets of Cinerama.

61. The terms of the Amendment are unfair to Pentagon and result in the bestowing of personal benefits upon the Defendant to the detriment of Pentagon and the Plaintiff in violation of the Defendant's fiduciary duty of loyalty under Rhode Island law and is therefore void.

62. The Cinerama Lease, as amended by the Amendment, contains a rental amount through 2030, which is grossly below market rate and is replete with commercially unreasonable terms. In addition, Cinerama has, in fact, suspended all business operations and is no longer even operating a jewelry manufacturing business, in direct violation of the Cinerama Lease.

63. Immediately upon receipt of notice of the Amendment, on or about May 13, 2025, the Plaintiff provided written notice to the Defendant and Cinerama that the Amendment was void under Rhode Island, as well as in violation of Pentagon's corporate By-Laws (the "May 13th Notice"). Further, the May 13th Notice advised that the Cinerama Lease terminated of its own terms on June 30, 2025, as did the Sublease. Notwithstanding, Cinerama has disregarded the same.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

64. Despite receipt and acknowledgement of the May 13th Notice, Cinerama has failed and/or refused to terminate its use and occupancy of the Property, or otherwise vacate the same. Cinerama is a holdover tenant or tenant at will at this time.

65. On or about May 14, 2025, the Plaintiff, in her capacity as Executive Vice President of Pentagon, provided notice to PC that the Cinerama Lease expired of its own terms on June 30, 2025, as did the Sublease, and, as such, PC's tenancy was terminated effective that same date (June 30, 2025) and that PC was to vacate the Property on or before that date (the "May 14th Notice").

66. Despite receipt and acknowledgement of the May 14th Notice, PC has failed and/or refused to terminate its use and occupancy of the Property, and to vacate the same. At this time, PC is merely a holdover tenant or tenant at will relative to the Property.

67. Cinerama and PC, and each of them, have breached their respective obligations under the Cinerama Lease and Sublease, as the case may be, and, further, each has failed and/or refused to comply with the May 13th Notice and the May 14th Notice, respectively.

68. Cinerama and PC, and each of them, have remained in possession of the Property following the period set forth in the Cinerama Lease and Sublease, respectively, as well as the May 13th Notice and May 14th Notice.

69. Neither Cinerama nor PC, or either of them, have any legal right to continue to possess and/or otherwise use and occupy the Property, or any portion thereof.

70. Accordingly, the Plaintiff, on behalf of Pentagon, is required to protect and preserve Pentagon's rights and seek the eviction of Cinerama and PC from the Property forthwith.

71. In addition, by letter on or about December 19, 2024, the Plaintiff demanded that the Defendant act on the basis of the above-described alleged misconduct.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

72. Any further effort to obtain answers or to address the claims advanced herein would be futile given the Defendant's majority control of Cinerama and her personal interests and participation in the wrongful actions referenced herein.

## Count I - Breach of Fiduciary Duty

73. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 72 above as if stated more fully herein, and, further, incorporate the same herein by reference.

74. As the beneficial majority and controlling shareholder and officer of Cinerama, the Defendant owes a fiduciary duty of care and loyalty to the company and the Plaintiff. Defendant has breached her duty by, among other things, entering into and approving any number of lease and/or sublease agreements on commercially unreasonable and grossly unfair terms to the company, using the corporation's assets and/or property to bestow personal benefits upon herself and her family members, and, in so doing, failing to maximize the value of the company's shares and refusing to disclose conflicts of interest to the Plaintiff, or otherwise obtain her informed consent to material business transactions..

75. As the majority and controlling shareholder of Cinerama, as well as a consequence of her acts and omissions as stated hereinabove, the Defendant has breached her fiduciary duty to the Plaintiff and Cinerama. The Defendant has breached her fiduciary duty to the Plaintiff and the company by, among other things, using the company's assets for her own personal benefit and/or that of third-party family members and business partners, entering into business transactions on grossly unfair terms, using her position as President and majority shareholder of Cinerama, wasting corporate assets, failing to maximize the value of the

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

corporation's shares and refusing to disclose conflicts of interest to the Plaintiff, or otherwise obtain her informed consent to material business transactions.

76. As a direct and proximate result of the Defendant's breach of fiduciary duty and other wrongful conduct, the Plaintiff has been, and continues to be, injured, harmed and/or damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

### Count II - Waste

77. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 76 above as if stated more fully herein, and, further, incorporate the same herein by reference.

78. The use and disposition by the Defendant of the assets and/or property of Cinerama as described more fully above for insufficient or no value constitutes waste of Cinerama and/or Pentagon.

79. Similarly, the use and disposition by the Defendant of the Property as described more fully above for insufficient or no value constitutes waste of Pentagon.

80. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has been, and continues to be, injured harmed and/or damaged.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

## Count III - Conversion

81. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 80 above as if stated more fully herein, and, further, incorporate the same herein by reference.

82. The Plaintiff and/or Cinerama own assets and/or property, including without limitation the inventory as described more fully above.

83. The Defendant has converted the aforesaid assets and inventory to her own use and/or control without appropriate or proper authority or permission or consent from, and to the wrongful exclusion of, the Plaintiff.

84. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has been, and continues to be, injured harmed and/or damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

### Count IV - Civil Liability for Crimes & Offenses

85. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 84 above as if stated more fully herein, and, further, incorporate the same herein by reference.

86. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has been, and continues to be, injured harmed and/or damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

### Count V - Misappropriation of Corporate Opportunity

87. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 86 above as if stated more fully herein, and, further, incorporate the same herein by reference.

88. Upon information and belief, PC is substantially the same business as Cinerama, and operates as an alter ego of Cinerama.

88. As a fiduciary to the Plaintiff and Cinerama, prior to pursuing the formation or

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

organization of PC, and investing the assets and goodwill of Cinerama into her new business venture, the Defendant should have, but did not, present the same as a corporate opportunity to the Plaintiff and/or Cinerama.

89. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has been, and continues to be, injured harmed and/or damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

## Count VI - Intentional Interference with Prospective Economic Advantage

90. The Plaintiff hereby realleges and reavers her allegations and averments set forth in Paragraphs 1 through 89 above as if stated more fully herein, and, further, incorporate the same herein by reference.

91. Conversion of Cinerama's assets, likeness and goodwill, as well as the Property carries along with it some of the Plaintiff's brand and it prohibits the Plaintiff from taking advantage of such and thereby results in additional costs to the Plaintiff in pursuing her current business venture - Metal Alchemist, LLC.

92. Throughout her career as a jewelry designer, the Plaintiff has transacted business with Cinerama at the Property for use of its valuable assets and resources, likeness and goodwill. As a shareholder and officer of both Cinerama and Pentagon, and each of them, the Plaintiff had

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

a reasonable expectation that she would be able to contract with and benefit from the assets, property and/or resources of Cinerama and Pentagon on reasonable and fair business terms.

93. The Defendant has prohibited and/or precluded the Plaintiff from transacting business with Cinerama or at the Property so that she may pursue a business venture exclusively to her benefit and the benefit of third-party family members, using the Property, as well as the assets and/or property of Cinerama to the exclusion of the Plaintiff.

94. The Defendant's knowledge that the Plaintiff sought to engage in future endeavors in fine custom jewelry industry within Cinerama and/or Pentagon, and intentionally interfered and intended to frustrate such efforts through the Defendant's wrongful conduct.

95. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has been, and continues to be, injured harmed and/or damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff, and against the Defendant, in an amount to be proven at trial, together with legal interest thereon, that this Court award to the Plaintiff any and all costs and expenses incurred in the preparation and prosecution of the within Complaint, including without limitation any and all attorneys' fees, and that this Court award to the Plaintiff such other further relief as this Court may deem fair, just and reasonable.

Case Number: NC-2025-0531
Filed in Newport County Superior Court
Submitted: 11/18/2025 9:15 PM
Envelope: 5406712
Reviewer: Vaughn H.

Respectfully submitted,

Carolyn Rafaelian, individually and as Trustee of The Carolyn A. Ferlise QSST 1994 Trust & The Carolyn A. Rafaelian Trust 2004

By her Attorney,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
Law Office of Christopher M. Mulhearn, Inc.
100 Centerville Road, Suite 1
Warwick, RI  02886
Tel.: (401) 533-9330
Email: cmulhearn@mulhearnlawri.com

Dated: November 18, 2025