UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CAROLYN RAFAELIAN, INDIVIDUALLY and as trustee of THE CAROLYN A. FERLISE QSST 1994 TRUST and THE CAROLYN A. RAFAELIAN TRUST 2004, and derivatively on behalf of Cinerama Jewelry, Inc. and Pentagon Properties, Inc. | : : : : : : : | |
| *Plaintiffs,* | : : | |
| v. | : : | C.A. No.: 1-26-cv-00293 |
| REBECCA RAFAELIAN CARUOLO, individually and in her role as trustee of The Rebecca Rafaelian Caruolo QSST 1994 Trust and The Rebecca Rafaelian Caruolo Trust 2009, PRODUCTIVE COLLABORATION, LLC, CINERAMA JEWELRY, INC. (Nominal Defendant), and PENTAGON PROPERTIES, INC. (Nominal Defendant) | : : : : : : : : : | |
| *Defendants.* | : | |

### DEFENDANT PRODUCTIVE COLLABORATION, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT

For the reasons set forth below, Defendant Productive Collaboration, LLC, d/b/a as Air and Anchor ("PCLLC")  moves to dismiss Plaintiff Carolyn Rafaelian's ("Carolyn" or "Plaintiff") Amended Verified Complaint ("AVC") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    INTRODUCTION

Carolyn's AVC is the latest of several legal complaints filed within the past year against PCLLC, in part, to force PCLLC from its principal place of business in Cranston that it subleases from Cinerama Jewelry, Inc. ("Cinerama"), which Cinerama leases from Pentagon Properties,

1

Inc. ("Pentagon").[1]  PCLLC has occupied and leased the property uninterrupted and with

Carolyn's knowledge since 2019.  *See* AVC ¶ 66 & Exhibits A & B.  The current term of

PCLLC's sublease extends through June 30, 2030.[2]  *See Id.*  Carolyn's actions and intentions are

readily transparent, including, but not limited to, forcing PCLLC from the leased location to take

over the property and use it for her own business, Metal Alchemist, LLC.  *See* AVC ¶ 56.  The

AVC illustrates the extent to which she will go.  Recently amended to add PCLLC as a party and

expand the causes of action, the AVC contains numerous counts Carolyn purportedly maintains

in her individual capacity ("individually") and/or derivatively of Cinerama and/or Pentagon

against Rebecca, PCLLC, and even Cinerama and Pentagon.  The AVC is a maze of

"complaints" that require a roadmap and scorecard to track who is bringing the claims and in

what capacity, and/or who are the targets.  She has even brought claims derivatively of Pentagon

against Cinerama, while at the same time bringing other claims derivatively of Cinerama

including against PCLLC.

Seizing on this, Rebecca filed a Motion to Dismiss all counts of the AVC, arguing that

Carolyn's claims are legally deficient, that she should be disqualified from representing

Cinerama and Pentagon, and her individual claims fail under Rhode Island law.  *See* Dkt. No. 13,

Defendant Rebecca Rafaelian Caruolo's Motion to Dismiss Plaintiff's First Amended Complaint

("Rebecca's Motion").[3]  There is substantial overlap of allegations and counts against Rebecca

and PCLLC contained in Carolyn's AVC, and PCLLC joins Rebecca's Motion and incorporates

---

[1] Carolyn filed two eviction actions within the past year in state court, the first was dismissed and the second stayed by the court after granting Pentagon's motion to intervene.

[2] Carolyn's AVC includes copies of the Lease Agreement and Amended and Restated Sublease as Exhibit A and Exhibit B.  Her AVC discusses at length the "First Amendment to the Amended and Restated Sublease" which extends the term of the sublease between Cinerama and PCLLC to June 30, 2030, *see* AVC at ¶ 66; however, she has not included it as an exhibit to her AVC.

[3] Pentagon has since filed a motion to dismiss, relying on and incorporating Rebecca's Motion.  *See* Dkt. No. 23.

herein the legal arguments set forth in Rebecca's Motion and Rebecca's Reply. *See Id.*, and Dkt. No. 24, Defendant Rebecca Rafaelian Caruolo's Reply Memorandum in Further Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Rebecca's Reply"). For purpose of judicial economy, PCLLC does not intend to re-argue Rebecca's Motion and Rebecca's Reply and instead relies on and incorporates it as the basis of its own motion as applicable to the claims in the AVC directed against PCLLC. If the Court grants Rebecca's Motion, which respectfully it should, then the dismissal must include counts directed against PCLLC. It would be untenable if some or all the of the counts were dismissed as against Rebecca but not dismissed as to PCLLC, especially derivative counts.

Further, Rebecca's Motion is not limited to just derivative claims, it also addresses individual claims, and the arguments in support apply equally to PCLLC. In short, PCLLC requests dismissal of counts III, V, VII (sic), IX, X, XI, XII and XIII in Carolyn's AVC whether brought derivatively or individually.[4]

## II.    FACTUAL BACKGROUND & TRAVEL

PCLLC is a Rhode Island limited liability company and business, with its principal place of business located at 115 Pettaconsett Avenue in Cranston, Rhode Island. It does business as Air and Anchor which is a fictious name on file with the Rhode Island Secretary of State's Office. It has leased this location for at least seven years, since 2019, with a negotiated, written sublease agreement with Cinerama as the sublandlord and tenant. Cinerama leases the premises from Pentagon as landlord and owner. *See* AVC at ¶ 43 & Exhibit A. Currently the term of PCLLC's sublease extends to June 30, 2030, memorialized in an agreement signed by Cinerama and ratified by Pentagon. *See* AVC at ¶ 66. Neither Carolyn nor Rebecca have any interest,

---

[4] There are two "Count IV" in Carolyn's AVC, maintaining different causes of action. There is no Count VIII.

financial or otherwise in PCLLC, and PCLLC denies any allegations or suggestions to the contrary.

In October of 2025, Pentagon through Carolyn filed an eviction action against Cinerama and PCLLC in state District Court. Shortly after, Pentagon's actual attorney unilaterally dismissed the eviction complaint. In November of 2025, Carolyn filed another eviction action against Cinerama and PCLLC in the same court. *See* AVC at ¶ 81. This time she claimed to be filing the complaint individually and derivatively of Pentagon. The court granted Pentagon's motion to intervene as the owner of the property, and the action was then stayed by the court. *See* Rebecca's Motion at 6.

At or around the same time, in November of 2025, Carolyn filed a multi-count complaint in Newport County Superior Court against her sister Rebecca, characterizing the complaint as a "family shareholder dispute."[5] *See* Dkt. No. 14, State Record, Complaint. Approximately two months later, she moved to amend her complaint to, among other things, add PCLLC, Cinerama and Pentagon as defendants and expand the number of counts. *Id.* The motion to amend was granted and on April 22, 2026, she filed the AVC with the Superior Court. *Id.*

The AVC includes a mixture of state law causes of action against Rebecca and PCLLC, and a federal cause of action against PCLLC. Generally, Carolyn seeks damages for breach of fiduciary duty, breach of lease, civil conversion, misappropriation of corporate opportunity, and waste against Rebecca; damages for aiding and abetting a breach of fiduciary duty, conversion, violation of the Lanham Act[6], unjust enrichment and an equitable decree of alter-ego of PCLLC

---

[5] To the extent this is a family shareholder dispute, it does not involve PCLCC or its principals. They are strictly collateral damage and have no place in this lawsuit.

[6] Count IX of the AVC is directed at PCLLC only and invokes federal law; however, it is brought derivatively of Cinerama. The Count is captioned, in part, as: Count IX – Violation of Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)) and alleges false association/designation of origin and false advertising.

and the appointment of a receiver of PCLLC; and preliminary and permanent injunctive relief against defendants and any persons or entities acting for or on their behalf to restrain and enjoin them from using in any way the assets, reputation, image, likeness, and accumulated goodwill of either Carolyn and/or Cinerama and/or Pentagon.

The causes of action are broken down into thirteen counts. *See generally*, AVC. Although not all thirteen counts are directed at PCLLC, there is overlap in counts directed at PCLLC and Rebecca. There are a total of eight counts against PCLLC, including Count III (Conversion), Count V (Breach of Contract), Count VII (sic) (Aiding and Abetting Breach of Fiduciary Duty), Count IX (Violation of Section 43(a)(1) of the Lanham Act), Count X (Intentional Interference with Prospective Economic Advantage), Count XI (Appointment of a Temporary and Permanent Receiver), Count XII (Preliminary and Permanent Injunction) and Count XIII (Unjust Enrichment). *Id.* These counts have been pleaded by Carolyn either individually and/or derivatively of Cinerama and/or Pentagon.

On May 7, 2026, PCLLC accepted service of the summons and amended complaint. *See* Dkt. No. 14, State Record. On May 8, 2026, PCLLC removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. *See* Dkt. No. 1.

On May 11, 2026, Rebecca filed a motion to dismiss all counts of Carolyn's AVC pursuant to Rule 12(b)(6) and Rule 23.1 of the Federal Court Rules of Civil Procedure. *See* Doc. 13. *See* Dkt. No. 13.

### III.    LEGAL STANDARD

Under Fed. R. Civ. Pro. 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted. The Supreme Court has made clear that courts should dismiss a pleading such as a counterclaim for failure to state a claim when the factual allegations

are insufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.*

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570.  "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render [complainant's] entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 569 n.14).

## IV.    ARGUMENT

PCLLC joins Rebecca's Motion and Rebecca's Reply and incorporates and relies on her arguments in support of its own motion to dismiss.  Rebecca's Motion has a significant impact on the claims against PCLLC.  There is overlap in claims brought against Rebecca and PCLLC, and nearly all claims, seven of eight claims, are brought derivatively against PCLLC.  Rebecca's Motion relies on several procedural and substantive grounds.  In support of her motion, Rebecca argues among other things that Carolyn cannot "fairly and adequately" represent Cinerama because she is actively suing the company for eviction in a separate action, and Carolyn's request to "pierce the corporate veil" of Cinerama is antagonistic to the company's interests.  *See* Rebecca's Motion, pp. 5-11.  Also, Carolyn has "disqualifying conflicts," specifically an objective to evict current tenant, Cinerama, and its subtenant, PCLLC, so her own company, Metal Alchemist, LLC, can lease the space.  *Id.*

6

Additionally, there are several individual claims directed at Rebecca and PCLLC that should be dismissed, and again PCLLC adopts and incorporates Rebecca's arguments: Count III for conversion applies only to tangible personal property, not to, as Carolyn maintains in her AVC, "likeness" or "goodwill." Also, as argued, Carolyn has no equity or rights in Alex & Ani's intellectual property to support such a claim. Count X of the AVC alleges tortious interference; however, the statute of limitations is three years and therefore time barred as PCLLC was a subtenant since 2019, which is when the alleged harm began. *Id*. at pp. 13-14. Carolyn did not file her AVC as against PCLLC until April of 2026. Further, as Rebecca's Motion argues, Count XI for appointment of a receiver, and Count XII for injunctive relief, are not standalone causes of action, they are remedies, and thus should be dismissed as freestanding counts. *Id.* at p. 15. The same arguments and rationale apply to PCLLC, and these counts against PCLLC should also fail.

Also, with respect to Count XI for appointment of a receiver, Carolyn is neither a shareholder nor creditor and does not qualify under the Rhode Island receivership statute. And Count IX, directed at PCLLC claiming violation of the Lanham Act, fails to allege a cause of action.

A. **All Derivative Claims (Counts III, V, VII (sic), IX, XI, XII, XIII) Against PCLLC Must be Dismissed Because Plaintiff Should be Disqualified Under Fed. R. Civ. P. 23.1.**

PCLLC joins in and incorporates by reference the arguments made by Rebecca that Carolyn lacks the adequacy and lack of conflict required by Rule 23.1 to maintain derivative claims on behalf of Cinerama and Pentagon. Carolyn's interests are clearly antagonistic. *See* Rebecca's Motion, pp. 5-11. She is currently pursuing an eviction action against Cinerama, the same company she claims to represent derivatively, and PCLLC, which is a subtenant of

Cinerama with a sublease extension in place up to June 30, 2030. This "significant outside entanglement" creates a per se conflict that prevents her from being a fair representative. *Id.* Also, in her AVC, Carolyn seeks a declaration that PCLLC is the "alter ego" of Cinerama (which it is not) and asks the Court to "pierce the corporate veil." Rebecca argues in her motion, that no "fair representative" would seek to strip her own corporation of its legal protections and independence. *Id.*

Undeniably, Rebecca's Motion and arguments impact the counts against PCLLC as a subtenant and co-defendant, and if granted, should apply to dismissal of counts against PCLLC. Because the primary claims against PCLLC - including Count III (Conversion), Count V (Breach of Contract), Count VII (sic) (Aiding and Abetting), Count IX Violation of Section 43(a) of the Lanham Act 915 U.S.C. § 1125(a)(1), Count XI (Appointment of a Temporary and Permanent Receiver), Count XII (Preliminary and Permanent Injunction) and Count XIII (Unjust Enrichment) are brought derivatively on behalf of Cinerama or Pentagon, they must be dismissed.

> **B.    Carolyn's Individual Claims Must Also be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

Rebecca's Motion and Reply also addressed individually plead counts, which impacts claims Carolyn has made against PCLLC.

> **1.    Carloyn's Claim for Conversion (Count III) and Intentional Interference with Prospective Economic Advantage (Count X) Fail as a Matter of Law Because they Target Intangible Assets**

To the extent Carolyn brings Count III individually, it must be dismissed because it fails to state a claim under Rhode Island law. The AVC alleges that PCLLC converted Carolyn's "reputation, image, likeness, and accumulated goodwill." Generally, in Rhode Island conversion applies only to tangible personal property, and not intangible interests *See Montecalvo v.*

*Mandarelli*, 628 A.2d 918, 928-929 (R.I. 1996).  "Likeness," "goodwill," and "reputation" are intangible interests that cannot be converted.  This mirrors the defense that the conversion claim improperly seeks to protect assets that belong to Cinerama, not Carolyn personally, and that Carolyn has no personal equity in the intellectual property she claims was stolen.  Counts III and X of the AVC maintain that the "Conversion of Cinerama's assets, likeness and goodwill carries along with it some of Carolyn's brand…" and injured her personally.  *See* AVC at ¶ 119.

This theory fails for multiple reasons as argued by Rebecca.  Carolyn has no individual right to assert claims relating to Cinerama's "assets, likeness, and goodwill"— those belong to Cinerama, not Carolyn.  And having no equity in Alex & Ani and no rights to its intellectual property, Carolyn has no basis to assert claims relating to Alex & Ani, despite repeated references to that company in her AVC.  The United States Trademark Trial and Appeals Board ("TTAB") recently reinforced that uncontroversial point, *i.e.,* that Alex & Ani enforces its own intellectual property rights and is not aligned with Carolyn, when the TTAB denied Carolyn's petition to cancel three Alex & Ani trademarks ("Rafaelian Gold," "Rafaelian Silver," and "Rafaelian Rose Gold").   *See* Rebecca's Motion, Exhibit E.

Also, even if Carolyn were restricting her conversion claims to her own property, those claims are limited to tangible property under Rhode Island law.  "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo,* at 928.   The tort of conversion "at common law excluded intangible personal property because intangibles, like land, could not be lost or found." *Id.*  The Rhode Island Supreme Court has held that "a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory

note, that may, in turn, be converted." *Montecalvo,* at 929.

The Court should grant Rebecca's and PCLLC's Motions to Dismiss Counts III and X insofar as she seeks to enforce rights other than her own or seeks to apply conversion claims to intangible property.

> **2.      Carolyn's Claim for Preliminary and Permanent Injunction (Count XI) and Appointment of a Temporary and Permanent Receiver (Count XII) are Remedies, not Independent Causes of Action**

PCLLC moves to dismiss Count XI and Count XII because they are improperly plead as standalone counts, and in the case of appointment of a receiver, Carolyn is not a shareholder or creditor of PCLLC within the meaning of the relevant statute.  Injunctive relief and the appointment of a receiver are equitable remedies that depend on the success of an underlying substantive claim.   Because the underlying substantive counts fail for the reasons stated above and in Rebecca's motion, these derivative "remedy counts" against PCLLC have no legal basis to stand on their own and should be dismissed.

> **(a.)      Count XI is Plead Derivatively and Individually and in Both Instances Should be Dismissed.**

Count XI of Carolyn's AVC seeks appointment for a temporary and permanent receiver for PCLLC.   *See* AVC ¶¶ 122-123.  The appointment of a receiver is an exceptional remedy, left to the discretion of the trial justice. *Epic Enterprises*, LLC *v. Howard Wharf Condo Assn*, 253 A.3d 383, 387 (R.I. 2021).  Count XI invokes R.I. Gen. Laws §§ 7-1.2-1314(a)(1)(i), (ii), (iv), (v) and 7-1.2-1316.   *See* AVC (Count XI).   But § 7-1.2-1314 vests a court with the power to liquidate the assets and business of a corporation "in an action by one of three types of petitioners - either a shareholder, a creditor, or the attorney general." *Epic Enterprises*, 253 A.3d at 387 (vacating appointment of temporary receiver for lack of standing where petitioners were neither shareholders nor creditors of target company).  Carolyn is not a shareholder of PCLLC and

10

therefore has no basis to seek appointment for a receiver under R.I. Gen. Laws § 7-1.2-1314(a)(1).  *Id.* at 388 ("Our caselaw surrounding both statutory and equitable proceedings to appoint receivers is clear that standing to pursue a receivership is available only for shareholders of a corporation and its creditors.").

Also, R.I. Gen. Laws § 7-1.2-1314(a)(2), the "creditor" provision, although not plead, does not apply here.  The Rhode Island Supreme Court has defined "creditor" narrowly in the receivership context as "one to whom a debt is owed; one who gives credit for money or goods." *Epic Enterprises*, 253 A.3d at 388.  Carolyn does not allege to have a creditor relationship with PCLLC.  Count XI should be dismissed regardless of whether Carolyn maintains it individually or derivatively.  *See id.*

### 3. The Lanham Act Claim (Count IX) Lacks the Necessary Particularity and Should be Dismissed

Count IX is plead derivatively and therefore should be subject to dismissal.  It should also be dismissed as an individual claim.  Carolyn alleges that PCLLC "misleads the public" by using Cinerama's history.  She lacks standing to bring this claim individually because the "goodwill" and "trade secrets" allegedly misused belong to Cinerama, the corporation, not to Carolyn as an individual shareholder.  Furthermore, the AVC fails to allege with specificity any actual consumer confusion or specific false statements that would satisfy the pleading standards of *Iqbal* and *Twombly*.

### (a.) The Court Should Dismiss Count IX (Lanham Act Claim) Because the Statements Attributable To PCLLC Are Not Actionable Under The Statute.

In general, the Lanham Act "provides federal statutory protection for trademarks." *United States Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 552 (2020).  The Lanham Act provides causes of action for infringement of a registered trademark under 15

11

U.S.C. § 1114(1), which Carolyn does not allege, as well as false association under 15 U.S.C. § 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B). *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002). Carolyn asserts individual claims for false association and false advertising, which are false and not hers to make. "A trademark consists of a word, phrase, image, or other device that identifies goods or services as originating from a particular source." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 12 (1st Cir. 2026).

Carolyn's AVC alleges that PCLLC took the following wrongful action:

- PCLLC's website stated that "[h]ome is where all of our stories begin. The same can be said for our business. It began in 1966, and now, three generations later, we're continuing to develop new products to inspire new generations of people."

- PCLLC's website stated that "our desire to carry on Ralph's legacy led us to reopen the family factory that had fallen vacant…"

- Rachel Ajaj (Carolyn's niece) participated in an interview about her grandfather discussing "pieces that [her] grandfather [Mr. Rafaelian] purchased in the 60s and 70s."

- Omar Ajaj explained during an interview that PCLLC has "an in-store jewelry factory" that is an extension of "their factory just up the road."

*See* AVC at ¶¶ 48, 49, 51 and 52.

These statements are not actionable under any Lanham Act provision. Also, Carolyn has no individually enforceable rights, *i.e.,* standing, to prevent PCLLC from (i) making statements about the history of the Pentagon property; (ii) discussing Ralph Rafaelian and his family legacy; or (iii) using the word "factory" to describe a factory. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (to have standing, plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision).

12

Even if Carolyn had standing, her Lanham Act claims fail on the merits. To state a claim under Section 1125(a)(1)(A), Carolyn must plausibly allege facts showing a likelihood of consumer confusion "as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024). "Claims under this subsection typically involve attempts to appropriate the goodwill associated with a competitor," such as misappropriating a trademark or falsely implying an endorsement. *Id.* (citing *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004)). Carolyn's proposed Count IX does not plausibly allege that any consumer would believe *Carolyn* individually is affiliated with PCLLC based on the challenged statements. Her claim for false association under Section 1125(a)(1)(A) must fail. *Id.* (agreeing that plaintiff failed to state a claim for liability under this subsection).

Carolyn's claim for false advertising under Section 1125(a)(1)(B) is also unavailing. This subsection prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. *Id.* at 65 (quoting 15 U.S.C. § 1125(a)(1)(B)). "The Lanham Act prohibits only 'false or misleading description[s] [or representations] of fact,'" and the "plaintiff bears the burden of proving that the statement at issue is false and/or misleading." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022). None of the statements Carolyn identifies are false or misleading: Rachel Ajaj's grandfather, Ralph Rafaelian, did found Cinerama in 1966; three generations later, Rachel is developing new products; PCLLC does operate out of the Pentagon-owned property; and PCLLC does have registered trademarks incorporating the "factory" concept. Because these statements are true, Carolyn—who seeks individual damages—was required to allege how consumers

13

actually reacted to the statements. *See Am. Bd. of Internal Med.*, 114 F.4th at 65-66 (affirming dismissal for failure to include such allegations). She alleged only that the statements "are likely to cause confusion among the relevant purchasing public." *See* AVC at ¶ 115. That is insufficient. *See Am. Bd. of Internal Med.*, 114 F.4th at 65-66; *Brown v. Transunion Holdings, Inc.*, C.A. NO. 24-11292-NMG, 2025 WL 491714, at **7-8 (D. Mass. Jan. 14, 2025) (dismissing Lanham Act claim). The Court should dismiss Count IX.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant PCLLC's Motion to Dismiss.

Respectfully submitted,
PRODUCTIVE COLLABORATION, LLC
By Its Attorneys,


*/s/ Christopher J. O'Connor*
Christopher J. O'Connor, Esq. (#5078)
Joseph V. Cavanagh, III, Esq. (#6907)
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Tel: (401) 831-8900
Fax: (401) 751-7542
cjo@blishcavlaw.com
jvc3@blishcavalaw.com

14

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on June 11, 2026, the foregoing document was filed electronically and made available for viewing and downloading from the Court's Electronic Case Filing System by all counsel of record.


                                      */s/ Christopher J. O'Connor*